> The NASD also announced today a settled action against Morgan Stanley for violations of NASD Rule 2830(k) arising from the Partners Program and its predecessor.

*Id.*

55.     On November 18, 2003, *The Washington Post* published an article entitled "Morgan Stanley Settles With SEC, NASD." The article states in relevant part:

> Investors who bought mutual funds from Morgan Stanley, the nation's second-largest securities firm, didn't know that the company was taking secret payments from some fund companies to promote their products, according to allegations that resulted in a $50 million settlement agreement yesterday with the Securities and Exchange Commission.
>
> In many cases, those same investors were actually footing the bill, indirectly, for the slanted recommendations, the SEC said. Some of the 16 fund companies whose products were pushed by Morgan brokers paid for the marketing help by letting Morgan handle some of their stock and bond trading. The millions of dollars in commissions earned by Morgan on that trading came out of mutual fund share owners' profits, according to the SEC.
>
> *   *   *
>
> **Morgan said yesterday that companies in its "Partners Program" included . . . MFS Investment Management.**
>
> *   *   *
>
> Yesterday's settlement "goes to show that the mutual fund managers as well as broker dealers have too often viewed mutual fund shareholders as sheep to be sheared," said Sen. Peter Fitzgerald (R-Ill.), who is investigating the industry. "Congress has to figure out the variety of ways people are being sheared so that we can stop it."

[Emphasis added.]

56.     On January 14, 2004, *The Wall Street Journal* published an article under the headline, "SEC Readies Cases On Mutual Funds' Deals With Brokers." Citing "a person familiar with the investigation," the article notes that the SEC is "close to filing its first charges against mutual fund companies related to arrangements that direct trading commissions to

brokerage firms that favor those fund companies' products." The article stated in pertinent part as follows:

> **The SEC has been probing the business arrangements between fund companies and brokerage firms since last spring.** It held a news conference yesterday to announce *it has found widespread evidence that brokerage firms steered investors to certain mutual funds because of payments they received from fund companies or their investment advisers as part of sales agreements.*
>
> Officials said the agency has opened investigations into eight brokerage firms and a dozen mutual funds that engaged in a longstanding practice known as "revenue sharing." Agency officials said they expect that number to grow as its probe expands. They declined to name either the funds or the brokerage firms.
>
> The SEC said payments varied between 0.05% and 0.04% of sales and up to 0.25% of assets that remained invested in the fund.
>
> \* \* \*
>
> *People familiar with the investigation say regulators are looking into examples of conflict of interest when fund companies use shareholder money to cover costs of sales agreements instead of paying the sales costs themselves out of the firm's own pockets. The boards of funds, too, could be subject to scrutiny for allowing shareholders' commission dollars to be used for these sales agreements. In other cases, the SEC is probing whether funds violated policies that would require costs associated with marketing a fund to be included in a fund's so-called 12b-1 plan.*

*Id.* [Emphasis added.]

57.    On March 16, 2004, in the story "MFS Ends 'Soft Dollar' Payments on Concerns Over Ethics," *The Wall Street Journal* announced that MFS Company was ending its practice of paying brokers Soft Dollars. In the story, MFS Company recognizes that shareholders paying for research services in Soft Dollars wrongfully obscures the true value of the benefits received by the funds and their shareholders. The article stated in pertinent part as follows:

> *Aiming to show its seriousness about mutual-fund ethics, Massachusetts Financial Services Co. has stopped paying brokers in "soft dollars" — which essentially are inflated stock-trading commissions — for research and other services.*

* * *

*MFS, for its part, has a new nonexecutive chairman, Robert Pozen, who sees the soft-dollar funnel as a lucrative one for brokers, but one that hides the true cost of such services to shareholders. "It's all camouflaged," said Mr. Pozen, a former associate general counsel of the SEC. Now, he added, "If we want something, if we think it's valuable, we will pay cash."*

*Mutual funds and other institutional investors paid about $12.7 billion in commissions in 2002, about half of which was compensation for research and other forms of soft-dollar services,* according to the latest numbers from research firm Greenwich Associates.

MFS and other big fund firms now pay about five cents per share for stock trades in "bundled" soft-dollar arrangements that include research and payment for executing trades. The stripped-down, no-research rate at an electronic-trading service might be as low as two cents a share. *One reason fund companies bundle research into commissions is that commission payments are subtracted directly from shareholder's accounts, rather than being taken out of the management fees paid to the fund companies.*

MFS, a unit of Sun Life Financial Inc., estimates that it will now have to shell out an additional $10 million to $15 million a year out of its own pockets because of its new policy, reducing its mutual-fund advisory fees by 2% annually.

[Emphasis added.] The March 16 *Wall Street Journal* article also added that MFS had stopped paying brokerage commissions to encourage brokers to push MFS funds, noting that the SEC is currently investigating such arrangements.

## The Prospectuses Were Materially False And Misleading

58.    Plaintiff and other members of the Class were entitled to, and did receive, one or more of the prospectuses (the "Prospectuses"), pursuant to which the MFS Funds shares were offered, each of which contained substantially the same materially false and misleading statements and omissions regarding 12b-1 fees, commissions and Soft Dollars.

59.    The Statement of Additional Information, referred to in certain of the MFS Funds' prospectuses and available to the investor upon request, stated as follows with respect to Soft Dollars and directed brokerage:

> As permitted by Section 28(e) of the Securities Exchange Act of 1934, as amended, the Adviser may cause the Fund to pay a broker or dealer which provides brokerage and research services to the adviser an amount of commission for effecting a securities transaction for the Fund in excess of the amount other brokers or dealers would have charged for the transaction *if the Adviser determines in good faith that the greater commission is reasonable in relation to the value of the brokerage and research services provided by the executing broker or dealer viewed in terms or either a particular transaction or the Adviser's overall responsibilities to the Fund and its other clients.*
>
> \* \* \*
>
> Consistent with the Advisory Agreement and applicable rules and regulations, *the Adviser may consider sales of shares of the Fund and of other funds or accounts of the Adviser as a factor in the selection of broker-dealers to execute the Fund's portfolio transactions.*

[Emphasis added.]

60.    The Prospectuses failed to disclose and misrepresented, *inter alia*, the following material and damaging adverse facts which damaged Plaintiff and other members of the Class:

(a)    that MFS Company authorized the payment from fund assets of excessive commissions to broker dealers in exchange for preferential marketing services and that such payments were in breach of their fiduciary duties, in violation of Section 12(b) of the Investment Company Act, and unprotected by any "safe harbor";

(b)    that MFS Company directed brokerage payments to firms that favored MFS Funds, which was a form of marketing that was not disclosed in or authorized by the MFS Funds Rule 12b-1 plans;

24

(c)    that the MFS Funds Rule 12b-1 plans were not in compliance with Rule 12b-1, and that payments made pursuant to the plans were in violation of Section 12 of the Investment Company Act because, among other reasons, the plans were not properly evaluated by the Trustee Defendants and there was not a reasonable likelihood that the plans would benefit the company and its shareholders;

(d)    that by paying brokers to aggressively steer their clients to MFS Funds, MFS Company was knowingly aiding and abetting a breach of fiduciary duties, and profiting from the brokers' improper conduct;

(e)    that any economies of scale achieved by marketing of the MFS Funds to new investors were not passed on to MFS Funds investors;

(f)    that defendants improperly used Soft Dollars and excessive commissions, paid from MFS Funds assets, to pay for overhead expenses the cost of which should have been borne by MFS Company and not MFS Funds investors; and

(g)    that the Trustee Defendants had abdicated their duties under the Investment Company Act and their common law fiduciary duties, that they failed to monitor and supervise MFS Company and that, as a consequence, MFS Company was able to systematically skim millions and millions of dollars from the MFS Funds.

## COUNT I

### Against MFS Company For Violations Of Section 34(b) Of The Investment Company Act On Behalf Of The Class

61.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.    This Count is asserted against MFS Company in its role as investment adviser to the MFS Funds.

63.    MFS Company made untrue statements of material fact in registration statements and reports filed and disseminated pursuant to the Investment Company Act and omitted to state facts necessary to prevent the statements made therein, in light of the circumstances under which they were made, from being materially false and misleading. MFS Company failed to disclose the following:

(a)    that MFS Company authorized the payment from fund assets of excessive commissions to broker dealers in exchange for preferential marketing services and that such payments were in breach of its fiduciary duties, in violation of Section 12(b) of the Investment Company Act, and unprotected by any "safe harbor";

(b)    that MFS Company directed brokerage payments to firms that favored MFS Funds, which was a form of marketing that was not disclosed in or authorized by the MFS Funds Rule 12b-1 plans;

(c)    that the MFS Funds Rule 12b-1 plans were not in compliance with Rule 12b-1, and that payments made pursuant to the plans were in violation of Section 12 of the Investment Company Act because, among other reasons, the plans were not properly evaluated by the Trustee Defendants and there was not a reasonable likelihood that the plans would benefit the company and its shareholders;

(d)    that by paying brokers to aggressively steer their clients to MFS Funds, MFS Company was knowingly aiding and abetting a breach of fiduciary duties, and profiting from the brokers' improper conduct;

(e)    that any economies of scale achieved by marketing of the MFS Funds to new investors were not passed on to MFS Funds investors;

26

(f)     that defendants improperly used Soft Dollars and excessive commissions, paid from MFS Funds assets, to pay for overhead expenses the cost of which should have been borne by MFS Company and not MFS Funds investors; and

(g)     that the Trustee Defendants had abdicated their duties under the Investment Company Act and their common law fiduciary duties, that the Trustee Defendants failed to monitor and supervise MFS Company and that, as a consequence, MFS Company was able to systematically skim millions and millions of dollars from the MFS Funds.

64.     By reason of the conduct described above, MFS Company violated Section 34(b) of the Investment Company Act.

65.     As a direct, proximate and foreseeable result of MFS Company's violation of Section 34(b) of the Investment Company Act, MFS Funds investors have incurred damages.

66.     Plaintiff and the Class have been specially injured by Defendants' violations of Section 34(b) of the Investment Company Act. Such injuries were suffered directly by the shareholders, rather than by the MFS Funds themselves.

67.     MFS Company, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal such adverse material information.

## COUNT II

### Against MFS Company Pursuant To Section 36(b) Of The Investment Company Act Derivatively On Behalf Of The MFS Funds

68.     Plaintiff repeats and realleges each and every allegation contained above and otherwise incorporates the allegations contained above.

69.    This Count is brought by the Class (as MFS Funds securities holders) on behalf of the MFS Funds against MFS Company for breach of its fiduciary duties as defined by Section 36(b) of the Investment Company Act.

70.    MFS Company had a fiduciary duty to the MFS Funds and the Class with respect to the receipt of compensation for services and of payments of a material nature made by and to MFS Company.

71.    MFS Company violated Section 36(b) by improperly charging investors in the MFS Funds purported Rule 12b-1 marketing fees, and by drawing on MFS Funds assets to make undisclosed payments of Soft Dollars and excessive commissions, as defined herein, in violation of Rule 12b-1.

72.    By reason of the conduct described above, MFS Company violated Section 36(b) of the Investment Company Act.

73.    As a direct, proximate and foreseeable result of MFS Company's breach of the fiduciary duty of loyalty in its role as investment adviser to MFS Funds investors, the MFS Funds and the Class have incurred millions of dollars in damages.

74.    Plaintiff, in this count, seeks to recover the Rule 12b-1 fees, Soft Dollars, excessive commissions and the management fees charged the MFS Funds by MFS Company.

## COUNT III

**Against Sun Life (As A Control Person Of
MFS Company) And The Trustee Defendants (As Control
Persons Of MFS Company) For Violation Of Section 48(a)
Of The Investment Company Act By The Class And
Derivatively On Behalf Of The MFS Funds**

75.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

28

76.     This Count is brought pursuant to Section 48(a) of the Investment Company Act against Sun Life as a control person of MFS Company and the Trustee Defendants as control persons of MFS Company, who caused MFS Company to commit the violations of the Investment Company Act alleged herein. It is appropriate to treat these defendants as a group for pleading purposes and to presume that the misconduct complained of herein are the collective actions of Sun Life and the Trustee Defendants.

77.     MFS Company is liable under Section 34(b) of the Investment Company Act to the Class and under Section 36(b) of the Investment Company Act to the MFS Funds as set forth herein.

78.     Sun Life and the Trustee Defendants were "control persons" of MFS Company and caused the violations complained of herein. By virtue of their positions of operational control and/or authority over MFS Company, Sun Life and the Trustee Defendants directly and indirectly, had the power and authority, and exercised the same, to cause MFS Company to engage in the wrongful conduct complained of herein.

79.     Pursuant to Section 48(a) of the Investment Company Act, by reason of the foregoing, Sun Life and the Trustee Defendants are liable to Plaintiff to the same extent as are MFS Company for its primary violations of Sections 34(b) and 36(b) of the Investment Company Act.

80.     By virtue of the foregoing, Plaintiff and other Class members are entitled to damages against Sun Life and the Trustee Defendants.

29

## COUNT IV

### Against MFS Company Under Section 215 Of The Investment Advisers Act For Violations Of Section 206 Of The Investment Advisers Act Derivatively On Behalf Of The MFS Funds

81.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

82.    This Count is based upon Section 215 of the Investment Advisers Act, 15 U.S.C. §80b-15.

83.    MFS Company served as "investment adviser" to the MFS Funds and other members of the Class pursuant to the Investment Advisers Act.

84.    As a fiduciary pursuant to the Investment Advisers Act, MFS Company was required to serve the MFS Funds in a manner in accordance with the federal fiduciary standards set forth in Section 206 of the Investment Advisers Act, 15 U.S.C. §80b-6, governing the conduct of investment advisers.

85.    During the Class Period, MFS Company breached its fiduciary duties to the MFS Funds by engaging in a deceptive contrivance, scheme, practice and course of conduct pursuant to which it knowingly and/or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud upon the MFS Funds. As detailed above, MFS Company skimmed money from the MFS Funds by charging and collecting fees from the MFS Funds in violation of the Investment Company Act and the Investment Advisers Act. The purpose and effect of said scheme, practice and course of conduct was to enrich MFS Company, among other defendants, at the expense of the MFS Funds. MFS Company breached its fiduciary duties owed to the MFS Funds by engaging in the aforesaid transactions, practices and courses of business knowingly or recklessly so as to constitute a deceit and fraud upon the MFS Funds.

30

86. MFS Company is a liable as a direct participant in the wrongs complained of herein. MFS Company, because of its position of authority and control over the MFS Funds was able to and did control the fees charged to and collected from the MFS Funds and otherwise control the operations of the MFS Funds.

87. MFS Company had a duty to (1) disseminate accurate and truthful information with respect to the MFS Funds; and (2) truthfully and uniformly act in accordance with their stated policies and fiduciary responsibilities to the MFS Funds. MFS Company participated in the wrongdoing complained of herein in order to prevent the MFS Funds from knowing of MFS Company's breaches of fiduciary duties including: (1) the charging of the MFS Funds and MFS Funds investors improper Rule 12b-1 marketing fees; (2) making improper undisclosed payments of Soft Dollars; (3) making unauthorized use of "directed brokerage" as a marketing tool; and (4) charging the MFS Funds for excessive and improper commission payments to brokers.

88. As a result of MFS Company's multiple breaches of its fiduciary duties owed to the MFS Funds, the MFS Funds were damaged.

89. The MFS Funds are entitled to rescind their investment advisory contracts with MFS Company and recover all fees paid in connection with their enrollment pursuant to such agreements.

## COUNT V

### Breach Of Fiduciary Duty Against
### MFS Company On Behalf Of The Class

90. Plaintiff repeats and realleges each of the preceding allegations as though fully set forth herein.

91.    As adviser to the MFS Funds, MFS Company was a fiduciary to the Plaintiff and other members of the Class and was required to act with the highest obligations of good faith, loyalty, fair dealing, due care and candor.

92.    As set forth above, MFS Company breached its fiduciary duties to Plaintiff and the Class.

93.    Plaintiff and the Class have been specially injured as a direct, proximate and foreseeable result of such breach on the part of MFS Company and have suffered substantial damages.

94.    Because MFS Company acted with reckless and willful disregard for the rights of Plaintiff and other members of the Class, MFS Company is liable for punitive damages in an amount to be determined by the jury.

## COUNT VI

### Breach Of Fiduciary Duty Against The Trustee
### Defendants On Behalf Of The Class

95.    Plaintiff repeats and realleges each of the preceding allegations as though fully set forth herein.

96.    As MFS Funds trustees, the Trustee Defendants had a fiduciary duty to the MFS Funds and MFS Funds investors to supervise and monitor MFS Company.

97.    The Trustee Defendants breached their fiduciary duties by reason of the acts alleged herein, including their knowing or reckless failure to prevent MFS Company from (1) charging the MFS Funds and MFS Funds investors improper Rule 12b-1 marketing fees; (2) making improper undisclosed payments of Soft Dollars; (3) making unauthorized use of "directed brokerage" as a marketing tool; and (4) charging the MFS Funds for excessive and improper commission payments to brokers.

98. Plaintiff and the Class have been specially injured as a direct, proximate and foreseeable result of such breach on the part of MFS Company and have suffered substantial damages.

99. Because MFS Company acted with reckless and willful disregard for the rights of Plaintiff and other members of the Class, MFS Company is liable for punitive damages in an amount to be determined by the jury.

## COUNT VII

### Aiding And Abetting A Breach Of Fiduciary Duty
### Against MFS Company On Behalf Of The Class

100. Plaintiff repeats and realleges each of the preceding allegations as though fully set forth herein.

101. At all times herein, the broker dealers that sold MFS Funds had fiduciary duties of loyalty to their clients, including Plaintiff and other members of the Class.

102. MFS Company knew or should have known that the broker dealers had these fiduciary duties.

103. By accepting improper Rule 12b-1 fees, Soft Dollars and excessive commissions in exchange for aggressively pushing MFS Funds, and by failing to disclose the receipt of such fees, the brokerages breached their fiduciary duties to Plaintiff and the other members of the Class.

104. MFS Company possessed actual or constructive knowledge that the brokerages were breaching their fiduciary duties, but nonetheless perpetrated the fraudulent scheme alleged herein.

33

105.    MFS Company's actions, as described in this complaint, were a substantial factor in causing the losses suffered by Plaintiff and the other members of the class. By actively participating in the brokerages' breaches of fiduciary duties, MFS Company is liable therefor.

106.    As a direct, proximate and foreseeable result of MFS Company's knowing participation in the brokerages' breaches of fiduciary duties, Plaintiff and the Class have suffered damages.

107.    Because MFS Company acted with reckless and willful disregard for the rights of Plaintiff and other members of the Class, MFS Company is liable for punitive damages in an amount to be determined by the jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class Counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding punitive damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D.    Awarding the MFS Funds rescission of their contracts with MFS Company, including recovery of all fees which would otherwise apply, and recovery of all fees paid to MFS Company;

34

E.    Ordering an accounting of all MFS Funds-related fees, commissions, and Soft Dollar payments;

F.    Ordering restitution of all unlawfully or discriminatorily obtained fees and charges;

G.    Awarding such other and further relief as this Court may deem just and proper, including any extraordinary equitable and/or injunctive relief as permitted by law or equity to attach, impound or otherwise restrict the defendants' assets to assure that Plaintiff and the Class have an effective remedy;

H.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

I.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 25, 2004

**MOULTON & GANS, P.C.**

By: _____
    Nancy Freeman Gans (BBO #184540)
    33 Broad Street, Suite 1100
    Boston, Massachusetts  02109-4216
    (617) 369-7979

**MILBERG WEISS BERSHAD HYNES
    & LERACH LLP**
Steven G. Schulman
Janine L. Pollack
Kim E. Levy
Peter E. Seidman
One Pennsylvania Plaza
New York, New York  10119-0165
(212) 594-5300

35

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
Marshall N. Perkins
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland  21202
(410) 332-0030

**Counsel for Plaintiff and the Class**

## EXHIBIT A

### The MFS Funds

MFS Capital Opportunities Fund
MFS Core Growth Fund
MFS Emerging Growth Fund
MFS Growth Opportunities Fund
MFS Large Cap Growth Fund
MFS Managed Sectors Fund
MFS Mid Cap Growth Fund
MFS New Discovery Fund
MFS New Endeavor Fund
MFS Research Fund
MFS Strategic Growth Fund
MFS Technology Fund
Massachusetts Investors Growth Stock
MFS Mid Cap Value Fund
MFS Research Growth And Income Fund
MFS Strategic Value Fund
MFS Total Return Fund
MFS Union Standard Equity Fund
MFS Utilities Fund
MFS Value Fund
Massachusetts Investors Trust
MFS Aggressive Growth Allocation Fund
MFS Conservative Allocation Fund
MFS Growth Allocation Fund
MFS Moderate Allocation Fund
MFS Bond Fund
MFS Emerging Markets Debt Fund
MFS Government Limited Maturity Fund
MFS Government Mortgage Fund
MFS Government Securities Fund
MFS High Income Fund
MFS High Yield Opportunities Fund
MFS Intermediate Investment Grade Bond Fund
MFS Limited Maturity Fund
MFS Research Bond Fund
MFS Strategic Income Fund
MFS Alabama Municipal Bond Fund
MFS Arkansas Municipal Bond Fund
MFS California Municipal Bond Fund
MFS Florida Municipal Bond Fund
MFS Georgia Municipal Bond Fund
MFS Maryland Municipal Bond Fund

MFS Massachusetts Municipal Bond Fund
MFS Mississippi Municipal Bond Fund
MFS Municipal Bond Fund
MFS Municipal Limited Maturity Fund
MFS New York Municipal Bond Fund
MFS North Carolina Municipal Bond Fund
MFS Pennsylvania Municipal Bond Fund
MFS South Carolina Municipal Bond Fund
MFS Tennessee Municipal Bond Fund
MFS Virginia Municipal Bond Fund
MFS West Virginia Municipal Bond Fund
MFS Emerging Markets Equity Fund
MFS Global Equity Fund
MFS Global Growth Fund
MFS Global Total Return Fund
MFS International Growth Fund
MFS International New Discovery Fund
MFS International Value Fund
MFS Research International Fund
MFS Cash Reserve Fund
MFS Government Money Market Fund
MFS Money Market Fund