# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES GILLIAM, Individually<br>And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FIDELITY MANAGEMENT AND<br>RESEARCH COMPANY, *et al.*,<br><br>Defendants. | Civil Action No. 04cv11600 (MBB)<br><br>Consolidated Case Nos.:<br>04cv11642<br>04cv11709<br>04cv11735<br>04cv11812 |

## MEMORANDUM OF INDEPENDENT TRUSTEE DEFENDANTS IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Sandra Sue McQuay  (BBO No. 340120)
A. Lauren Carpenter (BBO No. 551258)
SULLIVAN, WEINSTEIN & McQUAY
2 Park Plaza
Boston, Massachusetts  02116
Telephone  (617) 348-4355

John S. Kiernan
Suzanne M. Grosso
Nicholas F. Joseph
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
Telephone  (212) 909-6000

*Attorneys for Independent Trustee Defendants*
(J. Michael Cook, Ralph F. Cox,
Robert M. Gates, George H. Heilmeier,
Donald J. Kirk, Marie L. Knowles,
Ned C. Lautenbach, Marvin L. Mann,
William O. McCoy, Gerald C. McDonough,
and William S. Stavropoulos)

December 5, 2005

## TABLE OF CONTENTS

**Table of Authorities** ......................................................................................................... ii

**Preliminary Statement** ...................................................................................................... 1

**Argument** ............................................................................................................................ 5

I.    ALL BUT ONE OF THE COUNTS ASSERTED IN THE COMPLAINT
      AGAINST THE INDEPENDENT TRUSTEE DEFENDANTS SHOULD
      BE DISMISSED BECAUSE THEY ARE DERIVATIVE CLAIMS FOR
      WHICH PLAINTIFFS MADE NO DEMAND ON THE FUND BOARDS .................... 5

      A.    All of Plaintiffs' Claims Are Derivative Because Any
            Resulting Injuries Were Suffered By The Fidelity Funds ....................................... 6

      B.    All Claims Except Count Three (ICA § 36(b)) Should Be
            Dismissed For Failure To Make Demand On The Fidelity Fund Boards ............... 8

            1.    Demand Is Never Excused As Futile Under Massachusetts Law ............... 8

            2.    Demand Is Not Excused Under Delaware Law ......................................... 10

II.   PLAINTIFFS HAVE NOT ALLEGED AND CANNOT ALLEGE
      THAT THE INDEPENDENT TRUSTEE DEFENDANTS BREACHED
      ICA § 36(B) THROUGH RECEIPT OF EXCESSIVE COMPENSATION .................... 13

III.  COUNT FOUR SHOULD BE DISMISSED BECAUSE PLAINTIFFS
      CANNOT STATE A CLAIM AGAINST THE INDEPENDENT TRUSTEE
      DEFENDANTS UNDER ICA § 48(A) AS CONTROL PERSONS OF ANY
      ALLEGED WRONGDOER ............................................................................................ 15

**Conclusion** ........................................................................................................................ 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Amalgamated Bank v. Yost*,
    2005 U.S. Dist. LEXIS 1280 (E.D. Pa. Feb. 1, 2005)................................................11

*Blasband v. Rales*,
    971 F.2d 1034 (3d Cir. 1992)...............................................................................12

*In re Davis Selected Mutual Funds Litigation*,
2005 WL 2509732 (S.D.N.Y.)...................................................................................10

*Green v. Fund Asset Mgmt., L.P.*,
    147 F. Supp.2d 318 (D.N.J. 2001) .........................................................................14

*Green v. Nuveen Advisory Corp.*,
    186 F.R.D. 486 (N.D. Ill. 1999) ..............................................................................9

*Hamilton v. Allen*,
    2005 U.S. Dist. LEXIS 23838 (E.D. Pa. Oct. 14, 2005) ..............................................7

*Hogan v. Baker*,
    2005 U.S. Dist. LEXIS 16888, (N.D. Tex. Aug. 12, 2005) ........................................7

*ING Principal Protection Funds Derivative Litigation*,
    369 F. Supp.2d 163 (D. Mass. 2005) ...................................................................9,10

*In re AllianceBernstein Mutual Fund Excessive Fee Litigation*,
    2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005) .........................................................13

*In re Davis Selected Mutual Funds Litigation*,
    2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005) .........................................................10

*In re Dreyfus Mutual Funds Fee Litigation*,
    2005 U.S. Dist. LEXIS 29152 (W.D. Pa. Sept. 30, 2005) ....................................14,15

*In re Eaton Vance Mutual Funds Fee Litigation*,
    380 F. Supp.2d 222 (S.D.N.Y. 2005)....................................................7,10,13,14,15

*In re Lord Abbett Mutual Funds Fee Litigation.*,
    2005 WL 2090517 (D. N.J. Aug. 30, 2005) ............................................................8

*In re Mutual Funds Investment Litigation*,
    384 F. Supp.2d 845 (D. Md. 2005) ....................................................................10,11

*Kamen v. Kemper Finance Services*,
 500 U.S. 90 (1991) ................................................................................................6

*Mitzner v. Hastings*,
 2005 U.S. Dist. LEXIS 835 (N.D. Cal. Jan. 14, 2005) ........................................11

*Mutchka v. Harris*,
 373 F. Supp.2d 1021 (C.D. Cal. 2005) ..................................................................8

*Stegall v. Ladner*,
 2005 U.S. Dist. LEXIS 24453 (D. Mass. Oct. 14, 2005). ...............................6,7,9

*Strigliabotti v. Franklin Resources, Inc.*,
 2005 U.S. Dist. LEXIS 9625 (N.D. Cal. Mar. 7, 2005) .........................................8

## STATE CASES

*Aronson v. Lewis*,
 473 A.2d 805 (Del. 1984)..................................................................................11,12

*Brehm v. Eisner*,
 764 A.2d 244 (Del. 2000)..............................................................................11,12, 13

*Harhen v. Brown*,
 431 Mass. 838 (2000)..............................................................................................9

*In re Caremark International, Inc. Derivative Litigation*,
 698 A.2d 959 (Del. Ch. 1996) ..............................................................................12

*In re Delta & Pine Land Co. Shareholder Litigation*,
 2000 Del. Ch. LEXIS 91 (Del. Ch. June 21, 2000)...............................................12

*In re J.P. Morgan Chase & Co. Shareholder Litigation*,
 2005 Del. Ch. LEXIS 51 (Del. Ch. Apr. 29, 2005).................................................11

*Jackson v. Stuhlfire*,
 547 N.E.2d 1146 (Mass. App. 1989).......................................................................6

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
 845 A.2d 1031 (Del. 2004).......................................................................................7

## FEDERAL STATUTES

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

Fed. R. Civ. P. 23.1......................................................................................................8

Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1, *et seq* ...................................8

Investment Company Act of 1940, 15 U.S.C. §§ 80a-1, *et seq* ...................................1

Investment Company Act of 1940, 15 U.S.C. §§ 80a-35(b), *et seq* .............................13

Investment Company Act of 1940, 15 U.S.C. §§ 80a-47(a)), *et seq* ...........................15

Investment Company Act of 1940, 15 U.S.C. § 80a-2(9), *et seq* ................................15

Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 78bb(f) .................3

## STATE STATUTES

12 Del. Code § 3801(h) ................................................................................................11

Mass. Gen. Laws ch. 156D, § 7.42 (2004) ...................................................................9

Mass. Gen. Laws ch. 182, § 2B (2004)......................................................................9,10

Defendant J. Michael Cook, Ralph F. Cox, Robert M. Gates, George H. Heilmeier, Donald J. Kirk, Marie L. Knowles, Ned C. Lautenbach, Marvin L. Mann, William O. McCoy, Gerald C. McDonough and William S. Stavropoulos (together, the "Independent Trustee Defendants"), submit this memorandum in support of their motion to dismiss Plaintiffs' Consolidated Amended Class Action Complaint (the "Complaint" or "CAC") pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure.

## Preliminary Statement

This is a purported class action on behalf of certain shareholders of mutual funds (collectively, the "Fidelity Funds" or "Funds") advised by Fidelity Management and Research Company ("FMRCo") challenging certain compensation paid by the Funds as excessive under a broad range of federal and state law theories. The Independent Trustee Defendants, who are all current or former independent trustees of the Funds, join the arguments for dismissal submitted by the Fidelity Defendants in their memorandum supporting dismissal of the Complaint ("Fidelity's Memorandum" or "Fid. Mem.").[1] This memorandum is submitted to emphasize matters of particular significance to the Independent Trustees, given their special role as statutory "watchdogs" whose paramount responsibility is to protect the interests of Fund shareholders.

The Independent Trustee Defendants' "watchdog" role is characterized by statutorily prescribed responsibilities. Each Independent Trustee must satisfy specific criteria under the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1, *et seq.* ("ICA"), ensuring his or her

---

[1]     Each of the 206 Fidelity Funds named as nominal defendants in this action has moved to dismiss the Complaint in its entirety, and the Independent Trustee Defendants also join the arguments for dismissal submitted in the Funds' supporting memorandum of law.

independence from the Fidelity Funds and their advisor (FMRCo) and its affiliates (including the

other Fidelity Defendants).  To satisfy those criteria, Independent Trustees must, among other

things, have no links to or interests in any entity having business dealings with the Funds.  The

ICA also assigns several unique Fund oversight responsibilities to the Independent Trustees,

including approval of the Funds' management, underwriting and other service contracts,

approval of advisory and other fees paid by the Funds, valuation of certain securities held for the

Funds, and protection of shareholders against conflicts of interest (including potential conflicts

of interest that may arise during the Funds' interactions with the Fidelity Defendants).

The Complaint's focus is the payment of allegedly excessive compensation to various

Fidelity Defendants using assets of the Fidelity Funds.  CAC ¶ 1.  Plaintiffs specifically allege

the Fidelity Defendants "secretly siphoned monies from the Funds" to make undisclosed

payments to broker-dealers (in the form of, among other things, "directed brokerage" and "soft

dollars") for the purpose of buying "shelf space" (*i.e.*, directing investors to the Funds).

*Id.* ¶¶ 75-81.  Plaintiffs further allege that these payments resulted in a growth of Fund assets

under management that, in turn, allowed FMRCo to collect increased advisory and distribution

fees from the Funds.  *Id.* ¶ 84.  According to the Complaint, the Fidelity Defendants used these

increased advisory and distribution fees for the alleged improper purpose of paying broker-

dealers to induce even more customers to invest in the Funds.  *Id.* ¶ 85.  Plaintiffs assert that the

increase in Fund assets under management allegedly generated by the purchase of shelf-space

created economies of scale that were not passed on to Fund shareholders by the Fidelity

Defendants.  *Id.* ¶ 93-97.

Plaintiffs seek to wrap the Independent Trustee Defendants into the allegedly improper

conduct of the Fidelity Defendants by asserting that the Independent Trustees approved, acceded

to or allowed that conduct to occur.  *Id.* ¶ 191.  The Complaint attempts to attribute the Independent Trustees' alleged behavior to their alleged lack of "true" and "factual" independence from the Fidelity Defendants.  *Id.* ¶¶ 191-93, 201.  Plaintiffs have alleged six causes of action against the Independent Trustees:   Count One for material omissions from certain disclosures under ICA § 34(b); Count Two for breach of fiduciary duty under ICA § 36(a); Count Three for excess compensation under ICA § 36(b); Count Four for control person liability under ICA § 48(a); and Counts Seven and Eight for state law breach of fiduciary duty and unjust enrichment.

Fidelity's Memorandum identifies numerous grounds on which each of these claims should be dismissed as a matter of law.[2]  In addition to these reasons for dismissal, plaintiffs' claims implicate three matters of particular importance to the Interested Trustee Defendants' role in safeguarding both the assets of the Fidelity Funds and shareholders' *pro rata* share of those assets:  *(i)* the need to treat derivative claims as derivative and enforce the demand requirement before bringing such claims; *(ii)* the absence of trustee liability for receipt of claimed excessive

---

[2]    Counts One, Two and Four (ICA §§ 34(b), 36(a) & 48(a)) also should be dismissed because there is no private right of action under those provisions, *see* Fid. Mem. at 6-10;

Count Three (ICA § 36(b)) also should be dismissed because it is impermissibly pleaded directly as a class action for the benefit of plaintiffs, *see id.* at 10-14, and because plaintiffs have failed to state a claim in any event with respect to at least 201 of the 206 Fidelity Funds at issue in this case, *see id.* at 14-18.

Count Four (ICA § 48(a)) also should be dismissed because there are no underlying primary violations under ICA §§ 34(b) & 36(b); *see id.* at 20-21;

Counts Seven and Eight (state law claims of breach of fiduciary duty and unjust enrichment) also should be dismissed because they are preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f), *see id.* at 39-46; and

Each Count should be dismissed for lack of standing with respect to any Fund for which plaintiffs do not own shares, *see id.* at 36-39.

compensation from the Fidelity Funds under ICA § 36(b); and *(iii)* the absence of trustee liability as "control persons" of certain Fidelity Defendants under ICA § 48(a).

Effective protection of Independent Trustee Defendants' important statutory functions requires that the pre-suit demand requirement for all derivative claims (*see* Fed. R. Civ. P. 23.1) be vigorously enforced, because enforcement of that requirement insures that important decisions about whether to pursue claims belonging to the Fidelity Funds are made by those elected by the shareholders and vested by law with authority to do so – the Fund boards. This Court should reject plaintiffs' attempt to evade the demand requirement – and thereby to usurp the authority of the Fund boards to decide whether to pursue any claim that belongs to the Funds – by casting derivative claims as direct. All of the claims asserted against the Independent Trustees in the Complaint are derivative, because any injuries of the type alleged by plaintiffs were caused to the Funds, and any injuries to Fund shareholders were suffered only indirectly through ownership of Fund shares. As a result, plaintiffs were required to make a demand on the Fund boards before bringing all of the claims alleged in the Complaint (except for Count Three, because plaintiffs are statutorily excused from the demand requirement for claims of excessive compensation under ICA § 36(b)).

Count Three (for the receipt of allegedly excessive compensation under ICA § 36(b)), although not subject to dismissal for failure to make demand, should be dismissed because none of the Independent Trustee Defendants ever received any of the compensation challenged by plaintiffs as excessive.

Count Four (which seeks to hold the Independent Trustee Defendants liable under ICA § 48(a)) for certain ICA violations allegedly committed by certain Fidelity Defendants) also should be dismissed – even apart from plaintiffs' failure to make the required demand – because

the Independent Trustees are not "control persons" of any Fidelity Defendant alleged to have committed any ICA violation.  Plaintiffs' general allegation that the Independent Trustees "control" the Fidelity Defendants is irreconcilable with plaintiffs' own allegations that the Fidelity Defendants "control" the Independent Trustees, is inconsistent with common sense given the absence of mechanisms for such "control," and is unsupported by a single allegation supporting a finding of such "control."

The Complaint should consequently be dismissed with respect to the Independent Trustee Defendants.

### Argument

**I.    ALL BUT ONE OF THE COUNTS ASSERTED IN THE COMPLAINT AGAINST THE INDEPENDENT TRUSTEE DEFENDANTS SHOULD BE DISMISSED BECAUSE THEY ARE DERIVATIVE CLAIMS FOR WHICH PLAINTIFFS MADE NO DEMAND ON THE FUND BOARDS**

A mutual fund shareholder cannot bring direct claims to recover personally for alleged injuries that are suffered by a fund and experienced by the shareholder only through the diminution of the fund's value.  Such claims, if pursued, belong to the fund and must be brought on the fund's behalf.  The independent trustees of a mutual fund are tasked with safeguarding the fund's assets and its shareholders' interests in those assets.  One means of accomplishing that objective is by determining whether to pursue litigation on the fund's behalf, and the requirement of making a demand on the fund board before bringing an action founded on alleged harm to fund assets preserves the independent trustees' ability to do so.  Specifically, the demand requirement insures that decisions whether to bring such an action on behalf of the fund are made by the independent trustees who were duly elected by the shareholders and legally vested with authority to make such decisions, not by individual minority holders of the shares in those funds.

All of the Complaint's claims are in their nature derivative claims, no matter how plaintiffs have styled them.[3]  Each of those claims, except for one, should be dismissed for failure to make a demand on the Fund board.[4]

### A.    All of Plaintiffs' Claims Are Derivative Because Any Resulting Injuries Were Suffered By The Fidelity Funds

All of the Complaint's claims are in their nature derivative claims, no matter how plaintiffs have styled them.  *See* Fid. Mem. at 21-28.

Plaintiffs' claims of injury all stem from allegedly improper payments made out of the assets of the Fidelity Funds when, plaintiffs assert, those assets should have been preserved for Fund shareholders.  *See* CAC ¶¶ 6, 75, 112, 133.  Under this theory, defendants' alleged wrongful conduct directly harmed the Funds.  Any harm the plaintiff shareholders allegedly suffered was indirect, through the diminution in value of the Funds that caused a diminution in value of plaintiffs' *pro rata* shares of the Funds.  In these circumstances, any claims of wrongdoing belong to the Funds that allegedly suffered direct diminution of their value, not to the shareholders whose alleged injury is merely derivative of the injury to the Funds in which they hold shares.  *Jackson v. Stuhlfire*, 547 N.E.2d 1146, 1148 (Mass. App. Ct. 1989) ("The wrong underlying a derivative action is **indirect**. . . .  It adversely affects [shareholders] merely as they are the owners of the corporate stock") (emphasis in original; internal citation omitted);

---

[3]    Counts One through Four, Seven and Eight are asserted against the Independent Trustee Defendants and, in some cases, also against the Fidelity Defendants.  Counts Five and Six are asserted only against the Fidelity Defendants.

[4]    The applicable law for purposes of determining whether a claim is derivative and, if so, whether demand is excused is the law of the state of incorporation.  *See Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 97-99 (1991); *Stegall v. Ladner*, No. 05-10062, 2005 U.S. Dist. LEXIS 24453, at *12 (D. Mass. Oct. 14, 2005).  Each of the Fidelity Funds is organized under Massachusetts or Delaware law.

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) ("stockholder's claimed direct injury must be independent of any alleged injury to the corporation," and "stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation").

Plaintiffs cannot mask the derivative nature of their claims by arguing that their position as mutual fund shareholders has caused them to suffer a unique injury independently of the Fidelity Funds, because any such injury arose exclusively from the asserted reduction in the Funds' value, just as in any other derivative litigation. Plaintiffs' attempt to transform their contention that "[t]he [alleged] excessive fees and charges at issue here immediately reduced the Funds' NAV per share" (CAC ¶ 204) into a conclusion that payment of those fees and charges directly harmed shareholders. This effort fails, because it completely disregards the fact that any reduction in NAV was simply a derivative effect of the reduction in "assets [that] remain those of the fund, as the earnings are of a corporation until distributed. The mutual fund participant has a right to those assets, but that right derives from – is derivative of – the fund." *Stegall v. Ladner*, No. 05-10062, 2005 U.S. Dist. LEXIS 24453, at *19 (D. Mass. Oct. 14, 2005); *see also id*. at *13-*14 (under Massachusetts law, injury from "a diminution in the total assets of [a mutual fund]" caused by allegedly excessive 12b-1 fees is derivative, not direct); *Hamilton v. Allen*, No. 05-110, 2005 U.S. Dist. LEXIS 23838, at *16-*18 (E.D. Pa. Oct. 14, 2005) (under Massachusetts law, mutual fund structure does not transform otherwise derivative claims into direct claims); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp.2d 222, 234-235 (S.D.N.Y. 2005) (same); *Hogan v. Baker*, No. 3:05-CV-0073P, 2005 U.S. Dist. LEXIS 16888, at *13 (N.D. Tex. Aug. 12, 2005) (under Delaware law, "an investor, whether investing in stocks or mutual funds, is not injured by a diminution of share value until he sells his shares, and 'the fact that the funds' value

is calculated daily does not make the alleged injury any more direct'") (quoting *Mutchka v. Harris*, 373 F. Supp.2d 1021, 1028 (C.D. Cal. 2005) (applying Massachusetts law)).[5]

Of all the counts in the Complaint, plaintiffs pleaded only their claim for breach of §§ 206 and 215 of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1, *et seq*. (Count Five), properly as a derivative claim. Each of the remaining claims should be dismissed because they were incorrectly pleaded as direct, rather than derivative, claims.

### B.    All Claims Except Count Three (ICA § 36(b)) Should Be Dismissed For Failure To Make Demand On The Fidelity Fund Boards

Plaintiffs made no demand on any Fidelity Fund board before bringing this action. CAC ¶¶ 210-218. This failure is fatal to each claim asserted against every defendant (except for Count Three, because plaintiffs are statutorily excused from the demand requirement for claims of excessive compensation under ICA § 36(b)). *See* Fed. R. Civ. P. 23.1; Fid. Mem. at 27-36.

### 1.    Demand Is Never Excused As Futile Under Massachusetts Law

Plaintiffs' allegations concerning demand futility are irrelevant under Massachusetts law because of the "universal demand" statute enacted by the Massachusetts Legislature effective July 1, 2004, several weeks **before** the plaintiffs filed their original complaint. This statute

---

[5]   For these reasons, and for the reasons expressed in Fidelity's Memorandum, the Independent Trustee Defendants submit that the contrary holdings of *Lord Abbett* and *Strigliabotti* – neither of which is binding on this Court – are incorrect, in that they insufficiently appreciate that harm to shareholders from improper payments by a mutual fund inescapably originates within, and reaches shareholders only derivatively from, the fund. *See In re Lord Abbett Mut. Funds Fee Litig.*, No. 04-CV-0559, 2005 WL 2090517, at *10 (D. N.J. Aug. 30, 2005) (under Delaware and Maryland law, alleged decline in NAV per share accompanied by increase in assets under management constituted direct claim because only shareholders, and not mutual fund, were harmed); *Strigliabotti v. Franklin Resources, Inc.*, No. 04-0088351-SI 2005 U.S. Dist. LEXIS 9625, at *25 (N.D. Cal. Mar. 7, 2005) (under California law, "harm from overcharges [to mutual funds] is harm to the individual investors, who own the [f]unds' assets and bear [their] expenses directly on a *pro rata* basis").

categorically provides that "[n]o shareholder may commence a derivative proceeding until . . . a written demand has been made upon the corporation to take suitable action[.]"  Mass Gen. Laws ch. 156D, § 7.42.  In light of this plain language, and in light of the common practice in Massachusetts of treating business trusts (like the Fidelity Funds) as legally equivalent to corporations, courts unsurprisingly have seen "no reason, based on the treatment of mutual funds, to find that the universal demand requirement does not apply to mutual funds."  *Stegall*, 2005 U.S. Dist. LEXIS 24453, at *22; *see ING Principal Prot. Funds Derivative Litig.*, 369 F. Supp.2d 163, 171 (D. Mass. 2005) ("a [mutual fund organized as a] business trust in practical effect is in many respects similar to a corporation.  This court believes that Massachusetts courts will apply the requirement of universal, pre-suit demand to derivative actions brought on behalf of [such] business trusts") (internal citation omitted); *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 489 n. 2 (N.D. Ill. 1999) (under Massachusetts law, mutual funds organized as business trusts treated as corporations in context of shareholder derivative suits).

Because plaintiffs concede that they did not make a demand on any Fidelity Fund board in connection with any claims involving a Fund incorporated in Massachusetts (CAC ¶ 210), all of the Complaint's claims that were or should have been styled as derivative (*i.e.*, all Counts except for Count Three) should be dismissed as a matter of law.

Even under the applicable Massachusetts standard prior to enactment of the universal demand statute, demand equally would not have been excused because the Complaint lacks sufficient allegations that the Independent Trustee Defendants "participated in alleged wrongdoing, or are otherwise interested," *Harhen v. Brown*, 431 Mass. 838, 844 (2000).  Massachusetts state law defines "interestedness" in a mutual fund trustee as coextensive with the definition of "interested persons" under the ICA.  *See* Mass. Gen. Laws Ann. Ch. 182, § 2B

(2004) ("A trustee of a trust who with respect to the trust is not an interested person, as defined

by the Investment Company Act of 1940, shall be deemed to be independent and disinterested

when making any determination or taking any action as a trustee").  Plaintiffs have not alleged

and could not allege that the Interested Trustees fall outside this definition, just as plaintiffs have

not alleged and could not allege facts demonstrating that the Independent Trustees actually

participated in any of the alleged wrongdoing (CAC ¶¶ 213-218).  *See In re Mut. Funds Inv.

Litig.*, 384 F. Supp.2d 873, 878-79 (D. Md. 2005) (neither high compensation nor alleged failure

of oversight without specific knowledge of wrongdoing excuses demand); *Eaton Vance*, 380 F.

Supp.2d at 239-40 (trustees' interest in mutual fund growth and preservation of board position

insufficient to establish futility; "threat of personal liability for approving a transaction and the

possibility of being sued individually is insufficient to demonstrate that a board is interested for

purposes of excusing the demand requirement"); *In re Davis Selected Mut. Funds Litig.*, No. 04-

Civ. 4186, 2005 WL 2509732, at *3 (S.D.N.Y. Oct. 11, 2005) (same); *ING*, 369 F. Supp.2d at

172 ("Simply because the Board of Trustees approved the fee contracts at issue does not render

the independent trustees 'interested'") (all applying Massachusetts law).[6]

## 2.    Demand Is Not Excused Under Delaware Law

Plaintiffs' claims of demand futility also are not sustainable under the Delaware law

applicable to one (and only one) of the Fidelity Funds in which plaintiffs hold shares.  For

demand to be excused under Delaware law, a plaintiff must allege particularized facts creating a

---

[6]   Plaintiffs' allegation that the Independent Trustee Directors were appointed by and serve at
      the pleasure of the Fidelity Defendants is inconsistent with the allegation (and fact) that the
      Fidelity Fund shareholders – not the Fidelity Defendants – "have a right to vote out the
      Trustees" (CAC ¶ 211).  Moreover, even if any Independent Trustee had been nominated by
      a Fidelity Defendant, that would not be sufficient to plead demand futility.  *See Davis*, 2005
      WL 2509732, at *4; *Eaton Vance*, 380 F. Supp.2d at 239-40.

reasonable doubt that either *(a)* directors are disinterested and independent, or *(b)* the challenged transaction was otherwise the product of a valid exercise of business judgment. *See e.g., Brehm v. Eisner*, 746 A.2d 244, 256-57 (Del. 2000) (citing *Aronson v. Lewis*, 473 A.2d 805, 814-815 (Del. 1984)); *see also In re J.P. Morgan Chase & Co. S'holder Litig.*, No. 531-W, 2005 Del. Ch. LEXIS 51, at *28, *41-*42 (Del. Ch. Apr. 29, 2005) (under Delaware law, where plaintiff is challenging alleged inaction rather affirmative decision of board, plaintiff must allege particularized facts creating reasonable doubt that board could have properly exercised its independent and disinterested business judgment in response to demand).

Under Delaware law, like Massachusetts law, a trustee who is deemed "independent" under the ICA "shall be deemed to be independent and disinterested for all purposes[.]" 12 Del. Code § 3801(h). Plaintiffs' allegations concerning the Independent Trustee Defendants' lack of independence and disinterestedness are thus insufficient as a matter of law. *See Mut. Funds Inv.*, 384 F. Supp. 2d at 879 (rejecting plaintiffs' effort to disregard § 3801(h) and establish mutual fund trustees' interestedness through allegations of high compensation and positions on multiple fund boards). Even if the Independent Trustees could not for some reason avail themselves of the statutory definition, courts have continually rejected every one of plaintiffs' broadbrush allegations purporting to establish the Independent Trustees' lack of independence and distinterestedness (CAC ¶¶ 213-218). *See Amalgamated Bank v. Yost*, No. 04-0972, 2005 U.S. Dist. LEXIS 1280, at *32-*33 (E.D. Pa. Feb. 1, 2005) (allegations that directors are compensated for their services and have "extensive, long-standing personal, professional, and familial relationships" insufficient to excuse demand); *Mitzner v. Hastings*, No. 04-331, 2005 U.S. Dist. LEXIS 835, at *13 (N.D. Cal. Jan. 14, 2005) (plaintiff may not "'bootstrap allegations of futility' by pleading that 'the directors participated in the challenged transaction or that they would be

reluctant to sue themselves'") (quoting *Blasband v. Rales*, 971 F.2d 1034, 1049 (3d Cir. 1992));

*In re Delta & Pine Land Co. S'holders Litig.*, No. 17707, 2000 Del. Ch. LEXIS 91, at *25 (Del.

Ch. June 21, 2000) ("Potential negative side-effects from bringing a lawsuit . . . do not constitute

a personally disqualifying interest that might prevent the directors from freely assessing the

benefits and detriments of bringing the suit in the first place") (all applying Delaware law).

Plaintiffs' allegations also fall far short of creating the reasonable doubt necessary to

deny the Independent Trustee Defendants the protection of the business judgment rule, which

"presume[es] that in making a business decision the [Independent Trustees] acted on an informed

basis, in good faith and in the honest belief that the action was taken in the best interests of the

[Fidelity Funds]." *Aronson v. Lewis*, 473 A. 2d 805, 812 (Del. 1984), *rev'd on other grounds by*

*Brehm v. Eisner*, 764 A.2d 244, 253-254 (Del. 2000); *see In re Caremark Int'l, Inc. Derivative*

*Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996) (breach of duty of care "is possibly the most difficult

theory in corporation law upon which a plaintiff might hope to win a judgment").

The handful of allegations pleaded in the Complaint 's (CAC ¶¶ 8, 81, 106, 107, 139)

regarding the process purportedly applied by the Independent Trustee Defendants in reviewing

the challenged transactions does not provide any basis for concluding that such process was

"grossly negligent." *Brehm*, 746 A.2d at 259. Similarly, plaintiffs' bald "allegations" that the

Independent Trustees "abdicated their duties . . . [and] failed to monitor and supervise the other

Defendants" (CAC ¶¶ 168(f), 170(h), 174(i), 177(i), 181(h), 185(h)) lack any means of

evaluating whether such legal conclusions can be factually supported in this case – and thus also

fail to plead with particularity that the Independent Trustees applied a grossly negligent decision-

making process. Moreover, the Complaint fails to allege any facts suggesting that any of the

Independent Trustees' "acted in a manner that cannot be attributed to a rational business

purpose." *Brehm*, 746 A.2d at 264 n.66 ("[c]ourts do not measure, weigh or quantify directors' judgments").

## II.     PLAINTIFFS HAVE NOT ALLEGED AND CANNOT ALLEGE THAT THE INDEPENDENT TRUSTEE DEFENDANTS BREACHED ICA § 36(B) THROUGH RECEIPT OF EXCESSIVE COMPENSATION

Count Three of the Complaint – claiming breach of ICA § 36(b)'s statutorily defined fiduciary duty "with respect to the receipt of compensation for services, or of payments of a material nature, paid by [a mutual fund], or by the security holders thereof, to [an] investment adviser or any affiliated person of such investment adviser, or any [director of a mutual fund]," 15 U.S.C. §§ 80a-35(b) – should be dismissed because none of the Independent Trustee Defendants received any of the compensation for services that plaintiffs challenge as excessive. *See* Fid. Mem. at 19-20.

Liability under this provision is expressly limited to those who actually have received excessive compensation:

> No such action shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments.

15 U.S.C. § 80a-35(b). Courts have uniformly given this provision its plain meaning – that only **recipients** of the compensation alleged to be excessive can be liable – and have routinely found liability under this provision only with respect to allegedly excessive compensation for the recipient's **provision of advisory services**. *See, e.g., In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885, 2005 WL 2677753, at *7 (S.D.N.Y. Oct. 19, 2005) ("Congress intended that Section 36(b) assist in the enforcement of the fiduciary duties of investment advisors 'by tracing compensation or payment for advisory services to the ultimate beneficiary'"); *Eaton Vance*, 380 F. Supp.2d at 238 (dismissing ICA § 36(b) claim against

mutual funds' independent trustees for failure to allege receipt of compensation for advisory services); *Green v. Fund Asset Mgmt., L.P.*, 147 F. Supp.2d 318, 330 (D.N.J. 2001) (dismissing ICA § 36(b) claim against mutual funds' interested directors for failure to allege receipt of compensation for advisory services).

The Independent Trustee Defendants do not receive from the Fidelity – or from any other entities – Rule 12b-1 fees, soft dollar payments, directed brokerage payments, or any other "revenue sharing" payments challenged in the Complaint (*see* CAC ¶¶ 75-81). The Independent Trustees also do not receive from the Fidelity Funds – or from any other entities – payments for the provision of advisory services (*id.* ¶¶ 2, 81). These facts alone are fatal to plaintiffs' ICA § 36(b) claim against the Independent Trustees.

In an effort to salvage that claim, plaintiffs also allege that because the "duties of the trustee . . . are part of what shareholders pay for in obtaining advisory services," the Independent Trustee Defendants "directly or indirectly received from the [Fidelity] Funds compensation or payments of a material nature for advisory services" (CAC ¶ 245). This construction of plaintiffs' ICA § 36(b) claim is equally unsustainable. Plaintiffs will be hard-pressed to identify any authority for the proposition that compensation paid directly to independent directors for performing their statutory responsibilities can be "converted" into payments for the provision of advisory services. *Cf. Green*, 147 F. Supp.2d at 330 (ICA § 36(b) claim fails "[a]s a matter of law" when "plaintiffs simply allege that [mutual funds' interested directors] must have received advisory compensation or payments of a material nature because they were paid salaries by the advisors"). In addition, courts continue to reject the argument that "indirect" recipients of excessive advisory fees can be liable under ICA § 36(b). *See, e.g., In re Dreyfus Mut. Funds Fee Litig.*, No. 04-0128, 2005 U.S. Dist. LEXIS 29152, at *30 (W.D. Pa. Sept. 30, 2005) ("Plaintiffs

14

provide the court with no support for the concept that section 36(b), contrary to its express

language, applies to [mutual funds' independent trustees as] indirect recipients of advisory

compensation[.]"); *Eaton Vance*, 380 F. Supp.2d at 238 (same).

### III.    COUNT FOUR SHOULD BE DISMISSED BECAUSE PLAINTIFFS CANNOT STATE A CLAIM AGAINST THE INDEPENDENT TRUSTEE DEFENDANTS UNDER ICA § 48(A) AS CONTROL PERSONS OF ANY ALLEGED WRONGDOER

Plaintiffs' effort to resuscitate their unsustainable ICA §§ 34(b) and 36(b) claims (Counts

One and Three) against the Independent Trustee Defendants – by asserting in Count Four that the

Independent Trustees are liable as controlling persons of the alleged wrongdoers, *see* 15 U.S.C. §

80a-47(a) (imposing liability on persons who cause any other person to violate any provision of

ICA) – cannot survive the absence of any Complaint allegations explaining how the Independent

Trustees "controlled" any of the Fidelity Defendants.  *See* Fid. Mem. at 20-21.

"Control" is defined for purposes of this provision as ownership of more than 25% of a

company's voting stock or "the power to exercise a controlling influence over the management

or policies of a company, unless such power is solely the result of an official position with such

company."  15 U.S.C. § 80a-2(9).  No allegation in the Complaint even remotely suggests that

the Independent Trustee Defendants exert such control over the Fidelity Defendants.  To the

contrary, the Complaint repeatedly contends that, far from having the power to exercise a

controlling influence, the Independent Trustees were themselves **controlled by** the Fidelity

Defendants.  *See, e.g.,* CAC ¶ 74 (Independent Trustees "were beholden to the Investment

Adviser Defendants"); *id.* ¶ 191 (Independent Trustees "were captive to and controlled by the

Investment Adviser Defendants").  Any finding that the Independent Trustees controlled the

Fidelity Defendants would be irreconcilable with what plaintiffs actually allege in the Complaint,

just as it would be at odds with any common sense understanding of the relationship between

mutual fund advisors and the people selected from outside the fund to serve as independent

trustees.

## Conclusion

For the reasons stated, in addition to the reasons set forth in the memoranda supporting

the Fidelity Defendants' and the Fidelity Funds' separate motions to dismiss, each of the claims

asserted in the Complaint against the Independent Trustee Defendants (Counts One through

Four, Seven and Eight) should be dismissed.


Dated:   December 5, 2005

Respectfully submitted,

**/s/ Sandra Sue McQuay**

Sandra Sue McQuay  (BBO No. 340120)
A. Lauren Carpenter (BBO No. 551258)
SULLIVAN, WEINSTEIN & McQUAY
2 Park Plaza
Boston, Massachusetts  02116
Telephone  (617) 348-4355

John S. Kiernan
Suzanne M. Grosso
Nicholas F. Joseph
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
Telephone  (212) 909-6000

*Attorneys for Independent Trustee Defendants*
    (J. Michael Cook, Ralph F. Cox,
    Robert M. Gates, George H. Heilmeier,
    Donald J. Kirk, Marie L. Knowles,
    Ned C. Lautenbach, Marvin L. Mann,
    William O. McCoy, Gerald C. McDonough,
    and William S. Stavropoulos)
