## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JAMES GILLIAM, Individually And On
Behalf Of All Others Similarly Situated,

        Plaintiff,

   vs.

FIDELITY MANAGEMENT AND
RESEARCH COMPANY, et al.,

        Defendants.

Civil Action No. 04cv11600 (NG)

**Consolidated Case Nos.:**

04cv11642
04cv11709
04cv11735
04cv11812

## MEMORANDUM OF LAW IN SUPPORT OF THE FIDELITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF PLAINTIFFS' ALLEGATIONS .......................................................... 3

     A.     The Parties ......................................................................................................... 3

     B.     Plaintiffs' Allegations ....................................................................................... 4

ARGUMENT ....................................................................................................................... 6

I.     PLAINTIFFS' FIRST, SECOND, AND FOURTH COUNTS UNDER
     SECTIONS 34(B), 36(A), AND 48(A) OF THE ICA SHOULD BE DISMISSED
     BECAUSE NO PRIVATE RIGHT OF ACTION EXISTS UNDER THOSE
     SECTIONS ................................................................................................................. 6

II.    PLAINTIFFS' CLAIM UNDER SECTION 36(B) OF THE ICA SHOULD BE
     DISMISSED .............................................................................................................. 10

     A.     Plaintiffs' Section 36(b) Claim Should Be Dismissed Because Such A
           Claim Cannot Be Brought Directly As A Class Action For the Benefit of
           the Plaintiffs and the Class.................................................................................. 10

     B.     Plaintiffs' Section 36(b) Claim Should Be Dismissed As To Those Funds
           For Which The Amended Complaint Fails To State A Claim............................. 14

     C.     Plaintiffs' Section 36(b) Claim Against The Trustee Defendants Should
           Be Dismissed Because The Trustee Defendants Are Not The Recipients
           Of The Challenged Compensation....................................................................... 19

III.   PLAINTIFFS' FOURTH COUNT UNDER SECTION 48(A) OF THE ICA
     SHOULD BE DISMISSED BECAUSE THERE IS NO UNDERLYING
     PRIMARY LIABILITY AND NO FACTS ARE PLEADED TO SHOW
     EXERCISE OF CONTROL ...................................................................................... 20

IV.   PLAINTIFFS' FIRST THROUGH FOURTH AND SIXTH THROUGH EIGHTH
     COUNTS SHOULD BE DISMISSED BECAUSE THEY WERE NOT
     BROUGHT DERIVATIVELY................................................................................... 21

V.    PLAINTIFFS' FIFTH COUNT UNDER SECTIONS 206 AND 215 OF THE
     IAA, ALTHOUGH BROUGHT DERIVATIVELY, MUST BE DISMISSED
     FOR FAILURE TO MAKE DEMAND ................................................................... 27

i

A.  Plaintiffs' Failure To Make Demand, Or To Adequately Plead Demand Futility, Requires Dismissal Of The Derivative Claims Brought On Behalf Of The Funds Organized Under Massachusetts Law. ........................................ 29

    1.  Plaintiffs Failed to Make Demand On The Boards Of Trustees Of The Funds Organized Under Massachusetts Law .................................... 29

    2.  Even If Massachusetts' Universal Demand Statute Did Not Apply, Plaintiffs Failed  To Adequately Plead Demand Futility ......................... 30

B.  Plaintiffs' Failure To Adequately Plead Demand Futility Requires Dismissal Of The Derivative Claims Brought On Behalf Of The Funds Organized Under Delaware Law. ........................................................ 32

    1.  That The Independent Trustees Are Not "Interested Persons" Under The ICA Forecloses Plaintiffs' Demand Futility Allegations ....... 32

    2.  Plaintiffs' Boilerplate Allegations Of Demand Futility Are Insufficient As A Matter of Law ............................................................. 33

VI.  PLAINTIFFS LACK STANDING TO SUE ON BEHALF OF FUNDS IN WHICH THEY DO NOT OWN SHARES .................................................... 36

VII.  SLUSA PREEMPTS PLAINTIFFS' STATE LAW CLAIMS, AND THOSE CLAIMS MUST BE DISMISSED ...................................................................... 40

VIII.  DISMISSAL WITH PREJUDICE IS WARRANTED ....................................... 43

CONCLUSION ..................................................................................................................... 44

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Aldridge v. A.T. Cross Corp.*,
    284 F.3d 72 (1st Cir. 2002)........................................................................................20, 21

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)................................................................................................... 7, 8

*Allen v. Wright*,
    468 U.S. 737 (1984)....................................................................................................37

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) ......................................................................................28, 32

*Atencio v. Smith Barney, Citigroup Inc.*,
    No. 04 Civ. 5653, 2005 WL 267556 (S.D.N.Y. Feb. 2, 2005) ............................................43

*Beam v. Stewart*,
    845 A.2d 1040 (Del. 2004) ..........................................................................................34

*Benak v. Alliance Capital Management L.P.*,
    No. Civ.A. 01-5734, 2004 WL 1459249 (D.N.J. Feb. 9, 2004) ..........................................43

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975)....................................................................................................42

*Brehm v. Eisner*,
    764 A.2d 244 (Del. 2000) ........................................................................................32, 36

*Burks v. Lasker*,
    441 U.S. 471 (1979)....................................................................................................12

*Cape Ann Investors LLC v. Lepone*,
    296 F. Supp. 2d 4 (D. Mass. 2003) ...........................................................................40, 42

*Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*,
    2 F.3d 24 (2d Cir. 1993)..............................................................................................20

*Chamberlain v. Aberdeen Asset Mgmt. Ltd.*,
    No. 02 CV 5870, 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005),
    *vacated solely for purposes of settlement*, 2005 WL 1378757 (E.D.N.Y. Apr.
    12, 2005) ..................................................................................................................6

*Clairdale Enters., Inc. v. C.I. Realty Investors*,
    423 F. Supp. 257 (S.D.N.Y. 1976).................................................................................30

*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    395 F.3d 25 (2d Cir. 2005)...........................................................................................42

*Daily Income Fund, Inc. v. Fox*,
    464 U.S. 523 (1984)............................................................................................11, 12, 14

*DH2, Inc. v. Athanassiades,*
    359 F. Supp. 2d 708 (N.D. Ill. 2005) ................................................................ 6

*Disher v. Citigroup Global Mkts. Inc.,*
    419 F.3d 649 (7th Cir. 2005) ................................................................ 41

*Dull v. Arch,*
    No. 05 C 140, 2005 WL 1799270 (N.D. Ill. July 27, 2005) ................................ 6, 8

*Ensign Corp., S.A. v. Interlogic Trace, Inc.,*
    No. 90 Civ. 3497 LBS, 1990 WL 213085 (S.D.N.Y. Dec. 19, 1990) ...................... 37

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
    125 S. Ct. 2611 (2005) ................................................................ 8

*Gartenberg v. Merrill Lynch Asset Mgmt, Inc.,*
    573 F. Supp 1293 (S.D.N.Y. 1983),
    *aff'd,* 740 F.2d 190 (2d Cir. 1984) ................................................................ 17

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,*
    528 F. Supp. 1038 (S.D.N.Y. 1981),
    *aff'd,* 694 F.2d 923 (2d Cir. 1982),
    *cert denied sub nom. Andre v. Merrill Lynch Ready Asset Trust,*
    461 U.S. 906 (1983) ................................................................ 17

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,*
    694 F.2d 923 (2d Cir. 1982),
    *cert. denied,* 461 U.S. 906 (1983) ................................................................ 15

*Green v. Ameritrade, Inc.,*
    279 F.3d 590 (8th Cir. 2002) ................................................................ 42

*Green v. Nuveen Advisory Corp.,*
    186 F.R.D. 486 (N.D. Ill. 1999) ................................................ 19, 24, 30, 39

*Green v. Nuveen Advisory Corp.,*
    295 F.3d 738 (7th Cir. 2002) ................................................................ 19

*Greenspun v. Lindley,*
    330 N.E.2d 79 (N.Y. 1975) ................................................................ 30

*Grobow v. Perot,*
    539 A.2d 180 (Del. 1988) ................................................................ 35

*Grossman v. Johnson,*
    89 F.R.D. 656 (D. Mass. 1981),
    *aff'd,* 674 F.2d 115 (1st Cir. 1982) ................................................................ 34

*Hamilton v. Allen,*
    No. 05-110, 2005 WL 2660356 (E.D. Pa. Oct. 14, 2005) ................................ 6, 27

*Harhen v. Brown,*
    431 Mass. 838 (2000) ................................................................ 28, 31

*Heit v. Baird,*
    567 F.2d 1157 (1st Cir. 1977) ................................................................ 31

*Herman v. Steadman*,
  50 F.R.D. 488 (S.D.N.Y. 1970) ........................................................................................ 24

*Hogan v. Baker*,
  No. Civ. A. 305CV0073P, 2005 WL 1949476 (N.D. Tex. Aug. 12, 2005) ............. 22, 26, 27

*In re Alliance N. Am. Gov't Income Trust, Inc. Sec. Litig.*,
  No. 95 Civ. 0330 (LMM), 1996 WL 551732 (S.D.N.Y. Sept. 27, 1996) .............................. 20

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
  No. 04 Civ. 4885 (SWK), 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005) ...................... passim

*In re Columbia Entities Litig.*,
  No. 04-11704-REK, slip op. (D. Mass. Nov. 30, 2005) ................................................ passim

*In re Davis Selected Mut. Funds Litig.*,
  No. 04 Civ. 4186, 2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005) .................................. passim

*In re Dreyfus Mut. Funds Fee Litig.*,
  No. 2:04cv128, slip op. (W.D. Pa. Sept. 28, 2005) ...................................................... passim

*In re Eaton Vance Corp. Sec. Litig.*,
  219 F.R.D. 38 (D. Mass. 2003) ................................................................................... 36, 37

*In re Eaton Vance Mut. Funds Fee Litig.*,
  380 F. Supp. 2d 222 (S.D.N.Y. 2005) .......................................................................... passim

*In re Franklin Mut. Funds Fee Litig.*,
  388 F. Supp. 2d 451 (D.N.J. 2005) .............................................................................. passim

*In re Kauffman Mutual Fund Actions*,
  479 F.2d 257 (1st Cir. 1973) .............................................................................................. 31

*In re Lord Abbett Mut. Funds Fee Litig.*,
  385 F. Supp. 2d 471 (D.N.J. 2005) .............................................................................. passim

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003) ...................................................................... 6, 20, 25

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  289 F. Supp. 2d 429 (S.D.N.Y. 2003) ................................................................................. 6

*In re Mut. Funds Inv. Litig (Janus Sub-Track)*,
  384 F. Supp. 2d 845 (D. Md. 2005) .................................................................................... 6

*In re Mut. Funds Inv. Litig. (Excelsior, Federated, Scudder and AMCAP Sub-Tracks)*,
  Nos. MDL 1586, 04-MD-15861, 04-928, 04-933,
  2005 WL 3038695 (D. Md. Nov. 3, 2005) .......................................................................... 6

*In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*,
  941 F. Supp. 326 (S.D.N.Y. 1996) ................................................................................... 20

*In re VanWagoner Funds, Inc.*,
  No. C 02-03383, 2004 WL 2623972 (N.D. Cal. July 27, 2005) .......................................... 6

*ING Principal Prot. Funds Derivative Litig.,*
    369 F. Supp. 2d 163 (D. Mass. 2005) .................................................. 28, 29, 30, 34

*Jackson v. Stuhlfire,*
    28 Mass. App. Ct. 924 (1990) ................................................................................ 22

*Jacobs v. Bremner,*
    378 F. Supp. 2d 861 (N.D. Ill. 2005) .................................................................. 6, 8

*Kalish v. Franklin Advisers, Inc.,*
    742 F. Supp. 1222 (S.D.N.Y. 1990),
    *aff'd,* 928 F.2d 590 (2d Cir. 1990), *cert. denied,* 502 U.S. 818 (1991) ............... 17

*Kamen v. Kemper Fin. Svcs., Inc.,*
    500 U.S. 90 (1991) ................................................................................................. 28

*Kauffman v. Dreyfus Fund, Inc.,*
    434 F.2d 727 (3d Cir. 1970).............................................................. 25, 27, 34, 37

*Kircher v. Putnam Funds Trust,*
    403 F.3d 478 (7th Cir. 2005) ......................................................................... 41, 42

*Kramer v. W. Pac. Indus., Inc.,*
    546 A.2d 348 (Del. 1988) ..................................................................................... 22

*Krantz v. Prudential Inv. Fund Mgmt. LLC,*
    305 F.3d 140 (3d Cir. 2002)................................................................................. 43

*Krinsk v. Fund Asset Mgmt, Inc.,*
    715 F. Supp. 472 (S.D.N.Y. 1988),
    *aff'd,* 875 F.2d 404 (2d Cir. 1989), *cert. denied,* 493 U.S. 919 (1989) ............... 17

*Krinsk v. Fund Asset Mgmt., Inc.,*
    875 F.2d 404 (2d Cir. 1989)................................................................................. 15

*Lander v. Hartford Life & Annuity Ins. Co.,*
    251 F.3d 101 (2d Cir. 2001)................................................................................. 40

*Lapidus v. Hecht,*
    232 F.3d 679 (9th Cir. 2000) ............................................................................... 21

*Levy v. Alliance Capital Mgmt. L.P.,*
    No 97 Civ. 4672 (DC), 1998 WL 744005 (S.D.N.Y. Oct. 26, 1998) ................... 16

*Lieber v. Invesco Funds Group,*
    371 F. Supp. 2d 852 (S.D. Tex. 2005) ................................................................ 39

*Mendelsohn v. Leather Mfg. Corp.,*
    93 N.E.2d 537, 326 Mass. 226 (1950) ................................................................ 24

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
    No. 04-1371, 2005 WL 873163 (U.S. Sept. 27, 2005) ....................................... 42

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
    Pet. for Writ of Cert., No. 04-1371, 2005 WL 879506 (filed Apr. 11, 2005)...................... 42

*meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.*,
   260 F. Supp. 2d 616 (2003) ........................................................................ 6

*Meyer v. Oppenheimer Mgmt. Corp.*,
   715 F. Supp. 574 (S.D.N.Y. 1989),
   *aff'd*, 895 F.2d 861 (2d Cir. 1991) ........................................................... 17

*Meyer v. Putnam Int'l Voyager Fund*,
   220 F.R.D. 127 (D. Mass. 2004) ............................................................... 42

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
   248 F.3d 321 (4th Cir. 2001) ............................................................ 15, 35

*Mutchka v. Harris*,
   373 F. Supp. 2d 1021 (C.D. Cal. 2005) ............................... 6, 11, 12, 13

*Olesh v. Dreyfus Corp.*,
   No. CV-94-1664 (CPS), 1995 WL 500491 (E.D.N.Y. Aug. 8, 1995) ................ 16

*Olmsted v. Pruco Life Ins. Co.*,
   283 F.3d 429 (2d Cir. 2002).......................................................... passim

*Raines v. Byrd*,
   521 U.S. 811 (1997).................................................................................. 37

*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   292 F.3d 1334 (11th Cir. 2002) ............................................................... 42

*Schuyt v. Rowe Price Prime Reserve Fund, Inc.*,
   663 F. Supp. 962 (S.D.N.Y. 1987),
   *aff'd per curiam*, 835 F.2d 45 (2d Cir. 1987),
   *cert. denied*, 485 U.S. 1034 (1988).......................................................... 17

*Stegall v. Ladner*,
   394 F. Supp. 2d 358 (D. Mass. 2005) ................................................ passim

*Strigliabotti v. Franklin Res., Inc.*,
   No. C 04-00883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005)........................ 6, 26

*Strougo v. Bassini*,
   282 F.3d 162 (2d Cir. 2002).................................................................... 24

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004) ..................................................................... 22

*Transamerica Mort. Advisers, Inc. (TAMA) v. Lewis*,
   444 U.S. 11 (1979)............................................................................... 7, 27

*United Mine Workers of America v. Gibbs*,
   383 U.S. 715 (1966)................................................................................ 40

*Untermeyer v. Fidelity Daily Income Trust*,
   580 F.2d 22 (1st Cir. 1978)...................................................................... 29

*Wexler v. Equitable Capital Mgmt. Corp.*,
   No. 93 Civ. 3834 (RPP), 1994 WL 48807 (S.D.N.Y. Feb. 17, 1994) ................ 16

*White v. Heartland High-Yield Mun. Bond Fund,*
    237 F. Supp. 2d 982 (E.D. Wis. 2002) .................................................................. 7

*Yameen v. Eaton Vance Dist., Inc.,*
    394 F. Supp. 2d. 350 (D. Mass 2005) ............................................... 15, 28, 29, 30

*Yampolsky v. Morgan Stanley Inv. Advisers Inc.,*
    No. 03 Civ. 5710 (RO), 2004 WL 1065533 (S.D.N.Y. May 12, 2004) ............................... 16

*Zucker v. AIM Advisors, Inc.,*
    371 F. Supp. 2d 845 (S.D. Tex. 2005) ......................................................... 38, 39

## STATUTES

12 Del. Code § 3801(h) .................................................................... 32, 35

15 U.S.C. § 77r(b)(2) ............................................................................ 41

15 U.S.C. § 78bb(f)(1)(A) ........................................................................ 41

15 U.S.C. § 78bb(f)(5)(B)(i)(I) .................................................................. 41

15 U.S.C. § 80a-10(a) ........................................................................... 32

15 U.S.C. § 80a-33(b) .......................................................................... 7, 9

15 U.S.C. § 80a-35(a) ...................................................................... 7, 9, 10

15 U.S.C. § 80a-35(b)(3) ........................................................................ 19

15 U.S.C. § 80a-47(a) ...................................................................... 7, 9, 20

17 CFR 270.12b-1 ................................................................................. 4

28 U.S.C. § 1367 ................................................................................ 40

Mass. Gen. Laws ch. 156D, § 7.42 ............................................................ 29, 30

Mass. Gen. Laws ch. 182, § 2B ................................................................... 31

## RULES

Fed. R. Civ. P. 12(b)(6) .......................................................................... 1

Fed. R. Civ. P. 23.1 ........................................................................... 1, 38

Defendants, Fidelity Management and Research Company ("FMRCo"), FMR Co., Inc. ("FMRC"), FMR Corp., Fidelity Distributors Corporation ("FDC"), Edward C. Johnson 3d, Abigail P. Johnson, Peter S. Lynch, Laura B. Cronin, Robert L. Reynolds and Robert C. Pozen (together, the "Fidelity Defendants"), submit this Memorandum of Points and Authorities in support of their Motion to Dismiss Plaintiffs' Consolidated Amended Complaint ("Amended Complaint" or "CAC"), pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs bring this putative class action alleging direct claims under the Investment Company Act of 1940 ("ICA") and state law, as well as a derivative claim allegedly on behalf of various mutual funds under the Investment Advisers Act of 1940 ("IAA"). Plaintiffs assert claims in connection with 206 Fidelity mutual funds, but Plaintiffs only allege that they invested or had a beneficial interest in 28 of those funds.

This case is but one of over twenty virtually identical cases brought by the same Plaintiffs' counsel and alleging virtually identical claims against other mutual fund complexes.[1] Despite the fact that each of these fund complexes is strikingly different and employs vastly different distribution practices, Plaintiffs here employ with impunity the same boilerplate allegations previously asserted against these other fund complexes even though much of the complained-of conduct is not even applicable to Fidelity. As several other federal district courts have held in these substantially similar cases, these claims are insufficient as a matter of law for the following reasons:

- Plaintiffs' first, second and fourth causes of action under Sections 34(b), 36(a) and 48(a) of the ICA, respectively, are defective because no private right of action exists under either of these sections. Moreover, Plaintiffs have improperly brought these claims directly, rather than derivatively on behalf of the Funds.

---

[1]  *See* Attachment A to this memorandum, which lists the copy-cat actions brought by Plaintiffs' counsel here against other mutual fund complexes.

- Plaintiffs' third cause of action under Section 36(b) of the ICA is defective because they improperly brought this claim directly seeking personal recovery, rather than derivatively on behalf of the Funds, and because as to the Trustee Defendants (as defined herein), Plaintiffs have failed to plead facts demonstrating that these defendants are recipients of advisory compensation.

- Plaintiffs' fourth cause of action for "control person liability" under Section 48(a) of the ICA is defective because it does not provide an independent basis for liability: rather, it imposes liability on a "control person" only where a controlled person has been found principally liable under the ICA. Because Plaintiffs have failed to state a claim under Sections 34(b), 36(a), or 36(b) of the ICA, their claim for control person liability under Section 48(a) fails. Plaintiffs also have improperly brought this claim directly, seeking personal recovery, rather than derivatively on behalf of the Funds.

- Plaintiffs' fifth cause of action – and the only one that has been brought derivatively – under Sections 206 and 215 of the IAA is defective because Plaintiffs have failed to allege that they made a pre-suit demand upon the board of trustees of each of the Funds, and their conclusory assertion that such a demand would have been futile is insufficient under Federal Rule 23.1, as well as under the laws of the funds' states of organization—Massachusetts and Delaware.

- Plaintiffs' sixth through eighth causes of action, in which Subclass Plaintiffs (as defined herein) purport to bring direct state law claims for breach of fiduciary duty and "unjust enrichment," are defective because they are preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") and because Plaintiffs have improperly brought these claims directly, rather than derivatively on behalf of the Funds.

- While Plaintiffs allege that they own shares in 28 of the funds at issue managed by the Fidelity Defendants, they nonetheless assert claims in connection with an additional 178 funds in which they did not invest and have no beneficial interest. Plaintiffs lack standing to bring any claims on behalf of shareholders in 178 of 206 the funds that they do not own.

Accordingly, the Court should dismiss the Amended Complaint in its entirety with prejudice.

## STATEMENT OF PLAINTIFFS' ALLEGATIONS

### A.    The Parties

Plaintiffs assert their direct claims concerning, and their derivative claim on behalf of, 206 mutual funds in the Fidelity-branded family of mutual funds (collectively, the "Fidelity Funds" or "Funds"). (CAC, Exhibit A.) Plaintiffs allege that they own shares in 28 of the 206 funds listed on Exhibit A to the Amended Complaint. (CAC ¶¶ 19-37.) Plaintiffs have no ownership or beneficial interest in 178 of the funds.[2]

Defendant FMR Corp. is a private financial services company and the ultimate parent company of defendants FMRCo, the investment adviser to the Funds; FMRC, the sub-adviser to the Fidelity Funds during the Class Period; and FDC, the distributor for the Fidelity Funds. (CAC ¶¶ 38-45.)

The 206 Fidelity Funds, named herein as nominal defendants, are open-end management investment companies – more commonly known as mutual funds – registered with the Securities and Exchange Commission pursuant to the ICA. (CAC ¶ 65.) In addition, Plaintiffs name eighteen current or former Trustees of the Fidelity Funds ("Trustee Defendants"), including Edward C. Johnson 3d, Abigail P. Johnson, Peter S. Lynch, Laura B. Cronin, Robert L. Reynolds and Robert C. Pozen, as well as John Does 1-100 (defined as "other active participants with the [named Defendants] . . . and whose identities have yet to be ascertained.").[3] (CAC ¶¶ 65, 70.)

---

[2]    The twenty-eight funds in which Plaintiffs purport to own shares are identified in Attachment B to this Memorandum. Plaintiff Stanley H. Krupa purports to own shares in "Fidelity Small Cap Selector Fund," (CAC ¶ 24), Plaintiff William S. Groeschel purports to own shares in "Fidelity Select Biotechnology Portfolio," (CAC ¶ 35), and Subclass Plaintiff James Gilliam purports to have owned shares in "Fidelity Diversified International Fund," (CAC ¶ 37), but none of these funds is at issue in this case. See CAC ¶ 1 (defining the Fidelity Funds as those listed on Exhibit A to the Amended Complaint).

[3]    On October 20, 2005, Plaintiffs filed a Notice of Dismissal Without Prejudice, dismissing all of their claims previously asserted against defendants Edward C. Johnson IV, Elizabeth L. Johnson,

**B.    Plaintiffs' Allegations**

At the heart of Plaintiffs' Amended Complaint is an alleged "fraudulent scheme" whereby certain Defendants purportedly made undisclosed payments to unaffiliated broker-dealers in an effort to induce them to direct investors into Fidelity Funds, and then "siphoned fund assets" in order to make additional payments to brokers to promote the Funds to yet more investors.  (CAC ¶¶ 1, 3.)  According to Plaintiffs, these alleged secret payments from Fidelity Fund assets were utilized to pay for so-called "shelf space" at brokerage houses, which allegedly resulted in an increase of fund assets, the benefits of which were not passed on to shareholders. (CAC ¶ 81.)                               .

Plaintiffs allege that such payments were an inappropriate use of distribution fees collected from the Fidelity Funds pursuant to Rule 12b-1.[4]  (*See, e.g.,* CAC ¶¶ 75, 81, 98-108.) Furthermore, Plaintiffs allege that Defendants improperly directed the Funds' portfolio securities trading to brokers in exchange for the brokers' agreements to steer their clients to the Fidelity Funds – so-called "directed brokerage payments" – which Plaintiffs claim was not disclosed. (CAC ¶¶ 137-145.)   Plaintiffs also allege that Fidelity used so-called "soft dollars" – *i.e.*, payments of commission revenue to brokers in return for research services and other products – to induce brokers to "push" Fidelity Funds over other funds, thus charging the Funds and their shareholders for costs not covered by the safe-harbor provisions of Section 28(e) of the Securities Exchange Act of 1934 ("1934 Act").  (CAC ¶¶ 77-79.)  Plaintiffs claim that this "scheme" ultimately resulted in a marked increase in fund assets, allowing FMRCo and FMRC

---

and J. Gary Burkhead in the Amended Complaint.  On November 2, 2005, Plaintiffs filed a Notice of Dismissal Without Prejudice, dismissing all of their claims against Thomas R. Williams and/or his estate.

[4]      Rule 12b-1 authorizes open-ended mutual funds to use their assets to pay for marketing and distribution expenses, pursuant to a written plan approved by a majority of the funds disinterested trustees. *See* 17 CFR 270.12b-1.

to benefit from so-called economies of scale that allegedly decreased Fidelity's costs of operating the Funds on a per unit basis. Plaintiffs allege that the resulting benefits of these scale economies were impermissibly retained by Fidelity and not passed on to Fund investors. (CAC ¶¶ 5-6, 97.)

Based on the foregoing, Plaintiffs assert the following claims:

- FMRCo, FMRC, and the Trustee Defendants made untrue statements of material fact and material omissions in the Fidelity Funds' registration statements in violation of Section 34(b) of the ICA (Count I) (CAC ¶¶ 226-233);

- FMRCo, FMRC, and the Trustee Defendants breached their fiduciary duties under Sections 36(a) and 36(b) of the ICA by purportedly charging investors in the Fidelity Funds excessive advisory and Rule 12b-1 fees, and by improperly drawing upon Fund assets to make undisclosed "soft dollar" payments (Counts II and III) (CAC ¶¶ 234-248);

- FMR Corp., Edward C. Johnson 3d, Abigail Johnson, and the Trustee Defendants, as purported "control persons" of FMRCo, FMRC and FDC, are subject to controlling persons liability under Section 48(a) of the ICA (Count IV) (CAC ¶¶ 249-254);

- FMRCo and FMRC committed fraud in violation of Section 206 of the IAA by making improper soft dollar and directed brokerage payments and by charging improper Rule 12b-1 marketing fees, entitling the Fidelity Funds to rescind their investment advisor contracts with FMRCo and FMRC under Section 215 of the IAA (Count V) (CAC ¶¶ 255-262);

- FMRCo, FMRC, and the Trustee Defendants breached their common law fiduciary duties (Counts VI and VII) (CAC ¶¶ 263-271);

- All of the Defendants were unjustly enriched by their unlawful acts (Count VIII). (CAC ¶¶ 272-273)

Plaintiffs bring all of the claims detailed above, except Counts V-VIII, as a class action on behalf of themselves and "all persons or entities who held one or more shares . . . of Fidelity mutual funds . . . during the period July 19, 1999 to November 17, 2003 (the 'Class')." (CAC ¶ 1.) Plaintiffs also bring Counts VI-VIII as a class action on behalf of themselves and "all persons or entities who acquired [a beneficial interest in the Fidelity Funds] before July 19, 1999

and held during the Class Period one or more Funds (the 'Subclass')."   (CAC ¶¶ 1, 37.)

Plaintiffs bring Count V derivatively on behalf of the Fidelity Funds for rescission of the Fidelity

Funds' investment advisory contracts with FMRCo and FMRC under Section 215 of the IAA.

## ARGUMENT

### I.   PLAINTIFFS' FIRST, SECOND, AND FOURTH COUNTS UNDER SECTIONS 34(B), 36(A), AND 48(A) OF THE ICA SHOULD BE DISMISSED BECAUSE NO PRIVATE RIGHT OF ACTION EXISTS UNDER THOSE SECTIONS

Plaintiffs' claims under Sections 34(b), 36(a), and 48(a) of the ICA should be dismissed

because no private rights of action exist under those statutory provisions.  **Following recent**

**Supreme Court precedent, every single one of the more than twenty courts that have**

**addressed the issue since** *Olmsted v. Pruco Life Ins. Co.*, **283 F.3d 429 (2d Cir. 2002) –**

**including those within this District – have refused to find an implied private right of action**

**under** *any* **section of the ICA.**[5]   Indeed, in a series of copy-cat cases brought by the same

---

[5]   *See In re Mut. Funds Inv. Litig. (Excelsior, Federated, Scudder and AMCAP Sub-Tracks)*, Nos. MDL 1586, 04-MD-15861, 04-928, 04-933, 2005 WL 3038695 (D. Md. Nov. 3, 2005) (no private right under Section 34(b) or 36(a)); *Stegall v. Ladner*, 394 F. Supp. 2d 358 (D. Mass. 2005) (no private right under 36(a)); *Hamilton v. Allen*, No. 05-110, 2005 WL 2660356 (E.D. Pa. Oct. 14, 2005) (same); *In re Davis Selected Mut. Funds Litig.*, No. 04 Civ. 4186, 2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005) (no private right under 34(b), 36(a) or 48(a)); *In re Dreyfus Mut. Funds Fee Litig.*, No. 2:04cv128, slip op. (W.D. Pa. Sept. 28, 2005) (no private right under 34(b) or 36(a)); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005) (same); *In re Lord Abbett Mut. Funds Fee Litig.*, 385 F. Supp. 2d 471 (D.N.J. 2005) (same); *In re Mut. Funds Inv. Litig (Janus Sub-Track)*, 384 F. Supp. 2d 845 (D. Md. 2005) (same); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222 (S.D.N.Y. 2005) (no private right under 34(b), 36(a) or 48(a)); *Dull v. Arch*, No. 05 C 140, 2005 WL 1799270 (N.D. Ill. July 27, 2005) (no private right under 36(a)); *Jacobs v. Bremner*, 378 F. Supp. 2d 861(N.D. Ill. 2005) (same); *Mutchka v. Harris*, 373 F. Supp. 2d 1021 (C.D. Cal. 2005) (same); *DH2, Inc. v. Athanassiades*, 359 F. Supp. 2d 708 (N.D. Ill. 2005) (no private right under 17(j)); *Strigliabotti v. Franklin Res., Inc.*, No. C 04-00883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) (no private right under 12(b)); *Chamberlain v. Aberdeen Asset Mgmt. Ltd.*, No. 02 CV 5870, 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005) (no private right under 36(a)), *vacated solely for purposes of settlement*, 2005 WL 1378757 (E.D.N.Y. Apr. 12, 2005); *In re VanWagoner Funds, Inc.*, No. C 02-03383, 2004 WL 2623972 (N.D. Cal. July 27, 2005) (no private right under 34(b)); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 429 (S.D.N.Y. 2003) (same); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243 (S.D.N.Y. 2003) (same); *meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.*, 260 F. Supp. 2d 616 (2003) (no

Plaintiffs' counsel here and alleging virtually identical claims against other mutual fund complexes, courts have consistently held that no private rights of action exist under Sections 34(b), 36(a) and/or 48(a). *See Davis*, 2005 WL 2509732, at *2; *Dreyfus*, No. 2:04cv128, slip op. at *8-14; *Franklin*, 388 F. Supp. 2d at 464-69; *Lord Abbett*, 385 F. Supp. 2d at 486-88; *Eaton Vance*, 380 F. Supp. 2d at 231-33.[6]

The reasons for this uniform result are by now quite familiar. None of these sections provides for an *express* private right of action. *See* 15 U.S.C. §§ 80a-33(b), 80a-35(a), 80a-47(a). As such, in order for Plaintiffs to have actionable claims under these sections, this Court must find that an *implied* private right of action exists. All recent precedent, however, precludes such a finding.

In deciding whether an implied private right of action exists, the United States Supreme Court has held that "what must ultimately be determined is whether Congress intended to create the private remedy asserted." *Transamerica Mort. Advisers, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15-16 (1979). Building upon its decision in *Transamerica*, the Supreme Court, in *Alexander v. Sandoval*, 532 U.S. 275 (2001), provided additional guidance for determining whether courts should imply a private right of action to enforce a federal statute. The Court began by stating that "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress," and that "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286 (citations omitted). The Court explained that "[s]tatutory

---

private right under 12(d)(1)(A)); *White v. Heartland High-Yield Mun. Bond Fund*, 237 F. Supp. 2d 982 (E.D. Wis. 2002) (no private right under 34(b)).

[6]   Although various courts implied rights of action under the ICA prior to *Sandoval* and *Olmsted*, such decisions have been routinely recognized as belonging to an "ancien regime" under which

intent on this latter point is determinative," because "[w]ithout it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87. Finding nothing in the statute at issue evidencing congressional intent to create a private right of action, the Court refused to imply one. *See id.* at 288.

In *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 125 S. Ct. 2611 (2005), the Supreme Court confirmed the rationale it had previously articulated in *Sandoval* and strengthened the argument that no implied private rights of action exist under the ICA. *See id.* at 2626-27. Although *Exxon Mobil* does not specifically involve the ICA or private rights of action, it provides important guidance as to when a court should consider expressions of legislative intent in a statute's legislative history, holding that courts should not consider such evidence when the language of the statute is unambiguous. Specifically, the Court found that "[t]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Id.* at 2626.[7]

Applying the principles first articulated by the Supreme Court in *Sandoval* and subsequently affirmed in *Exxon Mobil*, the Second Circuit held that no private right of action exists under Sections 26(f) and 27(i) of the ICA. *See Olmsted*, 283 F.3d at 432. In *Olmsted*, the court outlined four factors to consider when determining whether a private right of action exists under the ICA: (1) whether the provision explicitly provides a private right of action; (2)

---

"courts had more latitude to weigh statutory policy and other considerations than they do now." *Olmsted*, 283 F.3d at 433-34; *see also Stegall*, 394 F. Supp. 2d at 368 n.8.

[7] Importantly, two recent decisions applied the *Exxon Mobil* rationale in holding that "[a]fter Exxon Mobil, there is simply no room to imply a private right of action under Section 36(a)." *Jacobs*, 378 F. Supp. 2d at 866; *see also Dull*, 2005 WL 1799270, at *2.

whether the provision contains "rights-creating language"; (3) whether the statute has provided an alternative method of enforcement; and (4) whether Congress provided a private right of action for enforcement of any other section of the statute. *See id.* at 432-34. The Second Circuit considered each of these factors in turn and determined that, because "[n]o provision of the ICA explicitly provides for a private right of action for violations of either § 26(f) or § 27(i)," and these sections "do not contain rights-creating language," "Congress did not intend [a private right of action]." *Id.* (citing *Sandoval*, 532 U.S. at 289). Noting the express private right of action provided by Section 36(b) of the ICA, the court in *Olmsted* concluded that when Congress wanted to create a private remedy under the ICA, "it knew how to do so." *Id.* at 433.

The analysis used by the Second Circuit in *Olmsted* and adopted by a variety of district courts in dismissing actions brought pursuant to Sections 34(b), 36(a) and/or 48(a) of the ICA warrants dismissal here. *First*, it is clear that Sections 34(b), 36(a) and 48(a) do not explicitly provide for a private right of action. *See* 15 U.S.C. § 80a-33(b) (stating that "[i]t shall be unlawful for any person to make any untrue statement of material fact in any registration statement ..."); 15 U.S.C. § 80a-35(a) (providing, "*The Commission* is authorized to bring an action ...") (emphasis added); 15 U.S.C. § 80a-47(a) (stating that "[i]t shall be unlawful for any person, ... to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter or any rule, regulation, or order thereunder"). Thus, the statutory text is unambiguous. *Second*, Sections 34(b), 36(a) and 48(a) speak only to actions that are prohibited, and those sections lack any "rights-creating language" granting a right of action to anyone other than the SEC. *See Stegall*, 394 F. Supp. 2d at 368-70 (citing *Olmsted*, 283 F.3d at 432-33). *Finally*, a review of the applicable statutory provisions indicates that: (1) the statute provides alternative methods of

enforcement, and (2) there is an express private right of action under one section of the statute. As an initial matter, Section 42 provides for enforcement of all ICA provisions *by the SEC, but not by private litigants*, and therefore "suggests that omission of a private right to enforce other sections [of the ICA] was intentional." *Olmsted*, 283 F.3d at 433. Moreover, Section 36(b) expressly provides for private rights of action by security holders of registered investment companies.[8] Indeed, courts within this District have recognized that "the existence of an explicit private right of action for another provision of the statute creates the strong presumption that Congress did not intend to create private rights of action under §§ 34(b), 36(a), or 48(a)." *Stegall*, 394 F. Supp. 2d at 371 (quoting *Eaton Vance*, 380 F. Supp. 2d at 232).

It is clear beyond peradventure that Congress did not intend to imply a private right of action under Sections 34(b), 36(a) or 48(a) of the ICA, and not a single post-*Olmsted* decision has found such an implied right. As such, Plaintiffs' claims under Sections 34(b), 36(a), and 48(a) should be dismissed with prejudice.

## II.    PLAINTIFFS' CLAIM UNDER SECTION 36(B) OF THE ICA SHOULD BE DISMISSED

### A.    Plaintiffs' Section 36(b) Claim Should Be Dismissed Because Such A Claim Cannot Be Brought Directly As A Class Action For the Benefit of the Plaintiffs and the Class.

Plaintiffs' claim under Section 36(b) of the ICA should be dismissed because it was improperly brought directly as a "class action" seeking recovery for the Plaintiffs and the Class rather than derivatively on behalf of the Funds. *See Franklin*, 385 F. Supp. 2d at 467-69 (holding Section 36(b) claim can be maintained only as a derivative cause of action); *Lord Abbett*, 385 F. Supp. 2d at 488-89 (holding Section 36(b) claim may not be maintained as a class

---

[8]    *Compare* 15 U.S.C. § 80a-35(b) (expressly granting investors the right to bring an action), *with* 15 U.S.C. § 80a-35(a) (expressly authorizing only the Commission to bring action).

action claim); *Mutchka*, 373 F. Supp. 2d at 1025 (holding Section 36(b) claim can be maintained only as a derivative cause of action).

Plaintiffs assert their claim under Section 36(b) of the ICA on behalf of themselves and the Class (CAC ¶ 242), allege that "Plaintiffs and the Class have incurred millions and millions of dollars in damages" (CAC ¶ 247), and seek to recover for themselves and the Class the "improper 12b-1 fees and the excessive advisory fees charged the Fidelity Funds by Defendants." (CAC ¶ 248.) Plaintiffs do not plead this claim, or seek recovery, on the Funds' behalf. In short, Plaintiffs assert this claim for personal recovery. A plaintiff, however, may not seek personal recovery by means of a Section 36(b) claim. First, the statute expressly provides that "[a]n action may be brought under this subsection... *by a security holder* of such registered investment company *on behalf of such company* ..." 15 U.S.C. § 80a-35(b) (emphasis added). Second, courts have interpreted this language as providing a derivative – not a direct – cause of action and have dismissed claims brought directly pursuant to Section 36(b). *See, e.g., Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984); *Franklin*, 388 F. Supp. 2d at 467-69; *Lord Abbett*, 385 F. Supp. 2d. at 488-89; *Mutchka*, 373 F. Supp. 2d at 1024.

In *Daily Income Fund*, the United States Supreme Court addressed the issue of whether actions brought pursuant to Section 36(b) are subject to the "demand requirement" of Federal Rule of Civil Procedure 23.1, which mandates that a shareholder make a pre-suit demand upon the company's board of directors prior to initiating a derivative action. *See Daily Income Fund*, 464 U.S. at 525. Focusing upon the plain statutory language of Section 36(b), the Court found that Section 36(b) provides for *only* a derivative right:

> [t]he 'on behalf' language in § 36(b) indicates only that the right asserted by a shareholder suing under the statute is a 'right of the corporation' – a proposition confirmed by other aspects of the action: The fiduciary duty imposed on advisers by § 36(b) is owed

11

> to the company itself as well as its shareholders and any recovery
> obtained in a § 36(b) action will go to the company rather than the
> plaintiff. In this respect, a *§ 36(b) action is undeniably 'derivative'*
> *in the broad sense of the word.*

*Id.* at 535 n.11 (emphasis added); *see also Burks v. Lasker*, 441 U.S. 471, 484 (1979) (describing

an action brought pursuant to Section 36(b) as a "derivative suit[] charging breach of fiduciary

duty with respect to adviser's fees").

The Supreme Court agreed that the demand requirement of Rule 23.1 does not apply to

Section 36(b) claims because it governs only suits that could actually have been asserted by the

corporation. It noted:

> The legislative history of § 36(b) makes clear that Congress
> intended the perhaps unique "*right of a corporation*" established
> by § 36(b) *to be asserted by the company's security holders and*
> *not by the company itself.*

*Daily Income Fund*, 464 U.S. at 535 n.11 (emphasis added). Nonetheless, while a fund cannot

itself bring a Section 36(b) claim, the Supreme Court recognized that Section 36(b) allows a

security holder to bring a claim on the fund's behalf:

> Section 36(b)'s express provision for actions by security holders ...
> ensures that, even if the company's directors cannot bring an
> action in the fund's name, the *company's rights* under the statute
> can be fully vindicated by plaintiffs authorized to act *on its behalf.*

*Id.* at 541 (emphasis added). *Daily Income Fund* thus confirms the derivative nature of a Section

36(b) claim.

Recent decisions have re-affirmed the Supreme Court's plain language reading of Section

36(b) and have concluded that such a claim can be maintained only as a derivative – as opposed

to a direct – cause of action. *See Franklin*, 388 F. Supp. 2d at 467-69; *Lord Abbett*, 385 F. Supp.

2d at 488-89; *Mutchka*, 373 F. Supp. 2d at 1025. For example, in *Mutchka*, the court held that

the plain language of Section 36(b) mandates that any cause of action brought pursuant to that

section must be asserted derivatively for two reasons:  First, as noted above, Section 36(b) explicitly provides that a claim may be brought "on behalf of" the fund and, therefore, it is derivative in nature. *See id.* at 1025 (citing *Olmsted*, 283 F.3d at 433 ("Congress explicitly provided in § 36(b) of the ICA for a private right of derivative action for investors.")).  Second, because the issue is governed by the law of the state in which the fund is organized, Massachusetts law requires claims for breach of fiduciary duty to be brought derivatively. *See id.* at 1025 (noting that the parties do not dispute that the funds are established in Massachusetts and, therefore, Massachusetts law controls issues of state law).

Indeed, faced with virtually identical allegations to those at issue here, in two separate cases brought by Plaintiffs' counsel here against various affiliates of the Franklin and Lord Abbett mutual fund families, Judge Martini of the District of New Jersey dismissed plaintiffs' Section 36(b) claims, in each instance holding that actions brought pursuant to Section 36(b) must be brought derivatively and cannot be asserted directly as putative class actions. *See Franklin*, 388 F. Supp. 2d at 467-69; *Lord Abbett*, 385 F. Supp. 2d at 488-89.

Plaintiffs in both the *Franklin* and *Lord Abbett* actions alleged, as Plaintiffs do here, that the defendants breached their fiduciary duties under Section 36(b) by charging excessive fees and entering into revenue sharing and directed brokerage agreements, and by paying brokers excessive commissions and soft dollars to aggressively market their respective funds. *See Franklin*, 388 F. Supp. 2d at 457-58; *Lord Abbett*, 385 F. Supp. 2d at 475-76.  The Franklin defendants moved to dismiss the Section 36(b) claim because plaintiffs improperly brought their claim directly as a putative class action. *See Franklin*, 388 F. Supp. 2d at 467-69.[9]  The court

---

[9]    Although the Lord Abbett defendants did not brief the issue of whether Section 36(b) claims must be brought derivatively, rather than directly, the court, *sua sponte*, dismissed plaintiff's Section 36(b) claim for the very same reasons articulated by the court in *Franklin*. *See Lord Abbett*, 385 F. Supp. 2d at 488-89.

granted defendants' motion, holding that "given the plain language of § 36(b) and the Supreme Court's elucidation of that provision in *Daily Income Fund*, *only* derivative claims may be maintained under § 36(b)." *Id.* (emphasis added). The court noted that in *Daily Income Fund*, the Supreme Court "stat[ed] unequivocally that § 36(b) confers only a derivative right."[10] *Id.* at 468 (quoting *Daily Income Fund*, 464 U.S. at 535 n.11). Judge Martini explained:

> To the extent that [*Daily Income Fund*] distinguished a derivative claim under § 36(b) from a typical derivative claim, the Court did so to explain why Fed. R. Civ. P. 23.1 is inapplicable to § 36(b) actions . . . . Although shareholders do have a right to sue under § 36(b), and funds do not, that does not constrain or shed light on the nature of the claims that a shareholder may bring under § 36(b). As stated in [*Daily Income Fund*], a § 36(b) action is undeniably derivative.

*Id.* As such, the court dismissed the Section 36(b) claim because "shareholders do not have a primary or direct right of action under § 36(b)." *Id.*

Accordingly, Plaintiffs' Section 36(b) claim cannot be maintained directly as a putative class action and should be dismissed.

**B.     Plaintiffs' Section 36(b) Claim Should Be Dismissed As To Those Funds For Which The Amended Complaint Fails To State A Claim.**

With respect to 201 of the 206 Fidelity Funds at issue in this case, Plaintiffs fail to make any factual allegations that would support a cause of action for excessive fees under Section 36(b).[11] Indeed, *199 of these Funds are not even mentioned in the Amended Complaint* (two

---

[10]     The court noted, however, that under the Supreme Court's decisions in *Daily Income Fund* and *Kamen* a plaintiff need not make pre-suit demand prior to instituting a derivative action under Section 36(b) of the ICA. *See Franklin*, 388 F. Supp. 2d at 468.

[11]     The only Funds at issue, as defined by Plaintiffs in Paragraph 1 and Exhibit A of the Amended Complaint, about which Plaintiffs make *any* factual allegations are: Fidelity Blue Chip Growth Fund (CAC ¶ 95); Fidelity China Region Fund (CAC ¶¶ 89, 193); Fidelity Contrafund (CAC ¶¶ 83, 106, 175, 180, 184); Fidelity Low-Priced Stock Fund (CAC ¶ 96); Fidelity Magellan Fund (CAC ¶¶ 83, 87, 93, 106, 126, 169, 171). Plaintiffs refer to, but make no meaningful allegations against, Fidelity Advisor Value Leaders Fund (CAC ¶ 138) and Fidelity Pacific Basin Fund (CAC ¶ 193).

other Funds are referred to in passing). The Section 36(b) claims regarding these Funds must be dismissed for Plaintiffs' failure to even attempt to meet recognized pleading standards for such claims.

Section 36(b) of the ICA provides that investment advisers have a "fiduciary duty with respect to the receipt of compensation" from mutual funds, and that "plaintiff shall have the burden of proving a breach of fiduciary duty." 15 U.S.C. § 80a-35(b). To state a claim under Section 36(b), a plaintiff must plead facts demonstrating that the challenged fee for *each fund* is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982), *cert. denied*, 461 U.S. 906 (1983); *see also Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327 (4th Cir. 2001).

Courts have identified six factors that should be considered in determining whether fees charged by an investment adviser are excessive: (1) the nature and quality of the services provided to fund shareholders; (2) the profitability of the fund to the investment adviser; (3) economies of scale of operating the fund as it grows larger; (4) comparative fee structures; (5) fallout benefits – *i.e.*, indirect profits to the adviser attributable in some way to the existence of the fund; and (6) the independence and conscientiousness of the directors. *See Gartenberg*, 694 F.2d at 929-30; *Migdal*, 248 F.3d at 329; *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir. 1989).

Courts within this very District have recognized the need for a plaintiff to "allege some relationship between fees charged and the services rendered that, if true, would support a claim that the fees are excessive." *Yameen v. Eaton Vance Dist., Inc.*, 394 F. Supp. 2d 350 (D. Mass. 2005); *see also Yampolsky v. Morgan Stanley Inv. Advisers Inc.*, No. 03 Civ. 5710 (RO), 2004

WL 1065533 (S.D.N.Y. May 12, 2004); *Levy v. Alliance Capital Mgmt. L.P.*, No 97 Civ. 4672 (DC), 1998 WL 744005, at *4 (S.D.N.Y. Oct. 26, 1998) (granting motion to dismiss where plaintiff "fail[ed] to explain how the fees and expenses are excessive in light of the 'Gartenberg' factors that courts consider"); *Olesh v. Dreyfus Corp.*, No. CV-94-1664 (CPS), 1995 WL 500491, at *19, 21 (E.D.N.Y. Aug. 8, 1995) (granting motion to dismiss Section 36(b) claim for failing to allege that the fee is so disproportionately large that it bears no reasonable relationship to the services rendered); *Wexler v. Equitable Capital Mgmt. Corp.*, No. 93 Civ. 3834 (RPP), 1994 WL 48807, at *4 (S.D.N.Y. Feb. 17, 1994) (granting motion to dismiss where advisory fee allegations were "merely a pleading of a conclusion of fact"). Whatever that standard requires, it plainly is not met when a fund is not even afforded the slightest mention in the substantive allegations of a complaint.

The plain language of Section 36(b) mandates that a plaintiff plead and prove fund-specific allegations, and cannot make generic allegations directed to all of the funds within a complex:

> An action may be brought under [Section 36(b) of the ICA] by the Commission, or by a security holder of *such* registered investment company on behalf of *such* company . . . for breach of fiduciary duty in respect of *such* compensation or payments paid by *such* registered investment company. . . .

15 U.S.C. § 80a-35(b) (emphasis added). As the language of Section 36(b) makes clear, Congress never intended, nor should this Court allow, a plaintiff to bring suit challenging the fees of hundreds of different mutual funds based upon general allegations directed at the fund complex and the overall mutual fund industry. The reason is obvious. The mere fact that advisory fees may be deemed excessive as to one specific and legally distinct fund does not

necessarily mean that advisory fees for other funds within the same complex are excessive as well.[12]

Disregarding precedent to the contrary, Plaintiffs attempt to sweep into this case over 200 different Funds by making generic and conclusory allegations about the entire Fidelity complex of funds. However, each of the 206 Funds identified in Exhibit A of the Amended Complaint are separate and distinct from each other: each has their own advisory agreement; each is organized as a separate and legally distinct entity; and each has its own investment objective and fee schedule. Indeed, from a legal perspective, Plaintiffs have brought 206 separate cases under Section 36(b), one for each of the Funds on whose behalf relief is sought. Yet the Amended Complaint does not allege any facts relating to the *Gartenberg* factors for 201 of the Funds at issue. There mere fact that Plaintiffs are allowed to bring these actions in the aggregate under the purported guise of judicial expediency does not relieve them of their obligation to plead the requisite facts sufficient to sustain a cause of action under Section 36(b).

As a practical matter, the obligations to allege facts about *each* Fund is particularly important given the wide disparity in the amount of fees paid, fee structures, investment style and objectives, assets under management, distribution channels, *etc.*, for the 206 Funds at issue.

---

[12]    Significantly, in each of the six Section 36(b) excessive management fee cases which have gone to trial, claims were only asserted on behalf of one specific fund. *See Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 590 (2d Cir. 1990), *cert. denied*, 502 U.S. 818 (1991); *Meyer v. Oppenheimer Mgmt. Corp.*, 715 F. Supp. 574 (S.D.N.Y. 1989), *aff'd*, 895 F.2d 861 (2d Cir. 1991); *Krinsk v. Fund Asset Mgmt, Inc.*, 715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404 (2d Cir. 1989), *cert. denied*, 493 U.S. 919 (1989); *Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 663 F. Supp. 962 (S.D.N.Y. 1987), *aff'd per curiam*, 835 F.2d 45 (2d Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988); *Gartenberg v. Merrill Lynch Asset Mgmt, Inc.*, 573 F. Supp 1293 (S.D.N.Y. 1983), *aff'd*, 740 F.2d 190 (2d Cir. 1984) ("Gartenberg II"); *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 528 F. Supp. 1038 (S.D.N.Y. 1981), *aff'd*, 694 F.2d 923 (2d Cir. 1982), *cert denied sub nom. Andre v. Merrill Lynch Ready Asset Trust*, 461 U.S. 906 (1983) ("Gartenberg I").

Nevertheless, Plaintiffs ignore their obligation to demonstrate that the fees paid by *each* individual Fund are excessive. For example, Plaintiffs make cursory allegations about the size or the growth in assets of a few of the Funds. (*See, e.g.,* CAC ¶ 89.) However, the Funds at issue range in assets from $36 Million to $66 Billion, (CAC ¶ 93), an 18,000% difference is size, and Plaintiffs do not -- and cannot -- allege that all of the Funds increased in size during the relevant time period. In addition, the 206 Funds implicated by the Amended Complaint include actively managed and index funds, fixed income and equity funds, and vastly different investment disciplines and styles. Indeed, the most critical factor, the size of the challenged fees, range from as low as 7 bps for the Fidelity Spartan Index Funds to at least 73 bps for the Fidelity China Region Fund. (CAC ¶ 89.) Finally, Plaintiffs seek to include both direct-sold and intermediary-sold Funds, with no evident acknowledgement of the inherent differences between those distribution channels. Absent some direct allegation about how the advisory fees paid to the investment adviser for *each separate* Fund are disproportionate to the services rendered, Section 36(b) simply does not apply.

Under this standard, the Plaintiffs' claims under Section 36(b) are clearly insufficient. For example, the Amended Complaint merely makes the following general, complex-wide assertion:

> The fees received by the Defendants . . . charged to *the Fidelity Funds* were excessive, were not negotiated at arm's-length, and were so disproportionately large that they bore no reasonable relationship to the services rendered.

(CAC ¶ 244 (emphasis added).) This type of generalized attack is clearly insufficient for purposes of the fund-specific analysis mandated by Section 36(b). At a minimum, the statute requires at least some factual allegations to support the proposition that each of the Funds charged excessive fees.

Plaintiffs failure to plead specific facts with respect to these 201 separate and legally distinct Fidelity Funds makes the allegations beyond conclusory – they are nonexistent. The failure to include even a *single* allegation about *any* of 199 of the Funds, and only a cursory mention of two others, are insufficient as a matter of law and thus requires dismissal as to those Funds.

**C.    Plaintiffs' Section 36(b) Claim Against The Trustee Defendants Should Be Dismissed Because The Trustee Defendants Are Not The Recipients Of The Challenged Compensation.**

The plain language of Section 36(b) makes it abundantly clear that only recipients of advisory compensation shall be liable for damages in actions brought pursuant to that statute. *See* 15 U.S.C. § 80a-35(b)(3) ("No such action shall be brought or maintained against any person other than the recipient of such compensation or payments.").[13]

Courts have long recognized that Section 36(b) is a "narrow federal remedy" which imposes a "fiduciary duty upon advisers regarding their compensation." *Green v. Nuveen Advisory Corp.*, 295 F.3d 738, 742-43 (7th Cir. 2002). Given the plain language of Section 36(b), courts have routinely rejected claims brought pursuant to Section 36(b) against persons who are not alleged to have received compensation for advisory services because such persons are not proper defendants. *See In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885 (SWK), 2005 WL 2677753, at *7 (S.D.N.Y. Oct. 19, 2005) (dismissing plaintiff's claim against trustees brought pursuant to Section 36(b) of the ICA for failure to allege such trustees were recipients of compensation or payments for advisory services); *Eaton Vance*, 380 F. Supp. 2d at 238 (same); *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 492 (N.D. Ill. 1999) (same); *In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*, 941 F. Supp. 326, 343

---

[13]    The Fidelity Defendants adopt those arguments presented in the Nominal Defendants' and Independent Trustees' briefs as if fully set forth herein.

(S.D.N.Y. 1996) (same). Here, Plaintiffs do not allege that the Trustee Defendants received any such compensation and, as a result, the Section 36(b) claim against the Trustee Defendants fails for this reason as well.

**III.     PLAINTIFFS' FOURTH COUNT UNDER SECTION 48(A) OF THE ICA SHOULD BE DISMISSED BECAUSE THERE IS NO UNDERLYING PRIMARY LIABILITY AND NO FACTS ARE PLEADED TO SHOW EXERCISE OF CONTROL**

Plaintiffs' fourth count under Section 48(a) of the ICA should also be dismissed because Section 48(a) does not provide an independent basis for liability. Rather, Section 48(a) imposes liability on those who control and cause any *other* person to violate any provision of the ICA. *See* 15 U.S.C. § 80a-47(a).  Because Plaintiffs have failed to state a primary violation under Section 34(b), 36(a), or 36(b) of the ICA, their control person liability claim must be dismissed. *See In re Columbia Entities Litig.*, No. 04-11704-REK, slip op. at 17-18 (D. Mass. Nov. 30, 2005) (dismissing claim brought under 48(a) as a result of plaintiffs' failure to plead a legally sufficient primary violation of the ICA); *Franklin*, 388 F. Supp. 2d at 469 (same); *Lord Abbett*, 385 F. Supp. 2d at 489 (same); *Merrill Lynch*, 272 F. Supp. 2d at 255-59; *In re Alliance N. Am. Gov't Income Trust, Inc. Sec. Litig.*, No. 95 Civ. 0330 (LMM), 1996 WL 551732, at *11 (S.D.N.Y. Sept. 27, 1996) (same).

Plaintiffs' control person claims against FMR Corp. and the Trustee Defendants fail for the additional reason that they fail to allege a relationship demonstrating control over any entity alleged to be a primary violator. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002) (denying control person liability in the absence of an allegation demonstrating control). Because "a parent corporation and its subsidiary are regarded as legally distinct entities," *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir. 1993), a plaintiff attempting to establish control person liability must allege facts demonstrating "some indicia of

20

the *exercise* of control over the entity primarily liable." *Aldridge*, 284 F.3d at 85 (emphasis supplied). Plaintiffs allege no such facts.

**IV.    PLAINTIFFS' FIRST THROUGH FOURTH AND SIXTH THROUGH EIGHTH COUNTS SHOULD BE DISMISSED BECAUSE THEY WERE NOT BROUGHT DERIVATIVELY**

Plaintiffs plead all counts of the Amended Complaint, except for Count V, as direct claims on behalf of the putative Class or Subclass. However, Plaintiffs' first through fourth and sixth through eighth counts, alleging violations of Sections 34(b), 36(a), 36(b), and 48(a) of the ICA and common law claims for breach of fiduciary duty and unjust enrichment are, as a matter of law, derivative in nature.[14] As recognized by several very recent district court decisions involving Plaintiffs' counsel alleging virtually identical claims against other fund complexes, these claims should be dismissed because Plaintiffs have asserted them directly, rather than derivatively on behalf of the Funds.[15] *See In re Columbia Entities Litig.*, No. 04-11704-REK, slip op. at 10; *AllianceBernstein*, 2005 WL 2677753, at *3-4; *Davis*, 2005 WL 2509732, at *4; *Eaton Vance*, 380 F. Supp. 2d at 234.

Whether a claim is direct or derivative is determined by the law of the state of organization. *See Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000) ("We ... rely upon state law to determine whether the plaintiffs' claims are direct or derivative."); *Stegall*, 394 F. Supp.

---

[14]    Even if Plaintiffs had appropriately asserted their claims under Sections 34(b), 36(a) and 48(a) derivatively, such claims would also warrant dismissal because Plaintiffs have failed to make the necessary pre-suit demand upon the Funds' Trustees. *See infra* at Section V. Plaintiffs' claims are also limited by the statute of limitations. Plaintiffs' claims under ICA Sections 34(b) and 36(a) are subject to a maximum three-year limitation period and must be dismissed to the extent these claims are based on conduct that occurred before July 19, 2001 – more than three years before the Original Complaint was filed on July 19, 2004. Claims under Section 36(b) are subject to a maximum one-year limitation period and must be dismissed to the extent those claims are based on conduct that occurred before July 19, 2003.

[15]    In addition, for the reasons stated above, Plaintiffs' claim under Section 36(b) of the ICA (Count III) may only be brought derivatively for the benefit of the funds, and must be dismissed because Plaintiffs have improperly brought it directly as a putative class action. *See supra* at Section II.A.

2d at 364 (holding that court must look at the law of the funds' state of organization in determining whether claim is properly brought as a direct action).

Here, each fund is a separate registered investment company and is organized either under Massachusetts law (as a series of a Massachusetts business trust) or under Delaware law (as a series of a Delaware statutory trust).[16] Accordingly, Massachusetts and Delaware law govern the question of whether Plaintiffs' claims are direct or derivative.

The test for determining whether a claim is direct or derivative is the same under Massachusetts and Delaware law. *See Franklin*, 388 F. Supp. 2d at 463 n.8; *Hogan v. Baker*, No. Civ. A. 305CV0073P, 2005 WL 1949476, at *4 n.5 (N.D. Tex. Aug. 12, 2005). This test is straightforward: An injury sustained directly by a corporation and by the shareholders of the corporation only indirectly and equally – that is, ratably in accordance with their share ownership – must be remedied exclusively through a derivative suit. *See Jackson v. Stuhlfire*, 28 Mass. App. Ct. 924, 925 (1990) ("The derivative action seeks … to redress a wrong to the corporation … [T]he wrong underlying a derivative action is indirect, at least as to the shareholders. It adversely affects them merely as they are the owners of the corporate stock; only the corporation itself suffers the wrong.") (citations omitted); *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (a "stockholder's claimed direct injury must be independent of any alleged injury to the corporation" "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation."). Whether a claim is properly asserted as a direct claim is determined from the allegations of the complaint. *See Jackson*, 28 Mass. App. Ct. at 924-25; *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 352 (Del. 1988).

---

[16]    *See* Attachment B to this memorandum, which lists the various Funds at issue and identifies each state of organization.

The essence of Plaintiffs' allegations in their first, second, third, fourth, sixth, seventh and eights counts is that the Fidelity Defendants made allegedly improper payments to brokers from fund assets as an incentive for brokers to steer investors into the Funds.  (CAC ¶¶ 1, 3, 6, 112-122, 133, 137, 149.)   Plaintiffs challenge several types of alleged payments – directed brokerage, excessive brokerage commissions, improper soft dollars, and excessive 12b-1 fees. (CAC ¶¶ 3, 6, 112-22, 133, 137.)

As the face of the Amended Complaint makes plain, Plaintiffs allege that the purportedly improper payments were made from Fund assets and Plaintiffs were injured, if at all, only in their capacity as holders of the Funds' shares.  There is no factual basis pleaded in the Amended Complaint to suggest that any Plaintiff suffered any direct injury that was not first suffered by the funds.  *See Eaton Vance*, 380 F. Supp. 2d at 235 (holding that under Massachusetts law, a claim is derivative where "the harm to the investor flows through the corporation, and thus the injury to the investor is only indirect").   Instead, Plaintiffs' claims are premised upon alleged injury incurred in the first instance by the Funds, with only a secondary, pro-rata, and derivative impact on the Funds' investors.  For example, Plaintiffs allege that:

- Defendants "siphoned *fund assets*" "to improperly pay and induce brokers to steer investors into Fidelity mutual funds." (CAC ¶ 1);

- Defendants used "*Fund assets*" to promote the sale of fund shares, including through the improper payment of commissions to brokers and the improper direction of fund portfolio brokerage to brokerage firms, in return for the brokers' agreement to push sales of fund shares, and through the charging of excessive 12b-1 fees. (CAC ¶ 3);

- "[T]he Investment Adviser Defendants and their affiliates profited from the improper use of *Fund assets*." (CAC ¶ 142);

- "Plaintiffs and the other members of the Class were injured as holders of the Funds because they were deceived into believing that they would earn a return on their investment that would reflect a use of all the *Funds' assets* to benefit the Funds and their investors when, in fact, the *return on investment* was reduced by

the wrongful payment that served to benefit only the Investment Adviser Defendants and their affiliated Defendants." (CAC ¶ 231);

- "Defendants were systematically and improperly removing *assets* from *the Funds.* . . ." (CAC ¶ 239.) (all emphasis added).

That Plaintiffs' claims are derivative is also clear from a consideration of the substance of those claims. Plaintiffs complain about the investment advisers' allegedly improper expenditure of Fund assets. (CAC ¶ 3.) For example, Plaintiffs challenge (1) the purported payment of directed brokerage – the practice by which an investment adviser allocates brokerage commissions in recognition of the broker's sales of fund shares – and (2) the purported use of soft dollars – an industry-wide practice by which an investment adviser receives research as well as execution services when the adviser uses Fund assets to pay brokerage commissions. (CAC ¶¶ 77-78, 127.)

Courts have long treated allegations concerning the improper expenditure of mutual fund assets as asserting derivative, and not direct, claims. *See, e.g., Strougo v. Bassini*, 282 F.3d 162, 174-75 (2d Cir. 2002) (holding that ICA claims resulting from fund's payment of fees and other transaction costs must be asserted derivatively); *Green*, 186 F.R.D. at 489-90 (applying Massachusetts law to dismiss ICA claims brought directly based on fund's payment of fees because such claims may only be brought derivatively); *Herman v. Steadman*, 50 F.R.D. 488, 489-90 (S.D.N.Y. 1970) (holding that mutual fund shareholder alleging "excessive and illegal brokerage commissions and advisory fees . . . has no individual right of action [because] the right of action is that of the corporation and is derivative only"); *Mendelsohn v. Leather Mfg. Corp.*, 93 N.E.2d 537, 543-44, 326 Mass. 226, 237 (1950) (holding that, where stockholder claimed that officers had misappropriated funds belonging to corporation, stockholder's rights were derivative).

24

Plaintiffs allege that their claims may be brought directly by simply asserting that a mutual fund is "very different from a traditional corporation." (CAC ¶¶10, 202.) Plaintiffs allege that, when a cost is imposed on a traditional business corporation, that cost does not necessarily impact the market price of the corporation's shares. (CAC ¶ 203.) Plaintiffs allege that costs imposed on a mutual fund, on the other hand, "directly reduce the price at which the fund's shares are bought and sold, and do directly and immediately impact fund shareholders." (CAC ¶¶ 203-04.) Plaintiffs' allegations do not establish direct injury and their argument has consistently been rejected by courts.

More than thirty years ago, the Third Circuit addressed and rejected this very argument:

> The fundamental tenet of corporation law ... treats the corporate body as an entity – indeed, as a person – separate and distinct from those who own shares of its stock. It is this concept of separate identities which is the basis for distinguishing the rights, responsibilities, and immunities of shareholders from the rights and obligations of the corporation.... That the worth of a share of appellee's stock is directly proportionate to the value of a mutual fund's net assets is insufficient to destroy these separate identities, to alter the basic shareholder-corporation relationship, and to thereby confer upon appellee legal rights peculiar to the corporation.

*Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970); *see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig. (Global Tech. Fund)*, 272 F. Supp. 2d 243, 260 (S.D.N.Y. 2003) (dismissing directly pleaded Section 34(b) claim on the ground that claim is derivative where the injury plaintiff claims to have suffered personally was attributable to her ownership of mutual fund shares, the value of which was diminished when the fund's net asset value was reduced by alleged wrongdoing).

Moreover, as previously noted, Plaintiffs' counsel in the present case has sued several other mutual fund families asserting claims virtually identical to those raised here,

unsuccessfully arguing that the claims are direct. *See Davis*, 2005 WL 2509732, at *4 (dismissing claims for failure to plead them derivatively, where plaintiffs "were only injured [indirectly] – by having their shares diluted as the funds' net asset value decreased – because the fees were paid from the assets of the funds"); *Franklin*, 388 F. Supp. 2d at 463-64 (rejecting argument that injury resulting from these payments was direct because of unique structure of a mutual fund and dismissing, under Massachusetts law, ICA claims and state law claims for failure to plead them derivatively "[b]ecause the excessive fees and charges reduced the net asset value of the funds and, in turn, reduced the net asset per share value, the plaintiffs did not sustain an injury distinct from that suffered by the funds"); *Eaton Vance*, 380 F. Supp. 2d at 234 (dismissing, under Massachusetts law, claims brought pursuant to Sections 34(b), 36(a), and 48(a) of the ICA and state law claims for failure to plead such claims derivatively because "[t]he shareholders ... did not pay the fees at issue directly, but were affected indirectly because the fees were paid out of fund assets.").

In an effort to salvage their tenuous claims, Plaintiffs likely will rely on *Strigliabotti v. Franklin Resources, Inc.*, No. V 04-00883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) to support their oft rejected argument. In *Strigliabotti*, the court stated that certain state law claims were direct because of the "unique structure of mutual funds" whereby "the financial harm from overcharges is harm to the individual investors, who own the Funds' assets and bear its expenses directly on a pro rata basis." *Strigliabotti*, 2005 WL 645529, at *7-8. For several reasons, this decision should be afforded no weight:

- *First, Strigliabotti's* reasoning has been rejected by several cases decided *since Strigliabotti. See Hogan*, 2005 WL 1949476, at *4 (explaining that *Strigliabotti's* "reasoning is at odds with the overwhelming majority of courts who have

addressed this issue"); *Stegall*, 394 F. Supp. 2d at 365 (finding *Strigliabotti* "unpersuasive").[17]

- *Second*, the reasoning of *Strigliabotti* is inconsistent with compelling prior authority. *See, e.g., Kauffman*, 434 F.2d at 733.

- *Third*, *Strigliabotti*'s conclusion that shareholders suffered direct injury failed to cite any supporting authority. *See Hogan*, 2005 WL 1949476, at *4 ("*Strigliabotti* does not cite any applicable case law in reaching its holding.").

- *Fourth*, if followed, *Strigliabotti*'s reasoning would lead to the untenable result that all claims alleging a depletion of mutual fund assets may be brought directly by shareholders for their own benefit. This result would be inconsistent with years of precedent to the contrary and with the Supreme Court's admonition that whether a claim by a mutual fund shareholder is derivative or direct turns on the law of the state of the fund's organization, not by a structural characteristic that is common to all open-end mutual funds.

Accordingly, Plaintiffs' first through fourth and sixth through eighth counts may not stand as direct claims, and should be dismissed.

## V.    PLAINTIFFS' FIFTH COUNT UNDER SECTIONS 206 AND 215 OF THE IAA, ALTHOUGH BROUGHT DERIVATIVELY, MUST BE DISMISSED FOR FAILURE TO MAKE DEMAND

Although Plaintiffs bring their fifth count under Sections 206 and 215 of the IAA[18] derivatively, that claim must be dismissed because Plaintiffs failed to make a pre-suit demand upon the Funds' boards of trustees.[19]    Three decisions within this District in 2005 have

---

[17]    *See also Hamilton*, 2005 WL 2660356, at *4 (applying Massachusetts law, holding that plaintiffs' common law claims were derivative because "[a]nalytically, … Plaintiffs seek essentially to recover for the diminution of assets to the Funds"); *Hogan*, 2005 WL 1949476, at *4 ("[T]he court is unpersuaded that the distinction between mutual fund ownership and stock ownership described by Plaintiffs is sufficient to transform their claims from derivative to direct…. [T]he misconduct … did not injure Plaintiffs or any other Fundholders directly, but instead injured them indirectly as a result of their investment in the Funds.").

[18]    The Supreme Court has held that no private right of action exists under Section 206 of the IAA. *See Transamerica Mortgage Advisors, Inc.*, 444 U.S. at 24.

[19]    The claim also should be dismissed because Plaintiffs failed to allege that the advisory contracts were unlawful. *See Lord Abbett*, 385 F. Supp. 2d at 490 (dismissing claim under Sections 206 and 215 of IAA because the IAA provides a remedy "only for allegedly unlawful contracts not, allegedly unlawful transactions made pursuant to lawful contracts").    Additionally, Plaintiffs'

reaffirmed the necessity for a pre-suit demand in derivative actions, and have dismissed such claims where demand was not made upon the fund's trustees. *See In re Columbia Entities Litig.*, No. 04-11704-REK, slip op. at 18-19; *Yameen v. Eaton Vance Distributors, Inc.*, 394 F. Supp. 2d 350, 352 n.1 (D. Mass. 2005); *ING Principal Prot. Funds Derivative Litig.*, 369 F. Supp. 2d 163, 171 (D. Mass. 2005).

The requirements for making demand on the trustees of the funds and the circumstances under which demand may be excused, if any, are determined with reference to the substantive law of the particular fund's state of organization – here, Massachusetts and Delaware.[20] *See Kamen v. Kemper Fin. Svcs., Inc.*, 500 U.S. 90, 108-09 (1991). Unless a shareholder has satisfied applicable state-law requirements, he or she may not intrude upon the board's province by pursuing a lawsuit for alleged corporate losses. *See Harhen v. Brown*, 431 Mass. 838, 844 (2000) ("As a basic principle of corporate governance, the board of directors or majority of shareholders should set the corporation's business policy, including the decision whether to pursue a lawsuit."); *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) ("[D]emand requirement is a recognition of the fundamental precept that directors manage the business and affairs of corporations.").

Plaintiffs, having not made the requisite demand, face a heightened fact pleading standard under Rule 23.1. (CAC ¶ 210.) Plaintiffs must allege "with particularity" facts showing that under applicable state law demand is either not required or excused. The First Circuit takes a

---

claims under IAA Sections 206 and 215 are subject to a three-year limitations period and must be dismissed to the extent these claims are based on conduct that occurred before July 19, 2001 – more than three years before the Original Complaint was filed on July 19, 2004.

[20]     Of the 28 Funds Plaintiffs purport to own, 27 are organized as Massachusetts business trusts, and 1 as a Delaware statutory trust.

particularly "strict view" of these pleading requirements under Rule 23.1. *See Untermeyer v. Fidelity Daily Income Trust*, 580 F.2d 22, 23 (1st Cir. 1978).

A.    **Plaintiffs' Failure To Make Demand, Or To Adequately Plead Demand Futility, Requires Dismissal Of The Derivative Claims Brought On Behalf Of The Funds Organized Under Massachusetts Law.**

1.    Plaintiffs Failed to Make Demand On The Boards Of Trustees Of The Funds Organized Under Massachusetts Law

Applying these principles here, the substantive law of Massachusetts requires Plaintiffs to have made demand before bringing their derivative claims. *See* Mass. Gen. Laws ch. 156D, § 7.42. Under Massachusetts law, effective *July 1, 2004*, excuse from demand has been abolished and demand is universally required prior to the commencement of a derivative suit on behalf of a Massachusetts corporation. *See id.* There are no exceptions to the demand requirement. *See ING*, 369 F. Supp. 2d at 170 ("[D]emand must be made prior to the commencement of every derivative case, whether or not the directors are independent with respect to the subject matter of the demand. . . . No shareholder may commence a derivative proceeding until . . . a written demand has been made upon the corporation to take suitable action."); Mass. Gen. Laws ch. 156D, § 7.42 and cmt. ("Section 7.42 requires a written demand on the corporation in all cases").

This universal demand statute applies equally to business trusts as to corporations. *See Yameen*, 394 F. Supp. 2d at 352 n.1 (applying universal demand requirement to derivative claim brought on behalf of mutual fund organized as Massachusetts business trust); *Stegall*, 394 F. Supp. 2d at 367 (noting that universal demand requirement applies to derivative claims brought on behalf of mutual fund organized as Massachusetts business trust); *ING*, 369 F. Supp. 2d at 171 (applying the universal demand requirement to Massachusetts business trusts and rejecting

plaintiffs' argument that the universal demand requirement applies to derivative suits brought on behalf of corporations).[21]

Plaintiffs filed the *Gilliam* lawsuit (the first of the five lawsuits that have been consolidated into the present case) on *July 19, 2004*, more than two weeks *after* the effective date of the universal demand requirement, and without first making demand on the trustees of the Funds. (CAC ¶ 210.) Accordingly, with respect to the funds organized under Massachusetts law, Plaintiffs' failure to make demand prior to the filing of this lawsuit requires dismissal of all derivative claims – both the claim asserted derivatively in Count V and those claims that, though pleaded directly, are derivative as a matter of law (Counts I, II, IV, and VI through VII). *See* Mass. Gen. Laws ch. 156D, § 7.42; *Yameen*, 394 F. Supp. 2d at 352 n.1 (finding derivative claim fails because "[i]n order to bring a derivative action in Massachusetts, a plaintiff must first make demand upon the board of directors or trustees. This requirement applies universally to all suits brought after July 1, 2004"); *Stegall*, 394 F. Supp. 2d at 367 (noting that dismissal is appropriate in derivative claims for failure to make demand); *ING*, 369 F. Supp. 2d at 171 (dismissing derivative claims for failure to make pre-suit demand).

> 2.  Even If Massachusetts' Universal Demand Statute Did Not Apply, Plaintiffs Failed To Adequately Plead Demand Futility

Even if Massachusetts' universal demand statute did not apply here, Plaintiffs' derivative claims nevertheless must be dismissed as to the funds organized under Massachusetts law

---

[21]   *ING, Stegall, Yameen,* and *Columbia* are in accord with the longstanding practice of courts holding that rules governing suits involving corporations also apply to suits involving Massachusetts business trusts.  *See Green,* 186 F.R.D. at 489 n.2 ("Courts applying Massachusetts law to shareholder suits against business trusts have uniformly required the shareholder to follow Massachusetts law regarding derivative suits."); *Clairdale Enters., Inc. v. C.I. Realty Investors,* 423 F. Supp. 257, 261 (S.D.N.Y. 1976) (applying Massachusetts' demand requirement to derivative suits against Massachusetts business trusts); *Greenspun v. Lindley,* 330 N.E.2d 79, 81 (N.Y. 1975) (treating shareholders of Massachusetts business trust as shareholders of Massachusetts corporation in enforcing Massachusetts' demand requirement).

because Plaintiffs have failed to plead that demand should be excused. Under Massachusetts law applicable prior to July 1, 2004, pre-suit demand may be excused as futile only if plaintiff alleges facts sufficient to show that a majority of the board is "interested" in the outcome of the lawsuit and therefore could not have fairly evaluated a pre-suit demand. *See Harhen v. Brown*, 431 Mass. 838, 842-44 (2000). Moreover, in pleading excuse from demand, Plaintiffs must satisfy Rule 23.1's heightened pleading standard. *See Heit v. Baird*, 567 F.2d 1157, 1160 (1st Cir. 1977) (demand requirement is "vigorously enforced"); *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 263 (1st Cir. 1973) (Rule 23.1 is an "exceptional rule of pleading" and for a shareholder to place herself in charge of conducting the affairs of the company "without first affording the directors the opportunity to occupy their normal status, a stockholder must show that [her] case is exceptional").

As a threshold matter, Massachusetts has a disinterested trustee statute, which provides that "[a] trustee of a trust who with respect to the trust is not an interested person, as defined in [the ICA], shall be deemed to be independent and disinterested when making any determination or taking any action as a trustee." Mass. Gen. Laws ch. 182, § 2B. As explained *infra* at Section V.B., Plaintiffs have alleged that a majority of the trustees of the Funds were "non-interested" under the ICA, and, therefore, with respect to the funds organized under Massachusetts law, the "non-interested" trustees are disinterested and independent for all purposes, including the consideration of a shareholder demand. Accordingly, demand is not excused under Massachusetts law.

Finally, even putting aside the Massachusetts disinterested trustee statute, for the reasons set forth *infra* at Section V.B., Plaintiffs' conclusory and boilerplate allegations of trustee interest are insufficient to plead demand futility under Massachusetts law.

**B.    Plaintiffs' Failure To Adequately Plead Demand Futility Requires Dismissal Of The Derivative Claims Brought On Behalf Of The Funds Organized Under Delaware Law.**

Because Plaintiffs do not plead that they have made demand on any of the trustees of the Funds prior to instituting this lawsuit, their derivative claims on behalf of the Funds organized under Delaware law may be maintained only if they plead specific facts sufficient to raise a reasonable doubt that a majority of the trustees are disinterested and independent. (CAC ¶ 210); *see Brehm v. Eisner*, 764 A.2d 244, 256-57 (Del. 2000); *Aronson*, 473 A.2d at 814.[22]  Under Delaware law, futility must be shown by pleading "particularized facts." *Aronson*, 473 A.2d at 814.

Plaintiffs' allegations of demand futility are wholly insufficient.

1.    That The Independent Trustees Are Not "Interested Persons" Under The ICA Forecloses Plaintiffs' Demand Futility Allegations

Like Massachusetts, Delaware has a disinterested trustee statute.  Under Delaware law, a mutual fund trustee who is not an "interested person" for purposes of the ICA shall be deemed "independent and disinterested for all purposes." 12 Del. Code § 3801(h).  As required by the ICA, a majority of the trustees of the Funds are non-interested persons.  *See* 15 U.S.C. § 80a-10(a).  Plaintiffs do not challenge this.  In fact, Plaintiffs alleged in their initial complaint that a majority of the trustees, including defendants Cook, Cox, Gates, Kirk, Knowles, Lautenbach, Mann, McCoy, Stavropolous, Heilmeier, McDonough, and Williams, were "non-interested"

---

[22]    Under Delaware law, demand is excused as futile: (1) "under the particularized facts alleged, a reasonable doubt is created that ... the directors are disinterested and independent" or (2) "the pleading creates a reasonable doubt that the challenged transaction was otherwise the product of a valid business judgment." *Brehm*, 746 A.2d at 256 (internal quotation marks omitted). Here, the only business judgment allegation plaintiffs make is their bald assertion that the Defendants' conduct "could not have been an exercise of good faith business judgment." (CAC ¶ 213.) This is wholly insufficient to satisfy Delaware's demand futility inquiry. Plaintiffs' demand futility allegations center instead on the trustees' alleged interestedness and lack of independence. (CAC ¶¶ 210-18.)

trustees of the Funds. (Original Compl., filed July 19, 2004 ¶¶ 28-39.) Because a majority of the trustees are not "interested persons" under the ICA, they are independent and disinterested for all purposes, including the consideration of a shareholder demand. For this reason alone, the Court should reject Plaintiffs' attempt to plead demand futility.

 2. Plaintiffs' Boilerplate Allegations Of Demand Futility Are Insufficient As A Matter of Law

Even putting the Delaware disinterested trustee statute aside, Plaintiffs' attempt to plead demand futility must fail because they assert only generic, boilerplate allegations that court after court has rejected as insufficient as a matter of law. Specifically, Plaintiffs allege that demand is futile because the trustees: (1) were appointed by and serve at the pleasure of, and were controlled by and beholden to, the investment adviser defendants; (2) participated in, and allowed to continue, the conduct at issue; (3) received substantial compensation for their service as trustees of multiple Funds; (4) were self-interested in trying to grow the assets of the Funds to preserve their board positions; and (5) have a conflict of interest because they would have to sue themselves and those with whom they have close business and personal relationships. (CAC ¶¶ 210-18.)

As both historical and very recent case law instructs, each of these allegations is insufficient to show demand futility. Indeed, as discussed below, several courts in virtually identical cases have recently rejected the very same demand futility allegations that are advanced by Plaintiffs here.

*First*, the allegation that the trustees were appointed by and serve at the pleasure of, and were controlled by and beholden to, FMRCo and FMRC is insufficient to plead demand futility. (CAC ¶ 211.) For one thing, Plaintiffs' assertion is inconsistent with their acknowledgment that the shareholders (and not the investment adviser) "have a right to vote out the Trustees." (CAC ¶

33

211.)  In any event, even nomination by a controlling shareholder does not make a trustee interested and excuse demand. *See Beam v. Stewart*, 845 A.2d 1040, 1054 n.37 (Del. 2004) ("A stockholder's control of a corporation does not excuse pre-suit demand on the board without particularized allegations of relationships between the directors and the controlling stockholder demonstrating that the directors are beholden to the stockholder"); *see also AllianceBernstein*, 2005 WL 2677753, at *8 (stating "[m]ere appointment by the 'controlling' agent, however, has routinely been rejected by both state and federal courts as inadequate evidence of futility"); *Eaton Vance*, 380 F. Supp. 2d at 240 (holding that, "[t]he fact that a defendant appointed a board member is insufficient to establish that the board member is interested, even if the position provides the board member with compensation"); *Davis*, 2005 WL 2509732, at *4 (finding appointment by adviser insufficient to excuse demand); *Franklin*, 388 F. Supp. 2d at 470 (same).

*Second*, courts routinely reject the futility argument that the trustees knowingly participated in the conduct complained of and allowed conduct that allegedly prejudiced the Funds and investors. (CAC ¶ 213-14.) *See Kauffman*, 479 F.2d at 265 ("Where mere approval of the corporate action, absent self-interest or some other indication of bias, is the sole basis for establishing the directors' 'wrongdoing' and hence for excusing demand on them, plaintiff's suit should ordinarily be dismissed"); *Grossman v. Johnson*, 89 F.R.D. 656, 659 (D. Mass. 1981), *aff'd*, 674 F.2d 115 (1st Cir. 1982) ("[M]ere approval by directors of the alleged unlawful action does not constitute sufficient participation in that conduct to excuse demand upon them."); *ING*, 369 F. Supp. 2d at 172 ("Simply because the Board of Trustees approved the fee contracts at issue does not render the independent trustees 'interested'."); *AllianceBernstein*, 2005 WL 2677753, at *8 (holding that "director acquiescence" is "insufficient evidence of futility"); *Davis*, 2005 WL 2509732, at *4 (holding that director approval of challenged conduct

34

insufficient to show futility); *Franklin*, 388 F. Supp. 2d at 470 ("[M]ere approval of the challenged transactions, however, is not enough to excuse the failure to make a demand.").

*Third*, Plaintiffs' allegation of a lack of independence based on the trustees' compensation for service on multiple fund boards does not establish demand futility. (CAC ¶¶ 211, 216-17.) *See* 12 Del. Code § 3801(h) (the receipt by the trustees of compensation for serving as independent trustees and for serving as trustees of more than one fund does not affect their status as independent trustees); *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988) (holding allegation that directors were paid for their services as directors does not demonstrate a financial interest on the part of directors to excuse demand); *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 328 (4th Cir. 2001) (noting that overlapping service on 327 boards for annual compensation of $273,500 has been deemed not to excuse demand, "neither the ICA nor the SEC proscribes the use of multi-board membership with mutual fund complexes" and "membership on the boards of several funds within a mutual fund complex is the prevailing practice in the industry [and is] neither prohibited nor uncommon"); *Franklin*, 388 F. Supp. 2d at 470 (holding annual compensation ranging from $145,000 to $372,941 for service on over one hundred boards does not show interestedness to excuse demand).

*Fourth*, courts reject Plaintiffs' futility allegation that the trustees were "self-interested" in approving the allegedly improper payments "in order to increase the assets in the Funds" and thus to preserve their positions of control and compensation. (CAC ¶¶ 215, 217.) *See, e.g.,* *Eaton Vance*, 380 F. Supp. 2d at 240 (finding directors' interest in mutual fund growth and preservation of board position insufficient to establish futility); *Davis*, 2005 WL 2509732, at *4 (same).

35

*Finally,* courts have routinely rejected Plaintiffs' allegation that demand is futile because "the trustee defendants would be required to sue themselves and their fellow trustees with whom they have had close business and personal relationships for nearly years." (CAC ¶ 218.) *See Eaton Vance,* 380 F. Supp. 2d at 240 (holding that "the threat of personal liability for approving a transaction and the possibility of being sued individually is insufficient to demonstrate that a board is interested for purposes of excusing the demand requirement"); *Davis,* 2005 WL 2509732, at *4 (finding allegation that directors would be required to sue themselves and fellow directors insufficient to show futility); *Brehm,* 746 A.2d at 257 n.34 ("It is no answer to say that demand is necessarily futile because ... the directors would have to sue themselves, thereby placing the conduct of litigation in hostile hands.") (internal quotation marks and citations omitted).[23]

## VI. PLAINTIFFS LACK STANDING TO SUE ON BEHALF OF FUNDS IN WHICH THEY DO NOT OWN SHARES

Plaintiffs purport to sue on behalf of 206 Fidelity Funds. (CAC ¶ 1; Exhibit A.)  In the aggregate, however, Plaintiffs claim to own shares in only 28 of these funds. (CAC ¶¶ 19-37.) Plaintiffs lack standing to sue on behalf of funds in which they are not shareholders and their claims with respect to these funds should be dismissed. *See e.g., In re Columbia Entities Litig.,* No. 04-11704-REK, slip op. at 13, 15, 20; *Stegall,* 394 F. Supp. 2d at 362-63; *In re Eaton Vance Corp. Sec. Litig.,* 219 F.R.D. 38, 41 (D. Mass. 2003); *see also  AllianceBernstein,* 2005 WL 2677753, at *9-10.

Standing is grounded in Article III, Section 2, of the Constitution.  To have standing, Article III requires that a plaintiff (1) have a personal injury, (2) fairly traceable to the

---

[23]    To the extent that Counts I-IV and VI-VIII are derivative in nature (*see supra,* Section IV), Plaintiffs' claims also fail for the reason discussed herein, as they have neither made demand upon the Fund's Trustees, nor have they sufficiently pleaded futility.

defendants' allegedly unlawful conduct, and (3) likely to be addressed by the requested relief. *See Allen v. Wright*, 468 U.S. 737, 751 (1984); *accord Raines v. Byrd*, 521 U.S. 811, 818-19 (1997); *Stegall*, 394 F. Supp. 2d at 361-62.

These constitutional requirements ensure that a plaintiff has suffered an injury and has an interest in the outcome of the case. *See Stegall*, 394 F. Supp. 2d at 362 (stating that "[t]he prudential aspects of standing include 'the general prohibition on a litigant's raising another person's legal rights'") (internal citations omitted); *Ensign Corp., S.A. v. Interlogic Trace, Inc.*, No. 90 Civ. 3497 LBS, 1990 WL 213085, at *2 (S.D.N.Y. Dec. 19, 1990) (setting forth the contemporaneous ownership requirement, which "insures that derivative actions are brought by shareholders who have actually suffered injury and have an interest in the outcome of the case").

As courts – including those within this District – have made clear, a plaintiff who does not own shares in a fund lacks standing to bring an action with respect to that fund. *See Kauffman*, 434 F.2d at 734-36 (refusing to allow mutual fund shareholder plaintiff to bring claims on behalf of 61 other similarly situated funds in which plaintiff did not hold shares); *In re Columbia Entities Litig.*, No. 04-11704-REK, slip op. at 15 (dismissing claims brought on behalf of funds in which plaintiff did not hold shares, noting that "[c]ourts in this circuit have held that ownership of shares in a limited number of defendant mutual funds is *not* sufficient to confer standing against all funds, regardless of the similarity of the alleged wrongful conduct") (emphasis supplied); *Stegall*, 394 F. Supp. 2d at 363 (refusing to allow plaintiff to "bootstrap claims arising out of investment decisions made in relation to other funds in which he was not a participant"); *In re Eaton Vance*, 219 F.R.D. at 41 (refusing to allow plaintiffs to proceed with a class action representing investors in two funds in which plaintiffs did not own shares).

In addition to constitutional standing requirements, Plaintiffs must also satisfy the express requirements of Rule 23.1 of the Rules and Section 36(b) with respect to their derivative claims (the one asserted derivatively (Count V) and the others that are derivative in nature (Counts I, II, IV and VI through VIII)). *See* Fed. R. Civ. P. 23.1 (requiring that in a derivative action brought by a shareholder to enforce the right of a corporation, the complaint must allege that the plaintiff was a shareholder of the corporation at the time of the transaction of which he or she complains); 15 U.S.C. § 80a-35(b) (the right of action created by Section 36(b) of the ICA is expressly restricted to claims brought by "*a security holder* of such registered investment company on behalf of such company").

Courts strictly construe these standing requirements. "'One who does not own shares in a corporation is not qualified to bring a derivative action' on its behalf." *Zucker v. AIM Advisors, Inc.*, 371 F. Supp. 2d 845, 850-51 (S.D. Tex. 2005) (quoting *Kauffman*, 434 F.2d at 735); *see also Dreyfus*, No. 04-0128, slip op. at 24 ("It is settled law that an investor does not have standing to bring a derivative action on behalf of mutual funds in which he has not invested, even if those funds are similarly situated."). As one court recently explained:

> This ownership requirement is necessary because standing to bring a derivative action on behalf of a corporation is justified only by the proprietary interest created by the shareholder relationship and the possible indirect benefits the nominal plaintiff may acquire *qua* stockholder of the corporation which is the real party in interest.

*Zucker*, 371 F. Supp. 2d at 851.

Here, none of the Plaintiffs is alleged to have been a shareholder during the relevant period for 178 of the 206 funds listed on Exhibit A to the Amended Complaint. Plaintiffs' claims on behalf of these Funds should be dismissed. *See Davis*, 2005 WL 2509732, at *3 n.4 (holding Rule 23.1 barred plaintiffs from asserting a derivative claim on behalf of fund in which none of the plaintiffs had purchased shares); *Dreyfus*, No. 04-0128, slip op. at 24 (finding that

"because [plaintiffs' breach of fiduciary duty claim under §§ 206 and 215 of the IAA] is brought derivatively, . . . it can only be asserted on behalf of the two [out of 155 named] funds that plaintiffs own."); *Zucker*, 371 F. Supp. 2d at 851 (dismissing state law derivative claims brought by plaintiff on behalf of fund in which he did not own shares for failure to meet Rule 23.1's shareholder ownership requirement); *Lieber v. Invesco Funds Group*, 371 F. Supp. 2d 852, 857-58 (S.D. Tex. 2005) (dismissing state law claims brought by plaintiff on half of 21 funds in which he did not own shares for failure to meet Rule 23.1's shareholder ownership requirement, even though ten of the disputed funds were part of two trusts that also contained two funds in which he did own shares).

Plaintiffs also lack standing to bring their claim under Section 36(b) of the ICA (Count III) on behalf of the 178 funds in which they do not own shares because Plaintiffs are not "security holder[s]" of those funds. *See* 15 U.S.C. § 80a-35(b). Accordingly, Plaintiffs' Section 36(b) claim should be dismissed as to those 178 funds. *See AllianceBernstein*, 2005 WL 2677753, at *10 ("[C]onclusion [that plaintiffs cannot establish injuries caused by advisers of funds in which they have not purchased shares, necessary to make out § 36(b) claim,] is strengthened by a literal reading of the text of Section 36(b), which states that an action may only be brought ... 'by a *security holder of such registered investment company*'") (emphasis in original); *Green*, 186 F.R.D. at 493 ("[P]laintiffs do not have standing to bring a Section 36(b) claim on behalf of investment companies other than the Funds in which they are security holders.").

Plaintiffs seek to pursue class and derivative claims relating to mutual funds in which they do not own shares, and in which they hold no beneficial interest. Having no stake

whatsoever in those funds or any potential recovery as to those funds, Plaintiffs lack standing to pursue these claims and as such, these claims should be dismissed.

## VII.    SLUSA PREEMPTS PLAINTIFFS' STATE LAW CLAIMS, AND THOSE CLAIMS MUST BE DISMISSED

The Securities Litigation Uniform Standards Act ("SLUSA") preempts and requires dismissal of Counts VI-VIII for breach of fiduciary duty and unjust enrichment under state law.[24] Indeed, several very recent district court cases have held that SLUSA applies to state law claims very similar to those asserted by Plaintiffs here.[25]

After determining that meritless and abusive private lawsuits were harming the nation's securities markets, Congress enacted the Private Securities Litigation Reform Act (the "PSLRA") in 1995 to impose various procedural and substantive restrictions on private securities suits in federal court, including heightened pleading requirements, more rigorous standards for class representation, and strict statutes of limitations. Seeking to avoid the PSLRA's restrictions, securities class action plaintiffs began to frame their allegations of securities fraud as state-law causes of action and pursue relief in state court. Congress enacted SLUSA to end this "federal flight" phenomenon and to ensure that national, federal standards would be applied to publicly traded securities. *See Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107-08 (2d Cir. 2001); *see also Cape Ann Investors LLC v. Lepone*, 296 F. Supp. 2d 4, 10 (D. Mass. 2003).

To accomplish this goal, SLUSA preempts and requires dismissal of any state-law claim that meets five criteria: (1) the lawsuit is a "covered class action"; (2) the claim is based on state law; (3) the claim concerns a "covered security"; (4) the plaintiff alleges a misrepresentation or

---

[24]    If the Court dismisses Plaintiffs' claims under federal law, it should decline to exercise supplemental jurisdiction over any remaining state-law claims. *See* 28 U.S.C. § 1367; *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

40

omission of material fact or a fraudulent scheme; and (5) the misrepresentation, omission, or fraudulent scheme is alleged to be "in connection with the purchase or sale of a covered security." *See* 15 U.S.C. § 78bb(f)(1)(A). Because Plaintiffs' state-law claims satisfy SLUSA's five criteria, they are preempted and must be dismissed.

There can be no question that Plaintiffs' state-law claims satisfy the first four criteria for SLUSA preemption.[26] Accordingly, Plaintiffs will likely pin their efforts to avoid SLUSA preemption on the "in connection with" requirement. Apparently believing that claims by "holders" of securities are not "in connection with the purchase or sale" of securities for purposes of SLUSA, Plaintiffs bring their state-law claims on behalf of a Subclass consisting of persons who held shares in Fidelity Funds throughout the Class Period and did not make any purchases during the Class Period. (CAC ¶¶ 219, 263-273.)

Plaintiffs' efforts to plead around SLUSA must be rejected, however, because allowing their state-law claims to proceed would be inconsistent with Congress's intent in enacting SLUSA. *See Kircher v. Putnam Funds Trust*, 403 F.3d 478, 484 (7th Cir. 2005) ("[P]laintiffs' effort to define non-purchaser-non-seller classes is designed to evade PSLRA in order to litigate a securities class action in state court . . . . It is the very sort of maneuver that SLUSA is designed to prevent."); *see also Disher v. Citigroup Global Mkts. Inc.*, 419 F.3d 649, 655 (7th Cir. 2005) (holding that plaintiff's claims satisfied SLUSA's "in connection with" requirement

---

[25]     *See Dreyfus*, No. 04-0128, slip op. at *27-31; *Lord Abbett*, 385 F. Supp. 2d at 483-85; *Franklin*, 388 F. Supp. 2d at 471-73; *Eaton Vance*, 380 F. Supp. 2d at 240-42.

[26]     *First*, according to the Complaint, this action is a "covered class action," *i.e.*, one in which "[d]amages are sought on behalf of more than 50 persons or prospective class members" and "questions of law or fact common" to the prospective class members predominate. 15 U.S.C. § 78bb(f)(5)(B)(i)(I); (*see also* CAC ¶¶ 220, 224.) *Second*, Plaintiffs' claims for breach of fiduciary duty and unjust enrichment are based on state law. (CAC ¶¶ 263-273.) *Third*, Plaintiffs' claims relate to "covered securities," which SLUSA defines to include mutual fund shares. *See* 15 U.S.C. § 77r(b)(2). *Fourth*, Plaintiffs allege misrepresentations and omissions of material fact and a scheme to defraud. (*See, e.g.*, CAC ¶¶ 2-10, 166-185.)

even though plaintiff sought to represent holders and specifically excluded any claims based on class members' purchases and sales of securities).[27]

Moreover, regardless of how Plaintiffs define the Subclass, their state-law claims satisfy SLUSA's "in connection with" requirement because the alleged fraudulent scheme necessarily involves purchases of securities. The essence of Plaintiffs' Amended Complaint is a purported "plan of charging excessive fees to induce brokers to steer investors into Fidelity Funds because the fees collected for managing and advising the Fidelity Funds . . . increased as the number of Fidelity Funds investors grew." (CAC ¶ 9.) Recent decisions have uniformly held that virtually identical allegations of customer steering satisfy SLUSA's "in connection with" requirement because the alleged scheme necessarily involves purchases of securities. *See Franklin*, 388 F. Supp. 2d at 472 ("Plaintiffs' state law claims allege that the defendants engaged in a fraudulent scheme, the purpose of which was to push investors into mutual funds in order to increase fees

---

[27]    The First Circuit has never addressed the issue, but this District and the Second, Eighth, and Eleventh Circuits have held that state-law claims brought on behalf of "holders" classes do not satisfy SLUSA's "in connection with" requirement. *See Meyer v. Putnam Int'l Voyager Fund*, 220 F.R.D. 127, 128-29 (D. Mass. 2004); *Cape Ann Investors*, 296 F. Supp. 2d at 11; *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 34-44 (2d Cir. 2005); *Green v. Ameritrade, Inc.*, 279 F.3d 590, 597-98 (8th Cir. 2002); *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1342-45 (11th Cir. 2002). Each of these courts erroneously relied on *Blue Chip Stamps v. Manor Drug Stores*, which held that individuals who neither purchased nor sold securities cannot pursue claims under Section 10(b) and Rule 10b-5 of the Exchange Act, both of which include "in connection with" language identical to that found in SLUSA. 421 U.S. 723, 749 (1975). Central to the Court's reasoning in *Blue Chip Stamps* was the fear that allowing claims by non-purchasers and non-sellers to proceed would lead to a proliferation of strike suits. *See id.* at 739-49. Accordingly, it seems counterintuitive to use *Blue Chip Stamps* to create an exception to SLUSA, which Congress enacted to reinforce its efforts, embodied in the PSLRA, to curb strike suits. *See Kircher*, 403 F.3d at 484 ("It would be more than a little strange if the Supreme Court's decision to block private litigation by non-traders became the opening by which that very litigation could be pursued under state law, despite the judgment of Congress (reflected in SLUSA) that securities class actions must proceed under federal securities law or not at all."). The Supreme Court recently granted certiorari in *Dabit* to resolve this issue. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, No. 04-1371, 2005 WL 873163, at *1 (U.S. Sept. 27, 2005); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, Pet. for Writ of Cert., No. 04-1371, 2005 WL 879506, at *1 (filed Apr. 11, 2005).

and other charges . . . . [T]he only way for this scheme to succeed was for investors to purchase securities . . . . Thus, defendants' fraudulent scheme necessarily 'coincided' with the purchase of securities.").[28]

## VIII.  DISMISSAL WITH PREJUDICE IS WARRANTED

The Amended Complaint should be dismissed *with prejudice* because Plaintiffs' counsel were on notice of the defects with their claims when they filed the Amended Complaint.

The court has discretion to dismiss a complaint with prejudice where plaintiffs were aware of the deficiencies with their claim, and they fail to cure those defects prior to filing an amended complaint. *See Krantz v. Prudential Inv. Fund Mgmt. LLC*, 305 F.3d 140, 144-45 (3d Cir. 2002) (affirming district court's denial of leave to replead where plaintiff was found to be on notice of the deficiencies in his complaint but chose not to resolve them when he filed an amended pleading); *Benak v. Alliance Capital Mgmt. L.P.*, No. Civ.A. 01-5734, 2004 WL 1459249, at *10 (D.N.J. Feb. 9, 2004) (dismissing action with prejudice where plaintiff was on notice of deficiencies but nevertheless failed to cure them).  Here, Plaintiff's counsel were clearly on notice of the defects with their claims prior to the filing of the Amended Complaint.  Many of the copy-cat actions brought by the same counsel alleging virtually identical claims already have been dismissed on the same grounds that are the subject of this motion, and at least four of these actions were dismissed *prior* to the filing of the Amended Complaint in this action.[29]  Plaintiffs' counsel cannot dispute that they were on notice of the decisions in these copy-cat actions prior to filing the Amended Complaint, and dismissal with prejudice is therefore appropriate.

---

[28]  *See also Dreyfus*, No. 04-0128, slip op. at *27-31; *Lord Abbett*, 385 F. Supp. 2d at 484; *Eaton Vance*, 380 F. Supp. 2d at 241; *Atencio v. Smith Barney, Citigroup Inc.*, No. 04 Civ. 5653, 2005 WL 267556, at *6 (S.D.N.Y. Feb. 2, 2005).

[29]  The four decisions on motions to dismiss in the copy-cat actions that were decided prior to October 3, 2005 (the date the Amended Complaint in this action was filed) were *Dreyfus*, No. 2:04CV128, slip op.; *Franklin*, 388 F. Supp. 2d 451; *Lord Abbett*, 385 F. Supp. 2d 451; and *Eaton Vance*, 380 F. Supp. 2d 222.

43

## CONCLUSION

For the foregoing reasons, Plaintiffs' Consolidated Amended Class Action Complaint should be dismissed in its entirety and with prejudice.

Dated:  December 5, 2005.

Respectfully submitted,

GOODWIN PROCTER LLP


/s/ James S. Dittmar
James S. Dittmar (BBO# 126320)
Roberto M. Braceras (BBO# 566816)
Stuart M. Glass (BBO# 641466)
Exchange Place
53 State Street
Boston, Massachusetts 02109
Tel: (617) 570-1000

MILBANK, TWEED, HADLEY &
MCCLOY LLP
James N. Benedict
Sean M. Murphy
C. Neil Gray
Robert R. Miller
Nicole B. Capuano
Andrew W. Robertson
One Chase Manhattan Plaza
New York, New York 10005
Tel: (212) 530-5000

*Attorneys for Defendants Fidelity Management
& Research Company, FMR Co., Inc., FMR
Corp., Fidelity Distributors Corporation,
Edward C. Johnson 3d, Abigail P. Johnson,
Peter S. Lynch, Laura B. Cronin, Robert L.
Reynolds and Robert C. Pozen*