

Slip Copy                                                                                                                         Page 1
Slip Copy, 2005 WL 2509732 (S.D.N.Y.)
**(Cite as: 2005 WL 2509732 (S.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re DAVIS SELECTED MUTUAL FUNDS
LITIGATION
**No. 04 Civ. 4186(MGC).**

Oct. 11, 2005.

*OPINION*

CEDARBAUM, J.

**\*1** Investors in several mutual funds commenced these consolidated actions asserting class claims under the Investment Company Act of 1940, 15 U.S.C. § 80a-1 *et seq.* ("ICA"), common law claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment, as well as a derivative claim under the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 *et seq.* ("IAA"). Plaintiffs sue Davis Selected Advisers, L.P., the investment adviser to the funds, Davis Selected Advisers-NY, Inc., the sub-adviser to the funds, Davis Investments, LLC, the general partner of the investment adviser, Davis Distributors, LLC, the funds' distributor and principal underwriter, and fifteen directors of the funds. Plaintiffs also name the mutual funds as nominal defendants. [FN1] With the exception of the claim brought under the IAA, plaintiffs seek to bring this action as a class action pursuant to Fed.R.Civ.P. 23(a) and (b)(3) on behalf of "all persons or entities who held shares, units, or like interests in any of the Davis/Selected Funds between June 3, 1999 and November 17, 2003, inclusive (the "Class Period"), and who were damaged thereby (the "Class")."

> FN1. The funds named as nominal defendants are Davis New York Venture Fund, Inc., Davis Series, Inc., Davis Opportunity Fund, Davis Financial Fund, Davis Real Estate Fund, Davis Appreciation & Income Fund, Davis Government Bond Fund, Davis Government Money Market Fund (the "Davis funds"), Selected American Shares, Inc., Selected Special Shares, Inc., Selected Capital Preservation

Trust, and Selected Daily Government Fund (the "Selected funds").

Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 8(a), 9(b), 12(b)(6), and 23.1. For the reasons that follow, defendants' motion is granted.

DISCUSSION

The following allegations are taken as true for the purpose of this motion. The complaint alleges that during the class period defendants improperly caused the Davis and Selected mutual funds to be charged excessive fees in order to pay brokerage firms to aggressively market the funds to new investors. The arrangements between defendants and the brokerages were known as "shelf space" arrangements, and took the form of direct cash payments, improper "soft dollar" commissions, [FN2] payments for luxury meals and travel, and the award of trading business on behalf of the funds. According to the complaint, the "shelf space" arrangements were not disclosed to investors in the public filings or prospectuses of the mutual funds. Although the funds had written plans for marketing and distribution expenses in accordance with Section 12(b) of the ICA and Securities and Exchange Commission Rule 12b-1, [FN3] these plans also did not disclose the "shelf space" arrangements. The complaint alleges that, while the assets of the funds increased during the class period as a result of defendants' conduct, investors in the funds were injured because the net asset value of the funds, which is the price at which investors can redeem their shares on any given day, decreased by 23.1 percent. Also during the class period, the expenses charged to the funds by defendants increased from 1.29 to 1.39 percent of average net assets.

> FN2. The term "soft dollars" refers to commissions paid to brokerage firms in excess of the execution price for services such as investment research. Although investment advisers are generally required to select the best possible execution price, section 28(e) of the Exchange Act permits advisers to include in brokerage commissions payment for specified services in addition to the execution price. *See* 15 U.S.C. 78bb(e)(1).

> FN3. Rule 12b-1 requires, *inter alia,* that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

payments by mutual funds for the distribution or marketing of their shares be made pursuant to a board-approved written plan "describing all material aspects of the proposed financing of distribution." 17 C.F.R. § 270 .12b-1. Rule 12b-1 further requires that the board of directors review, at least once every quarter, "a written report of the amounts so expended and the purposes for which such expenditures were made," and that the plan should be continued "only if the board of directors who vote to approve such implementation or continuation conclude, in the exercise of reasonable business judgment, and in light of their fiduciary duties under state law and under sections 36(a) and (b) of the [ICA] that there is a reasonable likelihood that the plan will benefit the company and its shareholders." *Id.*

The complaint further alleges that the "shelf space" arrangements gave rise to conflicts of interest which were not disclosed to investors. Specifically, defendants did not disclose that they may select brokers based not solely on the best interest of the funds' investors but also on the brokers' willingness to aggressively market the funds to new investors. In addition, the investment advisers to the funds, whose fees were calculated as a percentage of overall assets under management, had an incentive to seek to increase the size of the funds irrespective of the benefit to investors. The "shelf space" arrangements also created conflicts of interest for the brokerage firms that had pushed the funds on unwitting clients. According to the complaint, the SEC and the National Association of Securities Dealers have condemned "shelf-space" arrangements and have brought enforcement proceedings against brokerage firms for their role in accepting inducements from mutual funds to market their shares.

**\*2** The complaint also alleges that the director defendants failed to take reasonable steps to prevent the investment advisers from skimming the funds' assets. The directors allegedly failed to review the funds' Rule 12b-1 plans on a quarterly basis as required, and failed to terminate those plans when they were not reasonably likely to benefit investors. It is also alleged that the directors failed to regularly review the investment advisory agreements and allocation of brokerage business and commissions, contrary to representations made in the funds' public filings.

The complaint asserts nine claims. Count One asserts a class claim against the investment advisers and the director defendants for violation of Section 34(b) of the ICA, 15 U.S.C. § 80a-33(b). Counts Two and Three assert class claims against the funds' distributor, investment advisers, and directors for violation of Sections 36(a) and (b) of the ICA, 15 U.S.C. § 80a-35. Count Four asserts a class claim against the investment advisers, as control persons of the funds' distributor and directors, for violation of Section 48(a) of the ICA, 15 U.S.C. § 80a-47(a). Count Five asserts a derivative claim against the investment advisers under Section 215 of the IAA, 15 U.S.C. § 80b-15, for a violation of Section 206 of the IAA, 15 U.S.C. § 80b-6. Count Six asserts a class claim against the investment advisers for common law breach of fiduciary duty. Count Seven asserts a class claim against the director defendants for common law breach of fiduciary duty. Count Eight asserts a class claim against all defendants for aiding and abetting breach of fiduciary duty. Count Nine asserts a class claim against all defendants for unjust enrichment.

Defendants move to dismiss the complaint on several grounds. They argue that Counts One, Two, and Four should be dismissed because there are no private rights of action under Sections 34(b), 36(a), and 48(a) of the ICA. Defendants argue that Count Three should be dismissed because the complaint does not adequately allege that the funds were charged excessive fees by defendants. Defendants also argue that the derivative claim asserted in Count Five fails to allege the demand requirements of Fed.R.Civ.P. 23.1. In addition, defendants contend that Counts Six to Nine, while asserted as class claims, should have been brought derivatively, and fail to comply with Fed.R.Civ.P. 23.1.

In a thoughtful and persuasive opinion, my colleague Judge Koeltl recently dismissed a complaint filed by investors in the Eaton Vance mutual funds which contained substantially the same allegations as those made in this complaint. *See In re Eaton Vance Mutual Funds Fee Litig., 380 F.Supp.2d 222 (S.D.N.Y.2005).* Judge Koeltl held that there are no private rights of action under Sections 34(b), 36(a), and 48(a) of the ICA and dismissed the claims asserted under those provisions. I adopt Judge Koeltl's reasoning and accordingly dismiss Counts One, Two, and Four.

**\*3** I also agree with Judge Koeltl that allegations of "improper 12b-1 fees, soft dollar payments, and commissions to brokers are insufficient to allege a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

claim under 36(b), which addresses only the negotiation and enforcement of payment arrangements between investment advisers and funds, not whether investment advisers acted improperly in the use of the funds." *Eaton Vance,* 380 F.Supp.2d at 237. The complaint contains no allegations from which it can be inferred that the investment advisory fees paid to defendants were "so disproportionately large" that they bore "no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Id.* at 236 (quoting *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,* 694 F.2d 923, 928 (2d Cir.1982)). Accordingly, Count Three must be dismissed.

Count Five of the complaint, a derivative claim under the IAA, seeks rescission of the investment advisory contracts and recovery of past fees paid. Defendants move to dismiss this claim for failure to comply with Fed.R.Civ.P. 23.1.

Rule 23.1 requires that the complaint in a derivative action "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." In *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 108-109, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), the Supreme Court held that the requirements of demand for a derivative suit are determined by the law of the state of incorporation, in this case, Maryland law. [FN4]

> FN4. All funds but one are incorporated in Maryland. Although one Selected Fund is incorporated in Ohio, plaintiffs cannot assert a derivative claim on behalf of that fund. Under Rule 23.1, the complaint in a derivative suit must allege "that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains." Fed.R.Civ.P. 23.1. The complaint does not allege that any of the plaintiffs purchased shares in the Selected funds. Thus, none of the plaintiffs can assert a derivative claim on behalf of any of the Selected funds, including the fund incorporated in Ohio.

Plaintiffs acknowledge that they never made a demand on the boards of the funds, but contend that the complaint adequately pleads the futility of demand by alleging that (1) several of the directors were appointed by and serve at the pleasure of the investment adviser, (2) the directors have approved or failed to cure the wrongdoing, (3) the directors had an interest in the wrongdoing since it enhanced the size and prospects of the funds and thus the likelihood that defendants would continue to serve as directors, (4) the directors received annual compensation ranging from $62,000 to $99,300 for their services on the board, and (5) the directors would be required to sue themselves and their fellow directors. Under Maryland law, these allegations are insufficient to excuse demand.

Maryland's requirements for demand futility are set forth in *Werbowsky v. Collomb,* 362 Md. 581, 766 A.2d 123 (2001). In *Werbowsky,* the Supreme Court of Maryland noted that demand futility is:

> a very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

 ***4** *Id.* at 144. After acknowledging a widespread trend toward requiring demand in all cases, the *Werbowsky* Court chose to "adhere, for the time being, to the futility exception," but emphasized that the exception must be narrowly construed because it "essentially eliminates any chance at meaningful pre-litigation alternative dispute resolution." *Id.; see also Scalisi v. Fund Asset Mgmt., L.P.,* 380 F.3d 133, 141 (2d Cir.2004) (noting the *Werbowsky* Court's "insistence that the [demand] requirement is rarely excused on grounds of futility."). Under Maryland law, the Court observed, demand is not excused "simply because a majority of the directors approved or participated in some way in the challenged transaction or decision, or on the basis of generalized or speculative allegations that they are conflicted or are controlled by other conflicted persons, or because they are paid well for their services as directors, were chosen as directors at the behest of controlling stockholders, or would be hostile to the action." *Werbowsky,* 766 A.2d at 143-144; *see also Scalisi,* 380 F.3d at 140 (demand not excused under Maryland law where directors of mutual funds were alleged to have been appointed by the investment adviser to the funds and to have received compensation for their service on the board). Thus, plaintiffs' allegations that the director defendants were appointed by the investment adviser, had approved the challenged conduct, or had a financial

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                                    Page 4
Slip Copy, 2005 WL 2509732 (S.D.N.Y.)
**(Cite as: 2005 WL 2509732 (S.D.N.Y.))**

interest in sitting on the board and in increasing the size of the funds, are insufficient to excuse demand under Maryland Law. Count Five is therefore dismissed.

Counts Six to Nine are brought under state law. Defendants contend that these causes of action should have been brought as derivative as opposed to direct claims. Both sides agree that a claim may only be brought directly by a shareholder in circumstances in which the shareholder's injury is "distinct" from that suffered by the corporate entity. *See Strougo v. Bassini,* 282 F.3d 162, 171 (2d Cir.2002) ("In deciding whether a shareholder may bring a direct suit, the question the Maryland courts ask is not whether the shareholder suffered injury; if a corporation is injured those who own the corporation are injured too. The inquiry, instead, is whether the shareholders' injury is 'distinct' from that suffered by the corporation."). [FN5]

> FN5. Plaintiffs erroneously argue that they can assert class claims on behalf of investors in the Selected mutual funds, in which they held no shares. From this they suggest that the law of Ohio, where one Selected fund is incorporated, governs whether claims asserted on behalf of investors in that fund are direct or derivative. In any event, Ohio law is the same as Maryland law on this issue. *See Crosby v. Beam,* 47 Ohio St.3d 105, 548 N.E.2d 217, 219 (1989) ("[I]f the complaining shareholder is injured in a way that is separate and distinct from an injury to the corporation, then the complaining shareholder has a direct action.").

The gravamen of plaintiffs' complaint is that defendants used fees paid by the funds to compensate brokerage firms for steering new investors to the funds, and that the investment advisers, whose fees were calculated as a percentage of overall assets under management, benefited from the resulting increase in the funds' assets. As Judge Koeltl observed, "the injury asserted--the misuse of [fund] assets to provide excessive compensation to brokers, improper 12b-1 plans, and soft dollar compensation to brokers--is an injury to the [funds] that adversely affects the plaintiffs only indirectly through their status as investors in the [funds.]" *Eaton Vance,* 380 F.Supp.2d at 235. Plaintiffs did not directly pay the fees at issue. They were only injured--by having their shares diluted as the funds' net asset value decreased--because the fees were paid from the assets of the funds. *See id.; see also Strougo,* 282 F.3d at 174 ("Underwriter fees, advisory fees, and other transaction costs incurred by a corporation decrease share price primarily because they deplete the corporation's assets, precisely the type of injury to the corporation that can be redressed under Maryland law only through a suit brought on behalf of the corporation."); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 272 F.Supp.2d 243, 260 (S.D.N.Y.2003) (claim brought by mutual fund investor alleging that funds' net asset value declined as a result of improper investment and excessive investment advisory fees was derivative and could not be maintained directly by investor); *Green v. Nuveen,* 186 F.R.D. 486, 490 (N.D.Ill.1999) ("Diminution in the value of the common stock due to advisory fees paid by the Funds is an injury to the Funds, and any harm to the plaintiffs as common shareholders is derivative in nature."). Accordingly, claims arising from improper fees paid by the funds, which include Counts Six to Nine, must be brought derivatively in accordance with Fed.R.Civ.P. 23.1. Because the complaint fails to comply with Rule 23.1, Counts Six to Nine are dismissed.

CONCLUSION

**\*5** For the foregoing reasons, defendants' motion to dismiss the complaint is granted.

SO ORDERED.

Slip Copy, 2005 WL 2509732 (S.D.N.Y.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.