LEXSEE 2005 US DIST LEXIS 835

**MILES L. MITZNER, Plaintiff, v. REED HASTINGS, W. BARRY MCCARTHY, JR., JAY C. HOAG, A. ROBERT PISANO, MICHAEL RAMSAY and TIMOTHY HALEY, Defendants, and NETFLIX, INC. Nominal Defendant.**

No. C 04-3310 FMS

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2005 U.S. Dist. LEXIS 835

**January 14, 2005, Decided**

**DISPOSITION:** Defendant Netflix's Motion to Dismiss granted.

**COUNSEL:** [*1] For Miles L. Mitzner Derivateively on Behalf of Nominal Defendant, Netlix, Inc., Plaintiff: Tod I. Zuckerman, Law Office of Tod I. Zuckerman, San Francisco, CA; Stuart William Emmons, William B. Federman, Federman & Sherwood, Oklahoma City, OK.

For Reed Hastings, W. Barry McCarthy, Jr., Jay C. Hoag, Robert Pisano, Michael Ramsay, Timothy M. Haley, Netflix, Inc., Defendants: Cameron Powers Hoffman, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA.

**JUDGES:** FERN M. SMITH, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** FERN M. SMITH

**OPINION:**

ORDER ON NOMINAL DEFENDANT'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS

INTRODUCTION

Plaintiff Miles Mitzner ("Mitzner") filed a shareholder derivative action on behalf of nominal defendant Netflix, Inc. ("Netflix" or "the Company") against its CEO, CFO, and four outside directors (the "Individual Defendants"). The Company has filed a motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)* for failure to comply with the "demand" requirement of *Federal Rule of Civil Procedure 23.1*. The Individual Defendants have filed a motion to dismiss under *Rule 12(b)(6)* for failure to state a claim for breach of fiduciary duty, insider trading based on material [*2] confidential information, and contribution and indemnification. Having considered the pleadings and relevant authority, the Court GRANTS the Company's Motion to Dismiss and dismisses the Individual Defendants' Motion to Dismiss as moot.

BACKGROUND

Netflix, a Delaware corporation with its principal place of business in Los Gatos, California, is an online movie rental subscription service. Individual Defendants, citizens and residents of California, include the CEO and CFO of Netflix as well as four outside directors of Netflix. Plaintiff Mitzner is a citizen and resident of Oklahoma and a shareholder of Netflix. Mitzner claims that the Individual Defendants caused the Company's shares to trade at artificially inflated levels by issuing false and misleading statements in the time period between October 1, 2003 and July 15, 2004 (the "Relevant Period"). The allegedly false and misleading statements concerned the Company's business prospects and financial condition, and more specifically, the Company's rate of "churn," a metric relating to loss of subscribers.

During the Relevant Period, Netflix issued financial results for the third quarter of 2003, the fourth quarter of 2003, the [*3] first quarter of 2004, and the second quarter of 2004. The reports contained the following information, in relevant part:

> On October 15, 2003, the Company reported that it ended the third quarter of 2003 with a total of 1,291,000 subscribers, increasing from a total of 1,147,000 subscribers at the end of the second quarter of 2003. The Company also reported that it had acquired 282,000 new trial customers and that the churn rate was 5.2%.

On January 21, 2004, the Company reported that it ended the fourth quarter of 2003 with a total of 1,487,000 subscribers. The Company also reported that it had acquired 444,000 new trial customers and that the churn rate was 4.8%.

On April 15, 2004, the Company reported that it ended the first quarter of 2004 with a total of 1,932,000 subscribers. The Company also reported that it had acquired 760,000 new trial customers and that the churn rate was 4.7%.

On July 15, 2004, the Company reported that it ended the second quarter of 2004 with a total of 2,093,000 subscribers. The Company also reported that it had acquired 583,000 new trial customers and that the churn rate was 5.6%. In this report, the Company also provided data [*4] about subscriber cancellations that had not been provided in other reports. It reported 424,000 subscriber cancellations in the second quarter of 2004; 315,000 subscriber cancellations in the first quarter of 2004; and 232,000 subscriber cancellations in the second quarter of 2003.

On July 16, 2004, the day after the company issued its financial results for the second quarter of 2004, the share price of Netflix fell $ 8.98 per share, or 28.6%, to close at $ 23.02 per share. Subsequent to the July 15, 1004 announcement and the July 16, 2004 share price decline, various Netflix shareholder filed securities class action lawsuits alleging that Netflix and a number of its executives violated federal securities laws by failing to disclose the potential adverse effects of subscriber cancellations and by manipulating the calculation of customer churn. These actions (C-04-2978 FMS, C-04-3204 FMS, C-04-3233 FMS, C-04-3329 FMS, C-04-3770 FMS, C-04-3801 FMS, and C-04-3021 FMS) (the "Federal Class Actions") are currently pending before this Court.

In the present action, Mitzner claims that the Company and Individual Defendants improperly failed to provide information about subscriber cancellations [*5] in the financial reports submitted in the Relevant Period prior to July 15, 2004. Mitzner also alleges that the manner in which Netflix calculated churn was improper. Whereas Netflix calculated churn by dividing subscriber cancellations by the sum of subscribers at the beginning of the quarter plus new subscriber additions during the quarter, Mitzner contends that "actual churn" is calculated by dividing subscriber cancellations by the average number of customers during the quarter (beginning plus ending subscribers divided by two). Mitzner further claims that statements related to the rates of churn and the overall performance of the company made in these financial reports were false or misleading. For example, in the April 15, 2004 report, defendant Reed Hastings, CEO of Netflix, stated "Our strategy is paying off in terms of increased satisfaction, reduced churn, and faster growth."

Defendants contend that there were no false or misleading statements with respect to churn and subscriber cancellations. It states that the method of calculating churn was explained in a footnote on each quarterly report. Netflix also argues that while the number of subscriber cancellations was not [*6] included in the financial reports before July 15, 2004, this number could be calculated for each quarter using the numbers that were included in that quarter's financial reports (the number of subscribers at the beginning and end of each quarter, new subscriber additions, and the churn rate).

Mitzner's complaint asserts the following causes of action against the named officers and directors of Netflix: (1) breach of fiduciary duty by "failing in their oversight responsibilities" and "by making and/or permitting to be made material false and misleading statements"; (2) insider trading based on confidential information in violation of *California Corporation Code § 25402* and Delaware Law; and (3) contribution and indemnification based on the purported liability of Netflix in the Federal Class Actions.

Six Netflix officers and directors are named by plaintiff:

> Defendant Reed Hastings ("Hastings") is a founder of the Company and has served as the Company's CEO since September 1998 and its President since July 1999. Hastings has been chairman of the Board of Directors of the Company since its inception. According to the Company's 2004 proxy, Hastings owned beneficially 10.71% [*7] of the Company's outstanding shares as of March 19, 2004. During the Relevant Period, Hastings sold more than $ 12 million worth of common stock, all automatic and nondiscretionary sales made pursuant to a pre-existing trading plan.

> Defendant W. Barry McCarthy, Jr. ("McCarthy") has served as the Com-

pany's CFO since April 1999 and as its Secretary since May 1999.

Defendant Jay C. Hoag ("Hoag") is been on the Company's Board of Directors since June 1999. He is a general partner at Technology Crossover Ventures. According to the Company's 2004 proxy, Hastings owned beneficially 10.71% of the Company's outstanding shares as of March 19, 2004. During the Relevant Period, Hoag sold more than $ 4 million worth of common stock and Technology Crossover Ventures sold more than $ 65 million worth of common stock on November 5 and 6, 2003 and January 26, 2004.

Defendant A. Robert Pisano ("Pisano") is on the Company's Board of Directors. He sold about $ 2.5 million worth of common stock on January 23, 2004

Defendant Michael Ramsey ("Ramsey") has served on the Company's Board of Directors since May 2002. He is Chairman of the Board, CEO and President of TiVo, Inc. He sold about [*8] $ 500,000 worth of common stock on October 17, 2003.

Defendant Timothy M. Haley ("Haley") has served on the Company's Board of Directors since June 1998. He sold almost $ 95,000 worth of common stock on January 23, 2004.

Nominal Defendant Netflix and Individual Defendants filed separate motions to dismiss. Netflix argues that plaintiff's motion should be dismissed because he did not make a pre-litigation demand on the Company's board of directors and has not sufficiently pleaded demand futility as required by *Federal Rule of Civil Procedure 23.1*. Netflix also argues that plaintiff has not satisfied *Rule 23.1* requirements regarding verification of the complaint and allegations of continuous ownership of the stock over the time of the allegedly wrongful acts. Individual Defendants argue that plaintiff fails to state a claim for breach of fiduciary duty and insider trading based on material confidential information and that plaintiff's claim for contribution and indemnification is unripe and/or premature.

## LEGAL STANDARD

In considering a motion to dismiss under *Federal Rule of Civil Procedure Rule 12(b)(6)*, the court must take the material allegations of the complaint as true [*9] and construe them in the light most favorable to plaintiff. *See Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998)*. The court should dismiss a cause of action only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. The court, however, is "not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)*.

The Ninth Circuit has held that leave to amend should be granted unless the district court "determines that the pleading could not possibly be cured by the allegation of other facts." *United States v. Smithkline Beecham Clinical Labs., 245 F.3d 1048, 1052 (9th Cir. 2001)*, citing *Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)* (internal quotation marks and citations omitted). However, leave to amend need not be given if the plaintiff has repeatedly failed to cure deficiencies by previous amendments or if further amendments [*10] are likely to be futile. *Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990)*.

## DISCUSSION

Demand Futility

A shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile. *See Fed. R. Civ. P. 23.1*. In the present case, Mitzner concedes that he did not demand that Netflix's Board of Directors institute this action against the Individual Defendants, but Mitzner contends that the demand would have been futile because a majority -- at least four of the seven directors -- were incapable of making a disinterested and independent decision.

For the standards for determining whether a demand would be futile, a court turns to the law of the state of incorporation of the company. *Janas v. McCracken (in Re Silicon Graphics Sec. Litig.), 183 F.3d 970, 989-990 (9th Cir. 1999)*. In this instance, the state of incorporation is Delaware. To show futility under Delaware law, a plaintiff must allege particularized facts creating a reasonable doubt that (1) the directors are disinterested [*11] and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. *Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984)*. Where no specific board action is challenged, as in this case, the demand futility test is limited to the first prong of this test. *Rales v. Blasband, 634 A.2d 927, 933-934 (Del. 1993)*. Under the *Rales* standard, the court must determine whether plaintiffs particularized allega-

Case 1:04-cv-11600-NG   Document 110-10   Filed 12/07/2005   Page 4 of 6

Page 4
2005 U.S. Dist. LEXIS 835, *

tions "create a reasonable doubt that, as of the time the complaint was filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales at 934*.

On a motion to dismiss for failure to comply with the requirements of *Rule 23.1*, a court limits its consideration of the facts to the particularized facts alleged in the complaint. *Aronson, 473 A.2d at 813*. "A critical requirement of *Rule 23.1* is that the complaint must allege with particularity the reasons for demand excusal." *Rattner v. Bidzos, 2003 Del. Ch. LEXIS 103 (Del. Ch. 2003)*. Plaintiff's pleading burden is thus more onerous than that required [*12] to withstand an ordinary motion to dismiss. Conclusory "allegations of facts or law not supported by allegations of specific fact may not be taken as true." *Levine v. Smith, 591 A.2d 194, 207 (Del. 1991)*.

A. The Disinterest of the Board

The Court first examines whether plaintiff has created a reasonable doubt that a majority of the Netflix Board of Directors were disinterested. Plaintiff asserts that he has alleged with particularity facts demonstrating that a majority of Netflix Directors must be considered interested because they face a substantial likelihood of personal liability based on the claims in this derivative suit. A director is considered interested if he will be materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders. *Rales, 634 A.2d at 936*. The "mere threat" of personal liability in the derivative action does not render a director interested; however, a "substantial likelihood" of personal liability prevents a director from impartially considering a demand. *Id.* (citing *Aronson, 473 A.2d at 815*).

Plaintiff states that [*13] demand is excused because "In order to bring this suit, the Defendants would be forced to sue themselves which they will not do" and "Defendants have not filed any lawsuits against themselves." A plaintiff may not, however, "bootstrap allegations of futility" by pleading that "the directors participated in the challenged transaction or that they would be reluctant to sue themselves." *Blasband v. Rales, 971 F.2d 1034, 1049 (3rd Cir. 1992)* The general allegation that a demand would ask defendants to bring an action against themselves is not sufficient. *In re Silicon Graphics Inc. Secur. Litig., 183 F.3d 970 (9th Cir. 1999)* citing *Aronson, 473 A.2d at 818* (holding "a bare of this sort raises no legally cognizable issue under Delaware law"); *see also Johnson v. Hui, 752 F. Supp. 909, 912 (N.D. Cal. 1990)*.

Mitzner fails to plead particularized facts raising a reasonable doubt that the five directors alleged to have engaged in insider trading (Hastings, Hoag, Pisano, Ramsay, and Haley) face a substantial likelihood of liability. As an initial matter, the moving papers show that the plaintiff's original allegations regarding [*14] the amounts and beneficiaries of the alleged trades contained overstatements and other errors. With respect to defendant Hastings, the moving papers make clear that all trades were automatic and nondiscretionary sales made pursuant to a pre-existing trading plan. It is important, moreover, to note what facts are not alleged, at all or with particularity. *Rattner at *34*, *Guttman v. Jen-Hsun Huang, 823 A.2d 492, 498 (Del. Ch., 2003)*; *In re Sagent Tech., 278 F. Supp. 2d 1079, 1092 (N.D. Cal. 2003)*. The complaint does not contain particular facts showing that the outside directors knew about the alleged inside information or connecting particular trades to information acquired at particular times. *Cf. Guttman at 504*. *See also In re Sagent Tech. at 1092* (stock sales failed to plead demand futility absent facts linking material nonpublic information to trades). Nor does the plaintiff place the allegedly insider trades in the context of the defendant's trading histories. *Cf. Guttman at 498*.

Mitzner similarly fails to plead particularized facts raising a reasonable doubt that the outside directors face a substantial likelihood of liability for [*15] making false or misleading statements or for a failure of oversight. Without reaching Netflix's arguments that the allegedly false or misleading statements were not actually false or misleading, the Court finds that Mitzner fails to sufficiently plead that the outside directors were responsible for those statements. Mitzner makes two relevant allegations (1) that director defendants signed a Form 10-K on February 27, 2004 containing false and misleading statements, and that (2) defendants Pisano and Haley were members of Netflix's Audit Committee during the Relevant Period.

Outside directors are not typically held liable for allegedly false or misleading information conveyed in prospectuses, registration statements, annual reports, press releases, or other "group -- published information." *See In Re Glenfed, 60 F.3d 591, 593 (9th Cir. 1995)*. *See also In re Ross Sys. Secs. Litig., 1994 U.S. Dist. LEXIS 20385, No. C-94-0017-DLJ, 1994 WL 583114, at *6 (N.D. Cal. 1994)* (noting that the group pleading theory is not applicable to outside directors who signed public documents); *In re Gupta Corp. Sec. Litig., 900 F. Supp. 1217, 1241 (N.D. Cal. 1994)* [*16] (same). Where outside directors either participate in the day-to-day corporate activities, or had a special relationship with the corporation, such as participation in preparing or communicating group information at particular times, however, the group pleading presumption may apply. *Id.* In this case, plaintiff's allegations that defendants Pisano and Haley were members of the Audit Committee during the

Relevant Period may suffice in pleading such a special relationship. *See In re Gupta Corp. Sec. Litig., 1995 U.S. Dist. LEXIS 22093 (N.D. Cal., 1995), In re Livent, Inc. Sec. Litig., 78 F. Supp. 2d 194, 222*. The allegations made with respect to the remaining outside director defendants, however, do not. *Cf. Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. Ch., 1995)* (plaintiff's allegation that directors signed a misleading 10-K and a misleading registration statement did not support a finding that they faced substantial likelihood of liability of conspiracy sufficient to excuse demand). Mitzner has failed to create a reasonable doubt the majority of the directors face a substantial likelihood of liability for allegedly false or misleading [*17] statements.

Plaintiff's claim for failure of oversight is best described as a type *of Caremark* claim. *In re Caremark Int'l Deriv. Litig., 698 A.2d 959 (Del. Ch. 1996)*. As Delaware courts have noted on several occasions, a claim for failure to exercise proper oversight is a very difficult theory upon which to prevail. *In re Caremark at 967*; *Rattner at *43*; *Guttman at 505-06*. In a *Caremark* case, plaintiffs generally have to demonstrate that directors were "grossly negligent in failing to supervise." *Seminaris at 1355*. Again, it is instructive to review what facts the complaint fails to allege, at all or with particularity. Most importantly, there are no facts regarding the outside directors' involvement in the preparation of the financial results and their release to the market. *Cf. Rattner at *48*. There is also nothing alleged with particularity that reasonably raises the inference that the director defendants were aware of any possible manipulation of the financial results. As such, Mitzner's allegations do not support an inference of the "sustained or systematic failure of the board to exercise oversight" that is necessary to amount to [*18] a breach of fiduciary duty. *In re Caremark at 971*; *Guttman at 506*. Mitzner has failed to create a reasonable doubt that the four outside directors who are named as defendants (Hoag, Pisano, Ramsay, and Haley) face a substantial likelihood of liability under a *Caremark* claim theory.

B. The Independence of the Board

Plaintiff also asserts that he has alleged with particularity facts demonstrating the lack of independence of a majority of Netflix directors. A director is independent if he can base his decision "on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson, 473 A.2d at 816*, *accord Rales, 634 A.2d at 936* "To raise a question concerning the independence of a particular board member, a plaintiff asserting the control of one or more directors must allege particularized facts manifesting a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.'" *Orman v. Cullman, 794 A.2d 5, 25 (Del. Ch., 2002)*, citing *Aronson, 473 A.2d at 816* (internal quotations [*19] omitted).

Plaintiff urges that Netflix CEO Hastings controlled the Board and alleges the following facts relating to the independence of the outside directors: Hastings invited Ramsey to join the Company's Board to facilitate a partnership between Netflix and Ramsay's company, TiVo; Hoag's venture capital firm, Technology Crossover ventures, provided the majority of the seed money for Netflix's launch; and Hastings was the Founder and CEO of Pure Atria Software, a company for which Haley has served as a consultant. Delaware law, however, is "well-settled" on the point that "a previous business relationship is not enough to overcome the presumption of a director's independence." *Orman, 794 A.2d 5 at 27*. *See also Beam v. Stewart, 845 A.2d 1040, 1050 (Del. 2004)* ("Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence."); *Rales, 634 A.2d at 936* (to plead lack of independence excusing demand, plaintiff must show each director was so "beholden" to the controlling person that his "discretion would be sterilized."). Mitzner's [*20] allegations fail to raise a reasonable doubt that the Netflix directors could not exercise their independent business judgment in responding to a demand.

Because Mitzner has failed to create a reasonable doubt that a majority of the directors were disinterested and independent, plaintiff has failed to show that demand was futile. Although Plaintiff attempts to add additional facts in his opposition, it is doubtful that they would withstand a further Motion to Dismiss. In an effort to give all opportunity to the plaintiff, however, the Court grants leave to amend once. In addition to pleading particularized facts creating a reasonable doubt that demand on Netflix's board would have been futile and pleading facts sufficient to state a claim under each of the various causes of action, any amended complaint must also comply with *Rule 23.1* s procedural requirements. *Rule 23.1* determines that a complaint in a shareholder derivative suit must be verified, a requirement governed in this case by the California Code of Civil Procedure § 445. See *United States v. $ 84,740.00 U.S. Currency, 900 F.2d 1402*. Because the Court has serious doubts over whether the plaintiff can amend so as to state [*21] a claim, the Plaintiff is cautioned to be a aware of his obligations under *Federal Rule of Civil Procedure 11*.

CONCLUSION

For the foregoing reasons, Netflix's Motion to Dismiss the complaint pursuant to *Federal Rule of Civil Procedure 23.1* is GRANTED. Because the entire complaint is dismissed pursuant to *Rule 23.1*, it is not neces-

Case 1:04-cv-11600-NG   Document 110-10   Filed 12/07/2005   Page 6 of 6

Page 6
2005 U.S. Dist. LEXIS 835, *

sary for the Court to address defendants' other arguments in favor of dismissal. Accordingly, the Individual Defendants' Motion to Dismiss is dismissed as moot. The hearing set for January 20, 2005 is VACATED, and plaintiff shall have 15 days from the date of this order from which to file an amended complaint.

**IT IS SO ORDERED.**

Dated: January 14, 2005

FERN M. SMITH

UNITED STATES DISTRICT JUDGE