UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JAMES GILLIAM, individually And On Behalf of All Others Similarly Situated,<br><br>  Plaintiffs,<br>v.<br><br>FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al.,<br><br>  Defendants. | Civil Action No. 04cv11600 (NG)<br><br>Consolidated Case Nos:<br><br>04cv11642<br>04cv11709<br>04cv11735<br>04cv11812 |

**THE NOMINAL DEFENDANTS FIDELITY FUNDS' REPLY
TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Nominal defendants, the Fidelity Funds (the "Funds"), submit this reply to plaintiffs' opposition to defendants' motions to dismiss.

The important issues of corporate governance implicated by plaintiffs' improper attempt to assert claims that properly belong to the Funds are of critical importance to the Funds. Plaintiffs' attempt to have a class of shareholders pursue "direct" claims alleging that the Funds paid excessive fees completely ignores the long and well established requirement that such claims must be brought derivatively in order to safeguard the right of a business entity to control litigation brought in its name. Accordingly, for the reasons discussed in the Funds' initial brief and below, plaintiffs' remaining claims should be dismissed.

It is a fundamental tenet of corporate governance that a corporation or business trust is governed by its board of directors or trustees. One of a board's most important functions

is to control the assets of the corporation or trust -- including litigation that may be brought to redress injuries to the corporation or trust.

Here, under applicable Massachusetts and Delaware law, it is clear that if there is any viable claim, it belongs to the Funds. Because the decision whether and/or how to prosecute any such claim goes to the heart of corporate management, courts are loathe to permit individual shareholders to interfere in the process of the board's exercise of its duties with respect to overseeing corporate litigation. If shareholders believe that the Fund should initiate a lawsuit, shareholders must make a demand on the Funds' boards -- which plaintiffs here did not do.

Not wanting to comply with the clear requirements for bringing an action on behalf of the Funds, plaintiffs instead have attempted to transform their claims into direct causes of action. In doing so, they misapply the common law of trusts to an entity widely recognized as a distinct animal, the business trust, which is akin to a corporation for all material purposes. They also misconstrue Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a-35(b), which expressly permits recovery only on behalf of funds and not directly by putative classes of shareholders. And, they impermissibly seek to expand the scope of Article III standing so that they can assert claims regarding Funds that they do not own and regarding which they could have suffered no injury. As discussed below, each of plaintiffs' efforts fails and, therefore, their remaining claims should be dismissed.

I. **ALL REMAINING CLAIMS BELONG TO THE FUNDS AND CANNOT BE BROUGHT AS DIRECT CLAIMS**[1]

A. **It is Imperative that the Funds Control their Own Claims**

"The power to sue and be sued is one of the inherent powers of a corporation, and is among the incidental or implied powers which have been attributed to corporations from the earliest period." 1 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 4226.0 (perm. ed. rev. vol. 1999) [hereafter Fletcher, *Cyclopedia Corporations*]. Indeed, as early as the 1760s, *Blackstone's Commentaries* identified the power to sue and be sued as core attributes of the corporation. *Id.* at §5 (citing 1 *BL Comm.* 475).

Thus, the right to sue to redress injuries to the corporation belongs to the corporation. It is a right properly owned and controlled only by the corporate entity -- through its board of directors. Indeed, the question of "whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management and is left to the discretion of the directors . . . ." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 532 (1984) (quoting *United Copper Sec. Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 263 (1917)). As the Supreme Court has made clear, "the decisions of a corporation -- including the decision to initiate litigation -- should be made by the board of directors or the majority of shareholders.'" *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 101 (1991) (quoting *Daily Income*, 464 U.S. at 530).

---

[1] Plaintiffs have voluntarily withdrawn the only claim they had attempted to bring derivatively, Count V, which alleged violations of Sections 206 and 215 of the Investment Advisers Act. *See* Pls.' Opp. at 1 n.3.

3

Of course, the right to initiate litigation carries with it the right to control how litigation is handled. The power to sue would be meaningless without the power to control if, when and how such litigation is brought. Massachusetts courts have recognized for more than 100 years that:

> It would be contrary to the fundamental principles of corporate organization to hold that a single shareholder can at any time launch the corporation into litigation to obtain from another what he deems to be due to it, or to prevent methods of management which he thinks unwise. Intelligent and honest men differ upon questions of business policy. It is not always best to insist upon all one's rights; and a corporation acting by its directors, or by vote of its members, may properly refuse to bring a suit which one of its stockholders believes should be prosecuted.

*Dunphy v. Travelers' Newspaper Ass'n*, 146 Mass. 495, 497 (1888).

Here, plaintiffs seek to usurp the Funds' right to control litigation regarding alleged injuries to the Funds. Because the Funds' fundamental right to control litigation for injuries it has allegedly suffered would be thwarted if plaintiffs succeed, the Court should dismiss all remaining claims.

**B.    Plaintiffs Improperly Rely on General Trust Law that is Inapplicable to Business Trusts**

As set forth in the Funds' initial memorandum, Massachusetts and Delaware law make clear that plaintiffs' claims fail because they cannot be brought in a direct action. Unable to mount a serious attack on this well established body of law, plaintiffs attempt to sidestep it by arguing that general common law trust principles allow the claims here to be brought directly. But there is no authority for plaintiffs' argument that common law trust principles regarding who

may bring claims apply to the complexities of a business trust. Indeed, the very authorities plaintiffs cite *prove precisely the opposite.*

Plaintiffs' argument that trust law should be applied to the Funds rests almost exclusively on *Scott on Trusts*, written by, in plaintiffs' words, the "leading commentator on trust law." That treatise, however, applies to common law, *e.g.*, donative or charitable, trusts. It expressly does *not* apply to business trusts like the Funds. Section 2.2 of *Scott on Trusts*, entitled "Types of Trusts Not Considered," states:

> Similarly, the rules governing the use of a trust as a substitute for incorporation, the so-called business trust or Massachusetts trust, are highly specialized, and are left to be discussed with other business organizations.

*The Restatement (Second) of Trusts*, also relied upon by the plaintiffs, similarly excludes business trusts. A comment to Section 1 of the Restatement, entitled "Matters Excluded," provides: "A statement of the rules of law relating to the employment of a trust as a device for carrying on business is not within the scope of the Restatement of this Subject. . . . The business trust is a special kind of business association and can best be dealt with in connection with other business associations." *See Restatement (Second) of Trusts*, § 1, cmt. b. Thus, plaintiffs' own authority proves that the common law trust principles on which they place such enormous reliance are inapplicable to the business trusts at issue here.[2]

---

[2] Because many of the cases plaintiffs cite involve common law trusts, but not business trusts, they are inapposite. *See* Pls.' Opp. at 47 (citing *Parker v. Lloyd*, 71 N.E.2d 889 (Mass. 1947), *Moore v. Mansfield*, 142 N.E. 792 (Mass. 1924), *Sargent v. Wood*, 81 N.E. 901 (Mass. 1907), and *Stevens v. Nagel*, 64 Mass. App. Ct. 136, 139 (2005)). Moreover, the only "trust law" case plaintiffs cite that involves a business trust, *Booth v. Greer*, 52 F.2d 857 (N.D. Okla. 1931), *aff'd*, 62 F.2d 321 (10th Cir. 1932), actually involved a derivative -- not a direct -- claim. *See Booth*, 62 F.2d at 324 (addressing whether demand was futile). Indeed, the Massachusetts Supreme Judicial Court has cited *Booth* for the

5

A leading treatise that *does* apply to business trusts also make clear that, "[a] business trust is to be distinguished from an ordinary trust." Fletcher, *Cyclopedia Corporations* § 8228. This is because, among other things, a business trust's "purpose is not to hold and conserve particular property, but to conduct business." *Id.*

Because business trusts, like corporations, are designed to conduct business, courts routinely apply corporate law principles to analyze issues involving business trusts. *See, e.g., Minkin v. Comm'n of Revenue*, 425 Mass. 174, 180 (1997) ("The status of the [Massachusetts business] trust shareholder resembles that of a counterpart in a corporation."); *Richardson v. Clarke*, 372 Mass. 859, 861-62 (1977) ("Business trusts possess many of the attributes of corporations and for that reason cannot be governed solely by the rules which have evolved for traditional trusts."); *Woonsocket Shopping Ctr. v. Wonder Properties*, No. 93-2169, 1996 Mass. Super. Lexis 706, at *12 (Mass. Super. Feb. 23, 1996) ("A [Massachusetts] business trust is in many respects like a corporation."). Not surprisingly, therefore, courts -- including courts from within this District -- apply corporate law principles when determining whether claims against mutual funds organized as business trusts are direct or derivative. *See, e.g., Forsythe v. Sun Life Fin., Inc.*, No. 04-10584, 2006 U.S. Dist. Lexis 1948, at *29-*32 (D. Mass. Jan. 19, 2006); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 365 (D. Mass. 2005) (citing *ING Principal Prot. Funds Derivative Litig.*, 369 F. Supp. 2d 163, 171 (D. Mass. 2005), for, among other things, the proposition that it is appropriate to apply corporate law to a business trust); *see also In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 264-67 (1st Cir. 1973) (analyzing

---

proposition that claims involving injuries to the trust are not direct, but rather constitute assets of the trust. *See Peterson v. Hopson*, 306 Mass. 597, 612 (1940).

question of demand futility in derivative suit on behalf of mutual fund organized as Massachusetts business trust using corporate law principles). For all of the foregoing reasons, this Court should reject plaintiffs' invitation to analyze their claims under common law trust principles. It should, instead, analyze whether plaintiffs' claims are direct or derivative under Massachusetts and Delaware corporate law.

### C.   Under Massachusetts and Delaware Law, Plaintiffs' Claims Belong to the Corporation and May Not Be Brought in a Direct Action

As stated in the Funds' initial memorandum, where a shareholder's only claimed injury is indirect, *i.e.*, suffered only as a result of injury to the corporation, the claim belongs to the corporation. *See Jackson v. Stuhlfire*, 28 Mass. App. Ct. 924, 925 (1982); *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004).[3] A claim may only be brought directly by a shareholder if the claim alleges injuries distinct from those allegedly suffered by the corporation. Here, plaintiffs make clear over and over again in the Amended Complaint that plaintiffs allege the same injuries to the Funds and their shareholders.[4] Therefore, plaintiffs claims are improperly pled as direct claims and should be dismissed.

---

[3]   As plaintiffs concede, *see* Pls.' Opp. at 51, the test for whether a claim is direct or derivative is similar under Massachusetts and Delaware law. *See Hogan v. Baker*, No. 05-0073, 2005 U.S. Dist. Lexis 16888, at *13 n.5 (N.D. Tex. 2005); *In re Franklin Mut. Funds Litig.*, 388 F. Supp. 2d 451, 463 n.8 (D.N.J. 2005).

[4]   *See, e.g.*, Amend. Compl. ¶ 81 ("The Investment Adviser Defendants (along with the Distributor Defendant) secretly siphoned monies *from the Funds and their investors* in various forms . . .") (emphasis added); ¶ 97 ("The economies of scale enjoyed by Defendants with respect to the Funds have not been shared *with the Funds or their investors* as required by Section 36(b) of the ICA and Rule 12b-1.") (emphasis added); ¶ 123 ("Defendants *charged the Funds and their investors* inflated advisory fees to pay part of Defendants' revenue sharing agreements.") (emphasis added); ¶ 168(f) (alleging "that the Trustee Defendants had "failed to monitor and supervise the other Defendants

7

In the hopes of avoiding dismissal, plaintiffs raise a host of arguments in an attempt to save their claims. None is persuasive.

For instance, plaintiffs rely on *Strigliabotti v. Franklin Resources, Inc.*, No. 04-00883, 2005 U.S. Dist. Lexis 9625, at *25 (N.D. Cal. Mar. 7, 2005), a case decided under California law, to argue that the "unique nature and structure of mutual funds" alters the injury analysis because shareholders bear Fund expenses on a *pro rata* basis. *See* Pls.' Opp at 52. But *Strigliabotti*'s "reasoning is at odds with the overwhelming majority of courts who have addressed this issue." *Hogan v. Baker*, No. 05-0073, 2005 U.S. Dist. Lexis 16888, at *11 (N.D. Tex. Aug. 12, 2005) (holding that claims under the ICA are derivative, not direct). Indeed, in just the last few months, courts in this District have ***twice*** explicitly rejected *Strigliabotti* and found that claims similar to those brought here belong to the funds and may not be brought as direct actions. *See Forsythe*, 2006 U.S. Dist. Lexis 1948, at *29-*33; *Stegall*, 394 F. Supp. 2d at 364.

In fact, more than thirty-five years ago, the Third Circuit rejected the very argument accepted by the *Strigliabotti* court. In *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727

---

and that, as a consequence, those other Defendants were able to systematically skim millions and millions of dollars *from the Fidelity Funds and their investors*") (emphasis added); ¶ 239 (alleging under Count II, "plaintiffs and other members of the Class were injured as holders of the Funds because they deceived into believing Defendants were not improperly taking assets out of the Funds *to the detriment of the Funds and Fund investors* when in fact Defendants were systematically and improperly removing assets from the Funds with a direct injurious impact on *both the Funds and their shareholders*") (emphasis added); ¶ 244 (alleging under Count III, "[t]he fees received by the Defendants in the Count charged *to the Fidelity Funds and investors* were excessive") (emphasis added); ¶ 248 (alleging under Count IV, "Plaintiffs, in this count, seek to recovery improper 12b-1 fees and the excessive advisory fees charged the Fidelity Funds by Defendants").

(3d Cir. 1970), the court held that plaintiffs' claims were derivative, despite the plaintiffs' argument that mutual fund shareholders bear fund expenses on a *pro rata* basis. The court explained "[t]hat the worth of a share of appellee's stock is directly proportionate to the value of a mutual fund's net assets is insufficient to destroy these separate identities, to alter the basic shareholder-corporation relationship, and to thereby confer upon appellee legal rights peculiar to the corporation." *Id.* at *733; *see also In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04-2567, 2006 U.S. Dist. Lexis 1542, at *22 (S.D.N.Y. Jan. 17, 2006) ("[A] *pro rata* bearing of expenses by individual shareholders seems to fall within the very essence of an injury which is not independent from that suffered by the corporation."); *accord Hamilton v. Allen*, 396 F. Supp. 2d 545, 549-53 (E.D. Pa. 2005); *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1027 (C.D. Cal. 2005). Accordingly, for these reasons, plaintiffs' reliance on *Strigliabotti* is unpersuasive.

Next, plaintiffs cite to *Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002), to support their argument that "shareholders may bring a direct action even when all shareholders were injured in the same manner." Pls.' Opp. at 54. As the Southern District of New York recently held, however, *Strougo* stands for no such thing. *See In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04-4885, 2005 U.S. Dist. Lexis 24263, at *14 (S.D.N.Y. Oct. 19, 2005). Indeed, while *Strougo* allowed certain direct claims to proceed, those claims were based on a coercive shareholder rights offering that distinctly injured certain (but not all) shareholders and "did not derive from a reduction in the value of the Fund's assets." *Strougo*, 283 F.3d at 175. Significantly, in *Strougo*, the Second Circuit also affirmed the dismissal of direct claims that were based on a depletion of "the corporation's assets," explaining that depletion of fund assets is "precisely the type of injury to the corporation that can be redressed . . . only through a

9

suit brought on behalf of the corporation." *Id.* at 174. Thus, rather than helping plaintiffs, *Strougo* makes clear that their claims are derivative, not direct.

Next, plaintiffs argue that, because the defendants' alleged scheme caused the Funds to grow "*in the aggregate*, the Funds suffer[ed] *no harm*." Pls.' Opp. at 56 (emphasis in original). This argument contradicts plaintiffs' own allegations. First, as stated above, plaintiffs have repeatedly and expressly pled that the Funds themselves were harmed. *See supra*, n.4. Moreover, the allegation that Funds saw an *overall* increase in value during the class period does not mean that they did not allegedly suffer "harm" from the payment of allegedly excessive fees. Indeed, without the payment of such fees, the Fund would have been even larger -- by exactly the same amount that the plaintiffs claim that they, as shareholders, were injured.

Finally, plaintiffs argue that a direct action is necessary because a derivative action would not provide full redress, in that recovery would go only to the Fund, and not to former shareholders. *See* Pls.' Opp. at 56. However, as Judge O'Toole recently explained, this "argument is unavailing because such a result occurs in all derivative actions, where it is the fund that benefits directly from any remedy (because it was the fund that was injured directly), not the individual shareholders." *Forsythe*, 2006 U.S. Dist. Lexis 1948, at *32; *see also Peterson v. Hopson*, 306 Mass. 597, 612 (1940) ("The amount recovered belongs to the trust assets generally, and not to the persons who at the time of the wrongdoing happened to hold transferable shares."); *Furst v. Feinberg*, 54 Fed. Appx. 94, 99 (3d Cir. 2002) ("[S]hareholders who sell their shares always forfeit the right to sue in derivative claims. If we were to allow a direct claim because shareholders sold their shares and, thus, lost their right to sue, the albeit thin line between direct and derivative claims would disappear entirely . . . .").

### D. Plaintiffs' Section 36(b) Claim Should Be Dismissed Because it Cannot Be Brought on Behalf of Plaintiffs and the Putative Class

Like their other remaining claims, plaintiffs' Section 36(b) claim is wrongfully pled as a direct class claim and should be dismissed. By statute, a Section 36(b) claim may only be brought "on behalf of" a fund, *i.e.*, in a derivative action. Because plaintiffs have not complied with this requirement, but instead seek to bring their claim under Section 36(b) "*on behalf of the plaintiffs and the class*," this claim, too, should be dismissed. Amend. Compl. at 89 (heading under "Count III") (emphasis in original); *see also* Pls.' Opp. at 23 ("Plaintiffs may assert direct claims under §36(b) *on behalf of plaintiffs and the class* as investors in the Fidelity Funds.") (emphasis added).

Confronted with this insurmountable hurdle, plaintiffs attempt to evade applicable law by citing to the Supreme Court's decision in *Daily Income Fund v. Fox* and arguing that a 36(b) claim can be brought as a direct claim by a class of shareholders. *See* Pls.' Opp. at 23-25 (citing *Daily Income*, 464 U.S. at 528-29). But plaintiffs' argument relies on a strained reading of *Daily Income*. In fact, the Court held that "a § 36(b) action is undeniably 'derivative' in the broad sense of the word" because the "right asserted by a shareholder suing under [§ 36(b)] is a 'right of the corporation.'" 464 U.S. at 535 n.11 (1984). Indeed, four district courts have recently dismissed Section 36(b) claims that were brought as direct actions. *See In re Lord Abbett Mut. Funds Fee Litig.*, 385 F. Supp. 2d 471, 488-89 (D.N.J. 2005) ("*In re Lord Abbett I*") (concluding that, in *Daily Income Fund*, the Supreme Court stated "unequivocally that Section 36(b) confers only a derivative right"); *In re American Mut. Funds Fee Litig.*, No. 04-5593, slip

11

op. at 4 (C.D. Cal. Dec. 16, 2005) (same); *In re Franklin Mut. Funds Excessive Fee Litig.*, 388 F. Supp. 2d 451, 468 n.12 (D.N.J. 2005) (same); *Mutchka*, 373 F. Supp. 2d at 1024 (same).[5]

Plaintiffs also claim that *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991), supports their argument that a Section 36(b) claim can be brought as a direct class claim. Plaintiffs once again pull quotes out of context. As a recent district court decision noted, the *Kamen* decision "imprecisely stated," ***in dicta***, that a shareholder action under Section 36(b) action is "direct rather than derivative." *In re Lord Abbett Mut. Funds Fee Litig.*, No. 04-0559, 2005 U.S. Dist. Lexis 37492, at *45 n.6 (D.N.J. Dec. 28, 2005) ("*In re Lord Abbett II*") (citing *Kamen*, 500 U.S. at 108). As that court explained, *Kamen* merely held that a Section 36(b) claim could be brought by a shareholder without any pre-complaint demand -- a statutory exception unique to Section 36(b) claims. *Id.* But, far from holding that a Section 36(b) claim was direct, the *Kamen* Court actually noted that "under these circumstances, it can hardly be maintained that a shareholder's exercise of his state-created prerogative to initiate ***a derivative suit without the consent of the directors*** frustrates the broader policy objectives of the ICA." 500 U.S. at 108 (emphasis added). Thus, *Kamen* does not conflict with the conclusion in *Daily Income* that Section 36(b) claims are derivative in nature. *See In re American*, No. 04-5593, slip op. at 4 ("The [*Kamen*] Court's reference to Section 36(b) claims as 'direct' was not meant to undo *Daily Income Fund* or the text of the statute.").

In their opposition, plaintiffs acknowledge that "any recovery on a § 36(b) claim goes to the fund rather than to the individual shareholder." Pls.' Opp. at 28.[6] This concession,

---

[5]    Plaintiffs brush aside these cases and instead choose only to address other district court decisions which conclude that Section 36(b) creates a direct claim on shareholders. In light of the language of *Daily Income*, those decisions are unpersuasive.

alone, dooms their argument that a Section 36(b) claim can be brought directly. Nevertheless, they contend that they can recover on behalf of themselves and the putative class because "in substance, mutual funds are pools of assets owned by the shareholders" and a suit for the benefit of the fund "will automatically be a suit for the shareholders' own benefit." Pls.' Opp. at 28. But plaintiffs' argument ignores the fundamental principal that recovery belongs to the entity and not the shareholders who owned the shares during a particular time period. Indeed, plaintiffs purport to represent a class which includes *former* shareholders, while any potential recovery by the Funds under Section 36(b) would indirectly benefit only *current* shareholders on the date of recovery. *Peterson*, 306 Mass. at 612 ("[t]he amount recovered belongs to the trust assets generally, and not to the persons who at the time of the wrongdoing happened to hold transferable shares."); *Furst*, 54 Fed. Appx. at 99. Therefore, plaintiffs' attempt to avoid the consequences of the clear statutory language fails.

Finally, plaintiffs' claim fails not only because it is brought as a direct, class claim, but also because plaintiffs do not allege in their Amended Complaint that they are seeking to recover on behalf of the Funds -- a critical element of Section 36(b) claims (and of all derivative claims). As noted above, plaintiffs characterize Count III of the Amended Complaint as being brought "On Behalf of The Plaintiffs and the Class," Amend. Compl. at 89, and further

---

[6] The Amended Complaint is not as clear. In their Complaint, plaintiffs seek compensatory and punitive damages against "all Defendants" -- without defining that term, and leave it open as to whether the Funds, as *nominal* defendants, are included in that definition. Amend. Compl. at 98. Thus, Plaintiffs appear to want to have it both ways. Of course, under either scenario, their claim is doomed. As set forth herein, a direct Section 36(b) claim seeking recovery *for shareholders* should be dismissed because of the plain statutory language, and a direct Section 36(b) claim seeking recovery *for the Funds* should still be dismissed because under Supreme Court precedent such a claim may only be brought in a derivative action.

state that "Plaintiffs, in this count, seek to recover improper 12b-1 fees and the excessive advisory fees charged the Fidelity Funds by Defendants." *Id.* ¶ 248. Moreover, in their prayer for relief, plaintiffs seek recovery for themselves and the class, but not for the Funds. *Id.* at 98. For this additional reason, plaintiffs' Section 36(b) claim is defective and should be dismissed.

## II.   PLAINTIFFS HAVE NO STANDING TO BRING CLAIMS CONCERNING FUNDS THEY DO NOT OWN

As noted in defendants' initial memoranda, it is widely held that a plaintiff does not have standing to bring claims with regard to funds he did not own. *See Stegall*, 394 F. Supp. at 362-63; *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 41 (D. Mass. 2003); *In re Columbia Entities Litig.*, No. 04-11704, 2005 U.S. Dist. Lexis 33439, at *28 (D. Mass. Nov. 30, 2005); *Nenni v. Dean Witter Reynolds, Inc.*, No. 98-12454, 1999 U.S. Dist. Lexis 23351, at *5-*6 (D. Mass. Sept. 29, 1999). In fact, in several recent cases based on complaints virtually identical to plaintiffs' Amended Complaint, courts have dismissed claims related to funds in which the plaintiffs did not own shares. *See In re Columbia*, 2005 U.S. Dist. Lexis 33439, at *28; *In re AllianceBernstein*, 2005 U.S. Dist. Lexis 2677753, at *9-*10; *In re American*, No. 04-5593, slip op. at 2; *Forsythe*, 2006 U.S. Dist. Lexis 1948, at *47-*54; *In re Franklin*, 388 F. Supp. 2d at 461.

In their opposition, plaintiffs contend that they have standing to assert claims with respect to 206 Fidelity funds, although they claim to own shares in only 28 of those funds, because "[i]n the class action context, a plaintiff may assert a claim on behalf of shareholders of all the funds in a mutual fund complex even though that plaintiff would lack individual standing

to assert those claims, as long as they are closely related . . . ." Pls.' Opp. at 30. Plaintiffs are wrong.

Courts have made clear that individual plaintiffs cannot bypass the issue of standing by purporting to bring a class action. As the Supreme Court has explained:

> That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.

*Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (Rule 23's requirements are circumscribed by Article III constraints); *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) (standing cannot "be acquired through the back door of a class action"). Just a few weeks ago, a court in this District explained: "The plaintiffs may not rely on the rules-based class action procedural device as a method to 'bootstrap themselves into standing they lack' merely because they owned shares in the other MFS Funds at the time the suit was brought." *Forsythe*, 2006 U.S. Dist. Lexis 1948, at *53. Accordingly, the Court should reject plaintiffs' claim that standing can be established via their class action allegations.

Moreover, the cases plaintiffs cite are distinguishable. For example, in *Haas v. Pittsburgh National Bank*, 526 F.2d 1083, 1089 (3d Cir. 1975), a case relied upon as the foundation of both the *Abbett* and *Franklin* decisions on standing, the court allowed the plaintiff to pursue a class action regarding commercial credit card transactions even though the plaintiff herself only had standing for claims regarding consumer transactions because the claims all "involve[d] *identical* revolving accounts under the *same* [defendant] cardholder agreements

15

[and] the statutory damages sought to be recovered for each asserted violation [were] in large part the *same*." 526 F.2d at 1089 (emphasis added).[7]

Here, unlike in *Haas*, plaintiffs' allegations fall well short of demonstrating that all Funds were "identical" or the "same" in any of the relevant ways. As the Fidelity Defendants previously noted, undisputed, public information makes clear that each of the 206 funds: (i) is a distinct legal entity, with separate financial statements and net assets; (ii) is separately registered with the SEC; and (iii) has its own advisory agreement setting forth individualized investment objectives and fee schedules. *See* Memorandum of Law in Support of the Fidelity Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Complaint, at 17. For this reason, plaintiffs' conclusory allegations that defendants engaged in a "common course of conduct" and that the Funds are "alter egos" of each other are simply incorrect as a matter of law and fact. *See, e.g., Forsythe*, 2006 U.S. Dist. Lexis 1948, at *50 ("As this court and others have held in the mutual fund context, it is appropriate to treat each MFS Fund as a separate and distinct entity in the § 36(b) context and a plaintiff may not use the corporate structure of the broader investment company to confer standing.").

---

[7]  Another of plaintiffs' principal authorities, *Fallick v Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998), was expressly rejected in the mutual fund context. *See In re Eaton Vance Sec. Litig.*, 220 F.R.D. 162, 168-69 (D. Mass. 2004). The *Eaton Vance* court noted, first, that many of the cases *Fallick* cited did not even analyze Article III standing. *Id.* The court also noted that circuit court precedent regarding ERISA – a statute not at issue here – was an important factor in the *Fallick* court's determination. *Id.* The majority of plaintiffs' other cases are not standing decisions at all. *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98-4318, 2000 U.S. Dist. Lexis 13469 (S.D.N.Y. Sept. 20, 2000), *In re ML-Lee Acquisition Fund II, LP Sec. Litig.*, 848 F. Supp. 527 (D. Del. 1994), and *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51 (S.D.N.Y. 1993), are *class certification* decisions and thus are irrelevant to issues of standing.

## CONCLUSION

For the reasons stated above, and in defendants' opening memoranda, plaintiffs' claims should be dismissed with prejudice.

Respectfully submitted,

/s/ Frances S. Cohen
Frances S. Cohen (BBO No. 542811)
DECHERT LLP
200 Clarendon Street
Boston, MA 02110
617-728-7100
frances.cohen@dechert.com

Steven B. Feirson
Michael S. Doluisio
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
215-994-4000
steven.feirson@dechert.com
michael.doluisio@dechert.com

*Attorneys for Nominal Defendants Fidelity Funds*

February 9, 2006

## Certificate of Service

I hereby certify that, on February 9, 2006, I served this document through the ECF system to the registered participants identified on the Notice of Electronic Filing (NEF) and, to the extent required by the District of Massachusetts Local Rules, sent paper copies to those identified as non-registered participants.

/s/ Frances S. Cohen
Frances S. Cohen