# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES GILLIAM, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FIDELITY MANAGEMENT AND RESEARCH COMPANY, *et al.*,<br><br>Defendants. | Civil Action No. 04cv11600 (MBB)<br><br>Consolidated Case Nos.:<br><br>04cv11642<br>04cv11709<br>04cv11735<br>04cv11812 |

**REPLY MEMORANDUM OF INDEPENDENT TRUSTEE
DEFENDANTS IN SUPPORT OF MOTION TO DISMISS
<u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

> Sandra Sue McQuay  (BBO No. 340120)
> A. Lauren Carpenter (BBO No. 551258)
> SULLIVAN, WEINSTEIN & MCQUAY
> 2 Park Plaza
> Boston, Massachusetts  02116
> Telephone  (617) 348-4355
>
> John S. Kiernan
> Suzanne M. Grosso
> Nicholas F. Joseph
> DEBEVOISE & PLIMPTON LLP
> 919 Third Avenue
> New York, New York  10022
> Telephone  (212) 909-6000
>
> *Attorneys for Independent Trustee Defendants*
>     (J. Michael Cook, Ralph F. Cox,
>     Robert M. Gates, George H. Heilmeier,
>     Donald J. Kirk, Marie L. Knowles,
>     Ned C. Lautenbach, Marvin L. Mann,
>     William O. McCoy, Gerald C. McDonough,
>     and William S. Stavropoulos)

February 9, 2006

# **TABLE OF CONTENTS**

Page

Preliminary Statement ................................................................................................................... iii

ARGUMENT ................................................................................................................................... v

I.  ALL OF THE REMAINING COUNTS AGAINST THE INDEPENDENT TRUSTEE DEFENDANTS SHOULD BE DISMISSED BECAUSE THEY ARE DERIVATIVE CLAIMS THAT REQUIRE DEMAND ON THE FIDELITY FUND BOARDS ............................................................................................................. v

    A.  Any Injuries Pursuant To The Remaining Claims Were Suffered Directly By The Fidelity Funds And Only Indirectly By Fund Shareholders ....................... v

    B.  Demand Is Required Under Massachusetts And Delaware Law As To Each Of The Remaining Claims ........................................................................... ix

II. AS A MATTER OF LAW, THE INDEPENDENT TRUSTEE DEFENDANTS ARE NOT "CONTROL PERSONS" OF ANY ALLEGED WRONGDOER AND DID NOT "CAUSE" ANY ICA VIOLATIONS ................................................................. xi

Conclusion .................................................................................................................................. xiii

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
  04 Civ. 4885, 2005 WL. 2677753 (S.D.N.Y. Oct. 19, 2005) .................................................4, 5

*In re Am. Mutual Funds Fee Litig.*
  04-5593-GAF, slip op. (C.D. Cal. Dec. 16, 2005) ....................................................................8

*Clairdale Enterprises, Inc. v. C.I. Realty Investors*,
  423 F. Supp. 257 (S.D.N.Y. 1976) ............................................................................................7

*In re Columbia Entities Litig.*,
  04-11704-R, 2005 U.S. Dist. LEXIS 33439 (D. Mass. Nov. 30, 2005) .............................4, 5, 7

*In re Eaton Vance Mutual Funds Fee Litigation*,
  380 F. Supp. 2d 222 (S.D.N.Y. 2005) ...................................................................................5, 9

*Forsythe v. Sun Life Financial, Inc.*,
  04-10584-G 2006, U.S. Dist. LEXIS 1948 (D. Mass. Jan. 19, 2006) ................................4, 7, 8

*In re Goldman Sachs Mut. Funds Fee Litig.*,
  04 Civ. 2567, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ..........................................4, 5, 6, 8, 9

*Green v. Nuveen Advisory Fund, Inc.*,
  186 F.R.D. 486 (N.D. Ill. 1999) .................................................................................................7

*Hamilton v. Allen*,
  396 F. Supp. 2d 545 (E.D. Pa. 2005) .........................................................................................4

*Hogan v. Baker*,
  3:05-C 2005, U.S. Dist. LEXIS 16888 (N.D. Tex. Aug. 12, 2005) ............................................4

*ING Principal Prot. Funds Deriv. Litigation*,
  369 F. Supp. 2d 163 (D. Mass. 2005) .....................................................................................7, 9

*Krantz v. Fidelity Management & Research Co.*,
  98 F. Supp. 2d 150 (D. Mass. 2000) ..........................................................................................8

*In re Lord Abbett Mut. Funds Fee Litig.*,
  No. 04-CV-0559, slip op. (D.N.J. Dec. 20, 2005) .....................................................................5

*In re Lord Abbett Mut. Funds Fee Litig.*,
  04-C 2005, U.S. Dist. LEXIS 37492 (D.N.J. Dec. 28, 2005) ....................................................5

*Stegall v. Ladner*,
  394 F. Supp. 2d 358 (D. Mass. 2005) ...........................................................................3, 4, 6, 8

*Strougo v. Bassini*,
   282 F.3d 162 (2d Cir. 2002) ..................................................................................................6

*Yameen v. Eaton Vance District, Inc.*,
   394 F. Supp. 2d 350 (D. Mass. 2005) ....................................................................................7

## STATE CASES

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) ......................................................................................................9

## FEDERAL STATUTES

ICA § 34(b) ....................................................................................................................................5

ICA § 36(b) ....................................................................................................................1, 2, 4, 9, 10

ICA § 48(a) ...........................................................................................................................2, 9, 10

15 U.S.C. § 80a-2(9) ....................................................................................................................10

## STATE STATUTES

Mass. Gen. Laws ch. 156D, § 7.42 ................................................................................................7

The Independent Trustee Defendants submit this reply memorandum in further support of their motion to dismiss the Consolidated Amended Class Action Complaint ("Amended Complaint" or "CAC") pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure.

## Preliminary Statement

With plaintiffs' voluntary withdrawal of Count Three (for excess compensation under ICA § 36(b)) against the Independent Trustee Defendants, *see* Plaintiffs' Opposition Brief ("Opp'n") at n.3 & n.11, five counts remain against them: Counts One (material omissions from certain disclosures under ICA § 34(b)); Two (breach of fiduciary duty under ICA § 36(a)); Four (control person liability under ICA § 48(a)); Seven (breach of fiduciary duty); and Eight (unjust enrichment). The Independent Trustee Defendants join the arguments of their co-defendants respecting the reasons for dismissing all of these claims, including the absence of a private right of action for the three claims under the ICA, SLUSA preemption of the state law claims, and lack of standing to bring claims regarding any Fidelity Fund in which no named plaintiff owned shares.

The Independent Trustee Defendants submit this separate memorandum to address particularly two additional grounds for dismissal of the claims against them that relate fundamentally to their legal positions under the ICA: (i) plaintiffs' unsustainable efforts to characterize claims as direct claims of Fidelity Fund shareholders when they are plainly derivative in nature, in an attempt to usurp the Independent Trustee Defendants' fundamental authority to decide whether to pursue claims belonging to the Funds; and (ii) plaintiffs' continued effort to hold the Independent Trustee Defendants liable as "control persons" of certain Fidelity entities through arguments that fundamentally misapprehend the legal relationship between independent trustees and investment advisors.

Each of plaintiffs' remaining claims against the Independent Trustee Defendants rests on the allegation that assets of the Fidelity Funds were used to make improper payments to certain Fidelity entities and third parties. The only direct injury arising from that allegation is the injury suffered by the Funds, through the misuse of Fund assets. Plaintiffs' alleged injury is merely indirect, in the form of claimed diminution in the value of their shares of Fund assets that all shareholders experienced equally on a pro rata basis. Plaintiffs' various attempts to manufacture claims of "direct" injuries allegedly suffered independently from the Funds disregard that such injuries exist only insofar as there has been a predicate injury to the Funds. If the Funds truly have not been harmed by defendants' conduct, as plaintiffs alternatively contend for the first time in their opposition, then plaintiffs have not been harmed either. On these bases, courts within this District and elsewhere have consistently rejected essentially identical claims brought in "copycat" cases as derivative claims for which demand is required, not direct claims.

Plaintiffs' attempt to hold the Independent Trustee Defendants liable under ICA § 48(a) for certain alleged ICA violations by various Fidelity entities cannot survive the dismissal of all of the underlying claims as to which the Independent Trustee Defendants are said to have been controlling persons. More fundamentally, though, the Independent Trustee Defendants are not liable under § 48(a) because plaintiffs' legal theories that the Independent Trustee Defendants, as a result of their role as overseers of the Fidelity Fund advisory contracts, "control" Fidelity advisors and "cause" advisor behaviors misapprehends the scope of the Independent Trustee Defendants' legal relationship with the Fund advisors they are said to control.

# ARGUMENT

## I. ALL OF THE REMAINING COUNTS AGAINST THE INDEPENDENT TRUSTEE DEFENDANTS SHOULD BE DISMISSED BECAUSE THEY ARE DERIVATIVE CLAIMS THAT REQUIRE DEMAND ON THE FIDELITY FUND BOARDS

### A. Any Injuries Pursuant To The Remaining Claims Were Suffered Directly By The Fidelity Funds And Only Indirectly By Fund Shareholders

As co-defendants' briefs have fully explained, plaintiffs cannot escape the categorization of their claims as derivative or the attachment of a demand requirement to those claims by asserting that the direct/derivative distinction and the demand requirement for derivative actions are inapplicable to business trusts. The authorities on which they rely for their trust-based analysis uniformly recognize that business trusts are subject to a different set of rules than testamentary or other personal trusts, and courts have routinely treated business trusts as indistinguishable from corporations for purposes of determining whether a shareholder claim is direct or derivative. The appropriate inquiry in response to plaintiffs' claims is whether they have alleged an injury to themselves that is separate from their pro rata share of an alleged injury to the Fund in which they hold shares. Because they have not, their claims should be treated as derivative.

Nothing about plaintiffs' position as shareholders of mutual funds, and nothing about the nature and structure of mutual funds generally, has caused plaintiffs to suffer an independent injury giving rise to a direct claim. To the extent plaintiffs seek to predicate their claims of injury on reduction in daily net asset value ("NAV") per Fidelity Fund share as a result of the alleged misuse of Fund assets, this form of harm "does not distinguish [mutual funds] in any material way from traditional corporations." *Stegall v. Ladner*, 394 F. Supp.2d 358, 365 (D. Mass. 2005) (Woodlock, J.). Any reduction in NAV per Fund share is simply an effect of a reduction in "assets [that] remain those of the fund, as the earnings are of a corporation until

v

distributed.  The mutual fund participant has a right to those assets, but that right derives from – and is derivative of – the fund." *Id.* at 366.  Of the numerous courts that have considered plaintiffs' argument that this characteristic of mutual funds makes shareholders' claims direct rather than derivative, only one, misapplying California law, has agreed with it.  *Compare Strigliabotti v. Franklin Resources, Inc.*, 04-0083 (SI), 2005 WL 645529, at *7-*8 (N.D. Cal. Mar. 7, 2005) (applying California law) *with, e.g., Forsythe v. Sun Life Financial, Inc.*, 04-10584-GAO, 2006 U.S. Dist. LEXIS 1948, at *31 (D. Mass. Jan. 19, 2006) (O'Toole, J.) (criticizing and rejecting *Strigliabotti*); *Stegall*, 394 F. Supp.2d at 365 (same); *accord In re Goldman Sachs Mut. Funds Fee Litig.*, 04 Civ. 2567 (NRB), 2006 WL 126772, at *6 (S.D.N.Y. Jan. 17, 2006) (same); *Hamilton v. Allen*, 396 F. Supp.2d 545, 551-53 (E.D. Pa. 2005) (same); *Hogan v. Baker*, 3:05-CV-0073P (JAS), 2005 U.S. Dist. LEXIS 16888, at *13 (N.D. Tex. Aug. 12, 2005) (same).

Similarly, plaintiffs' ICA § 34(b) claims alleging misrepresentations about the use of Fidelity Fund assets do not claim an injury to plaintiffs separate from injury to the Funds. Plaintiffs allege that they relied on such misrepresentations "to continue[] to hold their shares and sustained injury by virtue of the continuing impact of the undisclosed charges on the value of their holdings" (CAC ¶ 231).  Plaintiffs thus assert only that they were not credited with money that should have been credited to them for the Fund in which they held shares.  Absent such underlying alleged injury to the Funds, plaintiffs indisputably would have no claim to assert. These claims are plainly derivative rather than direct.  *See, e.g., In re Columbia Entities Litig.*, 04-11704-REK, 2005 U.S. Dist. LEXIS 33439, at *20-*21 (D. Mass. Nov. 30, 2005) (Keeton, J.) (§ 34(b) claim derivative under virtually identical facts); *accord Goldman Sachs*, 2006 WL

126772, at *6 n.15 (same); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 04 Civ. 4885 (SWK), 2005 WL 2677753, at *3-*4 (S.D.N.Y. Oct. 19, 2005) (same).[1]

      Plaintiffs have acknowledged throughout the Amended Complaint that the harm they allege was experienced by the Fidelity Funds. *See* CAC ¶¶ 81, 97, 123, 168, 239, 248 (alleging injuries *to the Funds and* their shareholders). While plaintiffs suggest for the first time in their opposition that their claims must be direct because the Funds were not harmed, in that Fund assets under management grew as a result of the improper use of those assets to attract new investors, that suggestion misapprehends what plaintiffs need to allege to state a claim. To the extent plaintiffs have alleged harm because the Fund advisors impermissibly kept for themselves the economies of scale resulting from growth in assets under management, such an alleged improper retention of funds properly belonging to the Funds would be a form of harm to the Funds directly, and a form of harm to the shareholders only pro rata and derivatively of the harm to the Funds. *See In re Lord Abbett Mut. Funds Fee Litig.*, No. 04-CV-0559, slip op. at 9-10 (D.N.J. Dec. 20, 2005) (reversing itself on motion for reconsideration under virtually identical facts and holding allegation that "defendants unjustifiably continued to charge excessive fees even though economies of scale were created as the number of investors in the Funds grew" to assert derivative claim). To the extent plaintiffs are contending that the bearing of improper costs can be a compensable injury even when Fund assets have grown as a result of the improper expenditures, that equally is a Fund claim held by plaintiffs, if at all, only derivatively of the

---

[1]   The Independent Trustee Defendants, like the courts in this District and elsewhere to consider plaintiffs' copycat claims, respectfully disagree with the footnoted dictum observation to the contrary in *In re Eaton Vance Mutual Funds Fee Litigation*, 380 F. Supp.2d 222, 235 n.5 (S.D.N.Y. 2005) (offering observation after dismissing § 34(b) claim for lack of private right of action). *See Columbia*, 2005 U.S. Dist. LEXIS 33439, at *20-*21 (Keeton, J.) (explicitly rejecting argument); *accord Goldman Sachs*, 2006 WL 126772, at *6 n.15; *In re Lord Abbett Mut. Funds Fee Litig.*, 04-CV-0559 (WJM), 2005 U.S. Dist. LEXIS 37492, at *24-*26 (D.N.J. Dec. 28, 2005).

Fund claim that the advisors should have reimbursed any such costs. *See Goldman Sachs*, 2006 WL 126772, at *7 & n.16 ("regardless of whether or not plaintiff's assertion that the Funds benefited in some way were true, ultimately, the injury alleged – *the bearing of improper costs* – is one borne by the corporation" giving rise to derivative claim) (emphasis added). Plaintiffs have not identified any theory on which the Funds could be found to have experienced no injury from the challenged conduct while plaintiffs individually experienced injury.

Plaintiffs' attempt to advance a contrary proposition based on *Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002), disregards the separateness of the shareholder harm from any harm to the corporation in that case. In addressing allegations by shareholders of a closed-end mutual fund that the implementation of a rights offering was coercive because it penalized both shareholders who did and shareholders who did not participate in the offering (albeit in different ways), *Strougo* recognized that the differential harm experienced by shareholders was not merely reflective of injury to the fund, which actually benefited from the rights offering, but of direct, non-pro rata injury to shareholders. *Id.* at 175. *Strougo* does not support the broad proposition that "the growth of a mutual fund that is accompanied by harm to shareholders states a direct, not derivative claim," as plaintiffs contend (Opp'n at 54), but only the narrow proposition that a direct action will lie when groups of shareholders are differentially harmed by actions that have no harmful effects on a fund. *See Stegall*, 394 F. Supp.2d at 364 (observing that *Strougo* found direct claims only where corporation had not suffered injury).

Plaintiffs cannot identify any such alleged differential harm resulting from their claims asserting misuse of Fidelity Fund assets and failure to share assets with shareholders. Plaintiffs' attempt to remedy this gap based on the distinction between past shareholders who benefit from direct claims and current shareholders who benefit from derivative claims disregards that every seller of shares knowingly conveys with those shares all rights that the holder previously

viii

possessed to share in recoveries based on past wrongs to the Fund. *See Forsythe*, 2006 U.S. Dist. LEXIS 1948, at *31 n.15 (rejecting argument that direct action is necessary to provide recovery for former shareholders who will otherwise receive no compensation "because such a result occurs in all derivative actions, where it is the fund that benefits directly from any remedy (because it was the fund that was injured directly")).

Because all of the remaining claims against the Independent Trustee Defendants are derivative claims for which plaintiffs were required to make demand on the Fidelity Fund Boards, the Court should reject plaintiffs' attempt to bypass the Independent Trustee Defendants' fundamental authority to decide what legal actions any Fund should or should not initiate.

### B. Demand Is Required Under Massachusetts And Delaware Law As To Each Of The Remaining Claims

The Massachusetts Universal Demand Statute unambiguously provides that demand is never excused for derivative claims in a complaint that, like this one, alleges derivative claims and is dated after July 1, 2004. *See* Mass. Gen. Laws ch. 156D, § 7.42. Plaintiffs' attempts to distinguish the cases defendants have cited for this proposition merely recite incidental characteristics of those cases, without in any sense explaining why their holdings are inapplicable. *See* Opp'n at 50 & n.53 (citing *Yameen v. Eaton Vance Dist., Inc.*, 394 F. Supp.2d 350, 352 n.1 (D. Mass. 2005); *ING Principal Prot. Funds Deriv. Litig.*, 369 F. Supp.2d 163, 171 (D. Mass. 2005); *Green v. Nuveen Advisory Fund, Inc.*, 186 F.R.D. 486, 489 n.2 (N.D. Ill. 1999), *Clairdale Enterprises, Inc. v. C.I. Realty Investors*, 423 F. Supp. 257, 261 (S.D.N.Y. 1976)). Plaintiffs' attempt to carve out a different rule for business trusts is equally without logical or legal support. *See, e.g., Columbia*, 2005 U.S. Dist. LEXIS 33439, at *21-*22 (applying Massachusetts Universal Demand Statute to derivative claims asserted by shareholders of mutual

ix

fund organized as Massachusetts business trust); *Stegall*, 394 F. Supp.2d at 367 (same); *accord In re Am. Mutual Funds Fee Litig.*, 04-5593-GAF (C.D. Cal. Dec. 16, 2005), slip op. at 6.

Demand on the Fidelity Fund Boards also would not be excused even if the Massachusetts Universal Demand Statute were inapplicable, and is not excused with respect to Funds organized under Delaware law, because plaintiffs have not alleged facts supporting a conclusion that the Independent Trustee Defendants lack the necessary independence and disinterestedness to evaluate a demand. Massachusetts and Delaware statutory law provide that a trustee who is deemed "independent" for purposes of the ICA is deemed independent and disinterested for all purposes. Each of the Independent Trustee Defendants must satisfy the ICA definition of "independent" to serve the Funds as an independent trustee, and plaintiffs cannot rebut the legal presumption of independence merely by alleging without elaboration that the Independent Trustee Defendants "were under the common control of the Investment Advisor Defendants and their affiliates." *See Goldman Sachs*, 2006 WL 126772, at *11; *Forsythe*, 2006 U.S. Dist. LEXIS 1948, at *24; *Krantz v. Fidelity Mgmt. & Research Co.*, 98 F. Supp.2d 150, 154-55 (D. Mass. 2000). The various bases that plaintiffs assert for treating the Independent Trustee Defendants as not independent are all legally irreconcilable with the statutory provisions making independence for ICA purposes synonymous with independence for the purpose of analyzing whether demand should be excused. *Compare* CAC ¶¶ 46-63, 211-218 (cited in Opp'n at 23 n.28) with *Goldman Sachs*, 2006 WL 126772, at *11 (under Delaware law, allegations that independent trustees had incentive to increase fund assets to protect their positions, would be required to sue themselves, and received substantial compensation for serving on board insufficient to excuse demand); *Am. Funds*, 04-5593-GAF, slip op. at 6-7 (under Delaware law, allegations that independent trustees approved challenged actions, had incentive to increase fund assets, would have to sue themselves, and received substantial

x

compensation for serving on multiple fund boards insufficient to excuse demand); *Eaton Vance*, 380 F. Supp.2d at 239-40 (under Massachusetts law, allegations that independent trustees approved challenged actions and would be required to sue themselves insufficient to excuse demand); *ING*, 369 F. Supp.2d at 171-72 (under Massachusetts law, allegation that independent trustees approved challenged actions insufficient to excuse demand).

Demand also would not be excused under Delaware law because the Independent Trustee Defendants are entitled to the protection of the business judgment rule. As the Independent Trustee Defendants observed in their opening brief, the Amended Complaint does not allege any basis on which to conclude that the Independent Trustee Defendants applied a "grossly negligent" decision-making process or "act[ed] in a manner that cannot be attributable to a rational business purpose" (*Brehm v. Eisner*, 746 A.2d 244, 264 n.66 (Del. 2000)). Plaintiffs do not and could not otherwise argue in their opposition. *See Goldman Sachs*, 2006 WL 126772, at *12 (under Delaware law, finding virtually identical allegations insufficient to overcome protection of business judgment rule to establish demand futility).

Since demand is not excused for any of plaintiffs' derivative claims, plaintiffs' failure to make a demand on the Fidelity Fund Boards warrants dismissal of all such claims.

## II. AS A MATTER OF LAW, THE INDEPENDENT TRUSTEE DEFENDANTS ARE NOT "CONTROL PERSONS" OF ANY ALLEGED WRONGDOER AND DID NOT "CAUSE" ANY ICA VIOLATIONS

Plaintiffs' "control person" claims under ICA § 48(a) should be dismissed in conjunction with the dismissal of all underlying substantive claims under the ICA for which the Independent Trustee Defendants are asserted to face "control person" liability. The § 48(a) claims should additionally be dismissed because acceptance of plaintiffs' theory of how the Independent Trustee Defendants "control" the Fidelity Fund advisors would incongruously make the

xi

Independent Trustee Defendants liable as "control persons" for any wrongdoing by any Fidelity advisory entity solely by fulfilling their statutory responsibilities as independent trustees.

Although ICA § 48(a) does not contain the word "control," claims under it are commonly referred to as seeking to establish "control person" liability. The Independent Trustee Defendants, either individually or as a group, indisputably do not meet either of the ICA's statutory definitions of "control" – (i) 25% ownership interest of the mutual fund's voting securities or (ii) "the power to exercise a controlling influence over the management or policies of [the alleged controlled entity]," *see* 15 U.S.C. § 80a-2(9) – because they do not hold such shares or such power. While some courts have looked to the text of § 48(a) to hold that liability can also arise when any person, directly or indirectly, "cause[d] to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under [the ICA]," 15 U.S.C. § 80a-47(a), that requirement of "causation" equally requires a capacity to influence the alleged wrongdoer to act.

Plaintiffs' attempt to satisfy this pleading obligation based on excerpts from a representative Statement of Additional Information for the Fidelity Funds indicating that the Independent Trustee Defendants approve and oversee the Fund management contracts (Opp'n at 68-69) misapprehends the recognized legal distinction between such statutorily required oversight and "control." The oversight the Independent Trustee Defendants are required to exercise is by statutory definition at arm's length. The Independent Trustee Defendants' only enforcement mechanism is the capacity to refuse to contract with the Fund advisors. Substantial bargaining power and related oversight responsibilities provide the Independent Trustee Defendants with a significant profile respecting the Funds, their advisors and their shareholders, but not with "control" over any of them.

Plaintiffs' unsupported contention that the Independent Trustee Defendants must be liable because they control the Fidelity Funds advisors is as devoid of foundation as their contemporaneous contention that demand must be excused because the advisors control the Independent Trustee Defendants. There is no basis for any conclusion that either controls the other.

### Conclusion

For the foregoing reasons, and the reasons set forth by co-defendants, each of the remaining claims against the Independent Trustee Defendants should be dismissed.

Dated:   February 9, 2006

    Respectfully submitted,

**/s/ Sandra Sue McQuay**

Sandra Sue McQuay  (BBO No. 340120)
A. Lauren Carpenter (BBO No. 551258)
SULLIVAN, WEINSTEIN & McQUAY
2 Park Plaza
Boston, Massachusetts  02116
Telephone  (617) 348-4355

John S. Kiernan
Suzanne M. Grosso
Nicholas F. Joseph
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
Telephone  (212) 909-6000

*Attorneys for Independent Trustee Defendants*
   (J. Michael Cook, Ralph F. Cox,
   Robert M. Gates, George H. Heilmeier,
   Donald J. Kirk, Marie L. Knowles,
   Ned C. Lautenbach, Marvin L. Mann,
   William O. McCoy, Gerald C. McDonough,
   and William S. Stavropoulos)

## Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 9, 2006.

**/s/ Sandra Sue McQuay**
Sandra Sue McQuay

xiv

22130813v1