**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JAMES GILLIAM, Individually And On Behalf Of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al.,<br><br>        Defendants. | Civil Action No. 04cv11600 (NG)<br><br>**Consolidated Case Nos.:**<br><br>04cv11642<br>04cv11709<br>04cv11735<br>04cv11812 |

**<u>REPLY MEMORANDUM OF LAW IN SUPPORT OF THE FIDELITY DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................. 1

I.  NO PRIVATE RIGHTS OF ACTION EXIST UNDER SECTIONS 34(b), 36(a), AND 48(a) OF THE ICA ....................................................................................................... 1

    A.  Plaintiffs Ignore All Recent Legal Precedent Directly On Point, Including Decisions In A Series of Copy-Cat Actions. ........................................................... 2

    B.  There Is No Contemporaneous Legislative History Supporting An Implied Private Right of Action Under Section 34(b), 36(a), or 48(a). ............................... 4

    C.  Plaintiffs' Reliance on *Jackson* Is Misplaced. ........................................................ 5

    D.  Congress Did Not Intend to Confer Rights on Private Plaintiffs Under Sections 34(b), 36(a), and 48(a). ............................................................................... 7

II.  COUNT THREE UNDER SECTION 36(b) OF THE ICA SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD A CLAIM AND THERE IS NO DIRECT CAUSE OF ACTION ....................... 7

    A.  Plaintiffs Have Failed To State A Claim Under Section 36(b) Against All 206 Funds. ................................................................................................................... 7

        1.  Fund-Specific Allegations Are Required. ..................................................... 8

        2.  Plaintiffs' Complex-Wide Allegations Are Inapplicable to Each Fund At Issue. ................................................................................................ 9

        3.  Even Plaintiffs' Fund-Specific Allegations Are Insufficient To State A Claim Under Section 36(b). ............................................................ 12

    B.  Section 36(b) Cannot Be Maintained Directly As A Class Action. ...................... 15

        1.  Supreme Court Precedent Establishes that Claims Under Section 36(b) Are Derivative. .................................................................... 16

        2.  The Cases Cited by Plaintiff Are Unavailing. ........................................... 18

        3.  Plaintiffs' Arguments Based on the Structure of Mutual Funds Are Unavailing. .......................................................................................... 19

III.    PLAINTIFFS' FIRST THROUGH FOURTH AND SIXTH THROUGH EIGHTH COUNTS SHOULD BE DISMISSED BECAUSE THEY WERE NOT BROUGHT DERIVATIVELY......................................................................20

    A.    Plaintiffs' Purported "Trust Law" Principals Are Inapplicable To The Question of Whether Their Claims Are Direct Or Derivative............................ 21

    B.    Under Massachusetts and Delaware Corporate Law, Plaintiffs' Claims Are Derivative, Not Direct.......................................................................................... 24

IV.    PLAINTIFFS' DERIVATIVE CLAIMS MUST ALSO BE DISMISSED FOR FAILURE TO MAKE DEMAND OR ADEQUATELY PLEAD DEMAND FUTILITY...................................................................................................................30

    A.    Under Massachusetts Law, Demand Is Universally Required............................. 30

    B.    Under Massachusetts and Delaware Law, Plaintiffs' Conclusory Allegations Of Demand Futility Are Insufficient To Establish Excuse From Demand. ..................................................................................................... 30

V.    PLAINTIFFS LACK STANDING TO SUE ON BEHALF OF SHAREHOLDERS IN FUNDS IN WHICH PLAINTIFFS DO NOT OWN SHARES .................................................................................................................32

    A.    Rule 23 Does Not Confer Standing Upon Plaintiffs To Sue On Behalf of Shareholders In Funds In Which Plaintiffs Do Not Own Shares.......................... 32

    B.    Plaintiffs' Other Attempts to Establish Standing Fail.......................................... 35

VI.    SLUSA PREEMPTS PLAINTIFFS' STATE-LAW CLAIMS, AND THOSE CLAIMS MUST BE DISMISSED ........................................................................36

VII.    DISMISSAL WITH PREJUDICE IS WARRANTED......................................40

CONCLUSION.............................................................................................................41

## TABLE OF AUTHORITIES

**<u>CASES</u>**                                                                                           **<u>PAGE(S)</u>**

*Alexander v. Sandoval,*
532 U.S. 275 (2001)................................................................................................*passim*

*Atencio v. Smith Barney, Citigroup, Inc.,*
No. 04 Civ. 5653, 2005 WL 267556 (S.D.N.Y. Feb. 2, 2005) ................................. 39

*Batra v. Investors Research Corp.,*
No. 89-0528-CV-W-6, 1992 WL 278688 (W.D. Mo. Oct. 4, 1991) ....................................... 35

*Benak v. Alliance Capital Management L.P.,*
No. Civ.A. 01-5734, 2004 WL 1459249 (D.N.J. Feb. 9, 2004) ............................... 40

*Blasberg  v. Oxbow Power Corp.,*
934 F. Supp. 21 (D. Mass. 1996) ........................................................................... 29

*Blue Chip Stamps v. Manor Drug Stores,*
421 U.S. 723 (1975)................................................................................................ 37

*Bonano v. E. Caribbean Airline Corp.,*
365 F.3d 81 (1st Cir. 2004)....................................................................................... 2

*Booth v. Greer Investment Co.,*
52 F.2d 857 (N.D. Okla. 1931),
*aff'd sub nom.*, *Greer Investment Co. v. Booth*, 62 F.2d 321 (10th Cir. 1932)........................ 21

*Byrne v. American Foreign Ass'n,*
3 F.R.D. 1 (D. Mass. 1943)...................................................................................... 23

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
511 U.S. 164 (1994).................................................................................................. 4

*Chamberlain v. Aberdeen Asset Mgmt. Ltd.,*
No. 02-CV-5870, 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005),
*vacated solely for purposes of settlement*, 2005 WL 1378757 (E.D.N.Y. Apr. 12, 2005) ..... 3, 7

*Correctional Servs. Corp. v. Malesko,*
534 U.S. 61 (2001)................................................................................................... 2

*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
395 F.3d 25 (2d Cir. 2005)................................................................................. 38, 39

*Daily Income Fund, Inc. v. Fox,*
464 U.S. 523 (1984)...........................................................................................*passim*

*Davis v. Bailey,*
  No. CIVA-05-CV00042WYD-OES, 2005 WL 3527286 (D. Colo. Dec. 22, 2005) ................. 3

*Disher v. Citigroup Global Mkts. Inc.,*
  419 F.3d 649 (7th Cir. 2005) ...................................................................................... 36, 37

*Evangelist v. Fidelity Mgmt. & Research Co.,*
  554 F. Supp. 87 (D. Mass. 1982) ....................................................................................... 22

*Fallick v. Nationwide Mut. Ins. Co.,*
  162 F.3d 410 (6th Cir. 1998) ............................................................................................. 34

*Forsythe v. Sun Life Fin., Inc.,*
  No. CIV.A. 04-10584-GAO, 2006 WL 148935 (D. Mass. Jan. 19, 2006) ...................... *passim*

*FW/PBS, Inc. v. City of Dallas,*
  493 U.S. 215 (1990) .......................................................................................................... 32

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,*
  694 F.2d 923 (2d Cir. 1982), *cert. denied*, 461 U.S. 906 (1983) ............................................. 18

*Green v. Ameritrade, Inc.,*
  279 F.3d 590 (8th Cir. 2002) ........................................................................................ 38, 39

*Green v. Nuveen Advisory Corp.,*
  186 F.R.D. 486 (N.D. Ill. 1999) ......................................................................................... 29

*Greene v. Rhode Island,*
  398 F.3d 45 (1st Cir. 2005) ................................................................................................ 10

*Greenspun v. Lindley,*
  330 N.E.2d 79 (NY 1975) .................................................................................................. 23

*Grossman v. Johnson,*
  674 F.2d 115 (1st Cir. 1982) .............................................................................................. 31

*Haas v. Pittsburgh Nat'l Bank,*
  526 F.2d 1083 (3d Cir. 1975) ....................................................................................... 34, 35

*Hamilton v. Allen,*
  No. Civ.A.05-110, 2005 WL 2660356 (E.D. Pa. Oct. 14, 2005) ............................................ 24

*Hogan v. Baker,*
  No. Civ.A. 305CV0073P, 2005 WL 1949476 (N.D. Tex. Aug. 12, 2005) ....................... 20, 24

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.,*
  2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005), *reconsid. granted,*
  2006 WL 74439 (Jan. 11, 2006) ...................................................................................... *passim*

*In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*,
   794 F. Supp. 1424 (D. Ariz. 1992) ........................................................ 34

*In re American Mut. Funds Fee Litig.*,
   No. CV 04-5593-GAF (RNBx) (C.D. Cal. Dec. 16, 2005) ............................................... *passim*

*In re Bank of Boston Corp. Sec. Litig.*,
   762 F. Supp. 1525 (D. Mass. 1991) ........................................................ 34

*In re Columbia Entities Litig.*,
   CV No. 04-11704-REK, 2005 U.S. Dist. LEXIS 33439 (D. Mass. Nov. 30, 2005) ......... *passim*

*In re Davis Selected Mut. Funds Litig.*,
   2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005) ........................................................ 20

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
   No. 98 Civ. 4318, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) ........................................... 34

*In re Dreyfus Mut. Funds Fee Litig.*,
   No. 04-0128, 2005 U.S. LEXIS 29152 (W.D. Pa. Sep. 30, 2005) .................................... *passim*

*In re Eaton Vance Mut. Funds Fee Litig.*,
   380 F. Supp. 2d 222 (S.D.N.Y. 2005), *aff'd*, 403 F. Supp. 2d 310 (S.D.N.Y. 2005) ........ *passim*

*In re Franklin Mut. Funds Fee Litig.*,
   388 F. Supp. 2d 451 (D.N.J. 2005), *reconsid. denied*, No. 2:04CV982,
   slip op. (D.N.J. Dec. 28, 2005) ........................................................ *passim*

*In re Goldman Sachs Mut. Funds Fee Litig.*,
   No. 04 Civ. 2567, 2006 WL 126772 (S.D.N.Y. Jan 17, 2006) ......................................... *passim*

*In re Kauffman Mutual Fund Actions*,
   479 F.2d 257 (1st Cir. 1973) ........................................................ 22

*In re Lord Abbett Mut. Funds Fee Litig.*,
   385 F. Supp. 2d 471 (D.N.J. 2005), *amended by* No. 04-CV-0559,
   2005 WL 3544312 (D.N.J. Dec. 28, 2005) ........................................................ *passim*

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   272 F. Supp. 2d 243 (S.D.N.Y. 2003) ........................................................ 29

*In re ML-Lee Acquisition Fund II, L.P.*,
   848 F. Supp. 527 (D. Del. 1994) ........................................................ 34

*In re MobileMedia Sec. Litig.*,
   28 F. Supp. 2d 901 (D.N.J. 1998) ........................................................ 34

*In re Mut. Funds Inv. Litig. (Janus Subtrack),*
   384 F. Supp. 2d 845 (D. Md. 2005) ..................................................................... 6, 9

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
   163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................................... 24

*ING Principal Prot. Funds Derivative Litig.,*
   369 F. Supp. 2d 163 (D. Mass. 2005) ................................................................. 30

*Jackson v. Birmingham Bd. of Educ.,*
   125 S. Ct. 1497 (2005) ..................................................................................... 5, 6

*Jackson v. Stuhlfire,*
   547 N.E.2d 1146 (Mass. App. Ct. 1990) ............................................................ 20

*Kamen v. Kemper Fin. Servs., Inc.,*
   500 U.S. 90 (1991) ............................................................................................ 17

*Kauffman v. Dreyfus Fund, Inc.,*
   434 F.2d 727 (3d Cir. 1970) .................................................................. 19, 29, 33

*Kircher v. Putnam Funds Trust,*
   403 F.3d 478 (7th Cir. 2005) ........................................................................ 36, 37

*Kitchens v. U.S. Shelter Corp.,*
   No 82-1951-1, 1983 WL 1380 (D.S.C. Oct. 13, 1983) ........................................ 34

*Krantz v. Fidelity Mgmt. & Research Co.,*
   98 F. Supp. 2d 150 (D. Mass. 2000) .................................................................... 9

*Krantz v. Prudential Inv. Fund Mgmt. LLC,*
   305 F.3d 140 (3d Cir. 2002) .............................................................................. 40

*Krinsk v. Fund Asset Management, Inc.,*
   715 F. Supp. 472 (S.D.N.Y. 1988) ..................................................................... 28

*Lewis v. Casey,*
   518 U.S. 343 (1996) .......................................................................................... 32

*Love v. Delta Airlines,*
   310 F.3d 1347 (11th Cir. 2002) ........................................................................... 2

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) .......................................................................................... 32

*Maywalt v. Parker & Parsley Petroleum Co.,*
   147 F.R.D. 51 (S.D.N.Y. 1993) ......................................................................... 34

*McGrath v. MacDonald,*
  853 F. Supp. 1 (D. Mass. 1994) ............................................... 27

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
  No. 04-1371, 2005 WL 873163 (U.S. Sept. 27, 2005) ............................ 37

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
  No. 04-1371, 2005 WL 879506 (filed Apr. 11, 2005) ............................ 37

*Meyer v. Putnam Int'l Voyager Fund,*
  220 F.R.D. 127 (D. Mass. 2004) ............................................... 37

*Minkin v. Commissioner of Revenue,*
  680 N.E.2d 27 (Mass. 1997) ................................................... 23

*Moore v. Mansfield,*
  142 N.E. 792 (Mass. 1924) .................................................... 22

*Mulloney v. United States,*
  79 F.2d 566 (1st Cir. 1935) .................................................. 23

*Mutchka v. Harris,*
  373 F. Supp. 2d 1021 (C.D. Cal. 2005) ........................................ 24

*Nenni v. Dean Witter Reynolds, Inc.,*
  No. 98-12454-REK, 1999 U.S. Dist. LEXIS 23351 (D. Mass. Sept. 29, 1999) ...... 33

*Olmsted v. Pruco. Life Ins. Co.,*
  283 F.3d 429 (2d Cir. 2002) .............................................. *passim*

*Parker v. Lloyd,*
  71 N.E.2d 889 (Mass. 1947) ................................................... 22

*Sargent v. Wood,*
  81 N.E. 901 (Mass. 1907) ..................................................... 22

*Stegall v. Ladner,*
  394 F. Supp. 2d 358 (D. Mass. 2005) ...................................... *passim*

*Stevens v. Nagel,*
  831 N.E.2d 935 (Mass. App. Ct. 2005) ........................................ 22

*Strigliabotti v. Franklin Resources, Inc.,*
  398 F. Supp. 2d 1094 (N.D. Cal. 2005) ................................... 39, 40

*Strigliabotti v. Franklin Resources, Inc.,*
  No. C 04-00883 SI, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) .... 19, 24, 25, 26

*Strougo v. Bassini,*
    282 F.3d 162 (2d Cir. 2002).........................................................................26, 27

*Swartz v. Sher,*
    184 N.E.2d 51 (Mass. 1962) ..............................................................................23

*Tedesco v. Mishkin,*
    689 F. Supp. 1327 (S.D.N.Y. 1988).....................................................................34

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.,*
    845 A.2d 1031 (Del. 2004) ................................................................................20

*Touche Ross & Co. v. Redington,*
    442 U.S. 560 (1979)............................................................................................7

*United States v. AVX Corp.,*
    962 F.2d 108 (1st Cir. 1992).........................................................................32, 35

*Yameen v. Eaton Vance Dist., Inc.,*
    394 F. Supp. 2d 350 (D. Mass. 2005) .............................................................8, 30

## **STATUTES**

15 U.S.C. § 80a-2(a)(9).........................................................................................32

15 U.S.C. § 80a-35(b)........................................................................................8, 34

15 U.S.C. § 80a-35(b)(3)..................................................................................12, 13

17 C.F.R. § 270.18f-2 ...........................................................................................10

28 USC § 851(a), (g) ............................................................................................10

28 U.S.C. § 2072(b) ..............................................................................................35

Del. Code Ann. tit. 12, § 3801(a) (2006) ...............................................................22

Del. Code Ann. tit. 12, § 3801(h) ..........................................................................31

Mass. Gen Laws, ch. 110A, § 401(m)(2)................................................................24

Mass. Gen. Laws ch. 110A, § 201(c).....................................................................24

Mass. Gen. Laws ch. 156A ...................................................................................24

Mass. Gen. Laws ch. 156D, § 7.42 ........................................................................31

Mass. Gen. Laws ch. 182, § 2B .................................................................................. 31

Mass. Gen. Laws ch. 182, § 5A .................................................................................. 24

## **RULES**

Fed. R. Civ. P. 10(b) .................................................................................................. 38

Fed. R. Civ. P. 10(b)(5) ............................................................................................. 38

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 10

Fed. R. Civ. P. 23 ...................................................................................................... 33

Fed. R. Civ. P. 23.1 ............................................................................................. passim

Fed. R. Civ. P. 23.2 .................................................................................................. 36

Fed. R. Civ. P. 82 ...................................................................................................... 35

## **MISC.**

Austin Wakeman Scott, The Law of Trusts (4th ed., Aspen 1989 & Supp. 2005) ...................... 21

Restatement (Second) of Trusts § 1 cmt. b (1959-2005) ............................................. 22

Defendants Fidelity Management and Research Company ("FMRCo"), FMR Co., Inc. ("FMRC"), FMR Corp., Fidelity Distributors Corporation ("FDC"), Edward C. Johnson 3d, Abigail P. Johnson, Peter S. Lynch, Laura B. Cronin, Robert L. Reynolds and Robert C. Pozen (together, the "Fidelity Defendants"), submit this Reply Memorandum of Law in support of their motion to dismiss Plaintiffs' Consolidated Amended Complaint ("Amended Complaint" or "CAC"), pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs' counsel filed twenty-one cases making virtually identical allegations against different mutual fund advisers in various District Courts across the country.  Courts have now decided motions to dismiss in ten of those cases.  In each and every one of those decisions, including several decided in the short period since Defendants filed their initial moving papers ("Fidelity Def. Br."), the courts have dismissed all (or virtually all) of plaintiffs' claims.  Plaintiffs' Opposition brief merely rehashes arguments that have now been rejected by several courts in multiple jurisdictions.  For similar reasons, this Court should do so here.

## ARGUMENT

**I.    NO PRIVATE RIGHTS OF ACTION EXIST UNDER SECTIONS 34(b), 36(a), AND 48(a) OF THE ICA**

Plaintiffs' Opposition Memorandum ("Pl. Opp.") fails to demonstrate the existence of private rights of action under Sections 34(b), 36(a), and 48(a) of the Investment Company Act of 1940 ("ICA").[1]  Unable to distinguish *Alexander v. Sandoval*, 532 U.S. 275 (2001), and *Olmsted*

---

[1]    As discussed in Defendants' initial moving papers, Plaintiffs' cause of action pursuant to Section 48(a) warrants dismissal for the additional reasons that: (1) Section 48(a) of the ICA does not provide an independent basis of liability and Plaintiffs have failed to state a primary violation under Section 34(b), 36(a), or 36(b) of the ICA; and (2) Plaintiffs have not plead any *facts* establishing that FMR Corp. exercised the requisite "control" over FMRCo, FMRC, and FDC. Accordingly, Plaintiffs' control person liability claim must be dismissed for these reasons as well.

*v. Pruco. Life Ins. Co.*, 283 F.3d 429 (2d Cir. 2002), Plaintiffs are virtually silent with respect to all recent precedent directly on point (except to say that they "have filed notices to appeal these unfavorable rulings" (Pl. Opp. at 65 n.72)), and instead rely on an "*ancien regime*" of cases and inapposite legislative history.  In doing so, Plaintiffs ask this Court to look beyond the plain language of the statute to find private rights of action under Sections 34(b), 36(a), and 48(a). This Court should decline to do so.

A.    **Plaintiffs Ignore All Recent Legal Precedent Directly On Point, Including Decisions In A Series of Copy-Cat Actions.**

Rather than addressing all of the *recent* legal precedent to the contrary, Plaintiffs repeatedly assert that they may pursue actions under Sections 34(b), 36(a), and 48(a) because of the "long precedent of private rights of action" under these sections (Pl. Opp. at 63), and that implied rights under the ICA have "30 years" worth of history (*Id.*).  Plaintiffs cite to a string of cases dealing with implied rights under the ICA, *all* of which were decided before the Supreme Court's decision in *Sandoval.*  (*Id.* at 63.)  All contemporary courts, including those within this District, have found Plaintiffs' reliance on this "*ancien regime*" of cases entirely misplaced.

After *Sandoval*, wherein the Supreme Court changed the standard for implying private rights of action, prior decisions finding implied rights of action under the ICA are no longer relevant.[2]  Indeed, numerous post-*Sandoval* cases have held that prior precedent finding implied rights of action under the ICA belongs to an "*ancien regime*" when "courts had more latitude to weigh statutory policy and other considerations than they do now."  *Olmsted*, 283 F.3d at 433-

---

[2]    *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 67 (2001) ("[W]e have retreated from our previous willingness to imply a cause of action where Congress has not provided one."); *Bonano v. E. Caribbean Airline Corp.*, 365 F.3d 81, 86 (1st Cir. 2004) (because "*Sandoval* changed the legal landscape, we regard that pre-*Sandoval* decision as lacking continued vitality"); *Love v. Delta Airlines*, 310 F.3d 1347, 1359 (11th Cir. 2002) (holding that pre-*Sandoval* opinion factors are not reliable authorities).

34; *see also Chamberlain v. Aberdeen Asset Mgmt. Ltd.*, No. 02-CV-5870, 2005 WL 195520, at

*4 (E.D.N.Y. Jan. 21, 2005), *vacated solely for purposes of settlement*, 2005 WL 1378757

(E.D.N.Y. Apr. 12, 2005).

Plaintiffs rely on this outdated case law because each and every one of more than twenty

courts to have considered the issue since *Sandoval*—including several within this District—have

unanimously refused to find an implied private right of action under the ICA.[3]  Indeed, even

since Defendants filed their moving papers on December 5, 2005, an additional six courts have

either refused to imply a private right of action under the ICA or have reaffirmed earlier rulings

declining plaintiffs' requests to do so.  *See  Forsythe*, 2006 WL 148935, at *2-4; *Goldman Sachs*,

2006 WL 126772, at *5; *Bailey*, 2005 WL 3527286, at *3-5; *In re Eaton Vance Mut. Funds Fee

Litig.*, 380 F. Supp. 2d 222 (S.D.N.Y. 2005), *reconsid. denied,* 403 F. Supp. 2d 310, 313

(S.D.N.Y. 2005); *American Funds*, No. CV 04-5593-GAF (RNBx), slip op. at 3-4; *In re Lord

Abbet Mut. Funds Fee Litig.*, 385 F. Supp. 2d 471 (D.N.J. 2005), *amended by* No. 04-CV-0559,

2005 WL 3544312, at *12-15 (D.N.J. Dec. 28, 2005); *In re Franklin Mut. Funds Fee Litig.*, 388

F. Supp. 2d 451 (D.N.J. 2005), *reconsid. denied*, No. 2:04CV982, slip op. at 2 (D.N.J. Dec. 28,

2005).

For example, just last month in *Forsythe*, Judge O'Toole held that Congress did not

intend to create private rights of action under Sections 34(b), 36(a) and 48(a):  "Neither § 34(b),

§ 36(a), nor § 48(a) contains the 'rights-creating language' necessary to find an implied private

---

[3]     *See Forsythe v. Sun Life Fin., Inc.*, No. CIV.A. 04-10584-GAO, 2006 WL 148935  (D. Mass. Jan.
19, 2006) (no private right of action under 34(b), 36(a). or 48(a)); *In re Goldman Sachs Mut.
Funds Fee Litig.*, No. 04 Civ. 2567, 2006 WL 126772 (S.D.N.Y. Jan 17, 2006) (no private right
of action under 34(b) and 36(a)); *Davis v. Bailey*, No. CIVA-05-CV00042WYD-OES, 2005 WL
3527286 (D. Colo. Dec. 22, 2005) (no private right of action under 36(a)); *In re American Mut.
Funds Fee Litig.*, No. CV 04-5593-GAF (RNBx) (C.D. Cal. Dec. 16, 2005) (no private right of
action under 34(b) or 36(a)) ("American Funds"); *see also* Fidelity Def. Br. at 6 n.5 (collecting
cases decided prior to submission of Fidelity Defendants' Motion to Dismiss).

right of action." 2006 WL 148935, at *3. The court found it instructive that Congress created an express right of action in Section 36(b) but not in other sections of the ICA, noting that "the responsibility for the overall enforcement of the ICA statutory scheme is not given to private individuals but rather to the SEC." *Id.*

Recently, in *Eaton Vance*, Judge Koeltl held that no private rights of action exist under Sections 34(b), 36(a) and 48(a). *Eaton Vance*, 380 F. Supp. 2d at 233. The court, relying on four factors set out in *Olmsted*, held that: (1) none of the sections at issue explicitly provides for a private right of action; (2) the sections do not include so-called "rights creating language;" (3) Section 42 already provides for SEC enforcement of the ICA; and (4) Section 36(b) explicitly provides a private right of action while no other section does. *See id.* at 231-32. Accordingly, the court dismissed plaintiffs' claims because "[t]he reasoning of *Olmsted* dictates that there is no private right of action under Sections 34(b), 36(a), and 48(a)." *Id.* at 233.[4]

## B.    There Is No Contemporaneous Legislative History Supporting An Implied Private Right of Action Under Section 34(b), 36(a), or 48(a).

Despite the lack of ambiguity in Sections 34(b), 36(a), and 48(a),[5] Plaintiffs ask this Court to examine the legislative history of the ICA. (Pl. Opp. at 61-62.) Plaintiffs' selective reliance on legislative history, however, provides them with no support. Plaintiffs rely exclusively on statements made by Congress during the 1980 Amendments to the ICA—ten years *after* the 1970 Amendments that created Section 36(a), and thirty years after the enactment

---

[4]    Following Judge Koeltl's decision, the plaintiffs in *Eaton Vance* filed a motion for reconsideration. On December 6, 2005, Judge Koeltl granted plaintiffs' motion but reaffirmed in all respects his prior holding that no private rights of action exist under Sections 34(b), 36(a), and 48(a). *See Eaton Vance*, 380 F. Supp. 2d at 313.

[5]    It is, course, well-settled that, "[w]here the text of a statute is unambiguous, 'judicial inquiry is complete [] except in rare and exceptional circumstances,' and legislative history [is] instructive only upon 'the most extraordinary showing of contrary intentions.'" *Olmsted*, 283 F.3d at 435 (citations omitted). Here, the text of Sections 34(b), 36(a), and 48(a) is unambiguous, and Plaintiffs fail to make any "extraordinary showing of contrary intentions."

of Sections 34(b) and 48(a).  (*See id.*)  In *Central Bank of Denver*, *N.A. v. First Interstate Bank of Denver*, *N.A.*, 511 U.S. 164 (1994), the Supreme Court made clear that in determining congressional intent, the only relevant legislative history is that which is *contemporaneous* with the passage of the statute at issue, and that "the interpretation given by one Congress . . . to an earlier statute is of little assistance in discerning the meaning of that statute."  *Id.* at 185.  Indeed, when plaintiffs in *Olmsted* proffered the exact statements from the 1980 Amendments to the ICA that Plaintiffs cite here, the Second Circuit responded by noting that, "A report prepared by a House committee on one piece of legislation cannot constitute an 'extraordinary showing' of congressional intent for different legislation" passed at a different point in time.  *Olmsted*, 283 F.3d at 435.  Similarly, Plaintiffs here cannot use statements made in 1980 to demonstrate congressional intent to create an implied right of action as to different legislation enacted many years earlier.

### C.    Plaintiffs' Reliance on *Jackson* Is Misplaced.

In an effort to evade and obfuscate the clear test articulated in *Olmsted* and *Sandoval,* as well as the scores of recent cases finding no implied rights of action under the ICA, Plaintiffs rely heavily on *Jackson v. Birmingham Bd. of Educ.*, 125 S. Ct. 1497 (2005).  (Pl. Opp. at 63-64.)  As recognized by every single court that has addressed this issue—including those within this District—*Jackson* is wholly irrelevant to the analysis of implied rights under the ICA.  *See Forsythe*, 2006 WL 148935, at *3 n.10 (finding that "plaintiffs misread *Jackson*; it does not narrow *Sandoval* in the manner they assert it does" and "plaintiffs' argument that *Jackson* somehow nullifies the broad change that *Sandoval* wrought in the approach to finding private rights of action is wrong"); *Goldman Sachs*, 2006 WL 126772, at *5 n.10 (finding no implied rights under Sections 34(b) and 36(a), and holding that *Jackson* "does not compel a different conclusion"); *Eaton Vance*, 380 F. Supp. 2d at 313 (noting that "*Jackson* was considered at

argument, and was not discussed in the Court's previous opinion because it is inapplicable"); *American Funds*, CV 04-5593-GAF (RNBx), slip op. at *4 (observing that "[n]o federal court since *Sandoval*, including cases after *Jackson*, has found an implied private right of action under the ICA") (internal citations omitted); *In re Mut. Funds Inv. Litig.* (*Janus Subtrack*), 384 F. Supp. 2d 845, 868 n.24 (D. Md. 2005) ("Janus Inv. Litig.") (holding *Jackson* does not support a finding of implied rights under the ICA).   Indeed, the Supreme Court in *Jackson* expressly reaffirmed its earlier holding in *Sandoval*, on which Defendants rely.  *See Jackson*, 125 S.Ct. at 1507 (noting that reliance on the text of the statute was "[i]n step with *Sandoval*").

In *Jackson*, the plaintiff alleged sex discrimination as prohibited under Title IX of the Education Amendments Act of 1972.  The issue was whether retaliation is considered "discrimination" under Title IX, thereby giving rise to a previously recognized private right of action which neither side contested.  As such, the dispositive issue in *Jackson* was the *scope* of the private right of action covered by the statute—not the *existence* of the implied right.

Plaintiffs' misreading of *Jackson* stems from their belief that the Supreme Court in that case "found an implied right of action under Title IX for claims of retaliation, even though such a private cause of action was not apparent from the text of the statute."  (Pl. Opp. at 63 n.69.)  To the contrary, the Court held exactly the opposite, finding that a claim for retaliation was within the text of the statute.  *See Jackson*, 125 S. Ct. at 1507 (because "retaliation" is discrimination, "[w]e reach this result based on the statute's text"; "the statute *itself* contains the necessary prohibition"); *id.* at 1507 n.2 ("We interpret Title IX's text to clearly prohibit retaliation for complaints about sex discrimination.").

### D. Congress Did Not Intend to Confer Rights on Private Plaintiffs Under Sections 34(b), 36(a), and 48(a).

Plaintiffs' assertion that an implied right of action exists because Sections 34(b), 36(a), and 48(a) discuss the "group of individuals to be protected" also lacks merit. (Pl. Opp. at 57-60.) Plaintiffs' reading—turning the most general expressions of intent to protect investors through regulatory oversight into a private cause of action—would transform nearly every section of the ICA into a private right of action. Both the law and logic preclude such an absurd result. Had Congress intended to create a private right of action under Sections 34(b), 36(a), and 48(a), it easily could have done so. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979) ("Obviously . . . when Congress wished to provide a private damage remedy, it knew how to do so."); *Olmsted*, 283 F.3d at 433 (same); *Chamberlain*, 2005 WL 195520, at *3 (noting that "if Congress wished to create a private right of action for violations of Section 36(a), it could have done so, as it did for Section 36(b)").

## II. COUNT THREE UNDER SECTION 36(b) OF THE ICA SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD A CLAIM AND THERE IS NO DIRECT CAUSE OF ACTION

### A. Plaintiffs Have Failed To State A Claim Under Section 36(b) Against All 206 Funds.

Plaintiffs' allegations here are insufficient to state a claim under Section 36(b) because: (1) Plaintiffs do not—and cannot—allege the requisite fund-specific facts that would support a claim with respect to *each* of the 206 Funds at issue, as only a handful of these funds are even mentioned in the Amended Complaint; (2) many of the general, complex-wide allegations are inapplicable to each fund at issue; and (3) in those few instances when Plaintiffs do make fund-specific allegations, those allegations relate to time periods that are not relevant as a matter of law, as recently discussed at length by Judge Kram in *AllianceBernstein*. *See* 2006 WL 74439, at *2-3.

### 1.     Fund-Specific Allegations Are Required.

As Defendants noted previously, the plain language of Section 36(b) requires that a plaintiff plead and prove fund-specific allegations.  (*See* Fidelity Def. Br. at 16.)  Section 36(b) states, in pertinent part, that:

> An action may be brought under [Section 36(b) of the ICA] by the Commission, or by a security holder of *such* registered investment company on behalf of *such* company . . . for breach of fiduciary duty in respect of *such* compensation or payments paid by *such* registered investment company.

15 U.S.C. § 80a-35(b) (emphasis added).  The statute simply does not contemplate general allegations directed at the fund complex and overall mutual fund industry without any reference to the individual fund at issue.[6]  *See Forsythe*, 2006 WL 148935, at *27 ("[I]t is appropriate to treat each MFS Fund as a separate and distinct entity in the [Section] 36(b) context."); *Yameen v. Eaton Vance Dist., Inc.*, 394 F. Supp. 2d 350, 356 (D. Mass. 2005) (noting that Section 36(b) claim requires a plaintiff to "allege some relationship between fees charged and the services rendered that, if true, would support a claim that the fees are excessive").

Virtually all of the cases cited by Plaintiffs in support of the contention that mere complex-wide allegations are sufficient under Section 36(b) involved specific allegations pertaining to a limited number of funds and are otherwise distinguishable.  None of the cases

---

[6]     The legislative history of Section 36(b) does not alter the plain language of the statute.  Plaintiffs cite to an excerpt from the 1969 Senate Report summarizing the amendments that added Section 36(b), which they argue demonstrates that "a court examining a § 36(b) claim should consider 'all the facts,' including allegations relating to the entire fund complex."  (Pl. Opp. at 13.)  Plaintiffs misinterpret the legislative history.  Nowhere does the Senate Report indicate that a cause of action should be maintained against funds *solely* based on general, complex-wide allegations.  Plaintiffs have not and cannot cite to any support for such an absurd proposition.

stands for the proposition that general, complex-wide allegations are sufficient to sustain a cause of action under Section 36(b).[7]

For example, in *Krantz*, plaintiffs alleged that the investment advisory fees for only two funds—not the entire fund complex, as Plaintiffs misleadingly suggest—were excessive because the outside directors for the funds were under the control of the investment adviser in violation of the ICA because they received "substantial" annual salaries for serving on the boards of all 237 Fidelity funds. *See Krantz*, 98 F. Supp. 2d at 152-53. Thus, the complex-wide allegations in *Krantz* merely supplemented the specific allegations about the fees charged to the two funds at issue. *See id*. at 153. Here, however, not only do Plaintiffs fail to include any detail regarding the nature of the fees for 201 of the 206 Funds at issue, the Amended Complaint does not even mention them.[8]

### 2.    Plaintiffs' Complex-Wide Allegations Are Inapplicable to Each Fund At Issue.

As a review of Plaintiffs' Opposition makes plain, Plaintiffs cannot, after a conducting a "reasonable inquiry," claim that each general allegation contained in the Amended Complaint is applicable with respect to each and every Fund at issue here. It is patently obvious that Plaintiffs failed to review the publicly available information relevant to individual Funds—at least for the

---

[7]    *See, e.g., In re Dreyfus Mut. Funds Fee Litig.*, No. 04-0128, 2005 U.S. LEXIS 29152, at *25-35 (W.D. Pa. Sep. 30, 2005); *Janus Inv. Litig.*, 384 F. Supp. 2d at 867-68; *Krantz v. Fidelity Mgmt. & Research Co.*, 98 F. Supp. 2d 150, 152-53 (D. Mass. 2000).

[8]    Plaintiffs concede that the only Funds at issue about which they make any factual allegations are: Fidelity Blue Chip Growth; Fidelity China Region Fund; Fidelity Contrafund; Fidelity Low-Priced Stock Fund; and Fidelity Magellan Fund. (Pl. Opp. at 16-17; *see also* Fidelity Def. Br. at 14-15.) In addition, Plaintiffs argue that the Amended Complaint contains specific allegations about the Fidelity Small Cap Independence Fund (f/k/a Fidelity Small Cap Selector Fund) and that this fund is also at issue, as it too is included in Paragraph 1 and Exhibit A of the Amended Complaint. (Pl. Opp. at 17 n.20.) Assuming, *arguendo*, that Plaintiffs are correct, the Amended Complaint still fails to make *any* factual allegations that would support a cause of action for excessive fees under Section 36(b) with respect to 200 of the 206 Fidelity Funds at issue.

201 Funds listed on Exhibit A to the Amended Complaint for which not a single Fund-specific allegation was pled—despite the fact that they are publicly available. Instead, Plaintiffs rely solely on "complex-wide" allegations. As Plaintiffs themselves explain:

> [T]his action alleges that Defendants received increased fees and compensation due to the growth in assets of the Funds through their asset-based fees, without any corresponding benefit or increase in services to the Funds or their investors, leading to a disparity between the fees paid and the services rendered. Defendants grew the Fidelity funds through shelf-space agreement[s] with brokers . . . .

(Pl. Opp. at 15.) As discussed in further detail below, such generic, complex-wide allegations fail both the pleading standards of Rule 8 and the obligation to conduct a "reasonable inquiry" into the evidentiary support for the factual contentions contained therein, and dismissal is therefore warranted.

Plaintiffs cannot allege fund-specific facts because many of the generic, complex-wide allegations are simply not true with respect to each and every Fund at issue. Each of the 206 Funds at issue is a separate and distinct legal entity, each with vast differences in asset size, growth rates, and fees.[9]  (*See* Fidelity Def. Br. at 17-18.) There are vast differences among the 206 Funds in terms of fees paid, fee structures, assets under management, distribution channels, and other characteristics, and these differences render many of Plaintiffs' blanket allegations inaccurate as applied to the vast majority of the Funds.[10]  For example:

---

[9]    As explained more fully below, the funds are organized as business trusts, which are treated as corporations under applicable Massachusetts and Delaware law. *See* Section III.A, *infra*. Moreover, each individual fund is treated as a separate investment company by the SEC and the Internal Revenue Service ("IRS"). *See* 17 C.F.R. § 270.18f-2 (SEC);  28 USC § 851(a), (g) (IRS).

[10]    This Court may consider reports that are publicly available and filed with the SEC on a motion to dismiss. *See Greene v. Rhode Island*, 398 F.3d 45, 48-49 (1st Cir. 2005) ("We have specifically noted that 'a court may look to matters of public record in deciding a Rule (12)(b)(6) motion without converting the motion into one for summary judgment.'") (internal citation omitted); *see*

- The general, complex-wide allegations in the Amended Complaint fail to distinguish between Fidelity's no-load funds that are sold directly by Fidelity with its intermediary-sold funds, which have multiple share classes providing compensation to third-party brokers.[11]  Plaintiffs' generic allegations that "Defendants grew the funds through shelf-space arrangements with brokers"— although untrue with respect to those Fidelity funds that are sold primarily though intermediaries—is simply nonsensical with respect to Fidelity's no-load funds that are distributed primarily by Fidelity directly to fund shareholders or through retirement plans.[12]  Moreover, as Plaintiffs should have discovered from Fund prospectuses, some of the Funds at issue are closed to new investors and, therefore, could not have been the subject of the scheme to purchase so-called "shelf space" from unaffiliated brokers.[13]

- Plaintiffs' Amended Complaint contains general allegations that each and every Fund realized economies of scale as a result of a significant increase in assets during the Class Period (as defined by Plaintiffs).  (CAC ¶¶ 3, 81.)  This claim, however, simply cannot apply to the Funds that either had declining assets during the relevant time period[14] or had only been in existence for several months (or, in

---

[11] Such distinction is clear from the funds' prospectuses, which Plaintiffs should have consulted prior to initiating suit challenging as excessive fees charged to the Funds.  Representative samples of the relevant disclosures, as filed with the SEC, under the subject headings "Fee Table," "Buying and Selling Shares," and "Fund Distribution" are included in the Appendix submitted with this Reply.

*also AllianceBernstein*, 2006 WL 74439, at *2 n.4 (considering publicly available report filed with the SEC in deciding to grant defendants' Rule 12(b)(6) motion seeking dismissal of Section 36(b) claim).  An Appendix of Excerpts of Publicly Available Documents that are referred to herein is submitted with this Reply.  The Fidelity Defendants will supply this Court with a complete copy of the relevant public filings upon request.

[12] Plaintiffs also appear to concede that many of the Funds at issue could not have been involved in the complained-of conduct because "many of the brokers disliked Fidelity because it was the first company to sell directly to investors and cut-out brokers."  (CAC ¶ 113; *see also* Pl. Opp. at 19.)

[13] Judge O'Toole's decision in *Forsythe* does not compel a different result.  In *Forsythe*, one of the more than twenty copy-cat actions brought by Plaintiffs' counsel, Judge O'Toole dismissed the overwhelming majority of plaintiff's complaint but sustained the Section 36(b) revenue sharing cause of action.  However, *Forsythe* is easily distinguishable from the present case because:  (1) the funds at issue in *Forsythe*—the Massachusetts Financial Services funds—are *only* distributed through unaffiliated brokers and, therefore, are not distributed directly to customers; and (2) counsel for defendants did not argue and Judge O'Toole did not discuss the sufficiency of generic, complex-wide allegations under Section 36(b).  *See Forsythe*, 2006 WL 148935, at *8-10.

[14] For example, a review of publicly filed fund documents evidences that the following funds all experienced net *declining assets* during the Class Period (1999-2003):  Fidelity Asset Manager ($12.2 billion to $10.8 billion), Fidelity Asset Manager: Growth ($5 billion to $3.5 billion),

11

many instances, not at all).[15]  For example, Fidelity's Magellan fund had a significant *decrease* in assets during the Class Period, declining from approximately $90.7 billion in assets in 1999 to $54 billion in 2003.

- Plaintiffs' allegations that Defendants failed to reduce their fees to pass on economies of scale to shareholders is not true across all Fidelity Funds.  The Amended Complaint acknowledges that dozens of Fidelity Funds reduced their fees, some as much as 31%.  (CAC ¶ 92.)  Moreover, a review of public filings reveals that many of the Funds lowered fees over time, including during the one-year period relevant to Plaintiffs' Section 36(b) claim.[16]

### 3.  Even Plaintiffs' Fund-Specific Allegations Are Insufficient To State A Claim Under Section 36(b).

Finally, Defendants certainly do not concede that the Amended Complaint states a cause of action under Section 36(b) against *any* fund merely because it mentions the fund by name.[17]

---

Fidelity Blue Chip Growth ($23.7 billion to $19.9 billion), Fidelity Contrafund ($47 billion to $36 billion), Fidelity Equity Income Fund II ($18 billion to $11.5 billion), Fidelity Focused Stock Fund ($50.2 billion to $33.5 billion), Fidelity Fund ($13.8 billion to $9.3 billion), Fidelity Independence Fund ($5.9 billion to $4.5 billion), Fidelity Large Cap Stock Fund ($633 million to $599 million), Magellan Fund ($90.7 billion to $54 billion), Fidelity OTC Portfolio ($7.3 billion to $7 billion), Fidelity Puritan Fund ($25.7 billion to $19.6 billion), Fidelity Growth & Income Fund ($48.6 billion to $28.3 billion), and Fidelity Stock Selector Fund ($1.6 billion to $790 million), among others.  *See* Appendix submitted with this Reply.

[15]  Plaintiffs purport to recover excessive fees charged to Fidelity Funds from July 19, 1999 to November 17, 2003.  (CAC ¶ 1.)  At least six Fidelity Funds, however, *did not even exist* during this period:  Fidelity Advisor Emerging Markets Fund; Fidelity Advisor Freedom 2005 Fund; Fidelity Advisor Freedom 2015 Fund; Fidelity Advisor Freedom 2025 Fund; Fidelity Advisor Freedom 2035 Fund; and Fidelity Advisor Value Fund.  *See* Appendix submitted with this Reply.

[16]  Claims brought pursuant to Section 36(b) are limited to the one-year period prior to the initiation of the lawsuit.  *See* 15 U.S.C. § 80a-35(b)(3).  Plaintiffs filed their initial complaint on July 14, 2004; therefore, any Section 36(b) claim they have relates solely to the period between July 2003 and July 2004.  For example, many of the Funds at issue were charged fees that were, in fact, declining during the relevant 2003-2004 time period:  Fidelity Contrafund (0.79% to 0.74%), Fidelity Low-Priced Stock Fund (0.77% to 0.74%), Fidelity Magellan Fund (0.56% to 0.50%) and Fidelity Small Cap Independence Fund (0.68% to 0.62%), among others.  *See* Appendix submitted with this Reply .

[17]  Defendants do not concede "by implication" that the Amended Complaint states a cause of action under Section 36(b) with respect to the five funds that are mentioned in passing in the Amended Complaint.  (Pl. Opp. at 9-10.)  There is absolutely no basis for this "implication," as Defendants have sought dismissal of the Section 36(b) claim *in its entirety*.  At a minimum, the Section 36(b)

For example, one of the five funds to which the Amended Complaint expressly refers is the Fidelity Low-Priced Stock Fund.  But that fund is mentioned in only a single paragraph—alleging that from 1994 to July 2003 the fund's assets grew from $2 billion to $20 billion, and its management fees went from $14 million to $100 million. (CAC ¶ 96.) Assuming Plaintiffs' allegations are true, investors in this fund paid substantially *lower* fees over this time period—with fees dropping from .70% to .50% from 1994 to July 2003.[18]  Substantially reducing fees over time does not give rise to a Section 36(b) violation.

In addition, with respect to all five funds that are mentioned in the Amended Complaint, it is clear that Plaintiffs have failed to state a cause of action under Section 36(b) because those few facts that are alleged are outside of the relevant time period.  Claims brought pursuant to Section 36(b) are limited to the one-year period prior to the initiation of the lawsuit.  *See* 15 U.S.C. § 80a-35(b)(3).  Plaintiffs filed their initial complaint on July 14, 2004, and therefore any Section 36(b) claim they may have—and they have none—relates solely to the period between July 2003 and July 2004.  The failure to allege facts that would indicate a breach of fiduciary

---

claim must be dismissed with respect to *all* funds because Plaintiffs brought the claim improperly as a class action rather than as a derivative action. (*See* Fidelity Def. Br. at 10-14.)  However, dismissal is warranted for additional reasons as well.  For example, Defendants did not point out that although the Amended Complaint seeks relief on behalf of a class of investors from July 19, 1999, to November 17, 2003, any damages would be limited by statute to the period after July 2003, one year prior to the filing of the original complaint.  *See* 15 U.S.C. § 80a-35(b)(3).  This defect also means Plaintiffs have failed to allege standing even with respect to the funds in which they did own shares, as the Amended Complaint does not identify which of those funds were owned during this post-July 2003 period.  Defendants certainly do not concede these points, and they would be raised at the appropriate time in the unlikely event the Section 36(b) claim were to survive dismissal.

[18]    Mutual fund shareholders pay fees based on a percentage of net assets under management.  To derive the management fee rate discussed above, divide total fees paid by the fund by total fund assets under management.  Thus, the 70 basis point management fee rate in 1994 is calculated by dividing $14 million by $2 billion, and the 50 basis point management fee rate in July 2003 is calculated by dividing $100 million by $20 billion.

duty with respect to the receipt of compensation paid during the *applicable time period* is grounds for dismissal. *See AllianceBernstein*, 2006 WL 74439, at *3.

In *AllianceBernstein*—one of the more than twenty copy-cat actions brought by the same plaintiffs' counsel and alleging virtually identical claims against the AllianceBernstein-branded family of mutual funds—the court originally dismissed all of the plaintiffs claims except one brought pursuant to Section 36(b).    *See AllianceBernstein*, 2005 WL 2677753, at *10. Defendants petitioned the court for rehearing on the lone surviving claim, arguing that the allegation relied upon by the court in sustaining plaintiffs' Section 36(b) cause of action was based on facts largely outside the applicable time period at issue and, therefore, failed to meet the Rule 8 pleading standard. *See id.* at *2.  The court agreed and dismissed plaintiffs' claim under Section 36(b), holding that the statistics contained in the complaint in support of plaintiffs' excessive fee claim were outside the applicable one-year period and that such allegations were, therefore, insufficient. *See id.*

Here, just as in *AllianceBernstein*, the purported facts alleged by Plaintiffs are outside of the applicable period for a Section 36(b) claim.  For example, the allegations in the Amended Complaint about:  the Magellan Fund relate to 1994-2003 and 2000-2002 (CAC ¶¶ 83, 93); the Contrafund relate to 2000-2002 (*Id.* ¶¶ 83, 93); the China Region Fund relate to 2000-2003 (*Id.* ¶ 89); the Small Cap Independence Fund relate to 2000-2003 (*Id.* ¶ 90); the Blue Chip Growth Fund relate to 1994 to July 2003 (*Id.* ¶ 95); and the Low-Priced Stock Fund relate to 1994 to July 2003 (*Id.* ¶¶ 96).  Dismissal is therefore appropriate even for those funds about which Plaintiffs do make fund-specific allegations.

Finally, even if Plaintiffs had alleged facts relating to these funds that were pertinent to the time period at issue, their claim under Section 36(b) would still fail.  Indeed, during the

relevant 2003-2004 time period, the ratio of expenses to average net assets actually *decreased* for *every one* of the Funds at issue about which Plaintiffs make any substantive allegations: Fidelity China Region Fund (from 1.30% to 1.22%); Fidelity Small Cap Independence Fund (from 0.93% to 0.91%); Fidelity Magellan Fund (from 0.76% to 0.70%); Fidelity Blue Chip Growth Fund (from 0.69% to 0.67%); and Fidelity Low-Priced Stock Fund (from 1.01% to 0.97%).[19]  In addition, the advisory fee rates also *decreased* for the following Funds during the relevant time period:  Contrafund (from 0.79% to 0.74%); Fidelity Low-Priced Stock Fund (from 0.77% to 0.74%); Magellan Fund (from 0.56% to 0.50%); and Fidelity Small Cap Independence Fund (from 0.68% to 0.62%).

As such, Plaintiffs' claims pursuant to Section 36(b) are insufficient, and dismissal is warranted.

**B.     Section 36(b) Cannot Be Maintained Directly As A Class Action.**

As Judge Feess of the Central District of California recently affirmed in *American Funds*, Section 36(b) provides a derivative cause of action.  Plaintiffs' attempt to state a direct cause of action under Section 36(b) is contrary to the plain language of the statute as well as Supreme Court precedent holding that a claim under Section 36(b) is "undeniably derivative."  (*See* Fidelity Def. Br. at 10-14.)  Moreover, Plaintiffs concede that Section 36(b) requires that any recovery go to the fund—the hallmark of a derivative action.  (Pl. Opp. at 28.)  Accordingly,

---

[19]     *See* Prospectus, Fidelity Targeted International Equity Funds (Fidelity China Region Fund) (Dec. 30, 2005); Prospectus, Fidelity Small Cap Independence Fund (Dec. 30, 2005); Annual Report, Fidelity Magellan Fund (Mar. 31, 2004); Prospectus, Fidelity Blue Chip Growth Fund (Dec. 30, 2005); Prospectus, Fidelity Low-Priced Stock Fund (Sept. 28, 2005); *see* Appendix filed with this Reply.

Plaintiffs' attempt to bring a direct claim under Section 36(b) should be rejected, and Count III must be dismissed.[20]

### 1. Supreme Court Precedent Establishes that Claims Under Section 36(b) Are Derivative.

Contrary to Plaintiffs' mischaracterization, the Supreme Court's holding in *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984), affirmed that a Section 36(b) action is "undeniably derivative." *Id*. at 535 n.11. As discussed by Defendants in their initial moving papers, the selected excerpts cited by Plaintiffs relate to a completely different point: a plaintiff is not required to make demand on the fund's board of directors pursuant to Rule 23.1 of the Federal Rules of Civil Procedure prior to bringing a derivative action under Section 36(b). (Fidelity Def. Br. at 11-12.)

In *Daily Income Fund*, neither party argued—and the Court did not hold—that a claim under Section 36(b) may be brought directly as a class action as Plaintiffs seek to do here. Indeed, to the extent the Court discussed the nature of an action under Section 36(b), it affirmed that such an action is "*undeniably derivative*" because: (1) the statute provides that a mutual fund shareholder can bring an action "on behalf of" the fund; (2) the statute imposes a fiduciary duty that is owed "to the company itself as well its shareholders;" and (3) any recovery obtained in a Section 36(b) action goes to the fund rather than to the plaintiff. *See id.* at 535 n.11 (emphasis added); *see also* Fidelity Def. Br. at 11-12.

Accordingly, the majority of courts to have specifically considered the issue have held that a Section 36(b) claim can only be brought derivatively, and have rejected plaintiffs' attempts to assert a class action under that section. Directly on point is *American Funds*. In that case, the court dismissed plaintiffs' Section 36(b) claim as it was brought as a class action rather than as a

---

[20]    To the extent the nature of a claim under Section 36(b) is determined by state law, Plaintiffs' Section 36(b) claim is derivative for all the reasons set forth in Section III, *infra.*

derivative action.  In doing so, the court characterized *Daily Income Fund* as holding "that demand is not required under Section 36(b), but claims under Section 36(b) are still *derivative* claims."  *American Funds*, No. CV 04-5593-GAF (RNBx), slip op. at 4; *see also id.* ("[C]laims under Section 36(b) must be brought derivatively.").  A number of other cases have reached the same conclusion.  *See, e.g., Lord Abbett*, 2005 WL 3544312, at *15  ("In [*Daily Income Fund*], the Supreme Court addressed the meaning of the 'on behalf of' phrase, *stating unequivocally that Section 36(b) confers only a derivative right* . . . .  To the extent [it] distinguished a derivative claim under Section 36(b) from a typical derivative claim, the Court did so merely to explain why Rule 23.1 is inapplicable to Section 36(b) actions.") (emphasis added); *Franklin*, 388 F. Supp. 2d at 468 (same). Indeed, in *Franklin*, the court specifically rejected the argument advanced by Plaintiffs here:

> Plaintiffs argue that [*Daily Income Fund*] stands for the proposition that a plaintiff's right to sue under § 36(b) is primary because mutual funds themselves have no claim under § 36(b) . . . .  Plaintiffs, however, misconstrue [*Daily Income Fund*].  Although shareholders do have a right to sue under § 36(b), and funds do not, that does not constrain or shed light on the nature of the claims that a shareholder may bring under § 36(b).  As stated in [*Daily Income Fund*], a § 36(b) action is undeniably derivative.

388 F. Supp. 2d at 468 (internal citations and quotations omitted).[21]

---

[21]    The same line of cases also deals with Plaintiffs' misplaced reliance on *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991). Although *Kamen* characterized a claim brought pursuant to Section 36(b) as "direct rather than derivative" (*see id.* at 108), it did so merely to explain the inapplicability of Rule 23.1 to actions brought under Section 36(b).  *See American Funds*, No. CV 04-5593-GAF (RNBx), slip op. at 4; *Lord Abbett*, 2005 WL 3544312, at *15 n.6; *Franklin*, 388 F. Supp. 2d at 468. In *Franklin* and *Lord Abbett*, the court characterized *Kamen*'s "imprecise" interpretation of the holding in *Daily Income Fund* as mere "dicta" and found that "the statement appears to state no more than the incontestable proposition that a shareholder may bring a derivative claim under § 36(b) directly, meaning without making a precomplaint demand pursuant to Rule 23.1." *See Lord Abbett*, 2005 WL 3544312, at *15 n.6; *Franklin*, 388 F. Supp. 2d at 468.

###### 2.     The Cases Cited by Plaintiff Are Unavailing.

Two of the three recent decisions cited by Plaintiffs did not even reach the issue of whether Section 36(b) is a derivative or direct cause of action. (Pl. Opp. at 26-27 (citing *Stegall, Columbia,* and *Dreyfus*).) In fact, only one of these courts held that Section 36(b) provides for a direct claim, and that court relied upon the same misreading of *Daily Income Fund* that Plaintiffs offer here.

In *Stegall*, Judge Woodlock recognized that there is a split of authority as to whether claims under Section 36(b) are direct or derivative. *See Stegall*, 394 F. Supp. 2d at 373 n.16. He did not seek to resolve the split; rather, he *assumed* that plaintiff could bring the claim directly, and then dismissed it because plaintiff's allegations were insufficient to state a claim under Section 36(b). *See id.* at 373 ("[A]ssuming plaintiff may bring this claim directly, I take up defendants' argument that plaintiffs complaint does not plead a violation of § 36(b).); *id.* at 373 n.16 ("In the final analysis, because plaintiff fails to state a cause of action under § 36(b), it is immaterial whether he may bring the claim directly.").

Similarly, in *Dreyfus*, defendants moved to dismiss plaintiffs' Section 36(b) claim because: (1) it failed to state a claim under *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982), *cert. denied*, 461 U.S. 906 (1983); (2) certain defendants were not recipients of compensation; and (3) the statute of limitations had expired as to certain defendants. *See Dreyfus*, 2005 U.S. LEXIS 29152, at *25-35. Defendants' motion to dismiss did not argue that claims under Section 36(b) must be brought derivatively, and the court did not address the merits of this argument. Indeed, a motion presenting this argument is currently pending before the court.

Finally, in *Columbia*, Judge Keeton relied on the same misreading of *Daily Income Fund* that Plaintiffs advance here. *See In re Columbia Entities Litig.*, CV No. 04-11704-REK, 2005

U.S. Dist. LEXIS 33439, at *27-28 (D. Mass. Nov. 30, 2005).   Accordingly, this Court should decline to follow *Columbia* and dismiss Plaintiffs' Section 36(b) claim for the reasons recently articulated by the courts in *American Funds*, *Franklin*, and *Lord Abbett*.

### 3.    Plaintiffs' Arguments Based on the Structure of Mutual Funds Are Unavailing.

Plaintiffs concede that a plaintiff asserting a claim under Section 36(b) must do so "on behalf of" the mutual fund and that any recovery obtained must go to the fund.  (Pl. Opp. at 23, 28.)  Nonetheless, they claim that they can "bring a § 36(b) claim directly *on their own behalf* for the benefit of the Fidelity Funds" because "mutual funds are pools of assets owned by the shareholders."  (Pl. Opp. at 28-29; *see also* CAC ¶¶ 242, 247-248.)  The only case that stands for that proposition is *Strigliabotti v. Franklin Resources*, *Inc.*, No. C 04-00883 SI, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005).  That decision, however, has been uniformly rejected on a variety of grounds, including by two recent cases from this District.  *See Forsythe*, 2006 WL 148935, at *7; *Stegall*, 394 F. Supp. 2d at 365.

In *Forsythe* and *Stegall*, Judges O'Toole and Woodlock refused to adopt the Central District of California's analysis in *Strigliabotti,* which held that claims by mutual fund shareholders were necessarily direct because of the "unique structure and operation of mutual funds."  *See Forsythe*, 2006 WL 148935, at *7; *Stegall*, 394 F. Supp. 2d at 375 ("I find [*Strigliabotti*] unpersuasive.").   The Northern District of Texas also recently criticized *Strigliabotti*'s analysis because "it is at odds with the overwhelming majority of courts who have addressed the issue"[22] and because the court did "not cite any applicable case law in reaching its

---

[22]    For example, the Third Circuit has held that the distinction between the rights of shareholders and the rights of the corporation persists despite the allegedly unique structure of mutual funds. *See Kauffman v. Dreyfus Fund*, *Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) ("That the worth of a share of appellee's stock is directly proportionate to the value of a mutual fund's net assets is insufficient

holding." *See Hogan v. Baker*, No. Civ.A. 305CV0073P, 2005 WL 1949476, at *4 (N.D. Tex.
Aug. 12, 2005). Accordingly, Plaintiffs' nearly identical argument should be rejected here as
well.

III. **PLAINTIFFS' FIRST THROUGH FOURTH AND SIXTH THROUGH EIGHTH
COUNTS SHOULD BE DISMISSED BECAUSE THEY WERE NOT BROUGHT
DERIVATIVELY**

Under Massachusetts and Delaware law, an injury sustained directly by a corporation and
by the shareholders of the corporation only indirectly and equally—that is, ratably in accordance
with their share ownership—is derivative and belongs to the corporation.[23] Faced with virtually
identical allegations as those asserted here, courts in this District and elsewhere have recently
dismissed the same federal and state law claims that are asserted here for failure to plead them
derivatively.[24] As these courts have recognized, allegations that improper payments were made
to brokers from *fund assets*[25] as an incentive for brokers to steer investors into the funds assert
derivative, and not direct, claims. In opposition to the instant motion, Plaintiffs take the
untenable position that "trust law" principles demonstrate that their claims may be pleaded

---

to destroy these separate identities, to alter the basic shareholder-corporation relationship, and to
thereby confer upon appellee legal rights peculiar to the corporation.").

[23] *See Jackson v. Stuhlfire*, 547 N.E.2d 1146, 1146 (Mass. App. Ct. 1990) (applying Massachusetts
law); *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (applying
Delaware law).

[24] There were five such decisions before Defendants filed their motion to dismiss. (*See* Fidelity
Def. Br. at 21, 26 (citing *AllianceBernstein*, 2005 WL 2677753, at *3-4; *In re Davis Selected
Mut. Funds Litig.*, 2005 WL 2509732, at *4 (S.D.N.Y. Oct. 11, 2005); *Franklin*, 388 F. Supp. 2d
at 464; *Eaton Vance*, 380 F. Supp. 2d at 234; *Columbia*, 2005 U.S. Dist. LEXIS 33439). Since
the filing of the motion, there have been four additional decisions squarely on point. *See
Forsythe*, 2006 WL 148935, at *7; *Goldman Sachs*, 2006 WL 126772, at *6; *Lord Abbett*, 2005
WL 3544312, at *9; *Eaton Vance*, 403 F. Supp. 2d at 320.

[25] CAC ¶¶ 1, 3, 142, 239 (all alleging improper use of fund assets); Pl. Opp. at 2 (stating that the
Defendants used "Fund assets to promote the sale of Fund shares").

directly and not derivatively. (Pl. Opp. at 50.) Plaintiffs also rely upon rote responses that courts across the country have repeatedly rejected.

### A. Plaintiffs' Purported "Trust Law" Principals Are Inapplicable To The Question of Whether Their Claims Are Direct Or Derivative.

Plaintiffs' basic premise—that "trust law" principles govern the question of whether their claims involving funds organized as business trusts or statutory trusts are direct or derivative (Pl. Opp. at 44-50)—is fundamentally flawed.

Plaintiffs rely principally on Austin Wakeman Scott, The Law of Trusts (4th ed., Aspen 1989 & Supp. 2005) ("Scott on Trusts"). (Pl. Opp. at 44-46.) However, on its face, Scott on Trusts excludes business trusts (such as the Funds) from the treatise's consideration:

> [T]he rules governing the use of the trust as a substitute for incorporation, the so-called business trust or Massachusetts trust, are highly specialized, and are left to be discussed with other business organizations. In this treatise also is omitted consideration of these specialized types of trusts, to which many of the principles governing ordinary trusts are not applicable. [Instead, the treatise] will deal with the ordinary uses of the trust…whether the trust is created by will or inter vivos.

Scott on Trusts § 2.2 (entitled "Types of Trusts Not Considered"). Contrary to Plaintiffs' assertion, the trust principles enunciated in Scott on Trusts have absolutely no applicability to the present case; instead, a business trust, whose purpose is to conduct business, should be treated as a business organization subject to traditional principles of corporate law.[26]

---

[26]    Plaintiffs reliance on *Booth v. Greer Investment Co.*, 52 F.2d 857 (N.D. Okla. 1931), *aff'd sub nom., Greer Investment Co. v. Booth*, 62 F.2d 321 (10th Cir. 1932), is misplaced. *Booth* was a case asserting claims primarily "in behalf of the trust" and the Tenth Circuit applied corporate law as the law of decision to determine whether demand on the trustees was excused as futile. *Greer*, 62 F.2d at 324.

Plaintiffs also rely heavily on the Restatement (Second) of Trusts. (Pl. Opp at 46, 49.) However, just as with Scott on Trusts, the Restatement (Second) of Trusts does not apply to business trusts and contemplates treating business trusts in accordance with traditional principles of corporate law:

> A statement of the rules of law relating to the employment of a trust as a device for carrying on business is not within the scope of the Restatement on this Subject. . . The business trust is a special kind of business association and can best be dealt with in connection with other business associations.

Restatement (Second) of Trusts § 1 cmt. b (1959-2005) (entitled "Matters Excluded"); *see also* The Introductory Note to the Restatement (Second) of Trusts ("The Restatement of this Subject does not deal with business trusts or trusts used for purposes of security.").[27]

Massachusetts cases regarding trusts cited by Plaintiffs (Pl. Opp. at 47.) are inapplicable because such cases either concern the disposition of a decedent's assets among family members or are otherwise distinguishable.[28]

For decades, courts in this Circuit and elsewhere have applied the same law that applies to corporations to mutual funds organized as Massachusetts business trusts. *See, e.g., In re Kauffman Mutual Fund Actions*, 479 F.2d 257 (1st Cir. 1973); *Evangelist v. Fidelity Mgmt. &*

---

[27]  For the purpose of whether claims concerning an alleged misuse of trusts assets are direct or derivative, the funds organized as Delaware statutory trusts and those organized as Massachusetts business trusts should be treated the same. Delaware defines its statutory trust in relation to the Massachusetts business trust: statutory trust includes, but is not limited to a trust of the type known at common law as a "'business trust,' or 'Massachusetts trust [.]'" Del. Code Ann. tit. 12, § 3801(a) (2006). Here, each fund is a separate registered investment company and is organized as a series of either a Massachusetts business trust or a Delaware statutory trust.

[28]  *See Parker v. Lloyd*, 71 N.E.2d 889, 893-94 (Mass. 1947) (ruling on the probating of a will and the liability of beneficiary's granddaughters to a remainderman); *Moore v. Mansfield*, 142 N.E. 792, 793-94 (Mass. 1924) (ruling on decedent's will, disposition of decedent's bank account, and imposition of constructive trust); *Sargent v. Wood*, 81 N.E. 901, 901-02 (Mass. 1907) (ruling on estate administrator's suit to reclaim money taken by husband from decedent's estate); *Stevens v. Nagel*, 831 N.E.2d 935-938-39 (Mass. App. Ct. 2005) (finding that brother and sister had stated a claim against estate of their uncle for wrongful appropriation of father's life insurance proceeds).

*Research Co.*, 554 F. Supp. 87 (D. Mass. 1982).  Courts have long held that business trusts have

"practically all the attributes of a corporation," *Mulloney v. United States*, 79 F.2d 566, 577 (1st

Cir. 1935), and "should be dealt with as such," *Byrne v. American Foreign Ass'n*, 3 F.R.D. 1, 2

(D. Mass. 1943).  As one court summarized Massachusetts courts' uniform treatment of business

trusts under corporate law:

> Appellant cites no case, nor have we found any, in which
> … a Massachusetts court has distinguished between a
> business trust and a business corporation and applied a
> different rule to the former.  Nor do we perceive any legal
> or practical reason for differentiating here between a
> business trust and a business corporation.

*Greenspun v. Lindley*, 330 N.E.2d 79, 81 (N.Y. 1975) (in case alleging that trustees of real estate

investment trust paid excessive fees and made improper investments, finding Massachusetts law

required pre-suit demand to have been made).  And the Massachusetts Supreme Judicial Court

recently held that "'there is no intrinsic difference between a corporate business trust and a

corporation.'"  *Minkin v. Commissioner of Revenue*, 680 N.E.2d 27, 30-31 (Mass. 1997) (stating

that "corporate trust, also known as the 'Massachusetts business trust,'…is essentially a business

organization cast in the trust form[,]" that "corporate trusts with transferable shares have no

relation and little resemblance to ordinary trusts[,]" and finding that corporate trust is treated as

corporation under Massachusetts tax statutes) (internal citation omitted).[29]

---

[29]    Plaintiffs selectively, and misleadingly, quote *Swartz v. Sher*, 184 N.E.2d 51, 53-54 (Mass. 1962),
failing to mention that the court stated that a business trust "in practical effect is in many respects
similar to a corporation[, and]…[i]t is appropriate to treat business trusts on a somewhat different
basis from private trusts" (internal citation omitted).  (Pl. Opp. at 50.)

Consistent with this authority, no fewer than thirteen decisions in the last year[30] —many in cases brought by Plaintiffs' counsel making the same core allegations as advanced here— have, without disagreement, applied the law applicable to corporations to the determination of whether claims involving Massachusetts business trusts and/or Delaware statutory trusts are properly brought as direct claims or must be brought derivatively.[31]

## B. Under Massachusetts and Delaware Corporate Law, Plaintiffs' Claims Are Derivative, Not Direct.

Lacking any support under "trust law," Plaintiffs recycle old arguments that courts across the country have repeatedly rejected. Indeed, since Defendants filed their motion to dismiss,

---

[30]   *See Forsythe*, 2006 WL 148935, at *7 (applying Massachusetts law); *Goldman Sachs*, 2006 WL 126772, at *5-6 (applying Delaware corporate law); *Lord Abbett*, 2005 WL 3544312, at *8-9 (same); *Eaton Vance*, 403 F. Supp. 2d at 316 (applying Massachusetts law); *Columbia*, 2005 U.S. Dist. LEXIS 33439 (same); *Hamilton v. Allen*, No. Civ.A.05-110, 2005 WL 2660356, at *2-3 (E.D. Pa. Oct. 14, 2005) (same); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2005 WL 2677753, at *3-4 (same); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 364-67 (D. Mass. 2005) (same); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 462-63 (D.N.J. 2005) (same); *Hogan v. Baker*, No. Civ.A.305CV0073P, 2005 WL 1949476, at *2-5 (N.D. Tex. Aug. 12, 2005) (applying Delaware law); *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1027-28 (C.D. Cal. 2005) (applying Massachusetts law); *Strigliabotti v. Franklin Resources,* No. C 04-00883 SI, 2005 WL 645529, at *7-8 (N.D. Cal. Mar. 7, 2005) (applying Massachusetts and Delaware law).

[31]   Plaintiffs' additional argument that their claims are direct and not derivative because "those involved with rendering professional services to a trust have direct liability to those receiving such services" is wrong as a matter of law. (Pl. Opp. at 50-51 n.54.) Plaintiffs misunderstand and misapply the provisions of Massachusetts law they cite. The provision cited by Plaintiffs— Massachusetts Gen. Laws ch. 182, § 5A—applies only to those who render "professional services" as defined in Mass. Gen. Laws ch. 156A. Chapter 156A limits its application to those whose service may be rendered only with a license pursuant to the laws of Massachusetts. Plaintiffs state that the license requirement of ch. 156A is met because they contend that Mass. Gen. Laws ch. 110A, § 201(c) requires "investment advisers" to be registered in Massachusetts to transact business in Massachusetts. (Pl. Opp. at 51 n.54.) However, "investment adviser" is a defined term under ch. 110A, section 401(m)(2) and expressly does not include "a federal covered adviser," which is an investment adviser registered with the Securities and Exchange Commission under section 203 of the Investment Advisers Act of 1940. *See* Mass. Gen Laws, ch. 110A, § 401(m)(2). Defendants Fidelity Management & Research Company and FMR Co., Inc. are so registered with the SEC. *See* Appendix filed with this Reply (documents showing SEC registration from http://www.adviserinfo.sec.gov/IAPD/Content/IapdMain/iapd_SiteMap.aspx). As a federal covered adviser, these entities are not required to register under Mass. Gen. Laws ch. 110A and are not required to be licensed pursuant to ch. 156A. Plaintiffs' "professional services" argument under chapters 182 and 156A simply does not apply.

three more courts—including one in this District—have held to be derivative and not direct
virtually identical claims based on virtually identical allegations as asserted here.  *See Forsythe*,
2006 WL 148935, at \*7 (applying Massachusetts law and dismissing state-law claims because
pleaded directly and not derivatively; any injury caused by the alleged wrongdoing "would occur
primarily and directly to the MFS Funds and only indirectly to the plaintiffs by virtue of their
status as investors"); *Goldman Sachs*, 2006 WL 126772, at \*6 (applying Delaware law,
dismissing ICA Sections 34(b) and 36(a) and state-law claims "of mismanagement of assets by
defendants which fail to allege any injury independent of the alleged injury to the Funds."); *Lord
Abbett*, 2005 WL 3544312, at \*9 (upon reconsideration, vacating and withdrawing opinion that
had decided ICA §§ 34(b), 36(a) and 48(a) and state-law claims alleged, in part, direct injury and
that had accordingly refused to dismiss these claims for failure to plead them derivatively;
issuing amended opinion dismissing these claims under Delaware and Maryland law for failure
to bring them derivatively).

As Defendants predicted (Fidelity Def. Br. at 26-27), Plaintiffs' Opposition relies largely
on the widely discredited decision in *Strigliabotti*, 2005 WL 645529, to argue that "the unique
nature and structure of mutual funds" demonstrates that "'financial harm from overcharges is
harm to the individual investors, who own the Funds' assets and bear its expenses directly on a
pro rata basis.'"  (Pl. Opp. at 52.)  Since Defendants filed their initial brief, three more courts—
two applying Massachusetts law and the other applying Delaware law—have rejected
*Strigliabotti*.  *See Forsythe*, 2006 WL 148935 at \*7 (noting that plaintiffs' reliance on
*Strigliabotti* was "unavailing," and the court's "reasoning unpersuasive" because "[t]he approach
taken [in *Strigliabotti*] ignores the fact that the injuries claimed by the plaintiffs here would be
suffered only by reason of a precedent wrong to the MFS Funds"); *Goldman Sachs*, 2006 WL

126772 at *6 ("We are not persuaded that [*Strigliabotti's* holding] … is consistent with Delaware law.  Rather, a pro rata bearing of expenses by individual shareholders seems to fall within the very essence of an injury which is not independent from that suffered by the corporation."); *Eaton Vance*, 403 F. Supp. 2d at 816 (noting that "the *Strigliabotti* analysis is inconsistent with the analysis used by courts applying Massachusetts law").

Plaintiffs also rely on *Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002).  However, *Strougo* refutes Plaintiffs' contention that their claims are direct because Plaintiffs were allegedly harmed through a reduction in the value per share of their shareholdings in the Funds.  (Pl. Opp. at 54-56.)  The claim that the *Strougo* court held was properly brought directly was a claim of injury to certain shareholders and benefit to others based on facts entirely distinguishable from the facts here.[32]  The direct claim in *Strougo* had nothing to do with compensation paid out of fund assets to brokers, advisory fees, or distribution fees.  And it did not arise—as do Plaintiffs' claims here, where the Funds involved are open-ended management investment companies (CAC ¶ 65) and the share value is based on the net assets of the Funds—out of actions that affect all shareholders ratably because those actions impact the net assets of the Funds in the first instance.

Indeed, *Strougo* is most significant for its treatment of a claim that was based on an allegation analogous to the those made here—namely, that "substantial underwriting and other

---

[32]  *Strougo* involved a closed-end fund with a fixed number of shares whose value was established by market price.  The fund there issued additional shares pursuant to a rights offering in which existing shareholders had the opportunity to participate.  One of plaintiffs' claims was that the rights offering penalized shareholders who did not participate by diluting the value of their shares in relation to those of the participating shareholders.  The Second Circuit allowed the plaintiffs to bring their dilution claim directly because the reduced value of their equity did not derive from a reduction in the value of the fund's assets, but rather from a reallocation of equity value only to certain shareholders (those who participated in the rights offering).  *Strougo*, 282 F.3d at 174-75; *see also AllianceBernstein*, 2005 WL 267753, at *3 (citing *Strougo* and noting the distinction between plaintiffs' two claims for relief); *Goldman Sachs*, 2006 WL 126722, at *7 n.16 (in virtually identical case, stating that unlike in *Strougo* with respect to plaintiffs' dilution claim, "plaintiffs allege an injury (excess fees) which was actually incurred by the Funds, thus rendering plaintiffs' injuries dependent upon those suffered by the Funds.")

transactional costs associated with the Rights Offering" decreased the fund's share price by depleting its assets. *Strougo*, 282 F.3d at 174. Plaintiffs wholly ignore that the *Strougo* court required that claim be brought derivatively. Moreover, in affirming the dismissal of that claim, the Second Circuit held that such claim was derivative because fees "incurred by a corporation decrease share price primarily because they deplete the corporation's assets, precisely the type of injury to the corporation that can be redressed under Maryland law only through a suit brought on behalf of the corporation." *Id.* Here, Plaintiffs' allegations about fees paid by the Funds from fund assets are likewise "precisely the type of injury" that must be addressed through a derivative suit, because those payments purportedly depleted the Funds' net assets, and Plaintiffs were injured only derivatively through their ownership of Fund shares. *See id.*

Furthermore, Plaintiffs assert that Defendants ignore that investors "were harmed from excessive fees because their redemption value was decreased, while the Funds themselves benefited from the increased assets overall." (Pl. Opp. at 56.)[33] However, Plaintiffs' assertion of alleged "benefit to the Funds" plainly contradicts express allegations in the Complaint and must therefore be disregarded,[34] for in their pleading, Plaintiffs unequivocally allege that the Funds did not benefit from, but in fact were harmed by, the challenged practices.[35] Moreover, the court

---

[33]   *See, e.g.,* Pl. Opp. at 55 ("[E]ven if this Court were to find that the Funds are initially 'harmed' from the exacting of excessive fees against their assets, the benefit to the Funds from their growth far outweighs such harm."); *id.* at 56 ("[As a result of the Defendants' conduct,] current investors in the Funds directly bear the expenses of growth of the Funds, and ***in the aggregate***, the Funds suffer ***no harm***, but in fact benefit from the scheme.") (emphasis in original).

[34]   *See McGrath v. MacDonald*, 853 F. Supp. 1, 3 (D. Mass. 1994) (stating that complaint may not be amended by the opposition briefs; and on a motion to dismiss, consideration is limited to the pleadings).

[35]   *See, e.g.,* CAC ¶ 231 (the alleged wrongful payments "served to benefit only the Investment Adviser Defendants and their affiliated Defendants"); *id* ¶ 239 (Defendants' alleged improper removal of fund assets had "a direct injurious impact on both the Funds and their shareholders"); *id* ¶ 244 ("[T]he sole purpose of the fees charged to investors by Defendants was to expand the

in *Goldman Sachs* rejected this same argument and held that the federal and state law claims there to be derivative because "regardless of whether or not plaintiff's assertion that the Funds benefited in some way were true, ultimately the injury alleged—the bearing of improper costs— is one borne by the corporation." *Goldman Sachs*, 2006 WL 126772 at *7.[36]  Plaintiffs' argument suffers from a logical flaw.  The mere increase of a fund's net assets does not necessarily mean that such a fund suffered no "harm."  While a fund may benefit from increased sales of shares, it can also be injured directly through improper uses of fund assets (i.e., improper soft dollars, excessive commissions) to achieve that growth.[37]

Plaintiffs also rely on *Eaton Vance* to argue that their Section 34(b) claim, in particular, is properly brought as a direct claim.  At least three decisions handed down after *Eaton Vance* have held that Section 34(b) claims based on the same core allegations as here are derivative.  *See, e.g., Goldman Sachs*, 2006 WL 126772, at *6 n.15 (holding Section 34(b) claim derivative because the alleged harm was caused by "the continuing impact of the charges on the value of

---

size of the Funds to profit Defendants but no benefit accrued to the Funds or their investors from those fees.").

[36]  Plaintiffs also include a hypothetical to show the alleged disparity between the benefit to the Funds overall (which increased in assets) and the investment advisers and distributors (who collected their fees based on a percentage of Fund assets), on the one hand, and the harm to individual investors (whose redemptive share value decreased), on the other.  (Pl. Opp. at 55.) The court in *Lord Abbett*, 385 F. Supp. 2d at 481-82, initially employed a similar hypothetical in an effort to demonstrate a similar point.  However, upon reconsideration, the court vacated its opinion that, on the same theory advanced by plaintiffs, had held claims like those here to have alleged, at least in part, direct injury.  The court issued an amended opinion—which omitted the hypothetical—holding claims involving the same allegations asserted by plaintiffs here to be derivative in nature and dismissed the claims for being inappropriately pleaded as direct claims. *See Lord Abbett*, 2005 WL 3544312, at *9.

[37]  Plaintiffs also offer no support for their conclusory assertion that investors "do not benefit from increased fund size."  (Pl. Opp. at 55); *Cf. Krinsk v. Fund Asset Management, Inc.*, 715 F. Supp. 472, 500 (S.D.N.Y. 1988) ("[T]he court is persuaded that an inflow of assets to a fund has a positive effect on investment performance regardless of the fund's absolute size.").

28

their holdings," which is an injury shared by the Funds);[38]  *Lord Abbett*, 2005 WL 3544312, at *8-9 (dismissing Section 34(b) claim for failure to plead it derivatively); *Columbia*, 2005 U.S. Dist. LEXIS 33439, at *10 (same).  And those decisions are consistent with well-established authority holding that a claim based on diminution of value of corporate shares based upon improper use of corporate assets is derivative.[39]

Finally, Plaintiffs argue that a direct action is necessary because a derivative action would not fully redress the harm Defendants allegedly caused.  (Pl. Opp. at 56.)  However, "[e]ven if this were the case, a direct action would not be appropriate because plaintiffs cannot allege any injury independent from that suffered by the Funds."  *Goldman Sachs*, 2006 WL 126772 at *6. Likewise, in *Forsythe*, Judge O'Toole found this argument "unavailing because such a result occurs in all derivative actions, where it is the fund that benefits directly from any remedy

---

[38]     *Goldman Sachs* applied Delaware law and, thus, its analysis is applicable to the Fidelity Funds organized under Delaware law.  Its analysis likewise applies to the Fidelity Funds organized under Massachusetts law.  As noted in Defendants' opening brief, the test for determining whether a claim is direct or derivative is the same under Delaware and Massachusetts law. (Fidelity Def. Br. at 22 (discussing Delaware and Massachusetts tests, which both focus on the injury sustained, and case law treating the tests as the same).)

[39]     *See  Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir. 1970) (claim must be brought by way of derivative action and not directly where the "injury to the shareholder is the indirect harm which consists of a diminution of ***value*** of his corporate shares resulting from the impairment of corporate assets"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 259-61 (S.D.N.Y. 2003) (dismissing Section 34(b) claim because alleged injury—decline in fund's net asset ***value***—was to the Fund and only indirectly to shareholders); *Green v. Nuveen Advisory Group*, 186 F.R.D. 486, 489-90 (N.D. Ill. 1999) (dismissing § 34(b) claim because alleged injury was diminution of ***value*** of shareholder investment in mutual fund).

Plaintiffs' reliance on *Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21, 26 (D. Mass. 1996), is misplaced.  (Pl. Opp. at 51.)  In *Blasberg*, "the court noted that 'if a plaintiff alleges mismanagement of funds … or breach of fiduciary duty resulting in a diminution of the value of the corporate stock or assets, the claim is one held by the corporation itself, and is thus derivative if brought by an investor [because the] plaintiff's injury would accrue due to his role as investor in the corporation, in the form of a loss in investment value.'"  *Eaton Vance*, 380 F. Supp. 2d at 235 (citing *Blasberg*, 934 F. Supp. at 26).

(because it was the fund that was injured directly), not the individual shareholders." *Forsythe*, 2006 WL 148935 at *8 n.15.

## IV.    PLAINTIFFS' DERIVATIVE CLAIMS MUST ALSO BE DISMISSED FOR FAILURE TO MAKE DEMAND OR ADEQUATELY PLEAD DEMAND FUTILITY

Plaintiffs have voluntarily withdrawn the one claim they did assert derivatively, under Sections 206 and 215 of the Investment Advisers Act of 1940 (Count V).  (Pl. Opp. at 1-2 n.3.) The other claims that Plaintiffs asserted directly but are derivative in nature (Counts I, II, IV, VI, and VII) should also be dismissed for Plaintiffs' failure to comply with the pre-suit demand requirement imposed by state law.

### A.    Under Massachusetts Law, Demand Is Universally Required

With respect to funds organized under Massachusetts law, Plaintiffs argue that the universal demand statute applies only to "corporations," and not to business trusts.  (Pl. Opp. at 49-50.)  However, every court to decide this issue—including several in this District—has held that the universal demand statute applies to derivative claims brought on behalf of Massachusetts business trusts.[40]

### B.    Under Massachusetts and Delaware Law, Plaintiffs' Conclusory Allegations Of Demand Futility Are Insufficient To Establish Excuse From Demand.

Plaintiffs relegate to a footnote the argument that demand should be excused as futile and simply recite the demand futility allegations contained within the Complaint.  (Pl. Opp. at 23

---

[40]    *See* Fidelity Def. Br. at 29-30 (explaining that Mass. Gen. Laws ch. 156D, § 7.42 requires demand to be made prior to commencement of derivative suit and citing *Yameen*, *Stegall* and *ING*)); *see also American Funds*, No. CV 04-5593-GAF (RNBx), slip op. at 6 (in case asserting same claims as here, court rejected plaintiffs' argument that the universal demand requirement applies only to corporations and not to business trusts and dismissed derivative claim brought on behalf of Massachusetts business trust for failure to make pre-suit demand).

n.28.)[41]  Plaintiffs do not, and cannot, cite any case finding such conclusory allegations sufficient to establish demand futility under Massachusetts or Delaware law.[42]   Since Defendants filed their initial brief, four additional decisions involving identical claims have rejected Plaintiffs' allegations as insufficient to show excuse from demand under Massachusetts and/or Delaware law.  *See Forsythe*, 2006 WL 148935, at *4-6 (under Massachusetts law); *Goldman Sachs*, 2006 WL 126772, at *10-11 (under Delaware law); *American Funds*, CV 04-5593-GAF (RNBx), slip op. at 6-7 (under Delaware and Maryland law); *Eaton Vance*, 2005 WL 3299759, at *6 (under Massachusetts law).

Plaintiffs argue that demand should be excused because the trustees were controlled by the investment advisers and their affiliates.  (Pl. Opp. at 23 n.28.)[43]  Plaintiffs ignore that, under the ICA, there is a statutory presumption that a natural person is not a "controlled person," and that the presumption shall continue unless and until the Securities and Exchange Commission makes a determination to the contrary.  *See* 15 U.S.C. §80a-2(a)(9).  Even if Plaintiffs were permitted to try and rebut this presumption, they would be required to plead "particularized allegations" and present "specific facts" demonstrating control.  *Forsythe*, 2006 WL 148935, at *5-6 (*citing Grossman v. Johnson*, 674 F.2d 115, 124 (1st Cir. 1982)).  The conclusory and unsubstantiated allegations that Plaintiffs advance in an attempt to show control—that the

---

[41]    Even if this Court finds Massachusetts' universal demand statute inapplicable, Plaintiffs' derivative claims should nevertheless be dismissed for failure to make demand because Plaintiffs have not adequately alleged demand futility, as discussed herein.

[42]    Fidelity Def. Br. at 33-36 (citing cases).  Plaintiffs' citation to *Columbia* is misleading because there the court applied Oregon law on this issue.  (Pl. Opp. at 23 n.28.)  With respect to the funds organized under Massachusetts law, the court dismissed the derivative claim for failure to comply with the universal demand statute.  *Columbia*, 2005 U.S. Dist. LEXIS 33439, at *22.

[43]    As indicated in Fidelity Defendants' initial brief, a majority of the trustees are presumed independent and disinterested when making any determination as a trustee.  *See* Fidelity Def. Br. at 31-33, citing Mass. Gen. Laws ch. 182, §2B and 12 Del. Code § 3801(h).

trustees were "beholden to" and "captive to and controlled by" the investment adviser defendants

(Pl. Opp. at 23 n.28)—are wholly insufficient to meet this pleading standard.[44]  *See Forsythe*,

2006 WL 148935, at *7 (rejecting conclusory allegations as insufficient to show control).

## V.    PLAINTIFFS LACK STANDING TO SUE ON BEHALF OF SHAREHOLDERS IN FUNDS IN WHICH PLAINTIFFS DO NOT OWN SHARES

### A.    Rule 23 Does Not Confer Standing Upon Plaintiffs To Sue On Behalf of Shareholders In Funds In Which Plaintiffs Do Not Own Shares.

Plaintiffs attempt to recharacterize the constitutional requirement of Article III standing

as an issue of class certification under Rule 23.  (Pl. Opp. at 29-36.)  Article III standing,

however, is jurisdictional and must be satisfied before the court considers class certification.

*United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992); *Forsythe*, 2006 WL 148935, at

*13; *Stegall*, 394 F. Supp. 2d at 361; *Eaton Vance Corp.*, 219 F.R.D. at 40.

To have standing under Article III, a plaintiff must have: (1) a personal injury; (2) that is

fairly traceable to the defendants' allegedly unlawful conduct; and (3) is likely to be addressed

by the requested relief.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The

plaintiff bears the burden of demonstrating each of the three standing requirements, *FW/PBS,*

*Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), and that burden is in no way diminished when

the plaintiff seeks to represent a class.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a

suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs

who represent a class must allege and show that they personally have been injured, not that

injury has been suffered by other, unidentified members of the class . . . which they purport to

represent.").

---

[44]    Moreover, Plaintiffs themselves admit that rather than the trustees being controlled by the investment advisers, "the shareholders have a right to vote out the Trustees."  (CAC ¶ 211.)  *See also Forsythe*, 2006 WL 148935, at *6 (noting that the trustees do not serve at the pleasure of the adviser "particularly in light of the acknowledged fact that the shareholders retain the right to vote out a trustee.").

Recognizing these principles, courts—including those within this District and those faced with allegations identical to those at issue here—have repeatedly held that a plaintiff who does not own shares in a mutual fund lacks standing to bring a class action with respect to that fund.[45] *See Forsythe*, 2006 WL 148935, at *12-13 (involving allegations nearly identical to those at issue here and holding that plaintiffs did not have standing to pursue claims on behalf of investors in funds that plaintiffs did not personally own); *Columbia*, 2005 U.S. Dist LEXIS 33439, at *28 (same); *Stegall*, 394 F. Supp. 2d at 363 (refusing to allow plaintiff to "bootstrap claims arising out of investment decisions made in relation to other funds in which he was not a participant"); *Eaton Vance Corp.*, 219 F.R.D. at 40-41 (holding that plaintiffs lacked standing to sue on behalf of investors in funds they did not own);[46] *Nenni v. Dean Witter Reynolds, Inc.*, No. 98-12454-REK, 1999 U.S. Dist. LEXIS 23351, at *4-6 (D. Mass. Sept. 29, 1999) (same).[47]

---

[45] With respect to claims under Section 36(b), this conclusion is further supported by the plain language of the statute, which states that such claims may be brought only "by a security holder of [the fund]." *See* 15 U.S.C. § 80a-35(b); *see also AllianceBernstein*, 2005 WL 2677753, at *10. In addition, as discussed above, Plaintiffs' ICA and state-law claims are necessarily derivative, and courts have uniformly held that a mutual fund shareholder can bring a derivative action only on behalf of funds that he personally owns. *See, e.g.*, *Kauffman*, 434 F.2d at 735; *Columbia*, 2005 U.S. Dist LEXIS 33439, at *23-25; *Dreyfus*, 2005 U.S. Dist LEXIS 29152, at *36-37; *Davis*, 2005 WL 2509732, at *3 n.4; *see also Franklin*, 388 F. Supp. 2d at 468 n.13; *Lord Abbett*, 2005 WL 3544312, at *15.

[46] Plaintiffs contend that the court in *Eaton Vance Corp.* approached the issue as one of class certification, rather than Article III standing.  (Pl. Opp. at 32 n.35.)  To the contrary, the court addressed defendants' standing arguments before reaching the question of class certification.  *See Eaton Vance Corp.*, 219 F.R.D. at 40 ("Before delving into the law regarding class certification, it is necessary to address a challenge made by the defendants to this Court's jurisdiction.").

[47] *See also American Funds*, No. CV 04-5593-GAF (RNBx), slip op. at 2 (involving allegations nearly identical to those at issue here); *AllianceBernstein*, 2005 WL 267753, at *9-10 (same); *Davis*, 2005 WL 2509732, at *4 n.5 ("Plaintiffs erroneously argue that they can assert claims on behalf of investors in the Selected mutual funds, in which they held no shares.").

The cases cited by Plaintiffs do not require a different result. Virtually all of the cited cases involve class certification and are otherwise distinguishable.[48] Only three of the cases cited by Plaintiffs actually hold that a plaintiff can bring a class action on behalf of investors in mutual funds that he does not personally own. (Pl. Opp. at 30-32 (citing *Lord Abbett*, *Franklin*, and *Dreyfus*).) This Court, however, should decline to follow these cases because, as discussed above, they are contrary to the great weight of authority in this District. Moreover, *Lord Abbett* and *Franklin* both adopted the Third Circuit's analysis in *Haas v. Pittsburgh Nat'l Bank*, which improperly conflated Article III standing with class representation under Rule 23. 526 F.2d 1083, 1088-89 (3d Cir. 1975). Notably, *Haas* did not even mention—much less analyze—the requirements for standing under Article III. *See id.* While questionable in the consumer banking context, such a lenient view of standing is certainly improper in the context of a securities class action where Article III standing requirements should be applied rigorously "in order to curb the risks of vexatious litigation and abuse of discovery." *Forsythe*, 2006 WL 148935, at *13; *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991).[49]

---

[48]    *See, e.g.*, *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2000 WL 1357509, at *4 (S.D.N.Y. Sept. 20, 2000) (class certification); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 561 (D. Del. 1994) (same); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 56-57 (S.D.N.Y. 1993) (same); *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1461 (D. Ariz. 1992) (same); *Tedesco v. Mishkin*, 689 F. Supp. 1327, 1335-36 (S.D.N.Y. 1988) (same); *Kitchens v. U.S. Shelter Corp.*, No 82-1951-1, 1983 WL 1380 (D.S.C. Oct. 13, 1983) (same); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998) (same; ERISA plans); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) (certification of settlement class); *In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 911 n.7 (D.N.J. 1998) (standing to represent purchasers of two types of securities issued in the same offering); *see also Forsythe*, 2006 WL 148935, at *12 ("Those cases are inapposite.").

[49]    Even if the Court determines to adopt the *Haas* analysis, it should nonetheless dismiss Plaintiffs' claims on behalf of investors in Funds that Plaintiffs did not personally own. Although Plaintiffs suggest in their Opposition that both of the Adviser Defendants advise each of the Funds (Pl. Opp. at 38), the Amended Complaint suggests otherwise. (*Compare* CAC ¶ 40 ("As of March 31, 2003, FMR had approximately *$26.7 billion* in discretionary assets under management.") *with* CAC ¶ 41 ("FMRC is an affiliate of FMR and as of March 31, 2003, had approximately *$394.8 billion* in assets under management.") (emphasis added).) To the extent FMR and FMRC do not

### B.     Plaintiffs' Other Attempts to Establish Standing Fail.

Plaintiffs' reliance on the juridical link doctrine is unavailing. The juridical link doctrine developed in the context of class certification under Rule 23 and is not relevant to the issue of standing. *Forsythe*, 2006 WL 148935, at *13 n.19; *Eaton Vance Corp.*, 220 F.R.D. at 171.

Plaintiffs likewise cannot demonstrate standing based on their alleged "ongoing financial interest" in the Fidelity Funds. Indeed, in a case involving allegations nearly identical to those at issue here, this District recently rejected plaintiffs' attempt to demonstrate standing based on an "ongoing financial interest" in the mutual fund complex. *See Forsythe*, 2006 WL 148395, at *12 n.17; *see also AllianceBernstein*, 2005 WL 2677753, at *10 (same); *Stegall*, 394 F. Supp. 2d at 362 ("[O]ne clearly may not use the corporate structure of the broader investment company to confer standing across all funds within that company.").[50]

Finally, Plaintiffs cannot establish standing by alleging that the Funds are an "unincorporated association" under Rule 23.2. Article III standing represents a constitutional limit on the court's jurisdiction, *AVX Corp.*, 962 F.2d at 113, and Rule 23.2 cannot be used to expand that jurisdiction. *See* Fed. R. Civ. P. 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein."); *see also* 28 U.S.C. § 2072(b). Accordingly, because Plaintiffs cannot demonstrate standing under

---

both advise each of the Funds, Plaintiffs have failed to establish standing because they do not specifically allege which Adviser Defendant managed each Fund. *See Franklin*, 388 F. Supp. 2d at 461 (applying *Haas* but dismissing plaintiffs' claims for lack of standing because the complaint did not specify which advisers, distributors, and directors were involved in the management and oversight of the funds that plaintiffs personally owned).

[50]     Plaintiffs' reliance on *Batra v. Investors Research Corp.*, No. 89-0528-CV-W-6, 1992 WL 278688 (W.D. Mo. Oct. 4, 1991), is misplaced. (Pl. Opp. at 40.) This District has rejected the analysis set forth in *Batra*. *See Stegall*, 394 F. Supp. 2d at 362-63. Moreover, *Batra* is inapposite to the instant action because the Fidelity Funds are not all series within a single trust, but rather are portfolios within a number of separate trusts.

Article III to pursue their claims relating to the Funds that they do not own, they cannot create

such standing by alleging that the Funds are an "unincorporated association" under Rule 23.2.

## VI.    SLUSA PREEMPTS PLAINTIFFS' STATE-LAW CLAIMS, AND THOSE CLAIMS MUST BE DISMISSED

Plaintiffs' efforts to circumvent SLUSA preemption through artful pleading should be

rejected as inconsistent with Congress's intent in enacting the statute.  Plaintiffs' counsel brought

several actions making nearly identical allegations to those at issue here against various mutual

fund advisers and their affiliates.  By the time Plaintiffs filed their Amended Complaint in this

action on October 3, 2005, motions to dismiss had been decided in four of those copy-cat

actions, and all four dismissed plaintiffs' state-law claims as preempted under SLUSA.  *See*

*Eaton Vance*, 380 F. Supp. 2d at 240-41; *Lord Abbett*, 385 F. Supp. 2d at 483-85; *Franklin*, 388

F. Supp. 2d at 471-73; *Dreyfus*, 2005 U.S. Dist. LEXIS 29152, at *40-46.  Seeking to avoid the

same result here, Plaintiffs made various modifications to their pleadings, including creating a

Subclass of "holders" of Fidelity Funds shares and purportedly excluding from the Subclass "any

transaction that constitutes a 'purchase' within the meaning of SLUSA."  (CAC ¶ 219.)  In other

words, Plaintiffs modified their pleadings in an effort to bring what are ultimately federal

securities claims under state law so as to gain a perceived litigation advantage.[51]  This is

precisely the type of litigation engineering Congress enacted SLUSA to prevent, and Plaintiffs'

reliance on this type of artful pleading should be rejected.  *See Kircher v. Putnam Funds Trust*,

403 F.3d 478, 484 (7th Cir. 2005) ("[P]laintiffs' effort to define non-purchaser-non-seller classes

is designed to evade PSLRA in order to litigate a securities class action in state court . . . .  It is

the very sort of maneuver that SLUSA is designed to prevent."); *see also Disher v. Citigroup*

---

[51]    Notably, Plaintiffs base their purported state-law claims on exactly the same allegations as their ICA claims.  (*See* CAC ¶¶ 263, 268, 272.)

*Global Mkts. Inc.*, 419 F.3d 649, 655 (7th Cir. 2005) (holding that plaintiff's claims satisfied SLUSA's "in connection with" requirement even though plaintiff sought to represent holders and specifically excluded any claims based on class members' purchases and sales of securities).

Plaintiffs argue that it is "well-established" that *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), defines SLUSA's "in connection with" language.  (Pl. Opp. at 72 n.78.) Plaintiffs, however, ignore *Kircher* and *Disher*, where the Seventh Circuit held that SLUSA's "in connection with" language should be interpreted in light of Congress's intent in enacting the statute, whether or not that interpretation corresponds to *Blue Chip Stamps*' interpretation of the same language in evaluating standing to bring a claim under Section 10(b) and Rule 10b-5.  *See Kircher*, 403 F.3d at 484; *Disher*, 419 F.3d at 655; (*see also* Fidelity Def. Br. at 42 n.27.)[52] Moreover, Plaintiffs ignore that the Supreme Court recently granted certiorari to resolve this issue.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, No. 04-1371, 2005 WL 873163, at *1 (U.S. Sept. 27, 2005); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, Pet. for Writ of Cert., No. 04-1371, 2005 WL 879506, at *1 (filed Apr. 11, 2005).  The Court heard argument on January 18, 2006, and a definitive answer will be issued by June 30, 2006.  At most, *Dabit* counsels waiting until the Court settles the question definitively.

In addition, Plaintiffs' attempt to circumvent SLUSA by creating a holders Subclass fails because *the sole Subclass representative*, James Gilliam, previously admitted in the Original Complaint that he *purchased* Fidelity Funds shares during the Class Period.  (*See* Orig. Compl. ¶

---

[52]     Plaintiffs seek to distinguish *Kircher* because it involved a different scheme of allegedly wrongful conduct than the scheme at issue here.  (Pl. Opp. at 79 n.81.)  Any differences between the alleged schemes are not relevant to the question of whether Plaintiffs can plead around SLUSA by asserting holders claims.  Moreover, *Kircher* involved allegations of market timing identical to those at issue in *Meyer v. Putnam Int'l Voyager Fund*, 220 F.R.D. 127 (D. Mass. 2004), which Plaintiffs present as relevant authority.  (Pl. Opp. at 71, 73-74.)

12.)  Accordingly, Mr. Gilliam is himself ineligible for membership in the Subclass he seeks to represent.  *See Eaton Vance*, 403 F. Supp. 2d at 319-20.

Moreover, regardless of how Plaintiffs define the Subclass, their state-law claims satisfy SLUSA's "in connection with" requirement because: (1) Plaintiffs paid the allegedly excessive fees *only* because they purchased Fidelity Funds shares; and (2) the alleged fraudulent scheme necessarily involves purchases of securities.

Plaintiffs argue that their claims are not in connection with the purchase or sale of securities for purposes of SLUSA because they paid the allegedly excessive fees regardless of whether they purchased or sold Fidelity Funds shares.  (Pl. Opp. at 76-79.)  To the contrary, Plaintiffs paid the allegedly excessive fees *only because* they purchased Fidelity Funds shares. Although the fees at issue are assessed on an annual basis, they are fully disclosed in the Funds' prospectuses and SAIs, and by purchasing shares of the Fidelity Funds, investors agree to pay the fees going forward.  Under no circumstances would an investor ever be required to pay the fees without first purchasing shares of the Fidelity Funds.  In this sense—*i.e.*, in the sense of but-for causation—Plaintiffs certainly paid the allegedly excessive fees in connection with the purchase of securities.  That the fees were paid over time on an annual basis does not somehow destroy the connection between Plaintiffs' purchases and the fees.

Plaintiffs rely on *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), and *Green v. Ameritrade, Inc.*, 279 F.3d 590 (8th Cir. 2002).  These cases are distinguishable because in both cases plaintiffs were required to pay the challenged fees regardless of whether they *ever* purchased or sold any securities.  In *Dabit*, the fees that the court held to be outside of SLUSA's preemptive scope were annual fees that plaintiff paid to Merrill Lynch in exchange for Merrill Lynch's proprietary research.  *Dabit*, 395 F.3d at 30.  In *Green*,

the challenged fees were monthly fees that plaintiff paid to Ameritrade in exchange for a real-time stock quote service. *Green*, 279 F.3d at 593. Here, by contrast, Plaintiffs paid the allegedly excessive fees *only because* they purchased shares of the Fidelity Funds.[53]

In addition, Plaintiffs' claims satisfy SLUSA's "in connection with" requirement because the alleged fraudulent scheme necessarily involves purchases of securities. (*See* Def. Br. at 42-43.) Recent decisions have consistently held that the alleged scheme—which involves "charging excessive fees to induce brokers to steer investors into Fidelity Funds" (CAC ¶ 9)—satisfies SLUSA's "in connection with" requirement. *See American Funds*, No. CV 04-5593-GAF (RNBx), slip op. at 8-9; *Dreyfus*, 2005 U.S. Dist. LEXIS 29152, at *40-46; *Franklin*, 388 F. Supp. 2d at 472; *Lord Abbett*, 2005 WL 3544312, at *9-11; *Eaton Vance*, 380 F. Supp. 2d at 241; *Atencio v. Smith Barney, Citigroup, Inc.*, No. 04 Civ. 5653, 2005 WL 267556, at *6 (S.D.N.Y. Feb. 2, 2005).

Plaintiffs' reliance on *Strigliabotti v. Franklin Resources, Inc.*, 398 F. Supp. 2d 1094 (N.D. Cal. 2005), is misplaced since that case did not involve the same alleged scheme that is at issue here. Indeed, *Strigliabotti* distinguished the scheme at issue there from the scheme at issue in *Lord Abbett*, which involved allegations of revenue sharing identical to those at issue here. The court explained that "[i]n [*Lord Abbett*], plaintiffs . . . challeng[ed] broker compensation practices employed by Lord Abbett pursuant to which brokers were allegedly compensated excessively as an incentive for them to steer new investors into Lord Abbett mutual funds," whereas in *Strigliabotti*, "plaintiffs allege[d] that defendants . . . engaged in transactions that should have reduced defendants' costs in providing advisory services to the Funds, but that

---

[53]    *Cf. Dabit*, 395 F.3d at 48 (recognizing the logical distinction between "claims that turn on injuries caused by acting on misleading investment advice . . . which necessarily allege a purchase or sale, and claims which merely allege that the plaintiff was injured by paying, independent of any given transaction, for a service that the broker failed to provide").

defendants did not pass these savings along to plaintiffs and the Funds and instead kept the savings as additional compensation for themselves." *Id.* at 1101-02. That the scheme at issue in *Strigliabotti* did not necessarily involve purchases of securities is irrelevant to the question of whether the entirely different scheme alleged by Plaintiffs here necessarily involves purchases of securities.

## VII.    DISMISSAL WITH PREJUDICE IS WARRANTED

Plaintiffs' opposition brief confirms that dismissal *with prejudice* is appropriate. In fact, Plaintiffs' counsel concede they "were aware of [the decisions dismissing identical claims] when drafting the instant Complaint." (Pl. Opp. at 80.) Plaintiffs argue that, because they were aware of these dismissals, the Amended Complaint against the Fidelity Defendants reflects "different" and "more detailed" allegations than those made against other mutual fund complexes in those earlier cases. (*Id.*) But that is exactly the point. To the extent Plaintiffs were aware of the legal defects with their claims (they were), and this Amended Complaint is still subject to dismissal despite their efforts to cure those defects (it is), denial of leave to replead is appropriate. *See Krantz v. Prudential Inv. Fund Mgmt. LLC*, 305 F.3d 140, 144-45 (3d Cir. 2002) (affirming district court's denial of leave to replead where plaintiff was found to be on notice of the deficiencies in his complaint but chose not to resolve them when he filed an amended pleading); *Benak v. Alliance Capital Mgmt. L.P.*, No. Civ.A. 01-5734, 2004 WL 1459249, at *10 (D.N.J. Feb. 9, 2004) (dismissing action with prejudice where plaintiff was on notice of deficiencies but nevertheless failed to cure them).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Consolidated Amended Class Action Complaint should be dismissed in its entirety and with prejudice.

Dated: February 9, 2006.

Respectfully submitted,

GOODWIN PROCTER LLP


_____/s/ James S. Dittmar_____
James S. Dittmar (BBO# 126320)
Roberto M. Braceras (BBO# 566816)
Stuart M. Glass (BBO# 641466)
Exchange Place
53 State Street
Boston, Massachusetts 02109
Tel: (617) 570-1000

MILBANK, TWEED, HADLEY & MCCLOY LLP
James N. Benedict
Sean M. Murphy
C. Neil Gray
Robert R. Miller
Andrew W. Robertson
One Chase Manhattan Plaza
New York, New York 10005
Tel: (212) 530-5000

*Attorneys for Defendants Fidelity Management & Research Company, FMR Co., Inc., FMR Corp., Fidelity Distributors Corporation, Edward C. Johnson 3d, Abigail P. Johnson, Peter S. Lynch, Laura B. Cronin, Robert L. Reynolds and Robert C. Pozen*

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 9, 2006.  In addition, per this Court's July 22, 2005 Pretrial Order, service of all papers filed excluding exhibits shall be made by telecopy on Plaintiffs' Tri-Lead Counsel.


_____ /s/ Stuart M. Glass _____