# EXHIBIT 2

Case 1:04-cv-11600-NG    Document 127-4    Filed 05/09/2006    Page 1 of 14

2006 WL 753000
--- F.Supp.2d ----, 2006 WL 753000 (S.D.N.Y.)
(Cite as: 2006 WL 753000 (S.D.N.Y.))

C

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re: EVERGREEN MUTUAL FUNDS FEE LITIGATION
This Document Applies To All Actions
No. 04CIV4453(RWS).

March 24, 2006.

Background: Mutual fund shareholders brought action against investment adviser and fund defendants for violations of Investment Company Act (ICA), Investment Advisers Act (IAA), and state law. Defendants moved to dismiss.

Holdings: The District Court, Sweet, J., held that:
(1) there was no private right of action for enforcement of ICA provisions prohibiting an untrue statement of a material fact in a registration statement and breach of fiduciary duty;
(2) shareholders did not sufficiently allege excessive investment advisory fees under ICA;
(3) shareholders' state law claims for excessive fees and breaches of fiduciary duties should have been brought as derivative claims; and
(4) New York's deceptive practices statute did not apply to securities-related claims brought by mutual fund shareholders.
Motion granted.

[1] Action 3
13k3
Where a private right to sue is not explicitly created by statute, courts must look to the intent of Congress in determining whether a federal private right of action exists.

[2] Action 3
13k3
Determining congressional intent to create a federal private right of action under statute is a matter of statutory interpretation in which the court looks to: the text and structure of the statute; (2) any "rights-creating" language in the statute; (3) the existence in the statute of an alternate method of enforcement; and (4) the existence of a private right of action in other sections of the statute.

[3] Securities Regulation 218
349Bk218
There was no private right of action for enforcement of Investment Company Act (ICA) provisions prohibiting an untrue statement of a material fact in a registration statement and breach of fiduciary duty; sections contained language that prohibited conduct rather than confer rights, and statute's authorization of the SEC to enforce those provisions suggested that Congress intended to preclude others. Investment Company Act of 1940, §§ 34(b), 36(a), 15 U.S.C.A. §§ 80a-33(b), 80a-35(a).

[4] Securities Regulation 215
349Bk215
Legal standard for an excessive fee claim under Investment Company Act (ICA) is whether the fee schedule represents a charge within the range of what would have been negotiated at arm's-length in the light of all of the surrounding circumstances. Investment Company Act of 1940, § 36(b), 15 U.S.C.A. § 80a-35(b).

[5] Securities Regulation 215
349Bk215
In order to demonstrate that excessive fee provision of Investment Company Act (ICA) has been violated, a plaintiff must show that the adviser-manager charged a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered. Investment Company Act of 1940, § 36(b), 15 U.S.C.A. § 80a-35(b).

[6] Securities Regulation 215
349Bk215
Mutual fund shareholders did not sufficiently allege excessive investment advisory fees under Investment Company Act (ICA) where they alleged that the fees at issue were used improperly, and not that the fees themselves were excessive. Investment Company Act. of 1940, § 36(b), 15 U.S.C.A. § 80a-35(b).

[7] Securities Regulation 219.1
349Bk219.1
Mutual fund shareholders failed to state excessive fees claim against investment adviser and trustee/officer defendants under Investment Company Act (ICA) since shareholders failed to allege that those defendants were the recipients of the fees. Investment Company Act of 1940, § 36(b), 15 U.S.C.A. § 80a-35(b).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 753000
**(Cite as: 2006 WL 753000 (S.D.N.Y.))**

[8] Securities Regulation ⚖︎218
349Bk218
Because mutual fund shareholders failed to state a cause of action for a primary violation of Investment Company Act (ICA), their claim against asset and investment management organization for control person liability was insufficient. 10 U.S.C. § 48(a).

[9] Securities Regulation ⚖︎218
349Bk218
Whether Investment Company Act (ICA) claims should be brought directly or derivatively is determined by the law of the state where the relevant entity was organized, unless application of those rules would frustrate the specific federal policy underlying the ICA. Investment Company Act of 1940, § 1 et seq., 15 U.S.C.A. § 80a-1 et seq.

[10] Corporations ⚖︎202
101k202
Under Delaware law, whether a stockholder's claims are derivative or direct turns on the following: (1) who suffered the alleged harm, the corporation or the suing stockholders, individually, and (2) who would receive the benefit of any recovery or other remedy, the corporation or the stockholders, individually.

[11] Corporations ⚖︎320(4)
101k320(4)
Under Delaware law, mutual fund shareholders' state law claims for excessive fees and breaches of fiduciary duties, which were based on allegations that defendants mismanaged funds' assets, should have been brought as derivative claims; allegations did not demonstrate individual harm, but rather purported to show harm to the funds themselves, and any harm to shareholders was dependent upon the alleged injury to the funds' business or property.

[12] Corporations ⚖︎320(4)
101k320(4)
In order to bring a breach of fiduciary duty claim directly under Delaware law, stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.

[13] Securities Regulation ⚖︎223
349Bk223
Investment Advisers Act (IAA) affords a private right of action to have an investment advisory contract voided if the formation or performance of the contract violates the Act. Investment Advisors Act of 1940, § 215, 15 U.S.C.A. § 80b-15.

[14] Corporations ⚖︎206(2)
101k206(2)
Demand requirements for a derivative suit are determined by the law of the state of incorporation. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

[15] Corporations ⚖︎206(4)
101k206(4)
Under Delaware law, in order to allege demand futility in a shareholder derivative suit, a plaintiff must present particularized facts showing that the board is incapable of exercising its power and authority to pursue derivative claims directly.

[16] Corporations ⚖︎206(4)
101k206(4)
Delaware courts assessing whether a plaintiff has adequately pled demand futility in a shareholder derivative suit are to apply the *Aronson* test, under which the court must determine whether a reasonable doubt has been created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.

[17] Corporations ⚖︎206(4)
101k206(4)
Fact that investment adviser was responsible for selecting board members was an insufficient basis under Delaware law for establishing lack of independence or disinterestedness for purposes of pleading demand futility in a shareholder derivative suit.

[18] Corporations ⚖︎206(4)
101k206(4)
Under Delaware law, allegations that trustees defendants were members of multiple boards of mutual funds was insufficient to establish demand futility in a derivative suit brought by mutual fund shareholders.

[19] Corporations ⚖︎206(4)
101k206(4)
Mere allegations of substantial compensation to board members are insufficient to establish demand futility in a shareholder derivative suit.

[20] Consumer Protection ⚖︎4
92Hk4
To state a claim for deceptive practices under New York's General Business Law, a plaintiff must show: (1) that the act or practice was consumer-oriented; (2)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 753000
**(Cite as: 2006 WL 753000 (S.D.N.Y.))**

that the act or practice was misleading in a material respect, and (3) that the plaintiff was injured as a result of the deceptive practice or act. N.Y.McKinney's General Business Law § 349.

[21] Consumer Protection ⚖=4
92Hk4
Standard for whether an act or practice is misleading for purposes of deceptive practices claim under New York's General Business Law is objective, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct. N.Y.McKinney's General Business Law § 349.

[22] Consumer Protection ⚖=4
92Hk4
Omissions, as well as acts, may form the basis of a deceptive practices claim under New York's General Business Law. N.Y.McKinney's General Business Law § 349.

[23] Consumer Protection ⚖=6
92Hk6
New York's deceptive practices statute did not apply to securities-related claims brought by mutual fund shareholders against investment adviser and fund defendants; shareholders were investors seeking income, investment growth, and the preservation of capital, not consumers who were purchasing traditional goods or services. N.Y.McKinney's General Business Law § 349.

Milberg Weiss Bershad & Schulman, New York City by Jerome M. Congress, Michael R. Reese, Kim E. Miller, Wolf Popper, Plaintiffs' Co-Lead Counsel, New York City by Marian P. Rosner, Michael A. Schwartz, James A. Harrod, Stull, Stull & Brody, New York City by Jules Brody, Aaron Brody, Tzivia Brody, Schiffrin & Barroway, Radnor, PA by Marc A. Topaz, Richard A. Maniskas, Weiss & Lurie, New York City by Joseph H. Weiss, for Plaintiffs.

Law Offices of Charles J. Piven, Baltimore, MD by Charles J. Piven, Marshall N. Perkins, Brodsky & Smith, Mineola, NY by Evan J. Smith, for Plaintiffs' Executive Committee.

Morgan, Lewis & Bockius by Christopher P. Hall, Todd D. Brody, Nicole Meredith Hunn, New York City, for Defendants.

*OPINION*

SWEET, District Judge.

*1 Defendants Wachovia Corporation ("Wachovia"), Evergreen Investment Co. ("Evergreen Investments"), Evergreen Investment Management Co. LLC ("EIMC" or the "Investment Adviser Defendant"), Evergreen Investment Services, Inc. ("EIS" or the "Distributor Defendant"), Evergreen Distributor, Inc. ("EDI" or the "Distributor Defendant"), Dennis H. Ferro, Anthony J. Fischer, Carol Kosel, Michael H. Koonce, Nimish S. Bhatt, Bryan Haft, Laurence B. Ashkin, Charles A. Austin, III, Arnold H. Dreyfuss, K. Dun Gifford, James S. Holwell, Leroy Keith Jr., Gerald M. McDonnell, Thomas L. McVerry, Louis W. Moelchert, Jr., William Walt Pettit, David M. Richardson, Russell A. Salton, III, Michael S. Scofield, Richard J. Shima, Richard K. Wagoner, and William Ennis (collectively the "Trustee/Officer Defendants") have moved pursuant to Fed.R.Civ.P. 12(b) to dismiss the amended consolidated complaint (the "Complaint") of plaintiffs, a putative class including Blanchard D. Smith, William Smith, Sergio Grobler, Gene F. Osburn, and Linda M. Allison (the "Plaintiffs"), and other holders of Evergreen Mutual Funds during the period of June 14, 1999 through November 17, 2003 (the "Class Period").

*Prior Proceedings*

On June 14, 2004, Plaintiffs filed their initial complaint. On November 29, 2004, Plaintiffs filed an amended consolidated complaint. The Defendants moved to dismiss the Complaint on February 15, 2005. The motion was heard and marked fully submitted on May 17, 2005.

*The Parties*

A. *The Parent Company and Subsidiary*

Defendant Wachovia, the parent company, is a financial services corporation and a financial and bank holding company. Evergreen Investments, a subsidiary of Wachovia, is a broadly diversified asset and investment management organization.

B. *The Investment Adviser Defendant*

Defendant EIMC is a registered investment adviser under the Investment Adviser Act (the "IAA") and the investment adviser to the Evergreen Family of Funds. EIMC had the ultimate responsibility of overseeing the day-to-day management of the Evergreen funds.

C. *The Trustee/Officer Defendants*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 753000
(Cite as: 2006 WL 753000, *1 (S.D.N.Y.))

The Complaint names twenty-two individuals who allegedly are or were trustees of each of the trusts in the Evergreen Fund complex at times during the putative class period. These individuals are collectively referred to as the "Trustee/Officer Defendants."

### D. *The Distributor Defendants*

Defendant EDI, a subsidiary of the BISYS Group, Inc., markets the Funds through broker-dealers and other financial representatives. EDI is the principal underwriter for the Trusts. Defendant EIS, a subsidiary of Wachovia, serves as the administrator to each of the Funds, subject to the supervision and control of the Trust's Board of Trustees, and as a distributor of the Evergreen Funds.

### E. *The Evergreen Funds*

The Evergreen Funds (collectively the "Nominal Defendants" or the "Funds") are open-ended management companies consisting of capital invested by the Funds' shareholders, all having a Board of Trustees charged with representing the interests of the shareholders in the Funds. All of the Evergreen Funds are alter egos of one another and share a common body of trustees established by Evergreen. The Evergreen Funds are named as nominal defendants solely to the extent that they are deemed necessary and indispensable parties pursuant to Fed.R.Civ.P. 19 and to the extent necessary to ensure adequate remedies.

### *The Complaint*

*2 On November 29, 2004, the Plaintiffs filed the consolidated amended complaint on behalf of holders of Evergreen mutual funds during the Class Period, alleging that Defendants engaged in a kickback scheme whereby they made improper payments to brokerage houses, such as Morgan Stanley Dean Witter, AG Edwards, Salomon Smith Barney, Merrill Lynch, and Wachovia Securities, as a quid pro quo for the brokers pushing as many of their clients as possible into the Funds. This practice was known as buying "shelf-space" at the brokerage houses.

The alleged improper payments Evergreen made for "shelf-space" at these brokerage houses took a variety of forms, including, wrongful utilization of "directed brokerage" and the payment of excessive commissions in the form of "soft dollars." According to Plaintiffs, these payments were financed by excessive and improper fees charged to Evergreen Fund investors, the purposes of which were undisclosed to shareholders.

Plaintiffs allege that the Defendants' compensation increased as the assets of the Funds under its management increased as it was based upon a percentage of assets under management. As such, the Defendants allegedly reaped millions of dollars in profits from the fees that were charged to investors for these so-called "shelf-space" programs at the expense of the shareholders.

According to Plaintiffs, Evergreen was motivated to engage in this undisclosed scheme because the fees it collected for managing and advising the Evergreen Funds were calculated as a percentage of assets under management and increased as the number of Evergreen investors grew. Plaintiffs allege that in spite of the insurmountable conflicts of interest that the kickbacks created, Evergreen concealed these practices from Plaintiffs. Additionally, the Defendants allegedly failed to pass on to the shareholders any economies of scale generated by increasing assets in the Funds. In contrast, according to Plaintiffs, the fees and costs associated with the Funds actually increased during the Class Period.

In November 2003, the Securities and Exchange Commission (the "SEC") brought a regulatory enforcement action against Morgan Stanley Dean Witter for accepting kickback payments from Evergreen and other mutual fund companies. The SEC concluded that this arrangement violated Section 17(a)(2) of the Securities Act of 1933, among other statutes. In a similar enforcement action announced on the same day, the NASD also concluded that the practices engaged in between Evergreen and Morgan Stanley violated NASD Rule 2830(k).

The Complaint asserts various violations of the Investment Company Act (the "ICA"), the Investment Advisers Act (the "IAA"), and state common law. Count One alleges that the Investment Adviser Defendant and the Trustee/Officer Defendants violated Section 34(b) of the ICA by making materially false and misleading statements and by failing to disclose necessary information to holders of the Funds. Count Two alleges that the Investment Adviser Defendant, the Distributor Defendant, and the Trustee/ Officer Defendants violated Section 36(a) of the ICA. According to Plaintiffs the Defendants breached their fiduciary duties by improperly charging investors Rule 12b-1

marketing fees and by using the investor's assets to make payments of "soft dollars" and excessive commissions. In Count Three, Plaintiffs allege that the Investment Adviser, Distributor, and Trustee/Officer Defendants breached their fiduciary duties under Section 36(b) of the ICA by charging excessive marketing fees. Count Four alleges that Evergreen acted as the "control person" of the Distributor Defendant and the Investment Adviser Defendant, rendering it liable under Section 48(a) of the ICA. Count Five is brought derivatively on behalf of the Funds and alleges that the Investment Adviser Defendant breached its fiduciary duty to the Funds by knowingly and/or recklessly engaging in acts, transactions, practices, and courses of businesses which operated as a fraud upon the Funds, in violation of Section 215 of the IAA.

*3 Under Counts Six through Ten, Plaintiffs assert various state law claims. Count Six asserts that the Defendants committed deceptive acts and practices in violation of Section 349(h) of New York's General Business Law. Count Seven alleges that the Investment Adviser Defendant breached its fiduciary duties to the Plaintiffs and the purported class by failing to manage the Funds in the best interests of the Plaintiffs and the purported class. Count Eight asserts that the Trustee/Officer Defendants breached their fiduciary duties to the Plaintiffs and the purported class for failing to supervise and monitor the Investment Adviser Defendant. Count Nine alleges that the brokers that sold the Funds, including but not limited to Morgan Stanley, AG Edwards, Salomon Smith Barney, Merrill Lynch, and Wachovia Securities, aided and abetted the breach of Defendants' fiduciary duties. Finally, Count Ten asserts unjust enrichment against all Defendants.

Defendants have moved to dismiss the Complaint on a variety of grounds. For the reasons set for below, the motion is granted in its entirety.

DISCUSSION

*The Rule 12(b) Standard*

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002) (citing *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001)).

On a Rule 12(b)(6) motion to dismiss, "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994). Furthermore, the truth of factual allegations that are contradicted by documents properly considered on a motion to dismiss need not be accepted. *See e.g., Rapoport v. Asia Elecs. Holding Co.*, 88 F.Supp.2d 179, 184 (S.D.N.Y.2000).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). In other words, " 'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir.2004) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000); accord *Eternity Global Master Fund*, 375 F.3d at 176-77.

I. *There Is No Private Right of Action Under Sections 34(b) and 36(a)*

In Count One, Plaintiffs assert a cause of action for alleged violations of Section 34(b) of the ICA based upon the Defendants alleged inadequate and "materially false and misleading" disclosures regarding brokerage commissions, 12b-1 fees, and soft dollars. In Count Two, Plaintiffs allege that Defendants breached their fiduciary duties in violation of Section 36(a) by improperly charging investors in the Funds purported Rule 12b-1 fees and by drawing on assets of the Funds investors to make undisclosed payments of soft dollars and excessive commissions. Defendants have moved to dismiss Counts One and Two on the ground that there is no private right of action under either section 34(b) [FN1] or section 36(a) [FN2] of the Investment Company Act. Plaintiffs argue that while there is no express private cause of action created by the text of these sections of the ICA, the congressional intent underlying the statute implies a private right of action under which they may proceed.

*4 [1][2] Where a private right to sue is not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 753000
(Cite as: 2006 WL 753000, *4 (S.D.N.Y.))

explicitly created by statute, "courts must look to the intent of Congress in determining whether a federal private right of action exists...." *Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 432 (2d Cir.2002). Determining congressional intent is a matter of statutory interpretation in which the Court looks to: "the text and structure of the statute; (2) any 'rights-creating' language in the statute; (3) the existence in the statute of an alternate method of enforcement; and (4) the existence of a private right of action in other sections of the statute." *In re American Mutual Funds Fee Litigation*, No. 04 Civ. 5593 (C.D.Ca. Dec. 16, 2005) (citing *Alexander v. Sandoval*, 532 U.S. 275, 287-90, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)); *Olmsted*, 283 F.3d at 432-434.

[3] In the wake of *Alexander* and *Olmsted*, many courts in this district have confronted the issue of whether Sections 34(b) and 36(a) contain implied private causes of action. [FN3] These courts have found congressional intent to create a private right of action lacking in Sections 34(b) and 36(a). *See e.g., In Re Goldman Sachs Mutual Funds Fee Litigation*, No. 04 Civ. 2567(NRB), 2005 WL 126772, at *5, 2006 U.S. Dist. LEXIS, at *15-17 (S.D.N.Y.2005); *In Re Davis Selected Funds Litigation;* No. 04 Civ. 4186, 2005 WL 2509732, at *1, 2005 U.S. Dist. LEXIS 23203, at *2 (S.D.N.Y. Oct. 11, 2005); *In Re Eaton Vance Mutual Funds Fee Litigation*, 380 F.Supp.2d 222, 231-32 (S.D.N.Y.2005).

In a recent case involving substantially similar allegations against mutual funds, the Honorable John G. Koeltl held that "[t]he absence of rights-creating language, the existence of an alternative method of enforcement, and the existence of an explicit private right of action for another provision of the statute creates the strong presumption that Congress did not intend to create private rights of action under §§ 34(b), 36(a), or 48(a)." *In re Eaton Vance*, 380 F.Supp.2d at 232. Similarly, in decisions addressing the claims of holders of mutual funds virtually identical to those alleged here, both the Honorable Naomi R. Buchwald and the Honorable Miriam G. Cedarbaum adopted Judge Koeltl's reasoning and held that the logic of the Second Circuit in *Olmsted* applied to Sections 34(b) and 36(a). *In Re Goldman Sachs Mutual Funds Fee Litigation*, No. 04 Civ. 2567(NRB), 2005 WL 2157069, at *5, 2006 U.S. Dist. LEXIS, at *17; *In Re Davis Selected Funds Litigation;* No. 04 Civ. 4186, 2005 WL 2509732, at *1, 2005 U.S. Dist. LEXIS 23203, at *2 (S.D.N.Y. Oct. 11, 2005).

The reasoning of these cases applies equally to the instant case. As those courts noted, Sections 34(b) and 36(a) contain language that prohibits conduct rather than confers rights. *See In Re Eaton*, 380 F.Supp.2d at 232. Additionally, the statute's authorization of the SEC to enforce these provisions of the ICA in Section 42 of the ICA "suggests that Congress intended to preclude others." *See Alexander*, 532 U.S. at 290, 121 S.Ct. 1511. Finally, Congress' inclusion of an explicit private right of action in Section 36(b) of the ICA indicates that it would have explicitly provided so under Sections 34(b) and 36(a) if it had wished to confer similar rights in those provisions. *See Olmsted*, 283 F.3d at 433 ("Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional."). Accordingly, it is concluded that Congress did not intend to create private rights of action under Sections 34(b) or 36(a), and Counts One and Two are dismissed for failure to state a claim.

II. *Plaintiffs Have Not Adequately Alleged Violations of Section 36(b)*

*5 Count Three of the Complaint alleges violations of Section 36(b) of the ICA. In essence, Plaintiffs allege that Defendants have violated Section 36(b)'s proscription against the payment of excessive fees by charging Rule 12b-1 fees, soft dollar payments, and directed brokerage commissions, which allegedly benefited Defendants rather than the holders of the Funds. Defendants have moved to dismiss this claim on the grounds that Plaintiffs' allegations are outside the scope of Section 36(b) and that Plaintiffs have failed to allege excessive fees. Additionally, the Trustee/Officer Defendants argue that Plaintiffs' Section 36(b) claim may not be maintained because the Complaint fails to allege that the Investment Adviser and Trustee/Officer Defendants were the recipients of investment advisory or Rule 12b-1 fees, as required by Section 36(b).

Section 36(b) imposes a fiduciary duty on the investment adviser not to charge excessive fees and creates a private right of action by a shareholder against the adviser for a breach of this duty. *See* 15 U.S.C. § 80a-35(b). In pertinent part, Section 36(b) states:
> The investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services ... An action may be brought under this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser ... for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company....
15 U.S.C. § 80a-35(b).

[4][5] The legal standard for an excessive fee claim under Section 36(b) is "whether the fee schedule represents a charge within the range of what would have been negotiated at arm's-length in the light of all of the surrounding circumstances." *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir.1982). In order to demonstrate that Section 36(b) has been violated, a plaintiff must show that "the adviser-manager charge[d] a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered." *Id.; see also Strougo v. BEA Assocs.*, No. 98 Civ. 3725(RWS), 1999 WL 147737, at *7-8, 1999 U.S. Dist. LEXIS 3021 (S.D.N.Y. March 18, 1999) (quoting *Gartenberg*, 694 F.2d at 928).

In *Gartenberg*, the Second Circuit identified six factors to weigh in determining whether fees charged by an investment adviser were disproportionate to the services rendered:
> (a) the nature and quality of services provided to fund shareholders; (b) the profitability of the fund to the adviser-manager; (c) fall-out benefits; (d) economies of scale; (e) comparative fee structures; and (f) the independence and conscientiousness of the trustees.

*Krinsk v. Fund Asset Management, Inc.*, 875 F.2d 404, 409 (2d Cir.1989) (citing *Gartenberg*, 694 F.2d at 929-30); *In Re Eaton Vance Mut. Funds Fee Litig.*, 380 F.Supp.2d at 237 (quoting *Gartenberg*, 694 F.2d at 929- 30).

*6 On a motion to dismiss a Section 36(b) claim, Plaintiffs need not assert facts supporting each of the six *Gartenberg* factors. However, in order "[t]o survive a motion to dismiss, a complaint may not simply allege in a conclusory manner that advisory fees are 'excessive.' Instead, a plaintiff must allege facts that, if true, would support a claim that the fees at issue are excessive." *Levy v. Alliance Capital Mgmt, L.P.*, No. 97 Civ. 4672(DC), 1998 WL 744005, at *2 (S.D.N.Y. Oct. 26, 1998). In other words, at the motion to dismiss stage, Plaintiffs must cite some facts in support of the claim that the fees at issue were so disproportionately large that they bore no relationship to the services rendered. *Gartenberg*, 694 F.2d at 928-30; *Strougo*, 964 F.Supp. at 805.

[6] Plaintiffs contend that their Section 36(b) claim can be supported with allegations that Defendants: (1) improperly charged investors in the Funds Rule 12b-1 marketing fees, soft dollar payments, and directed brokerage commissions; (2) failed to reduce their management fees to reflect the benefits obtained by Defendants from such payments; and (3) charged management fees that were wrongfully inflated to cover other improper revenue sharing payments that were ostensibly made from the assets of the Investment Adviser and Distributor Defendants.

Defendants argue that Rule 12b-1 fees, soft dollar payments, and excessive brokerage commissions are not within the scope of Section 36(b) because they are properly categorized as distribution fees rather than as advisory fees, as required by Section 36(b). Additionally, they argue that the Plaintiffs have failed to demonstrate that the fees at issue were excessive.

Applying the above standard to facts substantially similar to those in this case, in *In re Eaton Vance Mutual Funds Fee Litigation*, Judge Koeltl dismissed plaintiffs' Section 36(b) claims. 380 F.Supp.2d at 237-38. While Judge Koeltl agreed with the plaintiffs in that case that under *Meyer v. Oppenheimer Mgmt. Corp.*, 764 F.2d 76, 82 (2d Cir.1985), Rule 12b-1 fees are subject to review under Section 36(b), he ultimately concluded that "the allegations in the [Second Amended Complaint] contain[ed] no specific facts that would provide a factual basis for an allegation that the fees were 'so disproportionately large' that [they] bore no relationship to the services rendered and could not have been the product of arms-length bargaining." *In re Eaton Vance*, 380 F.Supp.2d at 237. Judge Koeltl reasoned that Section 36(b) applies only to claims that could not have been the result of arms-length bargaining, and not to claims arising out of an investment adviser's improper use of the funds. *See Eaton Vance*, 380 F.Supp.2d at 237. Furthermore, Judge Koetl found that even under the liberal Rule 8(a) pleading standard, plaintiffs' allegations that the defendants authorized improper Rule 12b-1 fees, soft-dollar payments, and brokerage commissions failed to "demonstrate that the compensation paid to the defendants was disproportionate to the services rendered." [FN4] *Id.*

*7 In finding analogous allegations insufficient to state a claim under Section 36(b), Judge Buchwald similarly held:
> Plaintiffs essentially argue that the fees were so

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

excessive because they were improper. Such assertions are insufficient to establish that the Rule 12b-1 fees bore no reasonable relationship to the services rendered. In sum, plaintiffs have at most alleged that the advisory and Rule 12b-1 fees were used for improper purposes. We agree with Judge Koetl and Judge Cedarbaum that such allegations do not suffice to state a claim under Section 36(b).

*Goldman Sachs,* 2006 WL 126772, at *10 (citations omitted).

This case involves allegations virtually identical to those asserted in *In re Goldman Sachs* and *In re Eaton Vance*. Just as in those cases, Plaintiffs here allege that the fees at issue were used improperly, and not that the fees themselves were excessive. Accordingly, it is determined that Judge Koeltl and Judge Cedarbaum's reasoning applies here and that Plaintiffs have not sufficiently alleged excessive investment advisory fees under Section 36(b). Accordingly, Count Three is dismissed.

[7] Plaintiffs' claim for a Section 36(b) violation against the Investment Adviser and Trustee/Officer Defendants must also be dismissed as Plaintiffs have failed to allege that these Defendants were the recipients of the fees. No action under Section 36(b) "shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments." 15 U.S.C. § 80a-35(b)(3). Under Section 36(b), Plaintiffs bear the burden of establishing such a breach of fiduciary duty by a recipient of compensation or payments. 15 U.S.C. § 80a-35(b)(1).

Here, Plaintiffs have failed to allege that the Distributor Defendant or the Trustee/Officer Defendants received compensation for investment advisory services, and therefore their allegations do not meet the requirements of Section 36(b)(3). *See In re Goldman Sachs,* 2006 WL 126772, at *7, 2006 U.S. Dist. LEXIS 1542, at *27-28. Therefore, Plaintiffs' Section 36(b) claim against those Defendants is also dismissed.

III. *Plaintiffs Have Not Stated a Claim for Liability Under Section 48(a)*

[8] Defendants move to dismiss Count Four on the ground that Section 48(a) of the ICA does not provide an independent basis for liability. [FN5]

Under § 48(a) of the ICA, control person claims are predicated upon liability under other applicable sections of the ICA. 10 U.S.C. § 48(a). Section 48(a) states in relevant part:

> It shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter or any rule, regulation, or order thereunder.

15 U.S.C. § 80a-47(a) (2005).

Because Plaintiffs have failed to state a cause of action for a primary violation under Sections 34(b), 36(a), or 36(b) of the ICA, their claim against Evergreen Investments for control person liability is insufficient and Count Four is dismissed.

IV. *The State Law Claims are Dismissed*

*8 Counts Seven through Ten allege various violations of state law. Specifically, Count Seven asserts that the Investment Adviser Defendant breached its fiduciary duty to the Plaintiffs by failing to manage the companies entrusted to their care in the best interests of the Plaintiffs and causing them to bear unnecessary costs by allowing the wrongful payment of excessive fees and commissions. Count Eight alleges that the Trustee/Officer Defendants breached their fiduciary duties to Plaintiffs by failing to supervise and monitor the Investment Adviser Defendant for their benefit and allowing the wrongful payment of excessive fees and commissions. Count Nine alleges that all Defendants aided and abetted the breach of fiduciary duties. Count Ten alleges a claim of unjust enrichment against all Defendants.

The Defendants argue that the state law claims (in addition to other claims), which were brought directly, should have been brought derivatively, and that therefore these claims should be dismissed.

[9] Whether ICA claims should be brought directly or derivatively is determined by the law of the state where the relevant entity was organized, unless "application of those rules would frustrate the specific federal policy underlying the ICA." *Strougo v. Bassini,* 282 F.3d 162, 169 (2d Cir.2002). Thus, Delaware law will apply as it is the state of the Evergreen Funds' incorporation. [FN6]

[10] According to Delaware law, whether a stockholder's claims are derivative or direct turns on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 753000
**(Cite as: 2006 WL 753000, \*8 (S.D.N.Y.))**

the following: "(1) who suffered the alleged harm, the corporation or the suing stockholders, individually, and (2) who would receive the benefit of any recovery or other remedy, the corporation or the stockholders, individually?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1033 (Del.2004). Courts consider substance over form in determining whether a claim is direct or derivative. *See Agostino v. Hicks,* 845 A.2d 1110, 1121 (Del.Ch.2004). In assessing whether a claim should be brought directly, a Court must determine if the plaintiff "stockholder's claimed direct injury [is] independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Tooley,* 845 A.2d at 1039.

[11] In accordance with Delaware's standard, it is concluded that Counts Seven, Eight, Nine, and Ten should have been brought as derivative claims. Contrary to Plaintiffs' assertions, the Complaint fails to identify any individual shareholder rights that have been violated. Plaintiffs allege that Defendants used Fund assets for their own benefit, charged the Funds "excessive and improper fees and expenses," "siphon[ed] fees," and "systematically skimmed millions of dollars from the Evergreen Funds." In other words, the gravamen of these allegations is that the Defendants mismanaged assets. As such, these allegations do not demonstrate individual harm, but rather purport to show harm to the Funds themselves. *Tooley,* 845 A.2d at 1038. The harm to shareholders is dependent upon the alleged injury to the Funds' business or property.

\*9 Plaintiffs argue that the alleged excessive distribution and management fees at issue here were borne directly by shareholders, and that therefore the shareholders suffered an injury independent of the corporation. This Court is unpersuaded that the alleged financial harm of overcharges harms the individual investor independently of the harm to the Funds. "Rather, a pro rata bearing of expenses by individual shareholders seems to fall within the very essence of an injury which is not independent from that suffered by the corporation." *In re Goldman Sachs Mutual Funds Fee Litigation,* 2006 WL 126772, at \*6, 2006 U.S. Dist. LEXIS 1542, at \*22 (citations omitted). The alleged injury suffered by Plaintiffs "occurred only secondarily and 'as a function of and in proportion to their pro rata investment' in the Funds." *Id.* (quoting *In re Triarc Cos.,* 791 A.2d 872, 878 (Del.Ch.2001)).

Just as the alleged injury harms the corporation primarily and the shareholders only secondarily, so too is the individual shareholder's benefit of the remedy only secondary to that of the corporation. It is the corporation that suffered the alleged loss primarily, the shareholder only secondarily, and it is the corporation that should be reimbursed for the alleged loss. *Tooley,* 845 A.2d at 1034-35.

[12] Additionally, Plaintiffs argue that they are entitled to proceed directly because they seek to vindicate breaches of duties owed to them directly. According to Plaintiffs, the common law of fiduciary duties, which they allege Defendants violated, were owed directly to individual shareholders, and therefore Plaintiffs' claims properly are brought directly, rather than derivatively. However, in order to bring a claim directly, "the stockholder must demonstrate that the duty breached was owed to the stockholder *and* that he or she can prevail without showing an injury to the corporation." *In re Syncor Int'l Corp. Shareholders Litig.,* 857 A.2d 994, 997 (Del.Ch.2004) (quoting *Tooley,* 845 A.2d at 1033). Therefore, regardless of whether the common law fiduciary duties are owed directly to individual shareholders, Plaintiffs have failed to demonstrate that the injuries alleged in the Complaint are not dependent upon harm to the Funds, as required under Delaware law.

In accordance with the above, Counts Seven through Ten of the Complaint are dismissed.

V. *Plaintiffs Fail to State a Cause of Action Under Section 215*

Count Five is a derivative claim brought on behalf of the Funds against the Investment Adviser Defendant under Section 215 of the IAA for violations of Section 206 of the IAA. Plaintiffs allege that the Investment Adviser Defendant violated Section 206 by "breach[ing] its fiduciary duties to the Funds by engaging in a deceptive contrivance, scheme, practice and course of conduct pursuant to which they knowingly and/or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud upon the Funds." (Compl.¶ 146). Defendants move to dismiss this claim arguing that: (1) Plaintiffs' allegations do not show that the contract itself violated the IAA, and (2) Plaintiffs have failed to allege sufficiently either demand or demand futility.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 753000
(Cite as: 2006 WL 753000, *10 (S.D.N.Y.))

**\*10** [13] Section 215 of the Advisers Act affords a private right of action to have an investment advisory contract voided if the formation or performance of the contract violates the Advisers Act. *See* 15 U.S.C. § 80b-15; *Transamerica Mortgage Advisors,* 444 U.S. at 24, 100 S.Ct. 242. Courts in this Circuit have routinely permitted Section 215 claims to proceed irrespective of whether the contracts themselves violated the IAA. *See, e.g., Clark v. Nevis Capital Mgmt,* 2005 WL 488641, at \*12-13, *LLC,* 2005 U.S. Dist. LEXIS, at \*39-40 (S.D.N.Y. Mar. 3, 2005) (finding a limited private right of action to have an investment advisory contract voided under Section 215 where the performance of the contract violates the IAA); *Norman v. Salomon Smith Barney, Inc.,* 350 F.Supp.2d 382, 388 (S.D.N.Y.2004) (same). Accordingly, it is concluded that Defendants' argument that Plaintiffs must show that the contract itself violated the IAA is without merit.

[14] As to Defendants' demand futility argument, Rule 23.1, Fed.R.Civ.P., provides that the complaint in a derivative suit must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed.R.Civ.P. 23.1. Demand requirements for a derivative suit are determined by the law of the state of incorporation. *See Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 98-101, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). Accordingly, the parties are in agreement that Delaware law shall apply here.

[15][16] Under Delaware law, in order to allege demand futility, a plaintiff must present particularized facts showing that the board is "incapable of exercising its power and authority to pursue derivative claims directly." *White v. Panic,* 783 A.2d 543, 551 (Del.2001). Courts assessing whether a plaintiff has adequately pled demand futility under Delaware law are to apply the *Aronson* test, under which the court must determine whether a reasonable doubt has been created that: "(1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis,* 473 A.2d 805, 814 (Del.1984).

The allegations of demand futility contained in the Complaint are insufficient. Plaintiffs allege that: (1) the Evergreen Funds Boards of Trustees were captive to and controlled by Evergreen, as the individual Trustees served at the pleasure of the Investment Adviser Defendant; (2) the Trustee Defendants served on a multitude of the Evergreen Fund boards, making it impossible for them to properly supervise and monitor the Evergreen Funds and the Investment Adviser Defendant; (3) the Trustee Defendants were beholden to the Investment Adviser Defendant for their positions, not to the Fund investors; (4) the Trust no longer holds annual meetings of shareholders; and (5) each of the Trustees was paid substantial sums of money, ranging from $218,250 to $625,500, during the Class Period for serving as a Trustee. Even taken together, these allegations are insufficient to excuse demand.

**\*11** [17] The fact that an adviser was responsible for selecting board members is an insufficient basis for establishing lack of independence or disinterestedness. *See Verkouteren v. Blackrock Fin. Mgmt, Inc.,* No. 98 Civ. 4673(WK), 1999 WL 511411, at \*3 (S.D.N.Y. July 20, 1999), *aff'd,* 208 F.3d 204 (2d Cir.2000) (holding allegation that directors serve at the pleasure of the Investment Adviser "merely states a fact common to all funds which has not been deemed problematic by the bodies regulating the industry").

[18] Similarly, Plaintiffs' allegations that the Trustees were members of multiple Boards is also insufficient to establish futility. "In fact, membership on the boards of several funds within a mutual fund complex is the prevailing practice in the industry." *Migdal v. Rowe Price-Fleming Int'l,* 248 F.3d 321, 330 (4th Cir.2001).

[19] With respect to the money paid Trustees for their service, Plaintiffs have failed to demonstrate that such compensation was unreasonable. "Mere allegations of substantial compensation are insufficient" to establish futility. *In Re Goldman Sachs Mutual Funds Fee Litigation,* 2006 WL 126772, at \*11 (citing *Jacobs v. Yang,* No. Civ. A. 206-N, 2004 WL 1728521, at \*4 (Del.Ch. Aug. 2, 2004)); *Fink v. Komansky,* No. 03 CV 0388(GBD), 2004 WL 2813166, at \*7 (S.D.N.Y. Dec. 8, 2004).

Finally, the threat of personal liability for approving a transaction and the possibility of being sued individually also have been rejected as evidence sufficient to excuse demand futility. *See Aronson,* 473 A.2d at 818. In fact, the *Aronson* Court specifically rejected this argument, noting that accepting such grounds would "effectively abrogate Rule 23.1" as it

2006 WL 753000
(Cite as: 2006 WL 753000, *11 (S.D.N.Y.))

would apply in virtually every case. *Id.*

Plaintiffs' reliance of this Court's holding in *Strougo v. Scudder, Stevens & Clark, Inc.*, 964 F.Supp. 783 (S.D.N.Y.1997), is misplaced as it involved the application of Maryland law.

Based upon the foregoing, it is determined that Plaintiffs have failed to state particularized facts demonstrating that the Trustee/Officer Defendants were incapable of properly exercising their business judgment with respect to claims at issue, and demand futility has not been established. In accordance, Plaintiffs' claim for violation of Section 215 is dismissed.

VI. *Plaintiffs Fail to Properly Allege a Violation of N.Y. Gen. Bus. Law Section 349*

Defendants also move to dismiss Plaintiffs' claims brought under Section 349 of the New York General Business Law (Count VI). They argue that Plaintiffs' Section 349 claims should be dismissed because Section 349 does not apply to "securities-related" claims and because Plaintiffs fail to allege that the conduct underlying the Section 349 claim occurred in New York.

In New York, the law of deceptive trade acts and practices is codified under § 349 of the General Business Law. That statute declares as unlawful "deceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state...." N.Y. Gen. Bus. L. 349. Subsection (h) of the statute creates a private cause of action for any person who has been injured by reason of any violation of the act. *Id.*

*12 [20][21][22] To state a claim for deceptive practices under Section 349, a plaintiff must show: (1) that the act or practice was consumer-oriented; (2) that the act or practice was misleading in a material respect, and (3) that the plaintiff was injured as a result of the deceptive practice or act. *See, e.g., Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000); *St. Patrick's Home for Aged and Infirm v. Laticrete Intern., Inc.*, 264 A.D.2d 652, 655, 696 N.Y.S.2d 117, 122 (1st Dep't 1999); *BNI N.Y. Ltd. v. DeSanto*, 177 Misc.2d 9, 14, 675 N.Y.S.2d 752, 755 (N.Y.City Ct.1998). *See also Berrios v. Sprint Corp.*, 1998 WL 199842, at *3, 1998 U.S. Dist. LEXIS 6579 (E.D.N.Y. March 16, 1998). The standard for whether an act or practice is misleading is objective, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct. *Marcus v. AT & T*, 138 F.3d 46, 64 (2d Cir.1998); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 533, 647 N.E.2d 741 (1995). Omissions, as well as acts, may form the basis of a deceptive practices claim. *Stutman*, 95 N.Y.2d at 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (citing *Oswego Laborers'*, 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (delineating different inquiry in case of claim of deceit by omission)).

Accordingly, in order to invoke Section 349, Plaintiffs must, as a threshold matter, "charge conduct that is consumer oriented." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995). Moreover, Plaintiffs must allege facts sufficient to show that the challenged conduct has a "broader impact on consumers at large," *i.e.*, it "potentially affects similarly situated consumers" in New York. *S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir.1996) (citation omitted). *Accord Black Radio Network v. NYNEX Corp.*, 44 F.Supp.2d 565, 583 (S.D.N.Y.1999).

[23] Contrary to Plaintiffs' assertions, Section 349 does not apply to securities-related claims, such the ones involving mutual funds alleged in the instant case. *See, e.g., In re Eaton Vance Mutual Funds Litigation*, 380 F.Supp.2d at 240 (holding Section 349 "does not apply to securities transactions, even when those actions are brought as claims by 'holders' of shares" (citations omitted)). Courts have routinely found Section 349 inapplicable to claims concerning securities based on the following:

> [P]eople do not generally buy securities in the same way that they buy an automobile, a television set, or the myriad consumer goods found in supermarkets. For one thing, securities are purchased as investments, not as goods to be 'consumed' or 'used.' Additionally, the securities markets are subject to pervasive federal regulation, and it is questionable that New York's legislature intended to give securities investors an added measure of protection beyond that provided by the securities acts ...

*13 *Morris v. Gilbert*, 649 F.Supp. 1491 (E.D.N.Y.1986); *see also Gray v. Seaboard Securities, Inc.*, 14 A.D.3d 852, 788 N.Y.S.2d 471, 472-72 (3d Dep't 2005) (affirming the reasons set forth in *Morris* and holding Section 349 inapplicable to claims involving securities transactions).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 753000
(Cite as: 2006 WL 753000, *13 (S.D.N.Y.))

The reasoning of these cases applies equally here. Plaintiffs are investors who were seeking income, investment growth, and the preservation of capital--not consumers who were purchasing traditional goods or services. Additionally, as illustrated by the host of other claims asserted under federal securities laws, Section 349 is not necessary to protect Plaintiffs and other investors from the alleged conduct.

Accordingly, Plaintiffs' claim for violation of Section 349 is insufficient and Count Six is dismissed.

*Conclusion*

For the reasons set forth above, Defendants' motion to dismiss is granted and the Complaint is dismissed in its entirety.

It is so ordered.

FN1. Section 34(b) states that it is "unlawful" to "make any untrue statement of a material fact in [a] registration statement." 15 U.S.C. § 80a-33(b).

FN2. Section 36(a) authorizes the SEC to:
[B]ring an action ... alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts--(1) as officer, director, member of any advisory board, investment adviser, or depositor; or (2) as principal underwriter, if such registered company is an open-end company, unit investment trust, or face-amount certificate company.
15 U.S.C. § 80a-35(a).

FN3. Prior to *Alexander*, a number of courts, including this one, held that there were implied private rights of action under the ICA. *See, e.g., Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.*, 964 F.Supp. 783, 796 (S.D.N.Y.1997) (holding an implied right of action under Section 36(a)). Given the Supreme Court's instruction in *Alexander* not to infer a private right of action to "make effective [a statute's] purpose," 532 U.S. at 287, 121 S.Ct. 1511, it is determined that this Court's prior reasoning is no longer correct. In particular, it is worth noting that this Court relied on legislative history suggesting that the inclusion of an express right of action under Section 36(b) "should not be read by implication to affect subsection (a)." *Strougo*, 964 F.Supp. at 797 (citations omitted). In light of the Supreme Court's determination that "the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others," *Alexander*, 532 U.S. at 290, 121 S.Ct. 1511, the reasoning employed in *Strougo* is no longer persuasive.

FN4. In another recent case involving similar allegations, the Honorable Jed S. Rakoff came to a contrary result, ruling that the plaintiffs' Section 36(b) claim in that case met the minimal pleading requirements of Rule 8(a). *See In re Oppenheimer Funds Fees Litig.*, 419 F.Supp.2d 593 (S.D.N.Y.2006). While Plaintiffs must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," Plaintiffs here have failed to meet this burden. As explained herein, Plaintiffs' failure to allege that the fees were indeed excessive under Second Circuit law renders their Section 36(b) pleadings inadequate under Rule 8(a).

FN5. The analysis applied above to Sections 34(b) and 36(a) of the ICA applies equally to Section 48(a), *In Re Eaton Vance*, 380 F.Supp.2d at 232, and as such, provides an alternative grounds for dismissal of Plaintiffs' Section 48(a) claim.

FN6. Plaintiffs argue that this Court must interpret and apply Delaware law regarding the distinction between direct and derivative claims so as not to conflict with the federal policy of operating and managing investment companies in the best interests of shareholders. While Plaintiffs are correct in this characterization, they have pointed to nothing to suggest that the application of Delaware law conflicts with or frustrates the federal public interest Congress sought to protect in the ICA. Nor have Plaintiffs pointed to any cases in which a court found a straight-forward application of Delaware law to claims such as these frustrated the policy underlying the ICA.

--- F.Supp.2d ----, 2006 WL 753000 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

. 2006 WL 1170055T1 (Trial Motion, Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 753000
(Cite as: 2006 WL 753000, *13 (S.D.N.Y.))

and Affidavit) Plaintiffs' Memorandum of Law in Support of Their Motion to Amend or Alternatively Set Aside the Judgment Pursuant to Local Rule 6.3 and Federal Rules of Civil Procedure 59(e) and 60(b) and for Leave to File a Second Amended Derivative Complaint Purs uant to Federal Rule of Civil Procedure 15(a) (Apr. 11, 2006)

. 2005 WL 3710723T1 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Supplemental Memorandum in Response to Defendants' Letter Brief to the Court Dated September 30, 2005 (Oct. 7, 2005)

. 2005 WL 1182291T1 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Motion to Dismiss the Consolidated Amended Complaint (May 11, 2005)

. 2005 WL 1182290T1 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of the Independent Trustees' Motion to Dismiss (May 9, 2005)

. 2005 WL 1182289T1 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants' Motions to Dismiss The Consolidated Amended Class Action Complaint (Mar. 31, 2005)

. 2005 WL 3986073T1 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of the Independent Trustees' Motion to Dismiss (Feb. 15, 2005)

. 2005 WL 440342T1 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of the Independent Trustees' Motion to Dismiss (Feb. 15, 2005)

. 2005 WL 440343T1 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion to Dismiss the Consolidated Amended Complaint (Feb. 15, 2005)

. 2004 WL 3777503T1 (Trial Pleading) Consolidated Amended Complaint (Nov. 29, 2004)

. 1:04cv04453 (Docket) (Jun. 14, 2004)

. 2004 WL 3777505T1 (Trial Pleading) Class Action Complaint for Excessive Fees in Violation of Sections 34(b), 36(b) and 48(a) of the Investment Company Act and Sections 206 and 215 of the Investment Advisers Act, and for Breaches of Fiduciary Duty (2004)

. 2004 WL 3777511T1 (Trial Pleading) Second Amended Derivative Complaint (2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.