# EXHIBIT A

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS


ERIC FORSYTHE, ET AL,            )
                                 )
                Plaintiffs,      )
                                 ) CA No. 04-10584-GAO
vs.                              )
                                 ) Consolidated Cases Nos.:
                                 )
SUN LIFE FINANCIAL, INC., ET AL, ) 04-10764-GAO
                                 ) 04-11019-GAO
                Defendants.      )



TRANSCRIPT OF DEFENDANTS' MOTION TO CERTIFY
INTERLOCUTORY APPEAL AND/OR FOR A STAY



BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE



United States District Court
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts  02210
April 4, 2006
3:00 p.m.



* * * * *



SHELLY M. KILLIAN, RPR, CM, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 3510
Boston, MA  02210
(617) 737-7117

1    APPEARANCES:

2    For the Forsythe Plaintiffs:

3        Janine L. Pollack, Attorney at Law
         Milberg Weiss
4        One Pennsylvania Plaza
         New York, New York  10119

5
         - and -
6
         Richard A. Acocelli, Esq.
7        Weiss & Lurie
         The French Building
8        551 Fifth Avenue, Suite 1600
         New York, New York  10176

9

10   For Defendants Massachusetts Financial Services Co.,
     and MFS Fund Distributors, Inc.:
11
         Jonathan A. Shapiro, Esq.
12       Matthew A. Stowe, Esq.
         Amanda Masselam, Attorney at Law
13       Wilmer Cutler Pickering Hale and Dorr LLP
         60 State Street
14       Boston, Massachusetts  02109

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2                (The following proceedings were held in open

3    court before the Honorable George A. O'Toole, Jr.,

4    United States District Judge, United States District

5    Court, District of Massachusetts, at the John J. Moakley

6    United States Courthouse, 1 Courthouse Way, Boston,

7    Massachusetts, on April 4, 2006.)

8                MS. POLLACK:  Good afternoon, your Honor.

9    Janine Pollack from Milberg Weiss for Forsythe.

10               MR. ACOCELLI:  Richard Acocelli of Weiss &

11   Lurie, also for Forsythe.

12               MR. SHAPIRO:  Good afternoon.  Amanda Masselam

13   for MFS.

14               MR. STOWE:  Matthew Stowe for MFS.

15               MR. SHAPIRO:  Good afternoon, Judge.  Jonathan

16   Shapiro, MFS and MFD.

17               THE COURT:  This is on the defendants' motion

18   for certification pending interlocutory appeal.

19               MR. SHAPIRO:  That's correct, your Honor.  If

20   it please the Court, I'd like to argue this afternoon

21   for MFS.  If you don't mind, do you mind if I head

22   back?

23               THE COURT:  That's fine.  There is a mic

24   there, too, but if you want to use the podium, that's

25   fine.

1          MR. SHAPIRO:  It's an issue of an out-of-date

2     eyeglass prescription.

3          THE COURT:  I have one of those.

4          MR. SHAPIRO:  Judge O'Toole, we're before you

5     this afternoon on our motion, Defendants' motion for

6     certification of an interlocutory appeal from your

7     Honor's January 19th, 2006 order or in the alternative

8     to stay.

9          The motion, at least with respect to the

10    interlocutory appeal, is governed by 28 U.S.C. 1292(b).

11    That statute says that this Court may appropriately

12    certify its order for an interlocutory appeal if it,

13    number one, involves a controlling question of law;

14    number two, if there is a substantial difference of

15    opinion as to how that controlling question of law

16    should be answered; and, number three, if the resolution

17    of the appeal, if it's certified and accepted by the

18    First Circuit, would materially advance the case towards

19    an ultimate resolution.  If your Honor's answers to

20    those three questions are yes and you elect to certify

21    the appeal, then defendants, we, have ten days to get

22    ourselves together, put the issue before the First

23    Circuit, and then of course it's up to the Circuit to

24    determine whether or not it wants to take the appeal.

25          It is certainly the case that most cases are

1  not appealed until there is a judgment, a final judgment

2  entered at the district court, and there are many

3  reasons for that.  But 1292(b), it exists because not

4  all cases fit that mold.  In some cases it makes more

5  sense to take an interlocutory, to take an immediate

6  appeal.  The statute in that respect at least calls for

7  pragmatism.

8          Your Honor, this case and in particular your

9  January 19th order is not a typical case and it's not a

10  typical order.  The order passes the three prongs of the

11  1292(b) test, and certification of the interlocutory

12  appeal is certainly pragmatic.  And that's because this

13  complaint, essentially the same complaint, and the legal

14  issues, everything we've argued, everything the

15  plaintiffs have argued, is already before the First

16  Circuit.  That's the Columbia appeal, the one that's

17  recently been docketed.

18          Columbia is an appeal of a dismissal of a

19  virtually identical complaint, same claims, same

20  plaintiffs' lawyers.  To date the whole history of that

21  case filed mid 2004, this case filed mid 2004, has

22  essentially been the same.  Same claims, same defenses.

23  And now with Columbia before the First Circuit, every

24  argument made pro and con in Columbia and every argument

25  made pro and con in this case are already before the

1    First Circuit.

2          So here we're faced with a situation in which

3    certification would not be asking the First Circuit to

4    do anything that it is not already in line to do.  It

5    would give the First Circuit the option, not obligation,

6    the opportunity to have whatever efficiency it deems

7    would be achieved by considering both cases together.

8    It may want to see both sides of the story or it may

9    not.  It would be giving the Court that option.

10          If it's acceptable to your Honor, I'd like to

11   walk quickly through the 1292 criteria.  I say quickly

12   because this has all been briefed, and it's not a

13   particularly complicated statute.  And also as I do so,

14   even though I'm focusing on the interlocutory appeal

15   piece, there is this in the alternative stay piece.  The

16   arguments are essentially the same, whether it's the

17   interlocutory appeal under the three statutory criteria

18   or the also pragmatic discretion that the Court has to

19   stay pending this appeal if it's certified or to stay

20   pending the Columbia appeal if this one isn't.  It's

21   basically the same argument.

22          Starting with your order.  Your Honor

23   dismissed most of the Forsythe case.  Eight out of nine

24   claims went.  Each of those eight claims were dismissed

25   for essentially legal reasons, no private right of

1  action, no standing, derivative claims for which demand

2  was not made and for which it could not be excused and

3  so forth.  Obviously we're not seeking an interlocutory

4  appeal of the favorable legal rulings that cut our way

5  on those eight claims, but the fact of the matter is if

6  the thing goes up, the whole order goes up.  So those

7  certainly would be before the First Circuit.

8       The reason I emphasize the eight claims that

9  melted away is because 1292(b) requires an analysis not

10 just of the controlling question of law that in this

11 case we defendants posit warrant the appeal, but also it

12 requires an analysis of the overall case.  And in this

13 case, the sliver that is left is all subject to the same

14 controlling questions or dispute of law.

15      Specifically your Honor sustained part of the

16 ninth claim, which actually was Count Three, 36(b).

17 Your Honor pared it back from a few dozen funds to two

18 funds, limited it to the one year, which is the

19 statutory period for which damages are recoverable, and

20 your Honor dropped all defendants but MFS and MFD.

21      As we read your order, that portion of your

22 decision, the sustaining of that section of 36(b) was

23 based on the Court's legal ruling that plaintiffs'

24 theory, they call it shorthand something for nothing,

25 that that theory was actionable, is actionable, under

1   36(b).  It's pages 22 and 23 of your opinion.  And the

2   Court held that allegations of directed brokerage,

3   allegations of soft dollars, what plaintiffs call

4   improper payments, what plaintiffs call kickbacks, that

5   those allegations, that those payments, if true, stated

6   a claim that the fees were inherently excessive, per se

7   excessive.  And that's the legal theory that, as we read

8   the order, your Honor sustained.

9            We argued on the motion to dismiss that no

10  matter how detailed those allegations or improper

11  payments may be, and let's just assume they were

12  excruciatingly detailed, they don't fit within 36(b).

13  We argue the statute is narrow and they -- those sort of

14  allegations, this something-for-nothing theory, doesn't

15  fit under the headnote.  We cited the Eaton Vance line

16  of cases, the Davis case.  These are cases where courts

17  on the same complaints have concluded that as a matter

18  of law this theory is out of the box.  Plaintiff cited

19  cases, the Jones case upon which your Honor relied, the

20  Dreyfus case I believe as well for the proposition that

21  the headnote is more elastic, that this theory does fit

22  within the statute.

23           In any event, your Honor, that wasn't a Rule

24  8(a) Notice of Pleading of Argument.  We do have notice

25  of the alleged misconduct.  It's throughout the

1    complaint.  It says right in paragraph 12 and in many

2    paragraphs it is the same exact conduct that was the

3    subject of the SEC settlement that's been on the SEC's

4    web site for years.  This is not a challenge or an

5    attempt to relitigate a ruling or under Rule 8(a) or

6    what the meaning of notice of pleading is or should be

7    in the First Circuit.  The legal question is whether

8    those payments as alleged, no matter how generously

9    construed, whether they can fit within the statute.  And

10   on that question, there is no First Circuit precedent.

11           Judge O'Toole, that legal question is also a

12   controlling question.  If this Court had been persuaded

13   by defendants and followed the Eaton Vance and Davis

14   line of cases, the narrow sliver of the case that was

15   sustained would not have been.  And on an interlocutory

16   appeal, if one is certified by your Honor and if the

17   First Circuit goes along, if the First Circuit concludes

18   that the Eaton Vance and Davis line of cases is correct,

19   the case would also be over.  So it's controlling.

20           There also is a substantial difference of

21   opinion over the question.  The substantial difference

22   of opinion is apparent from the Columbia case, and it's

23   apparent from the several other decisions all within the

24   last five, six months, all of which were passing on the

25   legal vitality of essentially the same complaint.  Some

0ea7be8b-8f36-4428-9d06-0c90a5140a41

1   were sustained; some were dismissed as a matter of law.

2   Each of those cases dealt with the same arguments, the

3   same allegations, the same alternative theory to

4   recovery under 36(b).

5           Starting here, District of Massachusetts,

6   that's clear from Columbia.  In both cases defendants

7   moved to dismiss, same reasons, citing the same cases.

8   In most respects, your Honor and Judge Keeton arrived at

9   the same rulings with respect to 36(a), 34(b), private

10  rights of action, standing, direct derivative.  All of

11  those rulings your Honor is either directly in line or

12  almost directly in line with Judge Keeton.  So no

13  difference of opinion there at all.  The substantial

14  difference of opinion arises from the fact that Judge

15  Keeton dismissed as legally infirm the same claim that

16  your Honor sustained as cognizable.

17          Now, plaintiffs in their papers have argued

18  that Columbia is very different, it's very distinct,

19  only a speculative relationship to this case,

20  hypothetical, it's all sort of qualitative, subjective

21  assessments of pleadings.  The fact of the matter

22  remains, Judge, that in both cases plaintiffs argue that

23  that sliver of 36(b) that survived in Forsythe and the

24  claim that was dismissed in Columbia, that it should

25  survive under the something-for-nothing theory.  They

1    said it's viable under 36(b), again cited the same

2    cases, Dreyfus, Jones and so forth.

3            In both cases the defendants argued that the

4    claim does not fit within the statute.  As a matter of

5    law it cannot go forward.  In both cases the defendants

6    argued that point for two independent reasons.  The

7    Columbia defendants argued, just as we argued, that the

8    statute limits claims to those who received the

9    compensation, who received the fee.  And, therefore,

10   because directed brokerage, improper payments, kickbacks

11   and so forth, because those were payments allegedly made

12   by the defendants to others, that they were -- they fell

13   outside the box, that that was not a claim for which

14   relief could be had.  Second, the Columbia defendants,

15   just as we argued, that the something-for-nothing theory

16   doesn't fit.  Again, Eaton Vance, Davis.  The remedy is

17   not that elastic.

18           Judge Keeton accepted argument number one.  He

19   ruled that because the defendants, all of them, were not

20   the recipients of the allegedly improper fees, that the

21   claim against all of them had to be dismissed.  So he

22   didn't reach the second argument; that is, does

23   something for nothing fit or not.  Plaintiffs made the

24   argument, they preserved the argument, but he didn't

25   need to get there.

1          All of those arguments are on appeal.  The

2    Columbia defendants are entitled to, and we expect that

3    they will, going to make every argument that's supported

4    by the record as to why Judge Keeton should be

5    affirmed.  Both because I suspect they will argue he got

6    it right on who was the recipient and because even if

7    that weren't right or right enough, that these claims

8    don't fit, again, Eaton Vance and Davis.

9          Plaintiffs also have a record, and they

10   preserved arguments.  And they will have the opportunity

11   to argue again.  We certainly haven't heard that they've

12   abandoned the theory that something for nothing fits,

13   that it does state a claim of relying, one would

14   imagine, on the reasoning set forth in your Honor's

15   opinion.

16         Your Honor also accepted argument number one

17   sort of.  Argument number one about who is the

18   recipient, that was the basis for your Honor's ruling

19   that the trustee defendants need to go; but your Honor

20   didn't so conclude with respect to MFS and MFD.  And we

21   move on to the other argument that we made, and that is

22   that something for nothing doesn't work and doesn't

23   fit.  And the reason we're here is that argument, that

24   didn't work as well.

25         The bottom line from our perspective is that

1    the fact that within six weeks two district court judges

2    reached opposite conclusions on the legal vitality of

3    the same claim is substantial.  It's atypical and it is

4    a difference of opinion.  It also is not a difference of

5    opinion that's limited to the District of

6    Massachusetts.

7              It's apparent from a truly striking number of

8    these cases that have leaked out over the last six

9    months that there is a difference of opinion in other

10   jurisdictions as well, more or less breaking out along

11   the same lines.  Eaton Vance ruled that the

12   something-for-nothing theory stretches the reach of the

13   statute too far, that it was a statutory construction

14   ruling.  So it dismissed it as a matter of law.  It

15   actually dismissed it twice.  It hurt plaintiffs on

16   motion for reconsideration.  Plaintiffs, among other

17   things, clarified or rearticulated something for

18   nothing, and it didn't work the second time either.

19             The Davis case dismissed, same reason.  More

20   recently Goldman Sachs, another one of these complaints,

21   either very similar, you know, or essentially identical

22   was also dismissed.  The same plaintiffs' counsel have

23   taken appeals from those decisions to the Second

24   Circuit.  And there are also cases out there, a minority

25   of cases, that have, like your Honor, sustained this as

1    a cognizable theory.  For example, Dreyfus, your Honor,

2    as I mentioned earlier, found support in the Jones

3    case.

4            All this says is that there is a lot of

5    difference of opinion.  It's not just, well, we got

6    these two judges in the District of Massachusetts who

7    have a different sense of what a substantial complaint

8    is.  It's not that at all.  These are legal questions.

9    Every case that's been dismissed has been dismissed for

10   legal reasons, failure to fit within the statute.  And

11   those that have been sustained have arrived at a

12   different conclusion.

13           As for the third prong, would an interlocutory

14   appeal materially advance the ultimate termination of

15   the litigation, the burden I believe is not would it as

16   a matter of certainty, but is there a reason to believe

17   that it may.  The statute is a may.  This is a

18   straightforward analysis.  It is not at all true that

19   the outcome of Columbia could only have a speculative or

20   hypothetical or potential or law school kind of effect

21   on this case.

22           There's a finite number of outcomes of

23   Columbia.  Columbia could be sustained, it could be

24   affirmed.  And if the Columbia decision is affirmed,

25   it's hard to see what is left of this case.  Given the

1    identicality of the arguments preserved below that will

2    be argued above, given the identicality or near

3    identicality of the complaints, it's hard to see how any

4    basis for affirming Judge Keeton's dismissal would not

5    at least may have an impact on this case.  If that

6    dismissal is affirmed for the reason that Judge Keeton

7    ruled about the receipt of fees, that would apply with

8    equal weight to the Forsythe case.  If that case -- if

9    Columbia is affirmed based on the alternative preserved

10    argument that something for nothing don't hunt under

11    36(b), that, too, would have the same impact on

12    Forsythe.

13          It also is the case that even if Columbia is

14    reversed, we satisfy the may materially advance the

15    resolution of the case.  Wouldn't say that we'd be

16    materially advancing it in the direction that a

17    defendant would want, but it's hard to say that it's

18    irrelevant or only of hypothetical significance.  The

19    First Circuit has never said anything meaningful about

20    what this statute means in anything approaching this

21    case.  All the arguments in this case and in Columbia

22    are up before the Circuit, the pros and the cons.

23          So what the First Circuit says and how it

24    rules likely will supply the rule of decision for this

25    case, assuming there is a case left.  And in some sense

1   whether it's speculation or certainty about the impact

2   of Columbia on Forsythe is beside the point because the

3   analysis should be under the statute would an appeal of

4   this case materially advance this case.  And it's hard

5   to see how that would not be true.

6          So at the end of the day, your Honor, the

7   criteria are satisfied.  In fact, it's hard to imagine a

8   sharper or more substantial difference of opinion than

9   what is before your Honor today.  There's very little

10  left of this case in any event, and it would seem

11  appropriate and desirable to give the First Circuit the

12  option, not the obligation, to take them both up at the

13  same time if it wishes.  And it's a ten-day deadline,

14  that's how quickly we'd need to get in front of the

15  circuit.  And there's no reason to believe that we

16  wouldn't have an answer to that question soon.

17          Thank you, your Honor.

18          MS. POLLACK:  Good afternoon, your Honor.

19  Janine Pollack for the plaintiffs from Milberg Weiss.

20  Defendants, as you've heard counsel say, seek two forms

21  of relief from the Court.  They move for an

22  interlocutory appeal and also for a stay of this case

23  until the First Circuit decides an appeal in an

24  unrelated, entirely separate case of Columbia.  Both of

25  these types of relief and the posture that we're

1    currently in, which is after a ruling on a motion to

2    dismiss, are highly disfavored in this circuit.  And I

3    think the key issue is have defendants met the elements

4    and the tests that are set forth by both the statute and

5    the case law in both instances.  And it's our position

6    that they have not met these tests.

7            Their motions both spring from the fact that the

8    court sustained plaintiff's Section 36(b) claim in this

9    case, which was a different outcome from Columbia.  Both

10   motions rely entirely on and sort of seek to bootstrap

11   on the unrelated Columbia appeal.  Your Honor, it's our

12   position that this approach is rife with speculation,

13   and it would grossly prejudice the plaintiffs.  We think

14   that when all is said and done and all the arguments are

15   considered, the defendants should await an outcome in

16   Columbia; and if it's appropriate at that time, they can

17   feel free to make a motion if there's any basis to do

18   so.  Similarly, if something happens in the First

19   Circuit that would help the plaintiffs, the plaintiffs

20   will await that ruling, if it ever comes, and we can

21   make the appropriate motion.

22           In other words, this case is -- it's left the

23   station.  The train has left and we're on our way.

24   It's -- we should be able to commence our discovery.

25   We've had our case sustained and we've been waiting a

0ea7be8b-8f36-4428-9d06-0c90a5140a41

1    long time and we'd like to get started.  And we think

2    that in the end, the only fair thing to do would be to

3    allow us to begin to litigate our case; and if something

4    might happen in the First Circuit that might affect this

5    case, and it might or it might not, then we could all

6    deal with it at that time.

7         I'll first start by just going through the

8    interlocutory appeal criteria under 1292(b).  The First

9    Circuit has stated that as a general matter it doesn't

10   grant interlocutory appeals from a motion to dismiss and

11   that it would only be in exceptional circumstances that

12   it would take such an appeal.  Defense counsel has tried

13   to suggest that this is somehow some sort of exceptional

14   circumstance.  We don't think so.  We think that the

15   Court correctly understood the case.  The Court applied

16   the facts under 36(b) and came to a conclusion based on

17   what's alleged in this complaint.  There's nothing

18   exceptional about it.  It's not some sort of atypical

19   circumstance and, quite frankly, we think it's the

20   quintessential type of case that the First Circuit

21   doesn't need to take an interlocutory appeal for.

22        In Columbia it was an appeal as of right.  It's

23   a very different circumstance.  And this is an

24   interlocutory appeal which needs to meet all the prongs,

25   and we don't think it does.  For example, defendants

1  have not identified a controlling question of law.  At

2  the February 27th hearing, the Court noted that there

3  was no controlling question stated in defendants' memo.

4  And the defendants agreed with that.  Defendants said,

5  no, you're right, we haven't submitted one and we're

6  going to try and do that.

7       The Court then received their supplement on

8  February 28th, and I have to admit quite frankly, your

9  Honor, when I was reading it, I still didn't see a

10  controlling question of law in there.  So I found it was

11  sort of just a recitation of all the grounds, but there

12  really still was no controlling question of law.  And we

13  think that that demonstrates that this is really just a

14  disagreement with the Court's ruling on the motion to

15  dismiss.  Defendants are just disputing the reach of

16  36(b) to the facts of this case.  These are the facts of

17  this case.  We have to deal with this case.  You know, a

18  1292(b) motion should not be based on some other

19  person's appeal, and that's sort of what's happening

20  here.

21       The defendants say that the order is the thing

22  that gets certified to go up to the circuit, but the

23  orders in Columbia and this case could not be more

24  different.  In fact, I'm going to read the Court the

25  four sentences on 36(b) from the Columbia appeal in just

1    a minute, and I think the Court will agree that it

2    really was an issue that was not at all discussed in

3    this Court's ruling.  We think that because there was no

4    identified controlling question of law, that that

5    already takes care of prong one.

6         The next element, the substantial ground for a

7    difference of opinion on a disputed issue of law, I

8    guess it's sort of tied in with the first one.  And to

9    the extent that the defendants raised anything that

10   there's some sort of difference of opinion on a disputed

11   issue of law, they seem to be focusing on the

12   something-for-nothing issue, whether that's actionable

13   under 36(b) because they contend that Judge Keeton and

14   other courts have dismissed that theory.

15        Well, there's a couple of fatal problems with

16   that argument.  The first point and why it doesn't work

17   here is because Judge Keeton didn't rule on something

18   for nothing in any way, shape, or form.  I'd like -- we

19   have it in our brief on page 8 and footnote 5, but

20   there's really -- it's a very, very narrow issue that

21   Judge Keeton ruled on on the 36(b) claim in Columbia.

22   And it's in footnote 5, and we say, "The Columbia

23   court's narrow holding on the 36(b) claim was entirely

24   limited to the following statement."  And this is all

25   that there is on the entire opinion on 36(b), your

1    Honor, in the Columbia case.  It says, "Plaintiffs here

2    do not allege" -- and I'm going to focus on the do not

3    allege part because that shows that it was just really

4    relating to the allegations in that particular complaint

5    and what and how he read them -- "that the defendants

6    themselves received compensation of any sort as required

7    by 36(b).  Instead, they allege that defendants paid

8    kickbacks and other incentives out of the Columbia fund

9    assets.  Although this allegation, if true, may have

10   acted to the detriment of the assets of the funds, such

11   payments, even if undisclosed, are not a breach of the

12   fiduciary duty protected by Section 36(b).  Thus

13   plaintiffs' remaining claims against under Count Three

14   under Columbia Acorn Fund and Columbia Acorn Select Fund

15   do not state a claim for the disproportion compensation

16   prohibited by Section 36(b)."  And that was the Columbia

17   Lexis cite at star 32.

18            So the only thing Judge Keeton ruled on 36(b)

19   was that he felt that the plaintiffs didn't allege that

20   the advisor had received excessive compensation since

21   the brokers are the ones that got the kickbacks.

22            Here the opinion in this case did not turn on

23   the issue at all.  And we also believe that Judge Keeton

24   misunderstood the allegations in that case.  Here the

25   court stated, the court held in -- at star 42 of the

1    Lexis version, the Court went through all the reasons

2    why this particular complaint did allege a

3    disproportional relationship between the fees and the

4    services rendered.  And then the court said this is not

5    a case like the cited cases, referring to Migdal and

6    Krantz, where the plaintiff only alleged the fees were

7    high but made no allegations regarding services rendered

8    and the relationship between the two.  Then the court

9    says, The plaintiffs' contention is that the fees were

10    excessive because they were unauthorized and taken from

11    fund assets to the benefit of the defendants only, not

12    the funds.

13            I think that this court quite understood that

14    the plaintiffs had in fact alleged that the advisor and

15    the distributor received excessive compensation; whereas

16    in Columbia, the court did not find that those

17    allegations were sufficient under 36(b).  He didn't

18    agree with -- that we had alleged -- he didn't agree

19    that the plaintiffs in Columbia had alleged excessive

20    compensation to the advisors.

21            Now, there's been a lot of talk about different

22    cases coming out different ways.  Well, that's true.

23    Courts in different parts of the country on these very

24    same issues have come out different ways, but that's not

25    a basis for 1292(b) because what it amounts to is

1    somebody looked at the facts of that case and came to a

2    different conclusion under Rule 8 notice pleading.  It

3    just doesn't -- it doesn't rise to the level of the

4    extraordinary relief of 1292(b).

5           Similar allegations were found to be sufficient

6    under 36(b) in the Wicks case.  We feel that this Court

7    very much understood that these allegations in this

8    case, just like in Wicks, alleged excessive compensation

9    to the advisor and the distributor.

10          The something-for-nothing theory, your Honor, is

11   also sort of a red herring in terms of difference of

12   opinion.  It's really just a shorthand way of explaining

13   excessive compensation and disproportionality.  The

14   plaintiffs could not have walked into this court and

15   just said, your Honor, we think that there's something

16   for nothing here.  It's really sort of -- it doesn't

17   have any meaning unless there's a factual predicate to

18   it.  And so when we came to the Court and we explained

19   our factual predicate, we tried to explain it in the

20   terms of something for nothing, which other courts have

21   used that terminology.

22          It's not a pure legal theory in and of itself.

23   It's -- it's based on facts that we presented to the

24   Court.  And, in fact, in the opinion the Court cites all

25   kinds of paragraphs of the complaint where it explains

1    how plaintiffs allege disproportionality.  And that's

2    the essence of 36(b), and that's why the Court sustained

3    the case here under 36(b).  It's not enough that

4    different courts have come out different ways on

5    slightly different facts.  That's not enough for -- to

6    create a difference of opinion to rise to the level of

7    1292(b).

8         In fact, there is no real difference of opinion

9    on the 36(b) pleading standard, which is sort of what I

10   think the defendants are getting at.  At this point

11   we're sort of beyond that so I'm not even really sure

12   what would happen at this point since the First

13   Circuit's ruling would really be a pleading issue, and

14   we're already beyond that at this point.  There is no

15   difference of opinion on the 36(b) pleading standard.

16   Judge Keeton, this Court, every court that the rulings

17   that the defendants have cited, everyone agrees it's

18   Rule 8 notice pleading.  At that point it just becomes

19   an issue of what facts are pled in that particular

20   complaint for that case, does it rise to the level of

21   meeting Rule 8.  And here the Court found that these

22   allegations in this case did meet Rule 8.

23        And the reference to Gartenberg is a trial

24   standard, it's not a pleading standard.  And so that's

25   not going to resolve anything for purposes of pleading

1    this -- of this case.  If the First Circuit were to make

2    some ruling on Gartenberg factors, that could apply

3    somewhere down the road, and we'd be happy to comply

4    with that.  But this is sort of another reason why it

5    doesn't make sense to completely halt this case for

6    something that might or might not come out of the First

7    Circuit somewhere down the road.

8        So we don't think that the defendants have met

9    the test for a substantial or any ground for difference

10   of opinion on a legal issue.  We think it's just factual

11   issues and whether this complaint or that complaint

12   might have or might not have met Rule 8.

13       The third element is whether an immediate appeal

14   would materially advance the ultimate termination of

15   this case, and we think that prong also has not been

16   met.  In the Court's opinion, the Court states that

17   plaintiffs have alleged that as a result of the fact

18   that economies of scale were achieved by the advisors,

19   they did not pass those benefits along to the funds and,

20   therefore, the fees were also excessive.  In that sense

21   we feel that the very narrow issue on which the First

22   Circuit is likely to focus will not change that ruling.

23   In fact, that's the ruling that the Court made in the

24   Dumond case, which is the case with which this case is

25   coordinated.  The defendants did not seek 1292(b) relief

1    for that case.

2              And so in that respect, this case has an aspect

3    of it on economies of scale that is very much like the

4    Dumond case and we think would inevitably proceed

5    regardless of what the First Circuit does on the very

6    narrow issue of whether the kickbacks were payments from

7    the advisors instead of excessive fees to the advisors.

8              In short, your Honor, we don't think that any of

9    the, let alone all, of the prongs for 1292(b)

10   extraordinary relief have been met in this case.  In

11   fact, this is sort of the typical challenge to a factual

12   ruling as to what's been pled in this case that the

13   First Circuit rejects because it would truly lead to

14   piecemeal litigation.  And this Court has fairly and

15   properly held that we have met Rule 8 notice pleading in

16   this circumstance under the facts alleged in this case.

17   So we don't feel that the prongs have been met for

18   1292(b).  And for that reason we think the motion should

19   be denied.

20             The second aspect is the motion for a stay of

21   this case during the pendency of the appeal in

22   Columbia.  And I think this one is a highly unusual

23   request because it is extremely speculative what's going

24   to happen in the First Circuit.  Many different things

25   could happen in the First Circuit, or nothing could

1    happen in the First Circuit if the plaintiffs in

2    Columbia wind up settling their case before it gets to

3    an appeal.  There has been no briefing schedule set in

4    the Columbia case.  The plaintiffs have a mediation that

5    they're going to be going to, the court-ordered

6    mediation, at the end of April.  So who knows.  Maybe it

7    won't even get to an appeal.  This is why I think it

8    would be unfair to the plaintiffs in this case to have

9    to sort of sit around and wait for something that might

10   or might not happen in the Columbia case.

11          1292(b) has a built-in presumption against a

12   stay pending a 1292 application in that same case.  And

13   we think that goes doubly true when it's somebody else's

14   appeal.  So defendants need to overcome this presumption

15   against the stay.  And we don't think that they have.

16          If you look at the factors, all of the factors

17   militate in favor of the plaintiffs in this case being

18   allowed to proceed with their discovery to be

19   coordinated with the Dumond case, which is what

20   defendants have been arguing for all along.  And we

21   think the only fair result would be to allow to us

22   proceed; and then if something does come out of the

23   circuit that applies to this case, which is not at all

24   clear whether it will or not, at that point the

25   defendants would be free, as would the plaintiffs, to

1    make whatever motion they felt was appropriate.

2            Factor number one, the likelihood of success on

3    appeal.  Well, this would require the Court to look at

4    the likelihood of success in the Columbia case because

5    that's the appeal we're talking about.  That would mean

6    the Court would have to speculate as to what the First

7    Circuit would do in a case that's not even before this

8    Court.

9            There are many possible outcomes.  As I said,

10   the Columbia case could settle before it gets to the

11   First Circuit briefing and/or hearing, plaintiffs could

12   win in Columbia.  It could be overturned.  The First

13   Circuit could affirm without opinion.  The First Circuit

14   could rule on only the narrow issue on 36(b) that

15   wouldn't affect this case at all.  It's just too

16   speculative, and I think that's the point.  There's so

17   many different things that could happen that the

18   likelihood of success on appeal in that case just isn't

19   even before this Court.  It's not even fair to ask this

20   Court to evaluate the likelihood of success on that

21   appeal.

22           The second factor is whether the denial of a

23   stay will cause irreparable harm to the movant.  And I

24   think the only issue there that the defendants argue is

25   that they would have to spend some money on discovery.

1    Well, we don't think that avoidance of discovery cost is

2    irreparable harm under most circumstances.   It's

3    particularly not true here where they're going to be

4    producing what they claim to be the same materials and

5    the same witnesses in the Dumond case.   So we don't see

6    how there's irreparable harm when they're going forward

7    anyway.   And they're the ones who keep saying there's

8    similar and overlapping issues and that they want the

9    two cases to proceed in tandem.   So their own arguments

10   militate against the stay here.

11        The next factor is the prejudice to the

12   defendant.   Now here's where we think there's some real

13   prejudice, your Honor.   If our 36(b) claim was sustained

14   and we'll basically be forced to sit around for could be

15   six months, could be longer, until the First Circuit

16   rules, if it ever even does, we don't think that that's

17   fair.   We think that in light of the fact that the

18   Dumond case is going to proceed and the defendants are

19   insisting on having them proceed in tandem, it doesn't

20   even make sense to have a stay at this point.

21        The public interest.   If you take defendants'

22   position to its logical conclusion, your Honor, every

23   single case somewhere within the First Circuit that

24   alleges 36(b) would have to come to a screeching halt if

25   their position was taken as true.   There's a case

Page 30

1    against Fidelity.  Is that case going to have to be

2    stayed?  There's the Wicks case.  Is that case going to

3    have to be stayed?  There's a case in New Hampshire.

4    Will that case have to be stayed?  These are all things

5    that could potentially be affected by some ruling by the

6    First Circuit.  Is every defense counsel in every case

7    within the First Circuit going to say that all those

8    cases have to stop because the First Circuit might rule,

9    possibly could rule on something that might affect their

10   case on the 36(b)?  We just don't think that that makes

11   sense.  We think it makes much more sense to let the

12   First Circuit proceed; if something comes out that

13   affects this case, the defendants are free to make the

14   proper motion at the proper time.

15           This happens all the time, your Honor.  A

16   circuit ruling can affect a district court ruling at any

17   time, and district court defendants will make the proper

18   motion at the proper time.  It doesn't mean all the

19   cases in that circuit come to a screeching halt because

20   a circuit might rule on something.

21           In the end we think the motion for interlocutory

22   appeal should be denied because they haven't met the

23   elements, and we think the motion to stay should be

24   denied for the reasons I have suggested.

25           MR. SHAPIRO:  May I respond briefly, your

1    Honor?

2              THE COURT:  Go ahead.

3              MR. SHAPIRO:  First, I don't think that it is

4    quite fair to say the Columbia train has left the

5    station.  As we understand it, as was confirmed by Miss

6    Pollack, I believe it has been docketed.  No briefing

7    schedule is in place, and this mediation is the standard

8    program in the First Circuit.  So in terms of timing, we

9    would see no issue getting the cases tracked together if

10   that's what the First Circuit wanted.

11             THE COURT:  Is there a statement of issues on

12   appeal filed in that case?  Is that happening?  I'm just

13   not familiar enough with appellate rules.  Has it had

14   one in the docketing?

15             MS. POLLACK:  I believe, your Honor, all you

16   have to do is just do a very basic we're going to appeal

17   this case.

18             THE COURT:  That's the notice of appeal.  But

19   there's been no separate statement of the issues on

20   appeal?

21             MS. POLLACK:  I don't believe so.

22             MR. SHAPIRO:  That's my understanding as well

23   as to the practice, your Honor.

24             Second point, your Honor.  This argument that

25   we didn't cast the question with a question mark.  Hang

0ea7be8b-8f36-4428-9d06-0c90a5140a41

1    me out in the hall.  At this point we would suggest that

2    there's no confusion about what we view as the

3    controlling question of law as to which there is a

4    substantial difference of opinion.  It's on pages 22 and

5    23 of your Honor's order.  We tried to set it forth

6    succinctly, albeit without the question mark in our

7    supplemental filing.  And plaintiffs themselves on page

8    2 of their opposition seemed to do quite a good job of

9    stating it as well.

10           Point number three.  I already set forth the

11    reasons why as we read your Honor's order the question

12    as to whether an inherently excessive fee theory, the

13    something-for-nothing theory, that's their shorthand,

14    states a claim.  That's a legal ruling, near as we read

15    it.  Your Honor knows best about what your Honor meant.

16    The only thing I could add is that it seems to us clear

17    as day that when Eaton Vance says something for nothing

18    stretches the reach of the statute too far, that that's

19    a statutory construction argument.  That's the case that

20    same plaintiffs' counsel have on appeal at the Second

21    Circuit.

22           With respect to the Dumond case, no, we did

23    not seek interlocutory appeal.  Our argument there was

24    the complaint was too thin, it was insubstantial, and it

25    didn't meet 8(a).  Your Honor ruled it was substantial

0ea7be8b-8f36-4428-9d06-0c90a5140a41

1   enough to meet 8(a).  We're not seeking interlocutory

2   appeal of that ruling.  We think that that will probably

3   fairly fall in the category of those disfavored

4   interlocutory appeals.  This case, however, is

5   different.  The issue is not whether plaintiffs'

6   allegations of directed brokerage are precise or

7   specific.  They're redundant and very particular.  Our

8   argument is no matter how redundant or particular, it

9   doesn't fit within the statute.

10          Next point, Judge.  Judge Keeton it is true

11  did not dismiss Columbia by dealing head on with the

12  something-for-nothing shorthand or theory of liability.

13  That's because he didn't need to reach it.  He signed on

14  full bore to the argument that we tried with your Honor

15  and only got halfway.  They made that argument.  The

16  suggestion that that argument wasn't before him is

17  absolutely 100 percent belied by the transcript in that

18  case, very similar to this one; the briefs in that case,

19  very similar to this one.  In our brief on the

20  interlocutory appeal motion, footnote 1, we give the

21  citations to Columbia.  It's almost identical.  And it's

22  almost identical in Eaton Vance and the squibs and the

23  quotes and the, quote, something-for-nothing theory of

24  inherent excessive fee.  That's in the Jones case, upon

25  which your Honor relied and that plaintiffs relied.

0ea7be8b-8f36-4428-9d06-0c90a5140a41

1          So the notion that these courts are all

2     looking at very different complaints and something for

3     nothing has never been passed on simply isn't right.  It

4     is true that that argument was preserved but not ruled

5     on in Columbia.

6          Finally, your Honor, the stay.  We're not sure

7     that the legal standard that the plaintiffs are setting

8     forth for whether a stay should be granted in this case

9     is the right standard.  It sounds like I believe the

10    Rule 62, stay pending injunction.  For example, when a

11    district court orders an injunction when it shall stay

12    entry of that order, stay the injunction to let someone

13    go and take an appeal.  Not sure that's the right

14    standard.

15         The Court certainly has an obligation, if it

16    deems appropriate, for case management and discretion

17    and in the interests of justice to stay a matter if it

18    makes sense to stay a matter.  There's no reason to

19    believe this is going to go slowly.  Recent First

20    Circuit appeals cradle to grave, docketing to mandate

21    seven months.  There's no reason to believe the court's

22    going to move any more slowly here.  There's no reason

23    to say it's speculative that the First Circuit will

24    rule.  It has to, unless a settlement is achieved.  And

25    this is the first we've heard of that.

0ea7be8b-8f36-4428-9d06-0c90a5140a41

Page 35

1    And there's no reason to believe that this is

2    just a hypothetical relationship. And I think there the

3    best evidence of that is plaintiffs' argument, well,

4    gee, let's just go down the pike, let's go down the road

5    and if there's another ruling, well, we'll adjust.

6    Well, that's a very good argument for a stay as well.

7    We think the rulings, for example, with respect to

8    standing are rock solid. We go up on appeal, we're

9    going to have to defend those rulings. If Columbia goes

10   up and this case doesn't and juridical links, or

11   whatever theory it is whereby one person in one fund can

12   sue for 62 more, if that gets sustained, then where will

13   we be? Will we start discovery over? There's prejudice

14   either way.

15   And on that point, your Honor, in the Dumond

16   case we're looking at 83 separate requests for ten years

17   of documents. That's not why we're here today, but the

18   notion that it's a little bit of expense or it's a

19   little bit of a hassle would be something of an

20   overstatement. There's no reason to believe any

21   documents have gone missing. Directed brokerage has not

22   been a practice at this mutual fund company, or others,

23   for a number of years. So the notion that there would

24   be great prejudice as the same plaintiffs' counsel

25   prosecute an appeal taken from the dismissal of the same

1    complaint is a bit overstated.  Thank you, your Honor.

2             THE COURT:  Okay.  Well, actually, I'm not

3    going to take it under advisement; I'm going to rule.

4    I'm going to deny the motion in both respects.  I guess

5    one starting point, I'm not convinced there is such a

6    similarity between Judge Keeton's ruling and mine that

7    it will be all that helpful.

8             Let me just back up for a minute.  With

9    respect to the 1292(b) criteria, I do not think that

10   there is a controlling question of legal -- controlling

11   question of law that is specifically identified in my

12   ruling, let alone Judge Keeton's, within the meaning of

13   that provision and the circuit law that applies.

14            An example, I think, of a controlling question

15   of law that is not dependent on the facts of a

16   particular case would be the question, "Does Section

17   36(a) provide a private right of action?"  Now, that can

18   be answered without reference to any particular

19   complaint and might advance in obvious ways litigation

20   that rested on that premise.  The question here is given

21   that 36(b) authorizes a cause of action, do the

22   complaint's allegations sufficiently allege an action, a

23   claim that could be recognized under Section 36(b)?

24            I think there's been a lot of extrapolation in

25   the cases; and on a motion to dismiss, I tend to think

1    that some of the other district courts have been

2    perhaps, to my taste, too ambitious in trying to outline

3    exactly the elements of a 36(b) cause of action.  One of

4    my conclusions was that it is a, at this stage, an

5    undefined, uncontented cause of action to some degree

6    and that cases will have to develop that content.  That

7    will happen through the process of deciding numerous

8    cases, and we'll find out what falls within and falls

9    without.  It is a very difficult thing to do on a motion

10   to dismiss, to be certain that something is in or out.

11            Having in mind the injunction of Conley vs.

12   Gibson and the cases that follow it that that motion to

13   dismiss should be granted only when there is no set of

14   facts consistent with the allegations of the complaint

15   entitling the plaintiff to relief.  The cause of action

16   established under 36(b) is for breach of fiduciary

17   duty.  The statute creates the duty and then gives a

18   cause of action for breach.  It is no more defining than

19   that.  It can be conceived, I suppose, hypothetically

20   there are many ways an advisor would breach the

21   fiduciary duty with respect to the receipt of

22   compensation.  One way might -- the way people have

23   focused on is that the compensation could be excessive.

24   That could be a way that a duty -- the fiduciary duty

25   would be breached.  In terms of what the scope of the

1   statute may be, certainly not clear necessarily that

2   that's the only way, of course.

3          I think many of the opinions have assumed that

4   the Gartenberg case describes the elements of the cause

5   of action, even its sort of summing up principle that

6   fees so disproportionate and so on and so forth.  That

7   might be the law in the Second Circuit, and it might

8   eventually be the law in the First Circuit but it

9   isn't.  I yet do not regard the content of a 36(b)

10  action to be defined by Gartenberg either, let alone any

11  other theory.

12         So my ruling, without going back to what I

13  said in the opinion, is that the facts that were alleged

14  are sufficient at the motion to dismiss stage, so the

15  ruling cannot be made adverse to the plaintiffs that

16  there is no set of circumstances consistent with the

17  allegations that would entitle them to relief under

18  36(b) in the cause of action.

19         It is -- the propositions are not -- the

20  alternate propositions are not necessarily symmetrical.

21  That is to say, if a ruling were made that the

22  plaintiffs were out, that would be a definitive ruling

23  that maybe you could define as more of a legal ruling,

24  that here is a set of facts and there is no set of

25  circumstances consistent with these that amount to the

1    cause of action.  Maybe that's a ruling of law that

2    would fit within 1292(b).  Of course it's not necessary

3    because at that point it's appealable in the ordinary

4    course, as the Columbia case indicates.

5         The other side of that isn't necessarily

6    symmetrical.  In other words, a ruling that the

7    plaintiffs should not be thrown out of court on the

8    allegations relying on the cause of action is not so

9    clear cut.  There's wiggle room.  There's time to define

10   and develop and see what gets proved.  I think that's

11   what the meaning of the Conley case is and so on.  So a

12   ruling denying a motion to dismiss on a particular

13   ground doesn't have the same concreteness that a ruling

14   granting it might.

15        So I think that's all I'll say on the 1292.  I

16   think that in itself is sufficient to decline.  And I

17   think that's consistent with the view the circuit would

18   take if I would do otherwise.

19        I also don't think there's any reason to stay

20   the case.  It is a practical reality of litigating at

21   two levels that things will happen at the different

22   levels that may be inefficient because of what's

23   happening at the other level.  And we deal, as

24   Ms. Pollack points out, we deal all the time with

25   surprise rulings that alter the course of litigation.  I

Page 40

1    think when there is a development in the law, as there

2    is here, plaintiffs and others like them around the

3    country have put on the table for discussion what does

4    36(b) mean.  And there's a lot of discussion going on.

5    I don't think we have to halt the entire discussion to

6    await a ruling in a similar case.  I don't think that

7    will be prudent.  So we'll proceed in the normal

8    course.  I guess the normal course will mean we'll have

9    to have a discovery scheduling conference.  Did we do

10   that?

11          MS. POLLACK:  We did, your Honor.

12          MR. SHAPIRO:  We had some deadlines we had

13   teed off, like initial disclosures due like 14 days from

14   tomorrow.

15          THE COURT:  One thing you can consider, and I

16   don't need an answer now, is whether you want to track

17   the pattern of the Dumond case.

18          MR. SHAPIRO:  We have a strong view that

19   that's a good idea, your Honor.

20          THE COURT:  Why don't you discuss a schedule

21   among yourselves.  We'll set perhaps a scheduling

22   conference maybe a month from now.  In the meantime you

23   folks can talk about what you folks think would be a

24   sensible schedule of this case, and it may be it's a

25   carbon copy of the Dumond case.  I don't know.

1          MR. SHAPIRO:  Do we already have one set or do

2   we have to --

3          THE COURT:  We could do that, too.

4          MS. SHAPIRO:  I thought we set it for July for

5   some reason.  I think you guys had set it for July in

6   Dumond, right?

7          THE COURT:  Was that a scheduling conference

8   in Dumond?  Or did we set a schedule and that's halfway

9   through it?  Not halfway, some way.

10          MR. SHAPIRO:  That would probably be a quarter

11   way through it or somewhere into it.

12          THE COURT:  But there are other dates set in

13   Dumond?

14          MR. SHAPIRO:  Maybe this is most helpful.  We

15   did address some of the issues in the 26 that was a

16   joint product of defendants and both sets of

17   plaintiffs.  Maybe if we could go back, revisit, see

18   what issues had been resolved at our prior appearance

19   before your Honor and figure out what's open.  And maybe

20   Ms. Pollack, and I can just get with the Dumond

21   plaintiffs and we can get back to your Honor.

22          THE COURT:  That sounds good.  Why don't we

23   just leave it to you to get back to us.

24          MS. POLLACK:  That's fine with us, your Honor.

25          THE COURT:  And maybe if you want to just save

0ea7be8b-8f36-4428-9d06-0c90a5140a41

Page 42

1   an appearance and submit a proposed schedule that you've

2   all agreed to, unless it's just outrageous, I'll

3   probably just approve it.

4           MS. POLLACK:  I think that should be

5   acceptable to us, your Honor.

6           THE COURT:  All right.  Thank you very much.

7           THE CLERK:  All rise.  Court is in recess.

8           (Adjourned, 3:50 p.m.)

9

10                    i  i  i  i  i  i  i

11                      CERTIFICATION

12           I certify that the foregoing is a correct

13   transcript of the record of proceedings in the

14   above¡entitled matter to the best of my skill and

15   ability.

16

17

18

19   _____     _____

20   Shelly M. Killian                Date

21   Official Court Reporter

22

23

24

25

0ea7be8b-8f36-4428-9d06-0c90a5140a41